1

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
CHRISTOPHER M. BURKE (CA Bar No. 214799)

2

ALEX M. OUTWATER (CA Bar No. 259062)
600 W. Broadway, Suite 3300

3

San Diego, CA 92101
Telephone: 619-233-4565

4

Facsimile:  619-233-0508

5

cburke@scott-scott.com
aoutwater@scott-scott.com

6

7

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**

8

Anthony F. Fata (*pro hac vice admission anticipated*)
Nyran Rose Rasche (*pro hac vice admission anticipated*)

9

Nickolas J. Hagman (*pro hac vice admission anticipated*)
150 S. Wacker, Suite 3000

10

Chicago, IL 60606
Telephone: 312-782-4880

11

Facsimile:  318-782-4485

12

afata@caffertyclobes.com
nrasche@caffertyclobes.com

13

nhagman@caffertyclobes.com

14

***Attorneys for Plaintiffs and the Class***

15

[Additional Counsel on Signature Page.]

16

17

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

18

19

CARL BARRETT, MICHEL POLSTON,
NANCY MARTIN, DOUGLAS WATSON,

20

ERIC MARINBACH, MICHAEL
RODRIGUEZ, and MARIA RODRIGUEZ,

21

Individually, and on Behalf of All Others
Similarly Situated,

22

23

          Plaintiffs,

24

          v.

25

APPLE INC., a California Corporation;
APPLE VALUE SERVICES LLC; and

26

DOES 1 Through 10, Inclusive,

27

          Defendants.

28

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach, Michael Rodriguez, and Maria Rodriguez (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendants Apple Inc. and Apple Value Services LLC (collectively, "Apple") and DOES 1 through 10 (collectively, with Apple, "Defendants"). The following allegations are based upon personal knowledge as to Plaintiffs' own facts, upon investigation by Plaintiffs' counsel, and upon information and belief where facts are solely in possession of Defendants.[1]

## NATURE OF THE CASE

1. This case arises from Apple's knowing or reckless enabling of the "iTunes gift card scam." Scammers have found a uniform way of tricking victims into paying them large sums of money via iTunes gift cards. Apple is incentivized to allow the scam to continue because it reaps a 30% commission on all scammed proceeds, and knowingly or recklessly, Apple plays a vital role in the scheme by failing to prevent payouts to the scammers.

2. The iTunes gift card scam preys upon many, including the elderly and vulnerable. It is prevalent. Apple dedicates a webpage to it, but apparently does little more.

3. Perhaps most alarming, Apple describes the scam as "***formulaic***," yet does little to stop it or to return its 30% commission to scammed victims (much less other moneys that Apple can recover from the scammers).

4. Despite the fact that Apple retains the funds from purchases made using iTunes gift cards for four to six weeks before paying App and iTunes store vendors and keeps a 30% commission on scammed proceeds, Apple's webpage and other communications falsely inform the public that all scammed proceeds are irretrievable:

> A string of scams are taking place asking people to make payments over the phone for things such as taxes, hospital bills, bail money, debt collection, and utility bills.
>
> *          *          *
>
> Regardless of the reason for payment, the scam follows a certain ***formulaic***: The victim receives a call instilling panic and urgency to make a payment by purchasing App Store

---

[1] Plaintiffs will work with Apple on the timing of Apple's response to this Complaint and other ways of reducing the burdens of litigation on the parties, their counsel, and the Court in light of the ongoing COVID-19 pandemic.

& iTunes Gift Cards or Apple Store Gift Cards from the nearest retailer (convenience store, electronics retailer, etc.). After the cards have been purchased, the victim is asked to pay by sharing the code(s) on the back of the card with the caller over the phone.

\*      \*      \*

Never provide the numbers on the back of a Gift Card to someone you do not know. *Once those numbers are provided to the scammers, the funds on the card will likely be spent before you are able to contact Apple or law enforcement*.

*See* Apple, About Gift Card Scams, https://support.apple.com/itunes-gift-card-scams. [Emphasis added.]

5.     The last sentence is highly misleading, and falsely suggests that there is nothing Apple can do for consumers who report the scam to it. Apple retains 30% of the spent funds for itself. At all times, this amount remains retrievable to the consumer. Apple holds the remaining spent funds for four to six weeks before paying the third-party vendors on the App and iTunes stores on which the stored value was spent, meaning the remainder is also retrievable to the consumer.

6.     The iTunes gift card scam deprives consumers of hundreds of millions of dollars or more. The overwhelming majority of victims do ***not*** report the scam to the Federal Trade Commission ("FTC"). Yet even the limited iTunes gift card scams reported to the FTC during 2015-2019 exceed $93.5 million, with the dollar amounts increasing significantly each year. These publicly reported dollar amounts include the losses of only the subset of victims who fill out a detailed online FTC form asking for their personal information. As a result, this $93.5 million figure appears to be only the tip of the iceberg. Even if only 10% of scam victims report to the FTC (versus local police, attorney general offices, Apple, or nobody at all), the iTunes gift card scam would approach $1 billion, with Apple retaining $300 million in commissions.

7.     As set forth in detail below, scammers monetize scammed gift card values in one of two ways. First, they can use the stored value on the iTunes gift cards they obtain through scams to purchase App and iTunes store content for apps that they control. Using this method, scammers receive payment from Apple (less Apple's 30% commission) four to six weeks after spending the stored value from the wrongfully obtained iTunes gift cards. Apple has shut down apps for violating its fraud policies, begging the question of what happened to the fraudulently

CLASS ACTION COMPLAINT

obtained proceeds. Second, scammers can sell the gift card numbers to third parties who then use them to purchase App store or iTunes products, but this latter method involves significant counter-party risk and steep discounts. Regardless of which method the scammers use, Apple keeps 30% of the scammed proceeds.

8. Not only does Apple keep 30% of the scammed proceeds, it is able to track all key points in the scheme. Apple has long bragged about its App Store "ecosystem." The App Store is a marketplace created by Apple, over which it has full control, and into which it has full visibility. There are four key steps in the iTunes gift card scam:

9. <u>Step One: The Point of Sale</u>. Apple knows when, where, and in what amount the victim purchases the gift card. At the point of sale, the retailer must communicate with Apple to "activate" the gift card and record the stored value.

10. <u>Step Two: The Apple ID Upload</u>. Apple knows the Apple ID onto which the gift card number is uploaded. An Apple ID is a unique Apple "account" identifier through which customers on the App and iTunes stores transact. Apple iTunes gift card numbers must be uploaded to an Apple ID before being used in the App and iTunes stores. The amounts associated with these gift card numbers are referred to as "stored value" or "stored credit." Apple reserves the right to void the stored value if it merely "suspects" that the store credit was obtained fraudulently.

11. <u>Step Three: Spending Stored Value on an App</u>. Apple also knows where the Apple ID spends stored value in the App store ecosystem because each purchase must be made from an Apple ID.

12. <u>Step Four: Payment of U.S. Dollars (Less Commission)</u>. Apple knows the identity and financial account information of the App and iTunes store proprietors who receive U.S. dollars from the gift card purchases because, four to six weeks after the purchase, Apple sends them the U.S. dollars (minus Apple's commission).

13. <u>Reverse Mapping</u>. If a victim calls Apple and provides the gift card number that was scammed, Apple can use the gift card number to find out which Apple ID(s) and which App or iTunes products were involved in converting the scammed gift card number into U.S. dollars.

Apple can also interrogate the Apple ID and the App and iTunes transactional data to determine if there were other suspect transactions and, if so, suspend the Apple ID and the App.  At minimum, Apple knows that it has kept 30% of the scammed gift card value.

14.    Rather than publicizing its omniscience in this Apple "ecosystem" and its 30% take, Apple, as noted above, falsely tells victims that 100% of their money is irretrievable.

15.    Plaintiffs bring this class action on behalf of themselves and an objectively identifiable class consisting of all victims of scams involving Apple iTunes gift cards.

## PARTIES

16.    Plaintiff Carl Barrett is a resident and citizen of Prince George's County, Maryland, living in Hyattsville, Maryland.  Plaintiff Barrett is 57 years old.

17.    Plaintiff Michel Polston is a resident and citizen of Marion County, Oregon, living in Salem, Oregon.  Plaintiff Polston is 71 years old.

18.    Plaintiff Nancy Martin is a resident and citizen of Sarasota County, Florida, living in Nokomis, Florida.  Plaintiff Martin is 61 years old.

19.    Plaintiff Douglas Watson is a resident and citizen of Butte County, California, living in Chico, California.  Plaintiff Watson is 64 years old.

20.    Plaintiff Eric Marinbach is a resident and citizen of Queens, New York, living in Bayside, New York.  Plaintiff Marinbach is 55 years old.

21.    Plaintiff Michael Rodriguez is a resident and citizen of Los Angeles County, California, living in Walnut, California.  Plaintiff Michael Rodriguez is 50 years old.

22.    Plaintiff Maria Rodriguez is a resident and citizen of Los Angeles County, California, living in Walnut, California.  Plaintiff Maria Rodriguez is 68 years old.

23.    Defendant Apple Inc. ("Apple") is a business incorporated under the laws of the State of Delaware with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  Apple is engaged in the business of designing, manufacturing, distributing, and selling, *inter alia,* smartphones, tablet computers, wearable technology, headphones, laptops and desktop computers that come with software programs that Apple develops pre-installed.  Apple designs its

products in California, and its marketing efforts emanate from California.  Defendant Apple is a citizen of the State of California.

24.     Defendant Apple Value Services LLC is a Virginia corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014.  Defendant Apple Value Services is a citizen of the State of Virginia.

25.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names.  Each of the Defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of Court to amend their Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because: (1) there are 100 or more (named or unnamed) class members; (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest or costs; and (3) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

27.     This Court may exercise jurisdiction over Defendants because Apple is a citizen of this State and District and maintains its principle place of business in this District, has continuous and systematic contacts with this District, does substantial business in this State and within this District, receives substantial revenues from marketing, distribution, and sales of iTunes gift cards in this District, and engages in unlawful practices in this District as described in this Complaint, so as to subject itself to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.

28.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) because Apple is headquartered in this District, advertises in this District, receives substantial revenues and profits from the sale of iTunes gift cards which it directs into the stream of commerce in this

1  District; therefore, a substantial part of the events or omissions giving rise to the claims alleged

2  herein occurred in this District.

3      29.    Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b)).  This action arises in

4  Santa Clara County, in that a substantial part of the events which give rise to the claims asserted

5  herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa

6  Clara County shall be assigned to the San Jose Division.

7                              **FACTUAL ALLEGATIONS**

8  **Apple's Digital Products**

9      30.    Apple owns and operates online platforms including the App and iTunes stores.

10 Consumers who access the App and iTunes stores can purchase and download digital applications

11 for mobile devices ("apps") or digital multimedia (such as songs, movies, and television shows).

12     31.    Apple describes the App Store as an "ecosystem" it created and controls.[2]  The App

13 Store hosts millions of apps that consumers purchase or download directly from the App Store.

14 Apple separates the apps available on the App Store into different categories, including various

15 types of free apps and paid apps.[3]

16 **Apple's Oversight of Its Platforms**

17     32.    Apple reviews all apps before they are made available for consumers.  Before an

18 app is available on the App Store, developers must submit the prospective app to Apple for review

19 and approval.[4]  Apple "carefully review[s] each app" before it becomes available on the App Store

20 using "a combination of automated systems and hundreds of human experts."[5]  Apple may require

21 the developer to modify or remove functions from the app.[6]

22

23

24 [2]    *See, e.g.*, *In re Apple iPhone Antitrust Litigation*, 139 S. Ct. 1514 (2019), Petition for Writ
    of Certiorari at 6 ("Apple designed – from the ground up – an ecosystem for the use, development,
25 sale, and distribution of apps.").

26 [3]    *See App Store – Principles and Practices*, APPLE (https://www.apple.com/ios/app-
    store/principles-practices) (last visited July 16, 2020).

27 [4]    *See App Review – App Store*, APPLE (https://developer.apple.com/app-store/review) (last
    visited July 16, 2020).

28 [5]    *See supra* note 3.

   [6]    *See supra* note 4.

                                     6                  CLASS ACTION COMPLAINT

33.     Apple represents that most apps are reviewed "within 24 hours of the developer's submission." Apple says it rejects 40% of app submissions for issues such as "minor bugs [and] privacy concerns."[7] Apple thus has knowledge of the contents and design of all apps available on the App Store.

34.     One of the purposes of Apple's review process is to determine whether the app will be used for or facilitate illegal activity. Apple reserves the right to reject any app used for illegal or criminal activities.[8] After Apple approves an app, it becomes available to purchase or download from the App Store. Apple reserves the right to suspend an approved app if it is suspected of facilitating illegal activity.[9]

**Payment for Apple's Digital Products**

35.     Apple receives a 30% commission on all sales of paid apps, purchases made within apps (often called "in-app purchases"), and paid subscriptions to apps.[10] On information and belief, Apple take a similar 30 % commission for purchases from iTunes.[11]

36.     To purchase digital content from either iTunes or the App Store, consumers must create and register an account with Apple, called an "Apple ID."[12] Purchasing songs, movies, or apps from either iTunes or the App Store requires the purchaser to sign in with the user's unique Apple ID and provide Apple with a valid method of payment.

---

[7]     *See id.*

[8]     *See App Store Review Guidelines – Apple Developer*, APPLE (https://developer.apple.com/app-store/review/guidelines) (last visited July 16, 2020); *Apple Developer Agreement – English*, APPLE (June 8, 2015) (https://developer.apple.com/terms/apple-developer-agreement).

[9]     *See Apple Developer Agreement – English*, *supra* note 8.

[10]     *See id.*; *see also Apple Inc. v. Pepper*, No. 17-204, 587 U.S. __ (2019), Brief of Petitioner to the Supreme Court of the United States at 9 (Apple acknowledges that it "review[s]apps for safety and compatibility, host[s] the App Store, act[s] as the developers' sales and delivery agent, collect[s] the purchase price (if any) from consumers on the developers' behalf, and remit[s] proceeds to developers from around the world" and that "developers agree to pay Apple an annual $99 membership fee, and a 30% commission on their sales revenue from paid apps and in-app purchases.").

[11]     *See e.g.*, *iTunes Connect Resources and Help*, APPLE (https://itunespartner.apple.com/en/music/faq/Payments%20and%20Financial%20ReportsReading%20Your%20Financial%20Reports) (last visited July 16, 2020).

[12]     *See Apple ID FAQ*, APPLE (https://appleid.apple.com/faq/#!&page=faq) (last visited July 16, 2020).

7                                                                                   CLASS ACTION COMPLAINT

37.     To create an Apple ID, consumers must provide Apple with a valid email address, credit card or billing information, and their date of birth.[13]   Apple requires that all Apple ID accounts be verified with a telephone number or the email address associated with the Apple ID account.[14]

38.     Consumers make purchases from the App or iTunes stores by providing Apple with their credit or debit card information, through PayPal or Apple Pay, or with Apple iTunes gift cards.[15]  Even if consumers wish to use only Apple iTunes gift cards for purchases, Apple requests valid credit card or billing information.[16]

**App Developers**

39.     Individuals and companies who develop apps distributed on the App Store are called "Apple Developers."  Apple Developers are required to create and register an Apple ID, enroll in the Apple Developer Program, enter into the Apple Developer Program License Agreement, and pay an annual fee of $99.[17]

40.     If Apple Developers wants to distribute an app which charges a fee for download and/or has in-app purchases, they must enter into Apple's Schedule 2 agreement.  By entering into the Schedule 2 agreement, Apple Developers appoint Apple as their agent relative to their apps made available on the App Store.

41.     Apple pays Apple Developers after a consumer purchases a Paid App from the App Store, makes an in-app purchase, or pays a subscription to an app downloaded from the App Store. Apple makes all payments to Apple Developers electronically.[18]  In order to be paid by Apple,

---

[13]     *See Create Your Apple ID*, APPLE (https://appleid.apple.com/ account#!&page=create) (last visited July 16, 2020); *How to Create a New Apple ID*, APPLE (https://support.apple.com/en-us/HT204316#macos) (last visited July 16, 2020).

[14]     *See id.*

[15]     *See Payment methods that you can use with your Apple ID*, APPLE (https://support.apple.com/en-us/HT202631) (last visited July 16, 2020).

[16]     *See Redeem App Store & iTunes Gift Card and content codes – Apple Support*, APPLE (https://support.apple.com/en-us/HT201209) (last visited July 16, 2020).

[17]     *See Purchase and Activation – Support – Apple Developer*, APPLE (https://developer.apple.com/support/purchase-activation) (last visited July 16, 2020).

[18]     *See iTunes Connect Resources and Help*, APPLE (https://itunespartner.apple.com/en/ movies/faq/Banking%20and%20Tax_Banking) (last visited July 16, 2020).

Apple Developers must provide Apple with their bank account information, and may also be required to submit tax forms to Apple.[19]

42.     Apple does not pay Apple Developers immediately after consumer transactions. Instead, Apple waits for its fiscal month (the monthly period during which the purchase was made) to close, and then waits up to 45 days after the close of that fiscal month before it electronically transfers the money to the Apple Developer's bank account.[20]  Moreover, Apple will not transfer payment unless the Apple Developer meets the minimum payment threshold for that period.[21]  As such, there is a delay of several weeks between the time a consumer purchases an app from the App Store or makes in-app purchase or subscription payment, and the time  Apple pays the Apple Developer.

**iTunes Gift Cards**

43.     Apple sells iTunes gift cards for use on iTunes, in the App Store, or inside of apps purchased or downloaded from the App Store (as noted, the latter are often called "in-app purchases").  iTunes gift cards are sold by Apple both directly to consumers, and indirectly to consumers through retailers.

44.     iTunes gift cards are country/region specific.  iTunes gift cards sold in the United States cannot be used outside of the United States.[22]

45.     iTunes gift cards generally are sold for the amount shown on the face of the iTunes gift card (or an amount selected by the consumer within the range reflected on the face of the card), and generally reflect a stored value equal to the amount paid by the consumer.

46.     Every iTunes gift card has a unique redemption code and PIN on the back of the card.  iTunes gift cards are not active until purchased.  Once purchased, the retailer activates the card.  Unless properly activated, an iTunes gift card cannot be redeemed.  Accordingly, Apple

---

[19]   *See Agreements, Tax, and Banking Overview – Apple Store Connect Help*, APPLE (https://help.apple.com/app-store-connect/#/devb6df5ee51) (last visited July 16, 2020).

[20]   *See iTunes Connect Resources and Help*, APPLE (https://itunespartner.apple.com/en/apps/faq/app%20) (last visited July 16, 2020).

[21]   *See id.*

[22]   *See If You Can't Redeem Your App Store & iTunes Gift Card, Apple Music Gift Card, or Content Code*, APPLE (https://support.apple.com/en-us/HT201195) (last visited July 14, 2020).

knows the moment a particular iTunes gift card has been purchased and the amount of "stored value" on the card because the retailer must activate the card at the point of sale.

**Apple IDs**

47.    A valid Apple ID is required to redeem iTunes gift cards.  Consumers redeem iTunes gift cards by logging into their Apple ID account and entering the redemption code and PIN on the back of the card.  The value of the iTunes gift card is then transferred to the consumer's Apple ID account, and is immediately available to make purchases on iTunes, from the App Store, or in apps.  Once an iTunes gift card has been redeemed, the physical card is worthless, as the entire value of the iTunes gift card has been transferred to the redeemer's Apple ID account.

48.    Apple tracks redemption codes on iTunes gift cards to ensure that a single iTunes gift card is not redeemed multiple times.  Therefore, when an iTunes gift card is redeemed, Apple knows which iTunes gift card was redeemed ***and which Apple ID account redeemed the iTunes gift card***.

49.    The packaging for iTunes gift cards contains minimal terms and conditions.[23]  For example, the outer packaging, which is visible to consumers prior to purchase on iTunes gift card packaging, often provides:

> **Terms and Conditions**
> Valid only on purchases made in the U.S. from Apple Media Services.  Use requires an Apple ID and prior acceptance of license & usage terms.  Not redeemable for cash, for resale, for shipments outside the U.S. & no refunds or exchanges (except as required by law).  Data collection and use subject to Apple's Privacy Policy; see apple.com/privacy.  Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission.  Void where prohibited.  Terms apply; see apple.com/us/go/legal/gc.  App Store and iTunes gift cards are issued and managed by Apple Value Services ("Issuer").  © 2017 Apple Inc. All rights reserved.

50.    The web address on the back of the iTunes gift card packaging directs users to the full terms and conditions for iTunes gift cards (the "Online Terms and Conditions").  The Online Terms and Conditions, which apply to iTunes gift cards and their related codes (together, "Store Credit") provide, *inter alia*, that:

> You agree to not use Store Credit in any manner that is misleading, deceptive, unfair, or otherwise harmful to Issuer, Apple or its customers.  We reserve the right,

---

[23]    Apple occasionally changes the language on the iTunes gift card packaging, but the terms on all iTunes gift card packaging are all substantially similar.

without notice to you, to void or deactivate [iTunes gift cards] (including a portion of your Account balance) without a refund, suspend or terminate customer accounts, suspend or terminate the ability to use the Services, cancel or limit orders and bill alternative forms of payment if we suspect Store Credit was obtained, used, or applied to an Apple ID fraudulently, unlawfully, or otherwise in violation of these terms and conditions.

\*      \*      \*

**Risk of Loss:** Neither Issuer nor Apple is responsible for lost or stolen Store Credit or Content Codes. . . . Apple reserves the right to close accounts and request alternative forms of payment if Store Credit or a Content Code is fraudulently obtained or used on the Service.

**Governing Law** Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions. You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.[24]

51.     When consumers purchase an iTunes gift card at retail, they become bound by the terms on the packaging, which incorporate the full Online Terms and Conditions. However, no victim of an iTunes gift card scam is bound by Apple's attempt to limit its own liability for iTunes gift cards which are lost, stolen, or used without permission. Even if that limitation of liability applied by its terms – which it arguably does not – Apple cannot disclaim liability for loss or damage resulting from scams which it intentionally aids, abets, and perpetuates. Any attempt by Apple to disclaim liability for loss or damage resulting from iTunes gift card scams would be unconscionable and unenforceable in light of its role in those scams and the profit that it makes and retains from such scams.

**The iTunes Gift Card Scam Costs Hundreds of Millions of Dollars or More**

52.     The overwhelming majority of iTunes gift card scam victims do ***not*** report the scam to the Federal Trade Commission ("FTC"). Yet even the losses of the small percentage of victims who do report to the FTC exceeded an estimated $93.5 million during 2015-2019, with the dollar amounts increasing significantly each year. According to FTC data, iTunes gift cards make up approximately 23.7% of all gift card scams. Applying this 23.7% figure to the total gift card scams reported results in the following estimated figures of scams reported to the FTC:   2015-

---

[24]     *See Legal – iTunes Gift Cards and Codes*, APPLE (Mar. 20, 2018) (https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html).

$4.7 million; 2016-$6.4 million; 2017-$9.5 million; 2018-$18.5 million; 2019: $24.4 million; and 2020: $30 million; for a total of $93.5 million.  This dollar amount is limited to consumers who fill out a detailed online FTC form asking for their personal information.  Given the time required to fill out the FTC form and its potential privacy implications, it can reasonably be inferred that only a small percentage of victims submit a report to the FTC (versus another governmental entity).  As a result, this publicly reported $93.5 million figure appears to be only the tip of the iceberg.  If only 10% of scam victims reported to the FTC (versus local police, attorney general offices, Apple, or nobody at all), the iTunes gift card scam would approach $1 billion in scammed proceeds, with Apple retaining $300 million in commissions.

53.     Apple is aware of the widespread nature of the scam and has been for years.  Apple has been receiving inquiries from victims (beginning on a date known only to Apple **and** requests for information from law enforcement officials.  Since July 1, 2016 (the date for which Apple first began separately disclosing this data), U.S. government entities have asked Apple to provide customer data related to more than 60,000 "specific financial identifiers," such as credit card numbers or gift card numbers.  Apple has noted in its public transparency reports that the "[h]igh number" of "financial identifier requests" from government entities in the United States is "predominantly due to iTunes Gift Card and credit card fraud investigations."[25]

54.     Of course, the large number of financial identifiers included in law enforcement requests are, again, only the tip of the iceberg.  Many victims don't report gift card fraud to any law enforcement entity,[26] and even if they do, there is no guarantee their information will be investigated, much less included in a law enforcement subpoena or other formal government request for information to Apple.

---

[25]     *Apple Transparency Report: Government and Private Party Requests, January 1–June 30, 2019* at 5, 20, APPLE (https://www.apple.com/legal/transparency/pdf/requests-2019-H1-en.pdf).

[26]     *See, e.g.,* Tamara Lytle, *Give Gift Cards to Friends and Family – Not Fraudsters*, AARP (Nov. 7, 2019), (https://www.aarp.org/money/scams-fraud/info-2019/prevent-gift-card-fraud.html) (director of fraud victim support at the American Association for Retired Persons, or AARP, says that victims often do not contact law enforcement because "[t]hey are embarrassed and ashamed and they don't think it does any good").

55.     iTunes gift cards are the most requested type of gift card brand by scammers "by a wide margin."[27]

**The Mechanics of the "Formulaic" iTunes Gift Card Scam**

**Step One:  Victims Buy iTunes Gift Cards and Provide Numbers to Scammers**

56.     As Apple acknowledges, the first step in the formulaic iTunes gift card scam is to obtain a gift card number from the victim:

> A string of scams are taking place asking people to make payments over the phone for things such as taxes, hospital bills, bail money, debt collection, and utility bills.
>
> *                *                *
>
> Regardless of the reason for payment, the scam follows a certain ***formula***: The victim receives a call instilling panic and urgency to make a payment by purchasing App Store & iTunes Gift Cards or Apple Store Gift Cards from the nearest retailer (convenience store, electronics retailer, etc.).  After the cards have been purchased, the victim is asked to pay by sharing the code(s) on the back of the card with the caller over the phone.

*See* Apple, About Gift Card Scams, https://support.apple.com/itunes-gift-card-scams.  [Emphasis added.][28]

57.     Most recently, scammers are preying on the high levels of emotion generated by the Coronavirus and COVID-19 pandemic.  Consumers are home more often, and senior citizens may be more isolated than before.  Scammers prey on fears and sympathies by promising testing kits, vaccines, and cleaning services, and soliciting donations for charities or organizations impacted by the pandemic.[29]  Many such scammers are seeking payment in iTunes gift cards.

---

[27]     *See* Emma Fletcher, *Scammers Increasingly Demand Payment by Gift Card*, FEDERAL TRADE COMMISSION (Oct. 16, 2018) (https://www.ftc.gov/news-events/blogs/data-spotlight/2018/10/scammers-increasingly-demand-payment-gift-card).

[28]     *See also Paying Scammers with Gift Cards*, FEDERAL TRADE COMMISSION (Oct. 2018) (https://www.consumer.ftc.gov/articles/paying-scammers-gift-cards); Jim Pavia, *Scam Victims Pay "Back Taxes" with iTunes Gift Cards*, CNBC (Mar. 5, 2018) (https://www.cnbc.com/2018/03/05/would-you-pay-those-back-taxes-with-itunes-gift-cards.html).

[29]     *See e.g.*, Karen Hobbs, *Socially Distancing from COVID-19 Robocall Scams*, FEDERAL TRADE COMMISSION (Mar. 27, 2020) (https://www.consumer.ftc.gov/blog/2020/03/socially-distancing-covid-19-robocall-scams); *Police Warn of Scams During COVID-19 Pandemic*, JAMES CITY COUNTY, VIRGINIA (Mar. 26, 2020) (https://jamescitycountyva.gov/CivicAlerts.aspx?AID=3774&ARC=5633).

58.     If scammers successfully convince victims to purchase iTunes gift cards a first time, they will often demand that victims purchase more iTunes gift cards from retail stores.

59.     Once scammers obtain gift card numbers, they can monetize the stored value into U.S. dollars or other currency in one of two ways.  First, scammers may control an app on which they make in-app purchases.  In this situation, scammers keep 100% of the gift card's value, less Apple's 30% commission.  Alternatively, scammers can resell the gift card number.  In either instance, Apple can track the gift card number's history and subsequent use.  Due to the discounts associated with resale markets and the counterparty risks, this is the less profitable way of monetizing a scammed gift card.  In any event, Apple keeps 30% of the stored value even if the scammer resells the gift card.

**Step Two: Loading the iTunes Gift Card Numbers onto Apple IDs**

60.     If scammers choose to monetize the stored value by making in-app purchases on apps they control, they will upload the iTunes gift card number onto Apple IDs they control.  Alternatively, scammers can resell iTunes gift card numbers to third parties who will eventually upload the iTunes gift card numbers onto their Apple IDs.  In either case, Apple knows the Apple IDs onto which the gift card numbers have been uploaded.

**Step Three: Spending the Stored Value on Apps or iTunes Products**

61.     The third step in transforming the iTunes gift cards' stored value into currency involves spending stored value on Apps or iTunes products.

62.     The Apple ID where the gift card was uploaded will spend stored value by purchasing apps, making in-app purchases, or buying iTunes products.

63.     By this point, Apple has three important data points: (1) the retail store where the gift cards were purchased; (2) the Apple IDs where the gift cards' stored value was uploaded; and (3) the Apps or iTunes products where the stored value was spent.

**Step Four: Apple's Payment to App Developers and Its 30% Commission**

64.     Approximately 45 days after the end of the fiscal month, Apple pays Apple Developers 70% of the total purchases for the period (including those from Apple IDs associated with scammed iTunes gift cards), and retains the remaining 30% as its commission.

65.     If scammers control the apps where the purchases were made, they receive 70%.  If a third party controls the App, Apple reserves the right to retain proceeds from fraudulent purchases.

**Apple Perpetuates and Profits from the iTunes Gift Card Scam**

66.     As noted above, Apple keeps 30% of scammed proceeds.

67.     Apple is fully aware of the iTunes gift card scam but does little to stop it.  Instead, Apple engages in conduct that effectively perpetuates it.

68.     In particular, Apple tells victims that once redemption codes are provided to scammers, "the funds on the card will likely be spent before you are able to contact Apple or law enforcement."[30]  This statement is highly misleading and suggests to victims that there is nothing Apple can do.  First, Apple does not inform consumers that it is keeping 30% of the scammed iTunes gift card proceeds.  Second, Apple does not inform victims that it keeps the stored value for 45 days before converting it into currency and paying third-party vendors – who often are the scammers themselves.

69.     If victims of the scam contact Apple, it responds uniformly and, on information and belief, using a standardized protocol or script.  Apple requests and records victims' Apple ID accounts and redemptions codes on the back of the iTunes gift cards and determines whether the iTunes gift cards have been redeemed.  If the iTunes gift cards have not been redeemed, Apple may cancel the iTunes gift cards and refund money to victims.  If the iTunes gift cards have been redeemed – which is most often the case – Apple informs victims there is nothing it can do.

70.     Although Apple remains largely silent about this epidemic – addressing it almost exclusively through the page on its website referenced above – it has described a common corporate protocol for dealing with victims who call Apple after realizing scammers swindled them by exploiting Apple's gift card system.

71.     When NBC News contacted Apple in 2016, the network reported:

> A spokesman said that if someone contacts Apple Support after sending off the gift card code – and the money has not been drained from the card – they can freeze the

---

[30]     *See About Gift Card Scams*, Apple (https://support.apple.com/itunes-gift-card-scams#:~:text=If%20you%20believe%20you're,%22gift%20cards%22%20when%20prompted) (last visited July 16, 2020).

account and have the money refunded to them.  If the money is already gone, Apple advises people to file a complaint with the FTC.[31]

Apple's spokesman thus confirmed that Apple does not restore funds to scam victims who contact Apple after their cards have been redeemed.  Apple's spokesman also confirmed that Apple deceptively suggests to scam victims that their money is "gone," even when it will retain a 30% commission, and, in many cases, has not yet paid the remaining 70% into the scammer's bank account.

72.     Apple's suggestions of futility and statements that there is nothing it can do are false.

73.     When Apple receives redemption codes from victims or law enforcement, it can identify:

- the Apple ID that uploads the gift card number and its stored value;
- apps or digital media purchased, or in-app purchases made, with funds from gift cards;
- the Apple Developer financial accounts associated with App Store purchases; and
- whether Apple has paid Apple Developers for those purchases.

74.     Because Apple can identify Apple ID accounts involved in scams, it can suspend the Apple ID accounts that redeemed fraudulently obtained iTunes gift cards.

75.     Moreover, because Apple does not transfer payment to Apple Developers for purchases of apps or in-app purchases until approximately 45 days after its fiscal month, Apple can stop payment to the Apple Developer's bank account, and can suspend or remove from the App Store any apps involved in a scam.  Indeed, it reserves the right to cancel payment to, or obtain reimbursement from, App Developers if there is a complaint.

76.     On information and belief, Apple – a highly sophisticated participant in the technology industry which monitors and tracks key information at each point in the process of the scam, from the time the iTunes gift card is sold through redemption and use – possesses other means and technology to determine which iTunes gift cards have been redeemed by scammers, the

---

[31]     Herb Weisbaum, *Fraud Alert: Scammers Get Victims to Pay with iTunes Gift Cards*, NBC NEWS (May 27, 2016) (https://www.nbcnews.com/tech/apple/fraud-alert-scammers-get-victims-pay-itunes-gift-cards-n581591).

1  identity of the Apple ID and Apple Developer accounts involved in gift card scams, and the identity

2  of victims of gift card scams.

3      77.    Despite such means and technology, Apple uniformly and consistently informs

4  victims that there is nothing that Apple can do if the iTunes gift card has been redeemed by

5  scammers.  Apple knows that representation is false.

6      78.    Further, Apple fails to inform consumers – online or by telephone – that, regardless

7  of whether the iTunes gift card was redeemed, if the victim contacts Apple after becoming the

8  victim of a scam and provides the redemption code to Apple, Apple can determine the identities

9  of the Apple ID and Apple Developer accounts involved in the scam, stop payment to the Apple

10  Developer account, and refund the value of the iTunes gift card to the victim.

11      79.    Apple has a duty to disclose and not conceal from Plaintiffs and Class members the

12  foregoing material facts.  Apple's duty to disclose arises out of: (1) its misrepresentation to

13  consumers that if the iTunes gift card has been redeemed there is nothing Apple can do as the

14  funds have been spent; and (2) its exclusive knowledge and active concealment of material facts

15  which allows Apple to identify all accounts involved in iTunes gift card scams, stop payment to

16  scammers, and return the value of iTunes gift cards to scam victims.

17      80.    Apple's omissions and false and misleading statements, as set forth above, are

18  intentional and done for the purpose of retaining its 30% commission on all purchases made with

19  fraudulently obtained iTunes gift cards.

20      81.    Apple intentionally aids and abets scammers, and ensures that the iTunes gift card

21  scams will continue, to the direct benefit of Apple.

22      82.    In addition to misleading consumers and refusing to refund their money – even

23  when consumers contact Apple and directly provide Apple with all the information needed to do

24  so – Apple makes payment to Apple Developers it knows are scammers, and thus encourages

25  additional scams by those same Apple Developers and future Apple Developers.

26      83.    Further, in 2012, Apple began making iTunes gift cards sold by retailers available

27  for purchase in amounts up to $500.  Making iTunes gift cards available in such large

28  denominations dramatically increased the amount scammers could obtain from unwitting

consumers.  On information and belief, Apple knows that a disproportionate number of $500 iTunes gift cards were being redeemed by scammers, and yet it either continues to sell them or has quietly discontinued their use.

84.     Apple also fails to warn consumers about iTunes gift card scams at the point of retail purchase.  Apple knows that iTunes gift card scams are designed to instill "panic and urgency" in victims, thus preventing them from doing the research and investigation that would lead them to Apple's "About Gift Card Scams" website page.  Despite this knowledge, Apple generally provides no warning to consumers on the outer retail packaging of its gift cards.

85.     Apple could, and should, state prominently on its outer packaging that consumers should beware of telephone and internet scams involving gift cards and should not purchase the card in their hands if they have been asked to do so by persons unknown to them who claim that payment by iTunes gift card is urgently needed.

86.     Instead, Apple aids and abets scammers, and perpetuates the scams, by issuing only a weak warning *after* its iTunes gift card has been purchased.  Apple says nothing on its outer packaging or even the iTunes gift cards themselves regarding scams or urgent demands for payment by unknown persons.  Instead, Apple instructs, on the back of the card only, "Do not share your code with anyone you do not know."  This anemic instruction not only fails to alert consumers of the widespread phenomenon known to Apple, but is visible to consumers only after they have *already* purchased an iTunes gift card and committed those funds to Apple in a transaction which, by its terms, permits no refunds.

87.     As a direct and proximate result of Apple's conduct, misrepresentations, and omissions described herein, Plaintiffs and Class members suffered damages including the amount of money that each Plaintiff and class member spent on iTunes gift cards that were not refunded to them by Apple.

# FACTS PERTAINING TO PLAINTIFFS

*Plaintiff Barrett*

88.    In May 2017, Plaintiff Barrett was experiencing computer problems, and searched online for assistance.  Eventually, Barrett was contacted by someone who told him that they could fix his computer problems.

89.    After the individual obtained remote access to Barrett's computer, the individual told Barrett that he needed to purchase a $100 iTunes gift card and provide the codes on the back of the gift card to tech support, who would refund him the money he paid for the gift card.

90.    Plaintiff Barrett purchased a $100 iTunes gift card and provided the codes on the back of the iTunes gift cards to the person who accessed his computer.

91.    The individual then told Barrett that he needed to purchase another iTunes gift card and provide the codes on the back before he received his refund, this time for the full amount of both cards.  At that point Barrett realized he had been scammed.

92.    Barrett did not contact Apple after being victimized by scammers, because he was informed that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for Barrett.

*Plaintiff Polston*

93.    In 2019, Plaintiff Polston received text messages from a person who was posing as a family member.  The individual told Polston that if he purchased gift cards and provided the codes to him, Polston would win money.

94.    Polston purchased gift cards, including $350 in iTunes gift cards, and provided the codes on the back to the individual who was posing as a family member.

95.    Soon thereafter, Plaintiff Polston realized he was the victim of a scam.

96.    Plaintiff Polston contacted his local police department to report that he was the victim of a scam involving gift cards.  Polston did not contact Apple after being victimized by scammers, because he was informed that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for Polston.

*Plaintiff Martin*

97.    In January 2020, Plaintiff Martin received a telephone call from a person who threatened to disable Martin's computer unless she purchased $125 in iTunes gift cards and provided the code on the back of the cards.

98.    Martin purchased three iTunes gift cards and provided the codes on the back to the caller.

99.    Later the same day, Martin realized she was the victim of a scam and contacted Apple.  She told an Apple representative what happened and provided the codes on the back of the three cards.  Martin asked Apple to refund the money she spent on the iTunes gift cards.

100.    The Apple representative informed Martin that the iTunes gift cards had already been redeemed and refused to refund Martin anything.  The Apple representative told Martin that Apple does not receive the money she spent to purchase the iTunes gift cards.

*Plaintiff Watson*

101.    In November 2019, Plaintiff Watson was contacted by an unknown individual over social media.  After a couple of months of communicating, the individual began asking Watson for financial assistance.  The individual asked Watson to purchase gift cards, including iTunes gift cards, and provide the codes on the back.

102.    Watson purchased approximately $250 of iTunes gift cards and provided the codes on the back to the individual.

103.    Watson realized he was the victim of a scam when he noticed social media profiles using the same profile pictures as the individual, but with different names.  Watson did not contact Apple after being victimized by scammers, because he was informed that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for Watson.

*Plaintiff Marinbach*

104.    In 2018, Plaintiff Marinbach began communicating with an individual on social media.  After a couple of months, the individual began asking Marinbach for financial assistance. The individual asked Marinbach to purchase iTunes gift cards and provide the codes on the back.

105.    Marinbach purchased approximately $600 in iTunes gift cards and provided the codes on the back to the individual.

106.    Marinbach realized that he was the victim of a scam after the individual did not show up to an in-person meeting.

107.    Marinbach contacted Apple approximately a week after he purchased the iTunes gift cards, and provided the codes on the back to an Apple representative.  The representative told Marinbach that the iTunes gift cards had been redeemed and refused to provide Marinbach a refund for the iTunes gift cards.  The representative told Marinbach that it is Apple's policy not to refund iTunes gift cards, and refund requests must be directed to the merchant that sold him his iTunes gift cards.

*Plaintiffs Michael and Maria Rodriguez*

108.    In December 2017, Plaintiff Michael Rodriguez believed that the computer that he shared with his mother, Plaintiff Maria Rodriguez, was infected with a computer virus.  The computer was locked and the monitor displayed the telephone number for a computer company they needed to call to resolve their computer problems.  The company's computer technician convinced Maria and Michael Rodriguez to provide him with remote access to their computer.

109.    After the technician gained remote access to the computer, he told Michael and Maria Rodriguez that he would not fix their computer until they purchased iTunes gift cards and provided him with the codes on the back.

110.    Michael and Maria Rodriguez purchased approximately $1,000 in iTunes gift cards and provided the codes on the back to the individual.

111.    Michael and Maria Rodriguez realized they were victims of a scam when the company stopped answering their phone calls.

112.    Michael and Maria Rodriguez contacted the district attorney and local police to report that they were victims of a scam.  Michael and Maria Rodriguez did not contact Apple after being victimized by scammers, because they were informed that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for them.

**TOLLING OF STATUTES OF LIMITATIONS**

113.    Any applicable statute(s) of limitations were tolled by Apple's knowing, active concealment, and denial of the facts alleged herein.  Apple's conduct is inherently self-concealing because Apple does not disclose the details of its iTunes gift card tracking capabilities, Apple ID tracking capabilities and App and iTunes Store merchant policies.  As a result, Plaintiffs and members of the Class could not have reasonably discovered the true nature of Apple's conduct until shortly before this class action litigation was commenced.

114.    In addition, even after Plaintiffs and Class members contacted Apple concerning gift card scams, Apple routinely told them that, if their gift cards were redeemed, there was nothing Apple can do, or that Apple does not retain any money from the gift card.  Apple's representations of futility and statements that it does not profit from the scam are false.

115.    Apple was and remains under a continuing duty to disclose to Plaintiffs and Class members the true nature of its involvement in gift card scams, including that it can identify all accounts involved in the scam, stop payment to scammers, and return the value of iTunes gift cards to victims.  As a result of Apple's active concealment, any and all statutes of limitations otherwise applicable to the allegations herein were tolled.

**CLASS ALLEGATIONS**

116.    Plaintiffs bring this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

**Nationwide Class**

All persons in the United States who, during the Class Period, purchased one or more iTunes gift cards, provided the redemption codes to people unknown to them who sought the codes under false pretenses, and were not refunded the value of the iTunes gift cards by Apple.

117.    The Class Period is initially defined as the period between January 1, 2015 and the present.[32]

118.    Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs also seek to represent subclasses, defined as follows:

---

[32]    Plaintiffs reserve the right to expand or amend the Class Period based on discovery produced in this matter.

CLASS ACTION COMPLAINT

**Contact Subclass**

All persons in the United States who, during the Class Period, purchased one or more iTunes gift cards, provided the redemption codes to people unknown to them who sought the codes under false pretenses, contacted Apple regarding the scam, and were not refunded the value of the iTunes gift cards by Apple.

**Elder Subclass**

All persons in the United States 65 years of age or older who, during the Class Period, purchased one or more iTunes gift cards, provided the redemption codes to people unknown to them who sought the codes under false pretenses, and were not refunded the value of the iTunes gift cards by Apple.

119.    The Nationwide Class, Contact Subclass, and Elder Subclass shall be collectively referred to herein as the "Class."  Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; (c) Plaintiffs' counsel and Defendant's counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.  Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

120.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Apple and/or third parties and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Class consists of hundreds of thousands of people.  The number of Class members can be determined based on Apple's and other third party's records.

121.    **Commonality**: Common questions of law and fact exist as to all members of each Class.  These questions predominate over questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

    a.    whether Apple misrepresents that there is nothing that Apple can do after iTunes gift cards are redeemed;

    b.    whether Apple conceals material facts regarding its ability to stop payments to scammers and return money to scam victims;

    c.    whether Apple profited from gift card scams involving iTunes gift cards;

d.      whether Apple's conduct violates the state consumer protection statutes asserted herein;

e.      whether Apple has been wrongfully enriched as a result of its conduct;

f.      whether money Apple obtained from gift card scams rightfully belongs to Plaintiffs and Class members;

g.      whether Apple should be required to return money it received as a result of gift card scams to Plaintiffs and Class members;

h.      whether Apple breached the implied covenant of good faith and fair dealing;

i.      whether Apple aids and abets scammers in perpetrating gift card scams;

j.      whether Apple's conduct constitutes financial elder abuse; and

k.      whether Plaintiffs and Class members accepted the iTunes gift card terms and conditions by purchasing, but not redeeming, an iTunes gift card.

122.   **Typicality**: Plaintiffs have the same interest in this matter as all Class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class members.  Plaintiffs' and Class members' claims all arise out Apple's uniform misrepresentations, omissions, and unlawful, unfair, and deceptive acts and practices related to iTunes gift cards.

123.   **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously.  Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation.  Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

124.   **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Apple's conduct.  It would be virtually impossible for individual Class members to effectively redress the wrongs done to them.  Even if Class members could afford individualized litigation, the court system could not.  Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case.  Individualized rulings and judgments

could result in inconsistent relief for similarly-situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

125.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

126.    California's substantive laws apply to every member of the Class, regardless of where in the United States the Class members reside.  Apple's terms and conditions state:

> **Governing Law**.  Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions.  You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.[33]

127.    By choosing California law for the resolution of disputes in the agreement, Apple concedes that it is appropriate for this Court to apply California law to the instant dispute.

128.    Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

129.    Apple's headquarters and principal place of business is located in California.  Apple also owns property and conducts substantial business in California, and therefore California has an interest in regulating Apple's conduct under its laws.  Apple's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

---

[33]    *See Legal – iTunes Gift Cards and Codes*, APPLE (Mar. 20, 2018) (https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html).

130.    California is also the state from which Apple's alleged misconduct emanated. On information and belief, the decision-making regarding the design and marketing of Apple products, including the iTunes gift cards, app store and iTunes occurred in and emanated from California, and Apple received commissions from purchases with fraudulently obtained iTunes gift cards in California. As such, the conduct complained of herein emanated from California. This conduct similarly injured and affected Plaintiffs and all other Class members.

131.    The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## FIRST CAUSE OF ACTION

**Violation of the California Consumers Legal Remedies Act**
**Cal. Civil Code §1750, *et seq.***
**(On behalf of the Nationwide Class and Subclasses)**
**(For Injunctive and Equitable Relief)**

132.    Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 131, as though fully set forth herein.

133.    At all relevant times there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*

134.    Plaintiffs and Class members are "consumers" as that term is defined by California Civil Code section 1761(d).

135.    Apple is a "person" as that term is defined by California Civil Code section 1761(c).

136.    Apple engaged in deceptive or unfair acts in violation of the CLRA by the practices described above, by knowingly and intentionally concealing from Plaintiffs and Class members that Apple can identify the Apple ID and Apple Developer accounts belonging to scammers, stop payment to those accounts, and return the value of the iTunes gift card when provided with the redemption code on the back of an iTunes gift card, by knowingly and intentionally paying illegally obtained money to scammers, and by knowingly and intentionally retaining money that was the result of unlawful conduct.

137.    In the course of their business, Defendants repeatedly and regularly engaged in unfair and/or deceptive acts or practices that were capable of deceiving (and did deceive) a substantial portion of the public, and imposed a serious harm on consumers, including Plaintiffs and Class members.

138.    Apple's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive unscrupulous, and substantially injurious to consumers, including Plaintiffs and members of the Class.  The injuries suffered by Plaintiffs and Class members greatly outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and Class members should have reasonably avoided.

139.    The acts and practices complained of herein violate, at a minimum, the following sections of the CLRA:

(a)(3)  Misrepresenting the affiliation, connection, or association with, or certification by, another;

(a)(5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

(a)(19) Inserting an unconscionable provision in the contract.

140.    Defendants knowingly and intentionally made false representations and omissions of material fact because Apple knows that it has the capability of determining the Apple ID account that redeemed the iTunes gift card, the accounts that created the products that were distributed on iTunes or the App Store that were purchased with the funds from the iTunes gift card involved in a scam, and that Apple can stop payment to the Apple Developer accounts and return the Plaintiffs' and Class members' money.  Instead, Apple makes payment to Apple Developers who are known to Apple to be profiting from scams, and thus encourages additional scams by those same Apple Developers and future Apple Developers.  As such, Apple misrepresented its affiliation, connection, or association with the scammers.

141.    Defendants knowingly and intentionally made false representations and omissions of material fact because Apple fails to inform consumers and falsely represents that, if the victim of a gift card scam provides the redemption code on the back of an iTunes gift card, Apple can identify the Apple ID accounts involved in a gift card scam, stop payment to Apple Developer

accounts for purchases made with funds from fraudulently obtained iTunes gift cards, and can return the money to Plaintiffs and Class members.  Instead, by informing consumers that there is nothing that Apple can do if a scammer has redeemed the iTunes gift card, Apple misrepresents the characteristics and uses of iTunes gift cards.

142.    Apple was under a duty to disclose to Plaintiffs and Class members that it can identify the iTunes gift card, Apple ID, and Apple Developer accounts involved in a gift card scam, and can stop payment to scammers and return the money that victims of gift card scams paid because:

a.    Apple misrepresents that there is nothing that it can do if the iTunes gift card has been redeemed;

b.    Apple has exclusive knowledge of the methods of identifying scammers, stopping payment to scammers, and returning the value of the iTunes gift card to victims; and

c.    Apple actively conceals the material facts that it can identify the scammers, stop payment to scammers, and return the value of the iTunes gift card to the victim.

143.    Apple knowingly and intentionally concealed those material facts and breached its duty not to do so.

144.    Apple fails to disclose on the packaging of the gift cards that consumers should beware of telephone and internet scams involving gift cards and should not purchase the card if they have been asked to do so by persons unknown to them who claim that payment by iTunes gift card is urgently needed.

145.    The facts concealed or not disclosed by Apple to Plaintiffs and Class members are material in that a reasonable consumer would have acted differently by, *inter alia*, contacting Apple and providing the redemption code on the back of the iTunes gift card involved in the gift card scam, demanding that Apple return the value of the Gift Card and/or the 30% commission that Apple retains to the victim of the gift card scam, and pursuing legal action against Apple regarding its involvement and profiting from gift card scams.

146.    Apple inserted an unconscionable provision in the Gift Card terms and conditions by attempting to disclaim liability for lost or stolen Gift Cards.  The disclaimer of liability is unconscionable because Apple aids, abets, and profits from the gift card scams, has the ability to identify and/or knows the identity of gift card scammers, and knowingly transfers money obtain through gift card scams to the scammers' Apple Developer accounts.  Apple's attempt to disclaim liability for its knowing participation in and profiting from gift card scams is unconscionable.

147.    Under California Civil Code section 1780(a), Plaintiffs and Class members seek injunctive and equitable relief for Apple's violations of the CLRA.  After mailing appropriate notice and demand under California Civil Code section 1782(a) & (d), Plaintiffs subsequently will amend this Complaint to also include a request for damages.

148.    Plaintiffs and the Class therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Apple's deceptive and/or unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in California Civil Code section 1780 and the Prayer for Relief.

## SECOND CAUSE OF ACTION

**Violation of the California Unfair Competition Law
Cal. Bus. & Prof. Code §17200
(On Behalf of the Nationwide Class and Subclasses)**

149.    Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 148, as though fully set forth herein.

150.    At all relevant times there was in full force and effect the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code §17200.

151.    Apple also engaged in business acts and practices deemed "unfair" under the UCL, because the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that it can identify and stop payment to scammers and return the value of the iTunes gift card when provided with the redemption code on the back of an iTunes gift card, by knowingly and intentionally paying illegally obtained money

1    to third parties, and by knowingly and intentionally retaining money that was the result of scams

2    perpetrated on Plaintiffs and Class members.   Unfair acts under the UCL have been interpreted

3    using three different tests: (1) whether the public policy which is a predicate to a consumer unfair

4    competition action under the unfair prong of the UCL is tethered to specific constitutional,

5    statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by

6    the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether

7    the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or

8    competition, and is an injury that consumers themselves could not reasonably have avoided.

9    Defendant's conduct is unfair under each of these tests.   Apple's conduct alleged is unfair under

10   all of these tests.

11       152.    Apple was under a duty to disclose to Plaintiffs and Class members that it can

12   identify the iTunes gift card, Apple ID, and Apple Developer accounts involved in a gift card scam,

13   and stop payment to scammers and return the money that victims of gift card scams paid because:

14       a.    Apple mispresents that there is nothing that it can do if the iTunes gift card has been

15             redeemed;

16       b.    Apple has exclusive knowledge of the methods of identifying scammers, stopping

17             payment to scammers, and returning the value of the iTunes gift card to victims;

18             and

19       c.    Apple actively conceals the material facts that it can identify the scammers, stop

20             payment to scammers, and return the value of the iTunes gift card to the victim.

21       153.    The facts concealed or not disclosed by Apple to Plaintiffs and Class members are

22   material in that a reasonable consumer would have acted differently by, *inter alia*, contacting

23   Apple and providing the redemption code on the back of the iTunes gift card involved in the gift

24   card scam, demanding that Apple return the value of the Gift Card and/or the 30% commission

25   that Apple retains to the victim of the gift card scam, and pursuing legal action against Apple

26   regarding its involvement and profiting from gift card scams.

27       154.    Apple engaged in business acts and practices deemed "unlawful" under the UCL,

28   because, because they violate state and federal statutes and regulations, including but not limited

to, California Civil Code sections 1668, 1709, 1710, 1750, California Business & Professions Code section 17500, California Welfare & Institutions Code section 15600, and constitute aiding and abetting conversion.

155.    As a direct and proximate result of Apple's unlawful, unfair, and deceptive practices, Plaintiffs and Class members suffered damages.  Apple's participation in the gift card scams and concealment of its role and ability to track and stop payments to scammers, aids and abets scammers, and perpetuates the scams.

156.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Apple, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under California Business & Professions Code section 17200.

### THIRD CAUSE OF ACTION

**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §17500**
**(On behalf of the Nationwide Class and Subclasses)**

157.    Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 156, as though fully set forth herein.

158.    At all relevant times there was in full force and effect the California False Advertising Law ("FAL"), Cal Bus. & Prof. Code §17500, *et seq.*, which prohibits, *inter alia*, making or disseminating "any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable case should be known, to be untrue or misleading." *See* Cal. Bus. & Prof. Code §17500.

159.    Apple caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and members of the Class.

160.    Apple violated section 17500 because the misrepresentations and omissions as set forth in this Complaint were material and likely to deceive a reasonable consumer.

161.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Plaintiffs and Class members relied on the misrepresentations and/or omissions of Apple. Defendants' representations were untrue because Apple actually possesses the ability to identify the Apple ID and Apple Developer accounts involved in iTunes gift card scams, stop payment to the scammers, and return the money to the victims of the scam, including Plaintiffs and Class members. Had Plaintiffs and Class members known this, they would have contacted Apple before Apple paid the scammers. Accordingly, Plaintiffs and the Class members suffered injuries as a direct and proximate result of Apple's conduct.

162.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still being perpetuated and repeated, both in the state of California and nationwide.

163.    Plaintiffs, individually and on behalf of all the other Class members, request that this Court enter such orders or judgements as may be necessary to enjoin Apple from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class members any money Apple acquired, including restitution and/or disgorgement, and for such other relief set forth below.

## FOURTH CAUSE OF ACTION

### Breach of Contract
### (On Behalf of Plaintiffs and the Class)

164.    Plaintiffs hereby re-alleges and incorporates all allegations raised in Paragraphs 1 through 163, as though fully set forth herein.

165.    Plaintiffs entered into a contract with Apple by purchasing iTunes gift cards that can be used to make purchases from iTunes, in the App Store, or inside of apps purchased or downloaded from the App Store (as noted, the latter are often called "in-app purchases"). iTunes gift cards are sold by Apple both directly to consumers, and indirectly to consumers through retailers.

166.     Specifically, the iTunes gift cards refer to and incorporate Apple's terms and conditions.  Specifically, the outer packaging, which is visible to consumers prior to purchase on iTunes gift card packaging, often provides:

**Terms and Conditions**
Valid only on purchases made in the U.S. from Apple Media Services.  Use requires an Apple ID and prior acceptance of license & usage terms.  Not redeemable for cash, for resale, for shipments outside the U.S. & no refunds or exchanges (except as required by law).  Data collection and use subject to Apple's Privacy Policy; see apple.com/privacy.  Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission.  Void where prohibited.  Terms apply; see apple.com/us/go/legal/gc. App Store and iTunes gift cards are issued and managed by Apple Value Services ("Issuer").  © 2017 Apple Inc.  All rights reserved.

167.     The web address on the back of the iTunes gift card packaging directs users to the full terms and conditions for iTunes gift cards (the "Online Terms and Conditions").  The Online Terms and Conditions, which apply to iTunes gift cards and their related codes (together, "Store Credit") provide, *inter alia*, that:

You agree to not use Store Credit in any manner that is misleading, deceptive, unfair, or otherwise harmful to Issuer, Apple or its customers.  We reserve the right, without notice to you, to void or deactivate [iTunes gift cards] (including a portion of your Account balance) without a refund, suspend or terminate customer accounts, suspend or terminate the ability to use the Services, cancel or limit orders and bill alternative forms of payment if we suspect Store Credit was obtained, used, or applied to an Apple ID fraudulently, unlawfully, or otherwise in violation of these terms and conditions.

*          *          *

**Risk of Loss:** Neither Issuer nor Apple is responsible for lost or stolen Store Credit or Content Codes. . . .  Apple reserves the right to close accounts and request alternative forms of payment if Store Credit or a Content Code is fraudulently obtained or used on the Service.[34]

**Governing Law** Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions.  You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.

168.     When a consumer purchases an iTunes gift card at retail, he or she  becomes bound by the terms on the packaging, which incorporate the full Online Terms and Conditions.  However, no victim of an iTunes gift card scam is bound by Apple's attempt to limit its own liability for

---

[34]     *See Legal – iTunes Gift Cards and Codes*, APPLE (Mar. 20, 2018) (https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html).

iTunes gift cards which are lost, stolen, or used without permission.  Even if that limitation of liability applied by its terms – which it arguably does not – Apple cannot disclaim liability for loss or damage resulting from scams which it intentionally aids, abets, and perpetuates, as set forth below.  Any attempt by Apple to disclaim liability for loss or damage resulting from iTunes gift card scams would be unconscionable and unenforceable in light of its role in those scams and the profit that it makes and retains from such scams.

169.    By keeping 30% of the scammed proceeds, Apple breaches the terms and conditions with Plaintiffs and the Class.

170.    As described above, Apple is fully aware of the iTunes gift card scam, but does little to stop it and, instead, engages in conduct that has the effect of perpetuating it.

171.    In particular, Apple uses its website to tell victims that once the redemption codes are provided to scammers, "the funds on the card will likely be spent before you are able to contact Apple or law enforcement."[35]  This statement is false.  First, it does not inform consumers that Apple is keeping 30% of the scammed iTunes gift card proceeds.  Second, it does not inform the reader that Apple keeps the stored value for 45 days before converting it into U.S. dollars and paying it to third parties.

172.    Indeed, in breach of its terms and conditions, Apple does not refund the app purchases from the gift card scams and improperly retains the 30% of the app proceeds.

173.    Indeed, because Apple does not transfer payment to Apple Developers for purchases of apps or in-app purchases until approximately 45 days after the end of the monthly period when the purchases were made, Apple can stop payment to the Apple Developer's bank account, and can suspend or remove from the App Store any apps involved in a scam.  Indeed, it reserves the right to cancel payment to, or obtain reimbursement from, App Developers if there is a complaint.

174.    As a result of Apple's breach of its terms and conditions, Plaintiffs' and the Class have suffered damages.

---

[35]    *See About Gift Card Scams*, APPLE (https://support.apple.com/itunes-gift-card-scams) (last visited July 16, 2020).

**FIFTH CAUSE OF ACTION**

**Money Had and Received/Unjust Enrichment/Restitution**
**(In the Alternative)**
**(On behalf of the Nationwide Class and Subclasses)**

175.    Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 174, as though fully set forth herein.

176.    To the extent the agreements between Plaintiffs and the Class and Apple do not address the issue of Apple's receipt of commissions from, and payments to, third party App and iTunes product merchants for, scammed gift cards, Apple is still liable to the Class.

177.    Plaintiffs and members of the Class conferred a monetary benefit on Apple as a result of being victims of gift card scams by purchasing iTunes gift cards.

178.    Apple received and is in possession of money that was intended to be used for the benefit of, and rightfully belongs to, Plaintiffs and members of the Class.

179.    The money was not used for the benefit of Plaintiffs and the Class.  Instead, Apple has retained possession of money that was the result of assisting, aiding, abetting, and perpetuating unlawful conduct.

**SIXTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(In the Alternative)**
**(On Behalf of the Nationwide Class and Subclasses)**

180.    Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 179, as though fully set forth herein.

181.    The terms and conditions on the back of the iTunes gift cards and on Apple's website constitute a contract between Plaintiffs and Class members and Apple, which includes the term, implied by law in all contracts, to act with "good faith and fair dealing" in all duties relating to the performance of the contract.

182.    By purchasing the iTunes gift cards, as well as contacting Apple regarding a gift card scam and providing the redemption code to Apple, Plaintiffs and Class members performed all or substantially all of the actions required by the parties' contract.

183.   Apple engaged in conduct separate and apart from the performance of obligations under the contract without good faith and for the purpose of depriving Plaintiffs and Class members of their rights and benefits under the agreement, to wit, knowingly permitting scammers to redeem iTunes gift cards purchased by Plaintiffs and Class members through gift card scams, permitting scammers to make purchases with the credit from iTunes gift cards purchased by Plaintiffs and Class members, making false representations and omissions that Apple cannot do anything to intervene in a scam if the iTunes gift card has been redeemed, knowingly transmitting the proceeds of the gift card scam to scammers, and failing to return Plaintiffs' and Class members' money that was procured through fraud and unlawful conduct.

184.   Apple's attempt to limit its liability for participating in and perpetuating the gift card scams by including the unconscionable provision in the Gift Card terms and conditions that Apple is not liable for lost or stolen gift cards.  The limitation of liability is unconscionable due to Apple's knowing or reckless participation in and profiting from gift card scams, and active concealment and failure to disclose its involvement and its ability to track and stop payment to scammers.

185.   Apple's conduct constitutes bad faith and unfair dealing with victims of iTunes gift card scams, including Plaintiffs and Class members.

186.   As a direct and proximate result of Apple's conduct, Plaintiffs and Class members suffered damages.

### SEVENTH CAUSE OF ACTION

**Aiding and Abetting Intentional Torts**
**(On Behalf of the Nationwide Class and Subclasses)**

187.   Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 186, as though fully set forth herein.

188.   The gift card scams that were perpetrated on Plaintiffs and Class members by the scammers constitute intentional torts, including conversion, fraud, and false pretenses.

189.   Apple had knowledge of the tortious acts perpetrated on Plaintiffs and Class members by means of, including but not limited to, Plaintiffs and Class members contacting Apple to inform them that they were a victim of a gift card scam, providing Apple with the redemption

codes on iTunes gift cards that were involved in scams, and Apple's internal processes and technology that are able to identify iTunes gift cards, Apple IDs, and Apple Developers that are associated with gift card scams.

190.    Apple provided substantial assistance to the wrongful and unlawful conduct perpetrated upon victims of scams involving iTunes gift cards, including Plaintiffs and Class members, by failing to suspend or cancel iTunes gift cards that were involved in scams, failing to suspend or terminate Apple IDs accounts involved in gift card scams, permitting Apple ID accounts involved in gift cards scams to make purchases on iTunes, in the App Store, or in apps, transferring payment to Apple Developer accounts that were involved in scams, failing to suspend or terminate Apple Developer accounts that were involved in gift cards scams, and retaining for its own benefit commissions from purchases on iTunes or in the App Store that were made with iTunes gift cards from scams perpetrated on Plaintiffs and Class members.

191.    As a direct and proximate result of Apple's conduct, Plaintiffs and Class members suffered damages.

## **EIGHTH CAUSE OF ACTION**

**Violation of the California Elder Abuse Law
Cal. Welfare & Inst. Code §15600, *et seq.*
(Plaintiffs Polston, Martin, and Maria Rodriguez on Behalf of the Elder Subclass)**

192.    Plaintiffs Polston, Martin, and Maria Rodriguez hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 191, as though fully set forth herein.

193.    At all relevant times there was in full for force and effect the California Elder Abuse and Dependent Adult Civil Protection Act (the "California Elder Abuse Law"), Cal. Welfare & Inst. Code §15600, *et seq.*, which, *inter alia*, prohibits financial abuse of elderly adults.  *See* Cal. Welfare & Inst. Code §15657.5.

194.    Pursuant to the California Elder Abuse Law, financial abuse of an elderly adults occurs when a person:

1)      takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both;

    2)     assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both; [or]

    3)     takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence.

Cal. Welfare & Inst. Code §15610.30(a).

195.    Plaintiffs and Elder Subclass members are "elders" as that term is defined by California Welfare & Institutions Code section 15610.27.

196.    Apple's conduct constitutes financial abuse because it took, secreted, appropriated, obtained, and/or retained Plaintiffs' and Elder Subclass members' property, and/or assisted in the taking, secreting, appropriating, obtaining, or retaining of Plaintiffs' and Elder Subclass members' property, for wrongful use or with an intent to defraud Plaintiffs and Elder Subclass members, because Plaintiffs' and Elder Subclass members' money was wrongfully obtained with the intent to defraud Plaintiffs and Elder Subclass members through scams involving iTunes gift cards.

197.    Apple assisted scammers in taking, secreting, appropriating, obtaining, or retaining the money that Plaintiffs and Elder Subclass members paid for iTunes gift cards in gift card scams by failing to suspend or cancel iTunes gift cards that were involved in scams, failing to suspend or terminate Apple IDs accounts involved in gift card scams, permitting Apple ID accounts involved in gift cards scams to make purchases on iTunes or in the App Store, transferring payment to Apple Developer accounts that were involved in scams, failing to suspend or terminate Apple Developer accounts that were involved in gift cards scams, and retaining for its own benefit commissions from purchases on iTunes or in the App Store that were made with iTunes gift cards from scams perpetrated on Plaintiffs and Elder Subclass members.

198.    Apple wrongfully and/or intentionally committed financial abuse of Plaintiffs and Elder Subclass members by misrepresenting that there was nothing that it can do when Plaintiffs and Elder Subclass contacted Apple to report being a victim of a scam involving iTunes gift cards, and by failing to disclose that Apple can identify the iTunes gift cards, Apple ID accounts, Apple

Developer accounts, and knowingly making payments to Apple Developer accounts involved in gift card scams, and failing to return the money to Plaintiffs and Elder Subclass members.

199.    As a direct and proximate result of Apple's conduct, Plaintiffs and Elder Subclass members suffered damages.

## NINTH CAUSE OF ACTION

### Violation of the Elder Abuse Laws of Other States
**(Plaintiffs Polston, Martin, and Maria Rodriguez on Behalf of the Elder Subclass)**

200.    Plaintiffs Polston, Martin, and Maria Rodriguez hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 199, as though fully set forth herein.

201.    Plaintiffs bring Count Nine, individually and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violation of the elder abuse law of each State and the District of Columbia.  At all relevant times, there was in full force and effect the elder abuse law of each State and the District of Columbia, including:

a.    the Alabama Adult Protective Services Act, Ala. Stat. §38-9-1, *et seq.*;

b.    the Alaska Protection of Vulnerable Adults Act, Alaska Stat. §47.24.010, *et seq.*;

c.    the Arizona Adult Protective Services Act, Ariz. Rev. Stat. §46-451, *et seq.*;

d.    the Arkansas Adult Maltreatment Custody Act, Ark. Code §9-20-101, *et seq.*;

e.    the Colorado Protective Services for At-Risk Adults Act, Colo. Rev. Stat. §26-3.1-101, *et seq.*;

f.    the Connecticut Protective Services for the Elderly Act, Conn. Gen. Stat. §17b-450, *et seq.*;

g.    the D.C. Adult Protective Services Act, D.C. Code §7-1901, *et seq.*;

h.    the Delaware Adult Protective Services Act, 31 Del. Code §3901, *et seq.*;

i.    the Florida Adult Protective Services Act, Fla. Stat. §415.101, *et seq.*;

j.    the Georgia Protection of Disabled Adults and Elder Persons Act, Ga. Code §30-5-1, *et seq.*;

k.    the Hawaii Adult Protective Services Act, Haw. Rev. Stat. §346-221, *et seq.*;

l.    the Idaho Adult Abuse, Neglect and Exploitation Act, Idaho Code §39-5301, *et seq.*;

m.    the Illinois Adult Protective Services Act, 320 ILCS 20/1, *et seq.*;

n.    the Indiana Adult Protective Services Act, Ind. Code §12-10-3-1, *et seq.*;

o.    the Iowa Elder Abuse Act, Iowa Code §235F.1, *et seq.*;

p.    the Kansas Reporting Abuse, Neglect or Exploitation of Certain Persons Act, Kan. Stat. §39-1430, *et seq.*;

q.    the Kentucky Protection of Adults Act, Ky. Rev. Stat. §209.005, *et seq.*;

r.    the Louisiana Adult Protective Services Act, La. Rev. Stat. §15:1501, *et seq.*;

s.    the Maine Adult Protective Services Act, Me. Rev. Stat. Tit. 22, §3470, *et seq.*;

t.    the Maryland Adult Protective Services Act, Md. Code Fam. Law §14-101, *et seq.*;

u.    the Massachusetts elder abuse law, Mass. Gen Laws Ch. 19A, *et seq.*;

v.    the Michigan Social Welfare Act, Mich. Comp. Laws §400.11, *et seq.*;

w.    the Minnesota Financial Exploitation Protections for Older or Vulnerable Adults Act, Minn. Stat. §45A.01, *et seq.*;

x.    the Mississippi Vulnerable Persons Act., Miss. Stat. §43-47-1, *et seq.*;

y.    the Missouri Protective Services Act, Mo. Rev. Stat. §192.2400, *et seq.*;

z.    the Montana Elder and Persons with Disabilities Abuse Prevention Act, Mont. Code §52-3-801, *et seq.*;

aa.    the Nebraska Adult Protective Services Act, Neb. Rev. Stat. §28-348, *et seq.*;

bb.    the Nevada elder abuse law, Nev. Rev. Stat. §41.1395, *et seq.*;

cc.    the New Hampshire Protective Services to Adults Act, N.H. Rev. Stat. §161-F:42, *et seq.*;

dd.    the New Jersey Adult Protective Services Act, N.J. Rev. Stat. 52:27D-406, *et seq.*;

ee.    the New Mexico Adult Protective Services Act, N.M. Stat. §27-7-14, *et seq.*;

ff.    the New York Adult Protective Services Act, N.Y. Soc. Serv. §473, *et seq.*;

gg.    the North Carolina Protection for Abused, Neglected, or Exploited Disabled Adult Act, N.C. Gen. Stat. §108-99, *et seq.*;

hh.    the North Dakota Vulnerable Adult Protection Services Act, N.D. Cent. Code §50-25.2.01, *et seq.*;

ii.     the Ohio Protective Services for Adults Act, Ohio Rev. Code §5101.60, *et seq.*;

jj.     the Oklahoma Protective Services for Vulnerable Adults Act, Okla. Stat. 43A §10-101, *et seq.*;

kk.     the Pennsylvania Older Adults Protective Services Act, 35 P.S. §10225.101, *et seq.*;

ll.     the Rhode Island elder abuse law, R.I. Gen. Laws §42-66-4.1, *et seq.*;

mm.     the South Carolina Omnibus Adult Protection Act, S.C. Stat. §43-35-5, *et seq.*;

nn.     the South Dakota Abuse, Neglect, or Exploitation of Elders or Adults with Disabilities Act, S.D. Stat. §22-46-1, *et seq.*;

oo.     the Tennessee Adult Protection Act, Tenn. Code §71-6-101, *et seq.*;

pp.     the Texas Protective Services for Elderly Persons and Persons with Disabilities Act, Tex. Hum Res. §48.001, *et seq.*;

qq.     the Utah Abuse, Neglect, or Exploitation of a Vulnerable Adult Act, Utah Stat. §62A-3-301, *et seq.*;

rr.     the Vermont Reports of Abuse of Vulnerable Adults Act, 33 V.S.A. §6901, *et seq.*;

ss.     the Virginia Social Services Act, Va. Stat. §63.2-100, *et seq.*;

tt.     the Washington Abuse of Vulnerable Adults Act, Wash. Rev. Code 74.34.005, *et seq.*;

uu.     the West Virginia Social Services for Adults Act, W. Va. Code §9-6-1, *et seq.*;

vv.     the Wisconsin Elder Abuse Reporting Act, Wis. Stat. §46.90, *et seq.*;

ww.     Wyoming Adult Protective Services Act, Wyo. Stat. §35-20-101, *et seq.*

202.    Plaintiffs and Elder Subclass members are elders.

203.    Apple's conduct constitutes financial and/or elder abuse because it took, secreted, appropriated, obtained, and/or retained Plaintiffs' and Elder Subclass members' money or property, and/or assisted in the taking, secreting, appropriating, obtaining, or retaining of Plaintiffs' and Elder Subclass members' money or property, for wrongful use or with an intent to defraud Plaintiffs and Elder Subclass members, because Plaintiffs' and Elder Subclass members' money was wrongfully obtained with the intent to defraud Plaintiffs and Elder Subclass members through scams involving iTunes gift cards.

204.    Apple assisted scammers in taking, secreting, appropriating, obtaining, or retaining the money that Plaintiffs and Elder Subclass members paid for iTunes gift cards in gift card scams by failing to suspend or cancel iTunes gift cards that were involved in scams, failing to suspend or terminate Apple IDs accounts involved in gift card scams, permitting Apple ID accounts involved in gift cards scams to make purchases on iTunes or in the App Store, transferring payment to Apple Developer accounts that were involved in scams, failing to suspend or terminate Apple Developer accounts that were involved in gift cards scams, and retaining for its own benefit commissions from purchases on iTunes or in the App Store that were made with iTunes gift cards from scams perpetrated on Plaintiffs and Elder Subclass members.

205.    Apple wrongfully and/or intentionally committed elder or financial abuse of Plaintiffs and Elder Subclass members by misrepresenting that there was nothing that it can do when Plaintiffs and Elder Subclass contacted Apple to report being a victim of a scam involving iTunes gift cards, and by failing to disclose that Apple can identify the iTunes gift cards, Apple ID accounts, Apple Developer accounts, knowingly making payments to Apple Developer accounts involved in gift card scams, and failing to return the money to Plaintiffs and Elder Subclass members.

206.    As a direct and proximate result of Apple's conduct, Plaintiffs and Elder Subclass members suffered damages.

**TENTH CAUSE OF ACTION**

**Violation of the Oregon Elder Persons and Persons with Disability Abuse Prevention Act**
**Ore. Stat. §124.005,** *et seq.*
**(In the Alternative to Count Seven)**
**(Plaintiff Polston, Individually, and on Behalf of Oregon Residents of the Elder Subclass)**

207.    Plaintiff Polston hereby re-alleges and incorporates all allegations raised in Paragraphs 1 through 206, as though fully set forth herein.

208.    At all relevant times there was in full force and effect the Oregon Elderly Persons and Persons with Disabilities Abuse Prevention Act ("Oregon Elder Abuse Law"), Ore. Stat. 124.005, *et seq.*, which, *inter alia*, prohibits financial abuse of vulnerable persons.  *See* Ore. Stat. §124.110(1).

209.   Pursuant to the Oregon Elder Abuse Law, financial abuse of a vulnerable person occurs, *inter alia*, when a person:

a.   wrongfully takes or appropriates money or property of a vulnerable person; or

b.   permits a person to engage in financial abuse of a vulnerable person by knowingly acting or failing to act under circumstances in which a reasonable person should have known of the financial abuse.  *See* Ore. Stat. §124.110(1), (5).

210.   Plaintiff Polston and the Oregon Elder Subclass are "elderly persons," as the term is defined by Oregon Statute section 124.005(3), and are "vulnerable persons," as the term is defined by Oregon Statute section 124.100(1)(e).

211.   Apple's conduct constitutes financial abuse because it wrongfully took and/or appropriated Plaintiff Polston's and Oregon Elder Subclass members' money or property by wrongfully obtaining through scams involving iTunes gift cards Plaintiff Polston's and Oregon Elder Subclass members' money or property.

212.   Apple wrongfully and/or intentionally committed financial abuse of Plaintiff Polston and Oregon Elder Subclass members by misrepresenting that there was nothing that it can do when Plaintiff Polston and Oregon Elder Subclass contacted Apple to report being a victim of a scam involving iTunes gift cards, and by failing to disclose that Apple can identify the iTunes gift cards, Apple ID accounts, Apple Developer accounts, and knowingly making payments to Apple Developer accounts involved in gift card scams, and failing to return the money to Plaintiff Polston and Oregon Elder Subclass members.

213.   As a direct and proximate result of Apple's conduct, Plaintiff Polston and Oregon Elder Subclass members suffered damages.

214.   Pursuant to Oregon Statute section 124.100(2), Plaintiff Polston seeks treble damages and costs of this suit, including reasonable attorneys' fees.

**ELEVENTH CAUSE OF ACTION**

**Declaratory Judgment**
**28 U.S.C. §2201**
**(On Behalf of the Nationwide Class and Subclasses)**

215.     Plaintiffs hereby re-allege and incorporate all allegations raised in Paragraphs 1 through 214, as though fully set forth herein.

216.     Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

217.     Plaintiffs seek a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. §2201.

218.     An actual and justiciable controversy exists between the parties in light of Defendants' misrepresenting that there was nothing that they can do when Plaintiffs and the Elder Subclass contacted Apple to report being a victim of a scam involving iTunes gift cards, and by failing to disclose that Apple can identify the iTunes gift cards, Apple ID accounts, Apple Developer accounts, knowingly making payments to Apple Developer accounts involved in gift card scams, and failing to return the money to Plaintiffs and the Class.

219.     Plaintiffs and Class members lack an adequate remedy at law.

220.     Apple purports to bind Plaintiffs and Class members to the terms and conditions set forth on the back of iTunes gift cards and the Online Terms and Conditions on Apple's website. The back of the iTunes gift cards provide, in part: "Card will not be replaced if lost, stolen, or used without permission.  Use of card constitutes acceptance of terms; see apple.com/us/go/legal/gc." The Online Terms and Conditions provide, in part, that: "Neither Issuer nor Apple is responsible for lost or stolen [iTunes gift cards] or Content Codes.  Risk of loss and title for [iTunes gift cards] passes to the purchaser in Virginia upon electronic transmission to the recipient."

221.     Apple cannot, as a matter of law, disclaim or assign the liability of loss, conversion, or destruction of the balance of iTunes gift cards when Apple knows that the iTunes gift cards

1  were purchased as a result of wrongful and unlawful conduct, Apple has knowledge of the gift

2  card scams perpetrated on Plaintiffs and Class members, Apple aids and abets the gift card scams,

3  and Apple knowingly retains profits from gift card scams perpetrated on Plaintiffs and Class

4  members.

5        222.    Apple's attempt to disclaim liability is unconscionable and unenforceable as to

6  Plaintiffs and Class members, and Plaintiffs seek a declaration to that effect.

7                                **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated,

9  respectfully request that this Court:

10       A.      Determine that the claims alleged herein may be maintained as a class action under

11  Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the

12  Classes defined above;

13       B.      Appoint Plaintiffs as the representatives of the Class and their counsel as Class

14  counsel;

15       C.      Award all actual, general, special, incidental, statutory, punitive, and consequential

16  damages and restitution to which Plaintiffs and the Class members are entitled;

17       D.      Award pre-judgment and post-judgment interest on such monetary relief;

18       E.      Grant appropriate injunctive and/or declaratory relief, including, without limitation,

19  an order that requires Defendants to refrain from seeking to enforce the iTunes gift card terms and

20  conditions on victims of gift card scams who did not register or redeem the iTunes gift card, and

21  to refrain from transferring any money to Apple Developer accounts associated with gift card

22  scams;

23       F.      Award reasonable attorneys' fees and costs; and

24       G.      Grant such further relief that this Court deems appropriate.

25

26

27

28

1

## JURY DEMAND

2        Plaintiffs, on behalf of themselves and the putative Class demand a trial by jury on all

3  issues so triable.

4  Dated: July 17, 2020             **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

5                               *s/* Christopher M. Burke
                                 CHRISTOPHER M. BURKE (CA Bar No. 214799)

6                               ALEX M. OUTWATER (CA Bar No. 259062)
                               600 W. Broadway, Suite 3300

7                               San Diego, CA 92101
                               Telephone: 619-233-4565

8                               Facsimile:  619-233-0508
                               cburke@scott-scott.com

9                               aoutwater@scott-scott.com

10                               Joseph P. Guglielmo*
                               **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

11                               The Helmsley Building
                               230 Park Ave., 17th Floor

12                               New York, NY 10169
                               Telephone: 212-223-6444

13                               Facsimile:  212-223-6334
                               jguglielmo@scott-scott.com

14

15                               Anthony F. Fata*
                               Nyran Rose Rasche*

16                               Nickolas J. Hagman*
                               **CAFFERTY CLOBES MERIWETHER**

17                               **& SPRENGEL LLP**
                               150 S. Wacker, Suite 3000

18                               Chicago, IL 60606
                               Telephone: 312-782-4880

19                               Facsimile:  318-782-4485
                               afata@caffertyclobes.com

20                               nrasche@caffertyclobes.com
                               nhagman@caffertyclobes.com

21                               ***Attorneys for Plaintiffs and the Putative Class***

22                               *\*Admission pro hac vice anticipated*

23

24

25

26

27

28