**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
Madeline P. Skitzki (Cal. Bar No. 318233)
mskitzki@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Telephone:      (213) 239-5100
Facsimile:      (213) 239-5199

Attorneys for Defendants
Apple Inc. and Apple Value Services, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL BARRETT, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC. and APPLE VALUE SERVICES, LLC,<br><br>                    Defendants. | Case No. 5:20-cv-4812-EJD<br><br>The Honorable Edward J. Davila<br><br>**DEFENDANTS APPLE INC. AND APPLE VALUE SERVICES, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:      January 14, 2021<br><br>Hearing Time:      9:00 a.m.<br><br>Courtroom:      4 (San Jose) |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on January 14, 2021, at 9:00 a.m., or as soon thereafter as the Court is available, in Courtroom 4 of the federal courthouse located at 280 South 1st Street, San Jose, CA 95113, Defendants Apple Inc. and Apple Value Services, LLC (collectively "Apple") will, and hereby do, move to dismiss Plaintiffs' Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it fails to state a plausible claim on which relief can be granted.

Apple's Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Apple's concurrently-filed Request for Judicial Notice and exhibits thereto, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

DATED:  October 8, 2020                    JENNER & BLOCK LLP

By:   s/  Kate T. Spelman
_____
Attorney for Defendants
Apple Inc. and Apple Value Services, LLC

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

    I.     Apple's Sale of Gift Cards ...............................................................................3

    II.    Allegations of the Complaint ..........................................................................6

ARGUMENT ...................................................................................................................7

    I.     Plaintiffs Cannot State a Plausible Claim Against Apple, as Their Alleged Injuries Resulted from Third-Party Conduct for Which Apple Is Not Responsible ........................8

        A.    Plaintiffs Do Not Plausibly Allege That Apple Aided and Abetted Third-Party Fraud ....................................................................9

        B.    Plaintiffs' Failure-to-Warn Theory Is Fatally Defective, As Apple Provides Adequate Warnings and Owes No Such Duty to Consumers in Any Event ........12

        C.    Plaintiffs' Fraud-by-Omission Theory — Which Is Premised on Plaintiffs' Misinterpretation of Apple's Website — Is Also Implausible ..............................14

    II.    The Disclaimer on the Apple Gift Card Packaging Defeats Plaintiffs' Claims................16

    III.   Plaintiffs' Contract-Based Claims Are Implausible and Must Be Dismissed .................19

    IV.   Plaintiffs Have Not Stated a Plausible Elder Abuse Claim ................................20

        A.    Plaintiffs Have Not Stated a Plausible Elder Abuse Claim Under California Law .....................................................................20

        B.    Plaintiffs Cannot State an Elder Abuse Claim Under Any Other States' Laws ................................................................22

    V.    Plaintiffs Have Not Stated a Plausible Quasi-Contract Claim and Cannot Seek Restitution ................................................................22

    VI.   Plaintiffs' Declaratory Relief Claim Fails Because Their Substantive Claims Also Fail ......................................................................23

    VII.  Plaintiffs Cannot Seek Restitution Because They Have an Adequate Legal Remedy ......24

    VIII.  This Court Should Dismiss Plaintiffs' Complaint Without Leave to Amend .................25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamilla v. Hain Celestial Grp., Inc.*,
    30 F. Supp. 3d 943 (N.D. Cal. 2014) ................................................................. 12

*Anthony v. Yahoo Inc.*,
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) .............................................................. 19

*In re Apple & AT&TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................. 16, 20, 21

*Armendariz v. Found. Health Psychare Servs., Inc.*,
    24 Cal. 4th 83 (2000) .......................................................................................... 17

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .............................................................................. 22

*Avidity Partners, LLC v. State of California*,
    221 Cal. App. 4th 1180 (2013) ........................................................................... 20

*Bates v. Bankers Life & Cas. Co.*,
    362 Or. 337 (2018) .............................................................................................. 22

*Baxter v. Intelius, Inc.*,
    No. 09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) .............................. 18

*Bayer v. Rockwell*,
    No. 10-1613, 2010 WL 11684813 (S.D. Cal. Oct. 27, 2010) .............................. 21

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005) ........................................................................... 11

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    No. 13-2714, 2014 WL 121607845 (S.D. Cal. Sept. 19, 2014) ............................. 8

*Coldwell Banker Real Estate LLC v. New Alliance Props., Inc.*,
    No. 17-1505, 2017 WL 5635023 (C.D. Cal. June 15, 2017) ............................... 23

*Das v. Bank of Am., N.A.*,
    186 Cal. App. 4th 727 (2010) ............................................................................. 21

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ............................................................................. 13

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ....................................................................... 17, 18

*Delgado v. Trax Bar & Grill*,
   36 Cal. 4th 224 (2005) ...................................................................................................... 9

*Diaz v. Intuit, Inc.*,
   No. 15-1778, 2018 WL 2215790 (N.D. Cal. May 15, 2018)............................................ 10

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ............................................................................... 1, 8, 9, 12

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011)............................................................................ 15

*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*,
   No. 13-1007, 2013 WL 6158040 (N.D. Cal. Nov. 22, 2013) ........................................... 17

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996) .................................................................................. 9, 10, 11

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) ............................................................................................ 8

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .............................................................................................. 17

*Friedman v. U.S. Bank N.A.*,
   16-2265, 2016 WL 3226005 (C.D. Cal. June 6, 2016)..................................................... 22

*Gerard v. Ross*,
   204 Cal. App. 3d 968 (1988) ............................................................................................ 10

*In re Google Phone Litigation*,
   No. 10-1177, 2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ............................................. 18

*Gray v. Toyota Motor Sales, U.S.A.*,
   No. 08-1690, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ......................................... 14, 15

*Hamm v. Mercedes-Benz USA, LLC*,
   No. 16-3370, 2019 WL 4751911 (N.D. Cal. Sept. 30, 2019) ........................................... 15

*Hammond Enterprises Inc. v. ZPS America LLC*,
   No. 12-3600, 2013 WL 5814505 (N.D. Cal. Oct. 29, 2013) ............................................ 18

*Herron v. Best Buy Co.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013)....................................................................... 9, 14

*Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
   No. 15-1791, 2016 WL 9045621 (C.D. Cal. Jan. 28, 2016) ............................................ 23

*Howard v. Superior Court*,
   2 Cal. App. 4th 745 (1992) .............................................................................................. 10

*Hsieh v. FCA US LLC*,
   440 F. Supp. 3d 1157 (S.D. Cal. 2020) ...................................................................................... 7

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................................................... 15

*J.L. v. Children's Inst., Inc.*,
   177 Cal. App. 4th 388 (2009) .................................................................................................... 9

*In re Jamster Mktg. Litig.*,
   No. 05-819, 2009 WL 1456632 (S.D. Cal. May 22, 2009) .................................................. 8, 9

*Joude v. WordPress Found.*,
   No. 14-1656, 2014 WL 3107441 (N.D. Cal. July 3, 2014) .................................................... 19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................................... 7

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
   44 Cal. App. 4th 194 (1996) .................................................................................................... 23

*Lusson v. Apple, Inc.*,
   No. 16-705, 2016 WL 10932723 (N.D. Cal. June 20, 2016) ................................................. 23

*McCrary v. Elations Co.*,
   No. 13-242, 2013 WL 6403073 (C.D. Cal. July 12, 2013) ..................................................... 15

*McKean v. ABC Fin. Servs., Inc.*,
   No. 18-923, 2018 WL 5295020 (S.D. Cal. Oct. 25, 2018) ..................................................... 11

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .............................................................................................................. 16

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) .............................................................................................................. 19

*Oestreicher v. Alienware Corp.*,
   322 F. App'x 489 (9th Cir. 2009) ............................................................................................. 13

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................................................................................... 15

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................................................... 23

*Paslay v. State Farm Gen. Ins. Co.*,
   248 Cal. App. 4th 639 (2016) ................................................................................................... 21

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ............................................................................................... 8, 11

*Richards v. Stanley,*
    43 Cal. 2d 60 (1954) ........................................................................................................... 9

*Smith v. Ford Motor Co.,*
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ............................................................................ 13

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ...................................................................................... 3, 24

*Souza v. Westlands Water Dist.,*
    135 Cal. App. 4th 879 (2006) ....................................................................................... 20

*Stavrinides v. Vin Di Bona,*
    No. 18-314, 2018 WL 1311440 (C.D. Cal. Mar. 12, 2018) ........................................ 23

*Stebley v. Litton Loan Servicing, LLP,*
    202 Cal. App. 4th 522 (2011) ....................................................................................... 21

*Steckman v. Hart Brewing, Inc.,*
    143 F.3d 1293 (9th Cir. 1998) ...................................................................................... 24

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ........................................................................................ 8

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ...................................................................................... 13

*Worldwide Media, Inc. v. Twitter, Inc.,*
    No. 17-7335, 2018 WL 5099271 (N.D. Cal. Aug. 9, 2018) ........................................ 17

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 6

Cal. Bus. & Prof. Code § 17500 ............................................................................................. 7

Cal. Civ. Code § 1750 ............................................................................................................ 6

Cal. Welf. & Inst. Code § 15610.30(a) ................................................................................. 20

O.R.S. § 124.110 .................................................................................................................. 22

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................. 7, 8, 10, 13

**Other Authorities**

CACI No. 3610 ..................................................................................................................... 10

1

### INTRODUCTION

Plaintiffs' effort to hold Apple liable for the conduct of third-party scammers is meritless.  Nowhere in their complaint do Plaintiffs allege that Apple misled any consumers into transferring their Apple gift card funds to third-party fraudsters.  Nor do Plaintiffs allege that Apple concealed this fraud from consumers; indeed, they expressly acknowledge that Apple created a web page to warn consumers of this scam, that it advised consumers not to give their gift card information to strangers and that, if they did so, the funds on their gift cards would likely be spent before Apple could intervene.  But while Apple bears no fault for this scam — and has affirmatively warned consumers of this scam so they do not fall prey to it — Plaintiffs have nonetheless filed this lawsuit in a misguided effort to shift the blame to Apple.

Under California law, however, Plaintiffs cannot hold Apple liable for the third-party misconduct at issue here.  A defendant is generally liable only for its "personal participation" in the challenged conduct at issue, and it has no duty to act as a "global policeman" against the misconduct of third parties.  *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 966 (2002).  This is particularly true when a plaintiff seeks to hold the defendant liable for third-party *criminal* conduct — which, by its nature, can only be blamed on the criminals who perpetrated it.  To circumvent that principle, Plaintiffs accuse Apple of aiding and abetting the scam — allegedly so it can keep its share of the money spent by the scammers on the apps and other content Apple sells.  But Plaintiffs have not come close to alleging that Apple intentionally facilitated the scam or that it provided "substantial assistance" to the scammers.  And even if Plaintiffs had plausibly alleged that Apple did not do enough to *prevent* this scam (which they have not), that is woefully insufficient to hold Apple liable under an aiding-and-abetting theory.

Plaintiffs' fraud-by-omission theories fare no better.  For example, while Plaintiffs accuse Apple of failing to warn consumers of the scam at the point of purchase, that theory fails.  Leaving aside the fact that this is demonstrably false (as evidenced by multiple documents that are subject to judicial notice at the pleading stage), California law does not impose on Apple any purported duty to warn consumers about the risk of gift card theft.  Similarly, while Plaintiffs claim that Apple falsely represented that there is "nothing Apple can do" about gift card theft, and concealed the extent of its ability to unwind fraudulent transactions, that theory is similarly unavailing: Plaintiffs mischaracterize Apple's "About Gift Card Scams" web page; they erroneously assume that Apple's supposed failure to disclose information about the scam constitutes

"active concealment"; and they do not allege actual reliance on these representations or articulate any intelligible reason why the disclosure of this information would have made them less likely to purchase Apple gift cards.

Moreover, even assuming *arguendo* that Plaintiffs *could* hold Apple liable for the third-party theft of their gift cards, Apple has disclaimed any such liability by stating on the packaging of each gift card — as well as in its Terms & Conditions — that "[n]either the issuer nor Apple is responsible for any loss or damage resulting from lost or stolen gift cards or for use without permission."  Req. for Judicial Notice ("RJN") Ex. 1; *see also id.* Ex. 2, at 17 ("Neither Issuer nor Apple is responsible for lost or stolen Store Credit or Content Codes . . . .").  Although Plaintiffs claim that "Apple cannot disclaim liability for loss or damage resulting from scams which it intentionally aids, abets, and perpetuates" (Compl. ¶ 168), that is irrelevant: Apple has not intentionally aided and abetted any misconduct, and Plaintiffs do not — and cannot — dispute that Apple can disclaim liability for third-party conduct.  Courts routinely apply similar disclaimers to bar claims against manufacturers (and other defendants), and this Court should follow suit.

Leaving aside these fundamental defects in their complaint, Plaintiffs' tag-along claims for breach of contract, breach of the implied covenant of good faith and fair dealing, elder abuse, restitution, and declaratory relief fail as well.  Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing fail because they have not alleged that Apple breached any particular contractual provision and because the Terms & Conditions expressly permit the conduct Plaintiffs challenge.  Likewise, Plaintiffs' restitution claim — which seeks to recoup the money they spent on the Apple gift cards they allegedly transferred to third-party scammers — fails because Apple's obligation to refund the value of lost or stolen gift cards is circumscribed by the Terms & Conditions to which Plaintiffs agreed.  Plaintiffs' elder abuse claim also fails: the complaint does not plausibly allege that Apple "assisted" third-party scammers in committing financial elder abuse, and California law makes clear that a defendant is not liable for elder abuse simply because its lawful, age-neutral policies also apply to elderly consumers.  And because Plaintiffs' declaratory relief claim is duplicative of their substantive claims, it fails as well.

Finally, even if this Court declines to grant Apple's motion to dismiss in its entirety, it should narrow the scope of the remedies at issue.  As the Ninth Circuit has recently made clear, a plaintiff cannot seek restitution — or any equitable remedy — under California's consumer protection statutes absent a

showing that she lacks an adequate legal remedy.  *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Because Plaintiffs have an adequate damages remedy under the CLRA, California's elder abuse statute, and California common law, this Court should dismiss their claims for restitution and equitable relief.

<b><u>BACKGROUND</u></b>

**I.      Apple's Sale of Gift Cards.**

Apple sells a wide variety of hardware (such as laptops, iPad tablets, and iPhones), software (such as apps available through the App Store), and data (such as music available through iTunes) to consumers. Like many manufacturers, Apple also sells gift cards that consumers can use to purchase its products and services.  Those gift cards — which are available from a wide variety of retailers throughout the United States — are enclosed in packaging substantially similar to the packaging featured below:



RJN Ex. 1.  The back of the packaging includes a section titled "Terms and Conditions," which states — among other things — that "[n]either Apple nor Issuer [*i.e.*, Apple Value Services, LLC] is responsible for loss or damage resulting from lost or stolen gift cards or for use without permission":

1
2
3
4
5
6
7
8
9
10



11  *Id.*  The packaging also conceals a strip of foil on the back of the gift card, which hides a randomized and

12  unique code ("redemption code") used to activate and redeem the funds on the card after purchase:

13
14
15
16
17
18
19
20
21
22

23  *Id.*  The back of the card also states, in bold red font: "**Do not share your code with anyone you do not**

24  **know.**"  *Id.*

25          If a consumer were to purchase a gift card through Apple's website (as opposed to a retail

26  establishment), he or she would begin on the Apple Gift Card web page.  The bottom of the web page

27  states, in bold font:  "**Beware of gift card scams.  Do not share your code.**"  RJN Ex. 2, at 4.  If a

28  consumer clicks the link to purchase the card, he or she arrives at another web page that allows the

consumer to specify the amount of the gift card and the method of delivery (*i.e.*, email or mail).  *Id.*  This web page also includes the same bold-font warning:  "**Beware of gift card scams.  Do not share your code.**"  *Id.* at 5.  And when a consumer reaches the checkout web page, Apple requires him or her to affirmatively assent to the Terms & Conditions by clicking a box:

### Terms & Conditions

☐ Beware of common scams that include payment demanded in the form of gift cards. Should you receive a request for payment using gift cards, please report it at ftccomplaintassistant.gov. By checking this box, you acknowledge that your purchase of any Apple Gift Card will be solely for the use of Apple products and services. Terms apply.

*Id.* at 13.   Like the Terms & Conditions on the back of the physical packaging, the Terms & Conditions on the website state:  "Neither Issuer nor Apple is responsible for any loss or damage resulting from any lost or stolen Gift Cards or content codes, or use without permission." *Id.* at 17.

The Apple Gift Card web page also includes a hyperlink with the words "Learn more about Apple gift card scams." *See id.* at 2.  If a consumer were to click this link, he or she would arrive at a website titled "About Gift Card Scams." *See* RJN Ex. 3.  This web page warns consumers of scams involving Apple gift cards and warns them not to disclose the numbers on the back of the Apple gift cards to strangers:

> A string of scams are taking place asking people to make payments over the phone for things such as taxes, hospital bills, bail money, debt collection, and utility bills. The scams are committed using many methods, including gift cards. As the fraudsters are sometimes requesting codes from App Store & iTunes Gift Cards or Apple Store Gift Cards, we want to make sure our customers are aware of these scams.

> Regardless of the reason for payment, the scam follows a certain formula: The victim receives a call instilling panic and urgency to make a payment by purchasing App Store & iTunes Gift Cards or Apple Store Gift Cards from the nearest retailer (convenience store, electronics retailer, etc.). After the cards have been purchased, the victim is asked to pay by sharing the code(s) on the back of the card with the caller over the phone.

> It's important to know that App Store & iTunes Gift Cards can be used ONLY to purchase goods and services from the iTunes Store, App Store, Apple Books, for an Apple Music subscription, or for iCloud storage. Apple Store Gift Cards can be redeemed ONLY on the Apple Online Store and at Apple Retail Stores. If you're approached to use the cards for any other payment, you could very likely be the target of a scam and should immediately report it to your local police department as well as the Federal Trade Commission (FTC) at ftccomplaintassistant.gov.

> **Never provide the numbers on the back of a Gift Card to someone you do not know.  Once those numbers are provided to the scammers, the funds on the card will likely be spent before you are able to contact Apple or law enforcement.**

1  *Id.* (emphasis added).

2  **II.    Allegations of the Complaint.**

3         Plaintiffs — seven individuals between the ages of 50 and 71 — allege that they were the victims

4  of a scam involving Apple gift cards.  According to Plaintiffs, the scam involves the following steps:

5  - First, the scammer obtains a gift card number and redemption code from the victim by contacting

6    the victim over the phone, stating that the victim needs to make a payment for some purpose, and

7    asking the victim to make that payment by sharing the codes on his or her gift card.

8  - Second, the scammer either re-sells the gift card codes or loads the value of the gift card on to an

9    Apple ID that he or she controls.

10 - Third, the stored value of the gift card is spent on apps (which, in some instances, are controlled by

11   the scammer), in-app purchases, or iTunes products.

12 - Fourth, approximately 45 days after the close of the fiscal month, Apple pays the app developer

13   approximately 70% of the total value of any Apple gift cards spent on the developer's apps.

14 *See* Compl. ¶¶ 56-64.

15        Because Apple allegedly keeps 30% of funds spent through the iTunes store, Plaintiffs claim that

16 it has an economic incentive to perpetuate this scam and not to refund consumers who are victimized by

17 third-party scammers.  To that end, Plaintiffs allege that Apple misleads consumers by "suggest[ing] to

18 victims that there is nothing Apple can do," even though it allegedly has the technical capacity to determine

19 which gift cards have been stolen by scammers and the apps where those funds were spent, to stop payment

20 to developers' bank accounts, and to unwind the relevant transactions.  *See id.* ¶¶ 66-77.  By "remain[ing]

21 largely silent about this epidemic," Plaintiffs claim that Apple "effectively perpetuates" this scam and is

22 therefore liable for it.  *Id.* ¶¶ 67, 70.  Indeed, Plaintiffs go so far as to allege that Apple "intentionally aids

23 and abets scammers, and ensures that the iTunes gift card scams will continue, to the direct benefit of

24 Apple."  *Id.* ¶ 81.

25        Based on these allegations, Plaintiffs assert causes of action for: (1) violation of the Consumers

26 Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (Compl. ¶¶ 132-48); (2) violation of the Unfair

27 Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Compl. ¶¶ 149-56); (3) violation of the False

28 Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Compl. ¶¶ 157-63); (4) breach of contract (*id.*

¶¶ 164-74; (5) "Money Had and Received/Unjust Enrichment/Restitution" (*id.* ¶¶ 175-79); (6) breach of the implied covenant of good faith and fair dealing (*id.* ¶¶ 180-86); (7) aiding and abetting intentional torts (*id.* ¶¶ 187-91); (8) elder abuse (under both California and Oregon law) (*id.* ¶¶ 192-214); and (9) declaratory relief (*id.* ¶¶ 215-22).

Plaintiffs assert these claims on behalf of themselves, a nationwide class of consumers who "provided the redemption codes to people unknown to them who sought to the codes under false pretenses" and "were not refunded the value of the iTunes gift cards by Apple," a "contact subclass" (consisting of putative class members who contacted Apple and did not receive a refund), and an "elder subclass" (consisting of putative class members over the age of 65). *See id.* ¶¶ 116-18. Plaintiffs seek a variety of remedies on behalf of the class, including damages, attorney's fees, and declaratory and injunctive relief requiring Apple "to refrain from seeking to enforce the iTunes gift card terms and conditions on victims of gift card scams who did not register or redeem the iTunes gift cards" and "to refrain from transferring any money to Apple Developer accounts associated with gift card scams." Compl. at 45 (Prayer for Relief).

## ARGUMENT

To survive a motion to dismiss, "[t]he allegations in the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160 (S.D. Cal. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Facts indicating the "'mere *possibility* of misconduct" fall short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 679 (emphasis added). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, because Plaintiffs' lawsuit is premised on the allegation that Apple "effectively perpetuates" third-party fraud (Compl. ¶ 68), their claims are subject to the heightened pleading standard of Rule 9(b), which requires Plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to state-law claims that "allege a unified course of fraudulent conduct," whether or not fraud is a necessary element of those claims). "To satisfy Rule 9(b), a pleading must identify the who, what, where, when, and how of the misconduct charged, as well as what is false or misleading about the

[purportedly fraudulent] statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (internal quotations and citations omitted). Plaintiffs have not come close to meeting this pleading standard.

**I.     Plaintiffs Cannot State a Plausible Claim Against Apple, as Their Alleged Injuries Resulted from Third-Party Conduct For Which Apple Is Not Responsible.**

Plaintiffs' complaint is predicated on the allegation that they — and other consumers — were injured by a scam in which third-party fraudsters instructed them to purchase an Apple gift card and to disclose the codes on the back of the gift card with the fraudster over the phone. *See generally* Compl. ¶¶ 56-57. This supposed fraud did not take place while the Apple gift cards were in Apple's possession; instead, Plaintiffs provided their gift card information *after* they purchased the gift cards from Apple or from third-party retailers. But Plaintiffs nonetheless seek to hold Apple responsible for criminal conduct committed by third parties after the Apple gift cards had left Apple's possession — and after Plaintiffs voluntarily disclosed their gift card codes. That theory defies a fundamental principle of California law: a defendant is not liable for the misconduct of third parties (barring narrow exceptions not relevant here).

Indeed, courts have made clear that a defendant's liability for its business practices "must be based on [its] personal 'participation in the unlawful practices' and 'unbridled control' over the practices." *Emery*, 95 Cal. App. 4th at 960 (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984)); *see also, e.g.*, *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, No. 13-2714, 2014 WL 121607845, at *14 (S.D. Cal. Sept. 19, 2014) (noting that a claim under the UCL requires proof that the defendant "personally participated" in and had "complete control" over the challenged business practices). Nor can a defendant be held liable for "legally selling a non-defective product based on actions taken by entities further along the chain of distribution." *In re Firearm Cases*, 126 Cal. App. 4th 959, 985 (2005); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (emphasizing that the UCL does not impose "secondary liability" on defendants); *In re Jamster Mktg. Litig.*, No. 05-819, 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009) (dismissing CLRA claim and noting that the "[d]efendants cannot be held vicariously liable for the acts of third parties"). Simply put, California law does not require a defendant to act as a "global policeman" against the misconduct of third parties. *Emery*, 95 Cal. App. 4th at 960; *see also Herron v.*

*Best Buy Co.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) (relying on *Emery* to dismiss claims against laptop manufacturer premised on alleged misconduct by third-party retailer).

This principle applies with particular force where, as here, a plaintiff seeks to hold a defendant liable for the *criminal conduct* of third parties.  In *Richards v. Stanley*, for instance, the California Supreme Court held that a defendant who left her car unlocked with the keys in the ignition could not be liable for injuries caused by a thief who stole the car and hit the plaintiff.  43 Cal. 2d 60, 61, 69 (1954).  In reaching this conclusion, the court emphasized that when the defendant left the car, "it was in a position where it could harm no one, [and] no harm occurred until it had been taken by a thief." *Id.* at 65.  While the plaintiff claimed that her injuries resulted from the defendant's negligence, the court held that, "in the absence of a special relationship between the parties," the defendant had "no duty to control the conduct of a third person so as to prevent him from causing harm to another." *Id.*  And following *Richards*, courts have continued to reiterate that, "as a general matter, there is no duty to act to protect others from the conduct of third parties." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005); *see also J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 396 (2009) ("[C]ourts uniformly hold that the defendant has no duty to protect the plaintiff from unforeseeable third party criminal conduct.").

Plaintiffs attempt to justify their effort to hold Apple liable for the alleged misconduct of others based on three separate theories.  First, Plaintiffs allege that Apple "aided and abetted" the purported scam in which their gift cards were stolen. *See generally, e.g.*, Compl. ¶¶ 51, 81.  Second, Plaintiffs allege that Apple wrongfully failed to disclose the risk of gift card scams at the "point of retail purchase." *See id.* ¶¶ 84-86.  Third, Plaintiffs allege that Apple falsely represented that there is "nothing Apple can do if the iTunes gift card has been redeemed by scammers." *See id.* ¶ 77.  All three of these theories are implausible.

### A.   Plaintiffs Do Not Plausibly Allege That Apple Aided and Abetted Third-Party Fraud.

To shift the blame away from the perpetrators of the alleged scam to Apple itself, Plaintiffs allege that Apple "aids, abets, and perpetuates" this scam.  Compl. ¶ 51; *see also id.* ¶¶ 187-91 (aiding and abetting claim).  But even if Apple is allegedly *aware* of this scam, California law makes clear that a defendant's "mere knowledge" that a third party might commit a tort is not sufficient to establish that the defendant aided and abetted in the commission of that tort. *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996).

Under California law, a defendant is only liable for aiding and abetting if it (1) knows that a specific third party will commit a tort against the plaintiff, and (2) provides "substantial assistance or encouragement" to the tortfeasor, which (3) plays a "substantial factor" in causing the plaintiff's harm. *See* CACI No. 3610 (aiding and abetting jury instruction). In describing the contours of aiding-and-abetting liability, courts have made clear that the defendant must have "acted *with the intent* of facilitating the commission of that tort." *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) (emphasis added); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992) ("[A]iding and abetting . . . necessarily requires a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."). The narrow scope of aiding-and-abetting liability reflects the well-established principle that "one owes no duty to control the conduct of another." *Fiol*, 50 Cal. App. 4th at 1326 (citation omitted).

This Court's decision in *Diaz v. Intuit, Inc.* is highly instructive. There, the plaintiffs alleged that Intuit "knowingly allowed fraudsters to open fake accounts and file fraudulent federal and state tax returns through Intuit's TurboTax tax preparation software," and they claimed that this alleged conduct made Intuit liable for aiding and abetting fraud. No. 15-1778, 2018 WL 2215790, at *1 (N.D. Cal. May 15, 2018). The Court dismissed the plaintiffs' aiding-and-abetting claim. Although the plaintiffs alleged that "Intuit generally knew tax fraud was occurring on a massive scale every year through TurboTax" and that it "deliberately implemented policies that it knew directly enabled and encouraged the fraud," the Court concluded that these allegations were insufficient to establish aiding and abetting liability. *Id.* at *6-7.

The Court also concluded that the plaintiffs failed to plead "substantial assistance." *Id.* at *8-9. Although the plaintiffs alleged that Intuit knew that their personal information "was being used to create a TurboTax account associated with a 'High Risk Domain Name,'" that Intuit had "modified its fraud prevention technology" in a way that facilitated the fraud, and that Intuit "allow[ed] Turbo Tax fees to be paid from refund proceeds and . . . by non-traceable means," the Court concluded that these allegations were insufficient, as they did not establish that "Intuit made a conscious decision to participate in the fraud." *Id.* at *8-9.

Here, as in *Diaz*, Plaintiffs' complaint is bereft of any facts that substantiate their aiding-and-abetting claim — let alone with the specificity required by Rule 9(b). *See id.* at *6 n.5 ("[F]raud, including aiding and abetting fraud, must be pled with particularity."). Although Plaintiffs allege that Apple was

generally aware of scams involving Apple gift cards and the mechanics of these scams (as is evidenced by the numerous warnings that Apple provided to consumers), they do not allege that Apple was aware of the scammers' identities or activities — at least not until *after* their gift cards had been compromised.  *See id.* at \*7 (holding that the plaintiffs failed to plead actual knowledge because their allegations of suspicious activity did not establish that "Intuit made this link *at the time* Intuit transmitted the tax returns") (emphasis added); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1147-49 (2005) (affirming order sustaining demurrer and holding that the plaintiff's allegations that the defendant "knew something fishy was going on" were insufficient because "suspicion and surmise do not constitute actual knowledge") (emphasis and citation omitted).

Nor have Plaintiffs alleged any facts that substantiate their allegations that Apple "substantially assisted" the perpetrators of this scam — let alone that it did so intentionally or consciously.  For example, Plaintiffs allege that Apple aided and abetted the scam by "issuing only a weak warning only after its iTunes gift card has been purchased."  Compl. ¶ 86 (emphasis omitted).  But that is false, as Apple's website — through which many consumers purchase gift cards — expressly warns consumers of this scam. *See* RJN Ex. 3.  And even if this allegation *were* true (it is not), it only establishes — at most — that Apple did not effectively *stop* the scam; it does not establish that Apple *assisted* in it.  *See Diaz*, 2018 2215790 WL at \*8 (holding that the plaintiffs' "failure to act allegations . . . are insufficient to establish substantial assistance for purposes of aiding and abetting liability"); *Fiol*, 50 Cal. App. 4th at 1326 (holding that a defendant's "mere failure to act does not constitute . . . substantial assistance or encouragement" of a tort).

Plaintiffs' allegation that Apple processed gift card payments that were procured through fraud is similarly unavailing, as it falsely assumes that Apple is responsible for determining which payments are fraudulent and unwinding those transactions.  *See, e.g.*, *Perfect 10*, 494 F.3d at 809 (holding that "merely process[ing] credit card payments" did not constitute aiding and abetting); *McKean v. ABC Fin. Servs., Inc.*, No. 18-923, 2018 WL 5295020, at \*4 (S.D. Cal. Oct. 25, 2018) (holding that the defendant's role as a "passive payment processor" did not constitute aiding and abetting).  Taken to its logical extension, Plaintiffs' theory that a defendant aids and abets a fraud merely by processing payments to fraudsters would place Apple (and every other retailer) in the untenable position of having to adjudicate whether a scam occurred and whether any given report of a scam is accurate.  Indeed, if Apple had a duty to refund

consumers who claimed they were scammed, that would only increase Apple's exposure to a different species of fraud: a scammer could use an Apple gift card to pay a third party for services, falsely claim that he or she was defrauded, and then demand a refund.  Apple is simply not a law enforcement agency.  It has no duty to police the misconduct of third parties, and it does not aid and abet third-party misconduct by failing to do so.  *See Emery*, 95 Cal. App. 4th at 966.

> **B.   Plaintiffs' Failure-to-Warn Theory Is Fatally Defective, As Apple Provides Adequate Warnings and Owes No Such Duty to Consumers in Any Event.**

In addition to their baseless aiding-and-abetting allegations, Plaintiffs also allege that Apple is liable for the theft of their gift cards because Apple fails to warn them of the risk of gift card theft at the "point of retail purchase."  *See* Compl. ¶¶ 84-86.  This theory fails for two separate reasons:

<u>First</u>, it is demonstrably false, as established by the judicially-noticeable warnings associated with in-store and online Apple gift card purchases.  *See Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("Courts 'need not accept as true allegations contradicting documents that are referenced in the complaint.'") (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).

Indeed, Apple warns consumers — both at the point of sale and on the card itself — that the cards are susceptible to theft and that consumers should not share their codes.  The iTunes gift card packaging states that "[n]either the issuer nor Apple is responsible for any loss or damages resulting from lost or *stolen gift cards* or for *use without permission*" — thereby alerting potential purchasers that their cards could be stolen and that Apple is not responsible for such theft.  RJN Ex. 1 (emphasis added).  And when a consumer takes the gift card out of the packaging — as is necessary to scratch off the foil and provide the codes to a scammer — he or she is confronted with the following warning in bold, red font:  "<span style="color:red">**Do not share your card with anyone you do not know**</span>."  RJN Ex. 1 (emphasis and color in original).  Further, if a consumer purchases a gift card through Apple's website, he or she sees the following similar text in bold font:  **"Beware of gift card scams.  Do not share your code,"** and is required to affirmatively check a box assenting to the gift card Terms and Conditions — which appears next to a statement warning the

consumer of "common scams that include payment demanded in the form of gift cards."  RJN Ex. 2, at 4, 13 (emphasis in original).[1]  These warnings conclusively defeat Plaintiffs failure-to-warn theory.

Second, California law does not impose a duty on Apple to warn of the risk of theft or scams in the first place.  "California courts have generally rejected a broad obligation to disclose."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Rather, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)); *see also Wilson*, 668 F.3d at 1141 (noting that California has "adopted the standard as enumerated by the California Court of Appeal in *Daugherty*," under which a manufacturer is not under a duty to disclose absent safety concerns or an affirmative misrepresentation to consumers").  "The rule set forth in *Daugherty* is consistent with the general policy stated by the California Supreme Court that although '[a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market,' the consumer nevertheless 'can . . . be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will."  *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 988 (N.D. Cal. 2010) (quoting *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)).

Here, Plaintiffs have not alleged — and could not plausibly allege — that the Apple gift cards they purchased posed any safety risk whatsoever; indeed, Plaintiffs do not even claim they are defective.  Nor have they identified any affirmative misrepresentation by Apple about its gift cards.  Indeed, the only "misrepresentation" Plaintiffs identify is Apple's alleged representation that "there is nothing that Apple can do" about gift card theft (Compl. ¶ 77) — which does not even conceivably suggest that the gift cards are immune from scams or that Apple will refund their gift cards if they are stolen or compromised.  Absent any affirmative misrepresentation about the security of Apple's gift cards, Plaintiffs cannot plausibly allege that Apple's supposed failure to warn consumers about the risk of theft was deceptive.

---

[1] Despite their obligation to satisfy Rule 9(b), Plaintiffs provide no information about where or how they purchased the Apple gift cards that were the subject of the alleged scam.

### C.   Plaintiffs' Fraud-by-Omission Theory — Which Is Premised on Plaintiffs' Misinterpretation of Apple's Website — Is Also Implausible.

Finally, Plaintiffs assert that Apple misleads consumers by suggesting on its "About Gift Card Scams" web page that "there is nothing that Apple can do about gift card theft," even though it is allegedly capable of tracing the stolen funds to a specific account, locking the account, and recovering the funds. Compl. ¶¶ 77-78.  Plaintiffs claim that this supposed statement is misleading in light of Apple's "exclusive knowledge" of its ability to identify the participants in the scam, stop the transfer of the funds, and restore the funds to the victim and "active concealment" of these supposed facts from consumers.  *Id.* ¶ 79.  Plaintiffs are wrong.

As a threshold matter, Plaintiffs misinterpret Apple's "About Gift Card Scams" page, which is not even remotely deceptive.  It describes the scam, gives customers information about how to avoid falling prey to the scam, and advises consumers to contact Apple, their local law enforcement agency, and the FTC if they are approached by a scammer.  *See* RJN Ex. 3.  To avoid leaving consumers with the false impression that Apple can quickly stop a fraudulent transaction in its tracks or recover money that has already been spent, the web page also warns consumers that "the funds on the card will likely be spent before you are able to contact Apple or law enforcement."  *Id.*  Even if one accepted as true Plaintiffs' allegation that Apple has the technical capability to unwind fraudulent gift card transactions *after the fact*, that does not make it false or misleading for Apple to advise consumers that their funds will likely be spent before Apple or local law enforcement is able to intervene.  And because Apple has no legal duty to refund the money stolen by scammers or to police the fraudulent use of its gift cards, it cannot be misleading for Apple to advise its consumers that it has limited capacity to address gift card fraud.

Moreover, Plaintiffs' fraud-by-omission claim fails because they have not plausibly alleged that Apple "actively concealed" any facts from Plaintiffs.  Under California law, "[m]ere nondisclosure does not constitute active concealment"; instead, Plaintiffs "must allege specific affirmative acts on the part of the Defendants in hiding, concealing or covering up the matters complained of."  *Herron v. Best Buy Co.*, 924 F. Supp. 2d at 1176 (citations, internal quotation marks, and alterations omitted).  Indeed, "if mere nondisclosure constituted 'active concealment' . . . .any material omission would be actionable.  This is not the law."  *Gray v. Toyota Motor Sales, U.S.A.*, No. 08-1690, 2012 WL 313703, at *9 (C.D. Cal. Jan.

23, 2012).   Here, while Plaintiffs repeatedly accuse Apple of "concealing" the extent of its ability to investigate and remedy gift card scams, their complaint does not identify a single way in which Apple *actively* concealed material facts.  Instead, they allege that "Apple's conduct is inherently self-concealing because Apple does not disclose the details of its iTunes gift card tracking capabilities, Apple ID tracking capabilities and App and iTunes Store merchant policies."  Compl. ¶ 113.  But California law distinguishes between concealment and non-disclosure, and Plaintiffs' circular allegation that Apple's non-disclosure renders its alleged conduct "self-concealing" does not suffice to state a viable fraud-by-omission claim.

Finally, even assuming *arguendo* that any statements on the "About Gift Card Scams" page were misleading or that Apple wrongfully failed to disclose the extent of its capacity to address gift card scams, Plaintiffs cannot establish that they actually relied on these alleged omissions or partial representations — as is required to state a plausible claim.  *See, e.g.*, *Hamm v. Mercedes-Benz USA, LLC*, No. 16-3370, 2019 WL 4751911, at *6 (N.D. Cal. Sept. 30, 2019) ("[A] plaintiff must establish reliance to prevail on a fraud by omission claim . . . ."); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) ("A partial-representation claim requires Plaintiffs to plead reliance on at least some misleading partial representations.") (citing *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 924 (C.D. Cal. 2011)).  Plaintiffs' allegations fail to satisfy this requirement for at least three separate reasons:

First, Plaintiffs do not allege that they visited the "About Gift Card Scams" web page.  That is fatal to their claim: if Plaintiffs never visited the "About Gift Card Scams" web page, they cannot plausibly allege that they were misled by any supposed misrepresentations or omissions on that web page.  Under similar circumstances, courts have consistently found that a plaintiff's failure to allege that he visited the website at issue precludes him from challenging any alleged misrepresentations appearing on that website. *See, e.g.*, *McCrary v. Elations Co.*, No. 13-242, 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013) (holding that plaintiff failed to plead actual reliance when his complaint "does not allege that he looked at or relied on anything on Defendant's website before purchasing Elations"); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (holding that "Plaintiffs did not actually rely on any statements from Ferrero's website in making their decision to buy Nutella" where "Plaintiffs both allege that they only relied on representations from Nutella's label and television advertisements" and "have not personally visited the website").

Second, Plaintiffs' own allegations make clear that they did not purchase Apple gift cards in reliance on Apple's advertising or marketing materials. Instead, they allege that they purchased Apple gift cards because third parties masquerading as technical support personnel, family members, or individuals in need of financial assistance asked them to do so. *See* Compl. ¶¶ 88-112. Only two Plaintiffs — Plaintiffs Martin and Marinbach — allege that an Apple representative told them that there was nothing Apple could do, and they both allege that these supposed conversations took place *after* they had been scammed. *See id.* ¶¶ 100, 107. Those allegations conclusively debunk Plaintiffs' suggestion that they purchased the gift cards *because* of any representations that Apple allegedly made. And while Plaintiffs may claim that they relied on Apple's purported statements in deciding not to seek reimbursement from Apple, that theory presupposes that Apple had a duty to reimburse them for the value of their gift cards — even though Apple has no such duty and validly disclaimed it in any event. *See infra* § II.

Third, even if Plaintiffs had alleged that they visited Apple's "About Gift Card Scams" webpage, Apple's disclosure of its supposed ability to unwind fraudulent gift card transactions — *i.e.*, the information Plaintiffs claim Apple failed to disclose — would not have changed Plaintiffs' decision to purchase Apple gift cards. Indeed, if one accepts as true Plaintiffs' erroneous interpretation of the "About Gift Card Scams" page as indicating that there is "nothing Apple can do about gift card theft," then a more fulsome disclosure of Apple's supposed capability of addressing gift card theft would not have *discouraged* Plaintiffs from purchasing Apple gift cards. To the contrary, it would have suggested that Apple *could* investigate and remediate gift card scams, and it would accordingly have *encouraged* consumers to purchase Apple gift cards. Plaintiffs thus cannot establish that, "had the omitted information been disclosed," they would have "behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *see also, e.g.*, *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1311 (N.D. Cal. 2008) (granting motion to dismiss where the complaint did "not allege that . . . Plaintiffs would have made a different product choice at the outset" had the defendants "disclose[d] numerous legal and technical limitations associated with the iPhone").

## II.     The Disclaimer on the Apple Gift Card Packaging Defeats Plaintiffs' Claims.

Even assuming that Plaintiffs' theory of liability were plausible in the first instance — which it is not — Apple has expressly disclaimed any liability for third-party theft of its gift cards. Indeed, the Terms and Conditions of Apple gift cards state that "[n]either the issuer nor Apple is responsible for any loss or

damage resulting from lost or stolen gift cards or for use without permission."  RJN Ex. 1; *accord id.* Ex. 2, at 17.  That disclaimer squarely bars Plaintiffs' claims against Apple.

Plaintiffs assert that "no victim of an iTunes gift card scam is bound by Apple's attempt to limit its own liability for iTunes gift cards which are lost, stolen, or used without permission."  Compl. ¶ 168.  But despite Plaintiffs' suggestion to the contrary, the Ninth Circuit has repeatedly held that, under California law, a disclaimer of this sort will bar a claim premised on a defendant's alleged misrepresentations about its products or services.  *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (affirming dismissal of UCL claim against credit card issuer in light of disclosure that "other restrictions may apply"); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising lawsuit in light of "qualifying language in the promotion" and emphasizing that the allegedly deceptive effect of the challenged advertising was "dispelled by the promotion as a whole").

To circumvent this rule, Plaintiffs assert that "Apple cannot disclaim liability for loss or damage resulting from scams which it intentionally aids, abets, and perpetuates."  Compl. ¶ 168.  But this argument is premised on Plaintiffs' unfounded assertion that Apple's alleged failure to prevent and remediate gift card scams constitutes "aiding and abetting" — which it does not.  *See supra* § I.A.  And even assuming for argument's sake that Plaintiffs' allegations established that Apple was *negligent* (which they do not), California law permits defendants to disclaim liability for "ordinary negligence."  *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-7335, 2018 WL 5099271, at *9 (N.D. Cal. Aug. 9, 2018).

Nor have plaintiffs identified any other ground on which the disclaimer is "unconscionable and unenforceable."  Compl. ¶ 168.  Under California law, "[a] contract must be both procedurally and substantively unconscionable to be rendered unenforceable."  *Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, No. 13-1007, 2013 WL 6158040, at *3 (N.D. Cal. Nov. 22, 2013) (Davila, J.) (citing *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  There is no conceivable argument that the Terms and Conditions are either — let alone *both* — procedurally and substantively unconscionable:

First, there is no serious dispute that the disclaimer is clear and conspicuous.  It appears in normal-sized text in a single paragraph on the back of the packaging of each Apple gift card (and consumers are required to assent to it in conjunction with online gift card purchases), and it discloses — in plain English — that Apple is not responsible for any "loss or damage resulting from . . . stolen gift cards or use without

permission." *See* RJN Ex. 1.  In other words, it disclaims liability for the precise injuries for which Plaintiffs seek to recover in this lawsuit: the use of their gift card funds by third-party scammers.

Second, Plaintiffs can raise no serious argument that this disclaimer is illegal.  As any consumer knows, "gift cards are like cash," and they are intended to facilitate digital transactions without the need for consumers to input a credit or debit card number.  *See* RJN Ex. 4.  To that end, the FTC advises consumers that, "if you buy a gift card and someone uses it, you probably cannot get your money back." *Id*.  And because gift cards function like cash, both the FTC and the FDIC expressly advise consumers to review the gift cards they purchase so they are aware of any disclaimers by the issuer.  *See* RJN Ex. 5 (FTC advising consumers to "[n]ote any terms and conditions," as "[s]ome issuers will not replace cards that are lost or stolen"); *id.* Ex. 6 (FDIC advising consumers to "[k]now the terms and conditions," and noting that "there typically isn't any recourse for consumers when a gift card is stolen or used without authorization").

Third, it is irrelevant whether Plaintiffs personally reviewed this disclaimer: they cannot avoid its effect even if they "did not read the terms and conditions to which [they] assented."  *Davis*, 691 F.3d at 1164; *see also Baxter v. Intelius, Inc.*, No. 09-1031, 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010) ("A customer who accepts is bound by the terms of a disclosure even if he or she chooses not to read it.").

Indeed, courts have routinely granted motions to dismiss based on far less conspicuous disclaimers than the one here.  For example, in *In re Google Phone Litigation*, the court relied on a disclaimer in Google's Terms of Sale to dismiss the plaintiffs' breach of warranty claims, even though the disclaimer appeared "in the middle of a paragraph on the fourth page of a six-page document."  No. 10-1177, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2012).  Likewise, in *Hammond Enterprises Inc. v. ZPS America LLC*, the court held that the plaintiffs' breach-of-warranty claim was barred by a disclaimer that appeared on the thirteenth paragraph of the product's terms and conditions.  No. 12-3600, 2013 WL 5814505, at *3 (N.D. Cal. Oct. 29, 2013).

Here, the disclaimer appears in a single paragraph — titled "Terms and Conditions" — on the exterior of the gift card sleeve that is visible prior to an in-store purchase, and consumers are required to affirmatively consent to the disclaimer prior to purchasing an Apple gift card online.  *See* RJN Ex. 1; *id.* Ex. 2, at 13.  Because the disclaimer warned Plaintiffs and other class members that Apple was not

responsible for any losses arising from the unauthorized use of their Apple gift cards, Plaintiffs cannot seek to hold Apple responsible for those losses now.

### III.   Plaintiffs' Contract-Based Claims Are Implausible and Must Be Dismissed.

In addition to their claims under California's consumer protection statutes and their claim for aiding and abetting, Plaintiffs assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  *See* Compl. ¶¶ 164-74, 180-86.  But Plaintiffs have failed to establish the most fundamental element of a breach of contract claim — a specific contractual term with which Apple did not comply.  *See generally Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (noting that the elements of a breach of contract cause of action include "defendant's breach").

Plaintiffs' breach of contract claim is premised on the allegation that "Apple did not refund the app purchases from the gift card scams and improperly retains . . . 30% of the app proceeds."  Compl. ¶ 172. Based on that allegation, Plaintiffs allege that Apple is "in breach of its terms and conditions."  *Id.*; *see also id.* ¶ 169 ("By keeping 30% of the scammed proceeds, Apple breaches the terms and conditions with Plaintiffs and the class.").  But the complaint does not cite a single provision of the gift card Terms & Conditions obligating Apple to refund the value of a gift card transferred to a scammer — because there are no such provisions.  Indeed, the Terms & Conditions state the exact opposite:  "Neither the issuer nor Apple is responsible for any loss or damage resulting from lost or stolen gift cards or for use without permission."  RJN Ex. 1; RJN Ex. 2, at 17.  Plaintiffs' assertion that Apple "breached" a disclaimer of its own liability is nonsensical.  *See Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1260 (N.D. Cal. 2006) ("Courts may dismiss breach of contract claims when the agreement is not reasonably susceptible to any meaning that could support the plaintiff's legal theories.").

Courts regularly dismiss breach of contract claims, where, as here, the plaintiff fails to identify how the defendant's conduct constituted a breach of any particular contract provision.  *See, e.g.*, *Joude v. WordPress Found.*, No. 14-1656, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (holding that "[a] plaintiff cannot predicate a breach of contract claim on a defendant's terms of service where those terms did not commit the defendant to performing any particular action" and concluding that, assuming the terms of service created a contract, the defendant "did not breach the contract as a matter of law because it never promised to remove blogs which mislead [sic] readers by impersonation"); *Anthony*, 421 F. Supp. 2d at

1260 (dismissing breach of contract claim where the plaintiff could not "identify any contractual term that require[d]" defendant not to take the actions he alleged constituted the breach); *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 892 (2006) (finding that breach of contract claim failed where contract "contain[ed] no promise or engagement by the water district to follow paragraph 21 or any other regulation").  Absent any plausible allegation that Apple breached a specific term of its contracts with Plaintiffs, Plaintiffs have not stated a viable breach-of-contract claim.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fares no better. "Although breach of a specific provision of the contract is not a necessary prerequisite to a claim of breach of the implied covenant, '[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.'" *Avidity Partners, LLC v. State of California*, 221 Cal. App. 4th 1180, 1204 (2013) (citation omitted).  Put another way, "[t]he implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Id.*  Because the implied covenant "is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose," it "does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Id.* (citations omitted).  Plaintiffs' implied covenant claim seeks to hold Apple liable for conduct that has no connection to the purported contractual provisions described in their breach of contract cause of action.  *See generally* Compl. ¶¶ 166-167.  Because the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement," (*Avidity Partners*, 221 Cal. App. 4th at 1204), this claim fails as well.

## IV.   Plaintiffs Have Not Stated a Plausible Elder Abuse Claim

### A.   Plaintiffs Have Not Stated a Plausible Elder Abuse Claim Under California Law.

California's elder abuse statute prohibits a defendant from: (1) taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult "for a wrongful use or with intent to defraud, or both"; or (2) assisting another in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult "for a wrongful use or with intent to defraud, or both."  Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2).  Plaintiffs' allegations fall short because they do not establish that *Apple* participated or assisted in any alleged acts of financial elder abuse.

Plaintiffs first allege that Apple "took, secreted, appropriated, obtained, and/or retained Plaintiffs' and Elder Subclass members' property . . . for wrongful use or with an intent to defraud."  Compl. ¶ 196.  But Plaintiffs acknowledge that the scammers — not Apple — took the funds from their victims, and they have not alleged that *Apple* possessed any fraudulent intent of its own.  Nor can Plaintiffs establish that Apple took or retained their property for a "wrongful use" — which, under California law, requires a showing of "improper conduct," "subjective bad faith," or other wrongful conduct.  *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 657-58 (2016).  Importantly, allegations that conduct is "financially disadvantageous to an elder" alone do not suffice to make this showing.  *Id.* at 657; *see also Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 527-28 (2011) (holding that valid foreclosure of home owned by elderly plaintiffs did not constitute a "wrongful use" of their property).  Here, Plaintiffs' elder abuse claim is premised on nothing more than Apple's alleged refusal to refund the money stolen by third-party scammers — an obligation that Apple does not have and has also validly disclaimed.  Refusing to refund money stolen and then spent by third-party scammers simply does not constitute elder abuse.

Plaintiffs' claim that Apple assisted scammers in committing elder abuse is similarly unavailing.  California law makes clear that the assistance-of-elder-abuse provision incorporates the "common law rule for subjecting a defendant to liability for aiding and abetting a tort . . . ."  *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744 (2010) (citations omitted).  As *Das* makes clear, this statute "cannot be understood to impose strict liability for assistance in an act of financial abuse," and it does not impose liability on a defendant who "provides ordinary services that effectuate financial abuse by a third party" — at least not without a showing that it affirmatively aided and abetted that conduct.  *Id.* at 744-45. Indeed, if it did, that liability would extend to every retailer or service provider where ill-gotten funds were used.

Here, as explained earlier, Plaintiffs have not come close to establishing that Apple affirmatively aided and abetted — *i.e.*, consciously and intentionally provided "substantial assistance" to — the perpetrators of the alleged scam.  *See supra* § I.A.  Apple's general awareness of gift card scams does not change this result, as "mere knowledge" of a third party's misconduct does not render a defendant liable for assisting in elder abuse.  *See Bayer v. Rockwell*, No. 10-1613, 2010 WL 11684813, at *4 (S.D. Cal. Oct. 27, 2010) ("The word 'assists' as it pertains to financial elder abuse requires more than mere

knowledge.").  Plaintiffs' assistance of elder abuse claim is no more plausible than their aiding-and-abetting claim, and this Court should dismiss it.

### B.    Plaintiffs Cannot State an Elder Abuse Claim Under Any Other States' Laws.

In addition to their cause of action for elder abuse under California law, Plaintiffs also allege two separate elder abuse claims — one under Oregon law (Compl. ¶¶ 207-14), and one under the elder abuse laws of the other 48 states (*id.* ¶¶ 200-06).  Plaintiffs' elder abuse claim under Oregon law is plainly unavailing, as Plaintiffs have not alleged that Apple "took" Plaintiffs' property or that any such acquisition was "wrongful."  *See* O.R.S. § 124.110; *Bates v. Bankers Life & Cas. Co.*, 362 Or. 337, 344 (2018) (noting that this statute requires the plaintiff to establish the "improper acquisition by another person of the vulnerable person's property or money—such as by fraud, conversion, or theft").

Furthermore, Plaintiffs' attempt to invoke the elder abuse statutes of Oregon and the other 48 states directly contradicts their allegation that California law applies to the entire class. *See id.* ¶¶ 126-31. Although Apple does not concede that California law applies to the entire class, the Court need not resolve that question at this juncture.  The critical point is that Plaintiffs cannot have it both ways: they cannot claim that California law applies to all class members and simultaneously assert claims under the laws of states other than California.  And in any event, Plaintiffs have not articulated — and cannot articulate — any conceivable theory under which their elder abuse claims would succeed under any state's law for the reasons articulated above.  This Court should accordingly dismiss the elder abuse claims in their entirety.

### V.    Plaintiffs Have Not Stated a Plausible Quasi-Contract Claim and Cannot Seek Restitution.

In addition to their consumer fraud, breach-of-contract, and elder abuse claims, Plaintiffs also assert a cause of action for "Money Had and Received/Unjust Enrichment/Restitution."  Compl. ¶¶ 175-79. Although the elements of these claims vary in certain particulars, courts have made clear that these claims are "quasi-contractual" — or, in other words, that they permit a plaintiff to recover money owed by the defendant pursuant to a contract implied in law.  *See, e.g.*, *Friedman v. U.S. Bank N.A.*, 16-2265, 2016 WL 3226005, at *8 (C.D. Cal. June 6, 2016) ("[A]n action for money had and received is based on the existence of a quasi-contract.") (citation omitted); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App.

4th 221, 231 (2014)).  But because these claims permit restitution in the *absence* of an express contract, "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996); *accord Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

Here, Plaintiffs seek restitution of the gift card funds they transferred to third-party scammers — even though Apple's Terms & Conditions expressly state that Apple is not liable for lost or stolen gift cards or use without permission.  *See* RJN Ex. 1; *id.* Ex. 2, at 17.  Because the scope of Apple's duty to refund consumers is circumscribed by the Terms & Conditions, Plaintiffs cannot assert a quasi-contract claim against Apple or seek restitution of the money they allegedly lost.  *See, e.g.*, *Lusson v. Apple, Inc.*, No. 16-705, 2016 WL 10932723, at *3 (N.D. Cal. June 20, 2016) ("Here . . . express contracts already address the relationship between Apple and iPhone customers, so the plaintiffs have no quasi-contract claim."); *Coldwell Banker Real Estate LLC v. New Alliance Props., Inc.*, No. 17-1505, 2017 WL 5635023, at *5 (C.D. Cal. June 15, 2017) ("[I]t is the Agreement—not an implied contract—that governs the relationship between the parties here.  Accordingly, a money had and received claim arising from a quasi-contract relationship cannot lie.").

## VI.   Plaintiffs' Declaratory Relief Claim Fails Because Their Substantive Claims Also Fail.

This Court should dismiss Plaintiffs' declaratory relief claim because "resolution of other claims would sufficiently resolve the controversy."  *Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, No. 15-1791, 2016 WL 9045621, at *8 (C.D. Cal. Jan. 28, 2016) (citation omitted).  Indeed, "'[w]hen the issues invoked in a request for declaratory relief already were fully engaged by other causes of action, . . . then declaratory relief is unnecessary and superfluous' and must be dismissed."  *Id.*  (quoting *Howard v. First Horizon Home Loan Corp.*, No. 12-5735, 2013 WL 6174920, at *8 (N.D. Cal. Nov. 25, 2013)); *see also Stavrinides v. Vin Di Bona*, No. 18-314, 2018 WL 1311440, at *6 (C.D. Cal. Mar. 12, 2018) ("Because these rights would necessarily be determined through the adjudication of plaintiffs' copyright infringement claim, declaratory relief is duplicative and unnecessary.").  Here, Plaintiffs urge the Court to enter a declaratory judgment because Apple's acts are "tortious and . . . violate the terms of the federal and state

statutes described in th[e] complaint." Compl. ¶ 216. Because that claim is duplicative of their other claims, which fail on their merits, this Court should dismiss Plaintiffs' claim for declaratory relief.

## VII. Plaintiffs Cannot Seek Restitution Because They Have an Adequate Legal Remedy.

Finally, even if this Court does not dismiss Plaintiffs' lawsuit outright, it should nonetheless dismiss their claims for restitution. As the Ninth Circuit recently made clear in *Sonner v. Premier Nutrition Corp.*, a plaintiff cannot seek restitution under these statutes without establishing that she lacked an adequate remedy at law — a showing Plaintiffs have not even *attempted* to make.

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later abandoned her damages claims in favor of her claims for equitable restitution. 971 F.3d at 838. The district court then dismissed the plaintiff's remaining claims for restitution, holding that she had "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id*. The Ninth Circuit affirmed. In so holding, the Ninth Circuit agreed that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844. And because the plaintiff had not alleged — let alone demonstrated — that she lacked an adequate legal remedy, the Court held that she could not seek restitution. *Id.*

*Sonner* squarely precludes Plaintiffs' demand for restitution and equitable relief. As the Ninth Circuit made clear, a plaintiff seeking restitution must "*plead* 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law." *Id.* at 1081 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added); *see also id.* (noting that the plaintiff's "operative complaint does not *allege* that Sonner lacks an adequate legal remedy") (emphasis added). Here, however, Plaintiffs have not even *attempted* to allege that they lack an adequate remedy at law, as is necessary to obtain restitution or other equitable relief. Nor *could* Plaintiffs allege that they lack an adequate legal remedy, as the claims under the CLRA and California's elder abuse statute — as well as the common-law claims for breach of contract and breach of the implied covenant of good faith— permit recovery of damages. Absent any plausible allegation that these damages remedies are inadequate to compensate Plaintiffs for their alleged harm, *Sonner* bars them from seeking restitution — or any other equitable remedy.

1  **VIII.    This Court Should Dismiss Plaintiffs' Complaint Without Leave to Amend.**

2          The Ninth Circuit has made clear that a court need not grant leave to amend if doing so would be

3  an "exercise in futility" or "where the amended complaint would also be subject to dismissal." *Steckman*

4  *v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).  Here, given that Apple has validly disclaimed

5  any liability for lost or stolen gift cards, there is no way Plaintiffs can state a plausible claim against Apple.

6  And even if Plaintiffs are correct that Apple cannot disclaim liability for intentionally aiding and abetting

7  the misconduct of third-party scammers, Plaintiffs' aiding-and-abetting allegations — and their allegations

8  of intentional misconduct generally — are implausible and establish, at best, nothing more than inaction

9  on Apple's part.  Because Plaintiffs have not alleged, and cannot plausibly allege, that Apple *intentionally*

10 facilitated the activity of third-party scammers, and because any other claim is barred by the disclaimer,

11 this Court should dismiss this lawsuit with prejudice and without leave to amend.

12                                        **CONCLUSION**

13          For the foregoing reasons, this Court should grant Apple's motion to dismiss.

14

15 DATED:  October 8, 2020                    JENNER & BLOCK LLP

16                                  By:    s/  Kate T. Spelman

17                                         Attorney for Defendants
                                           Apple Inc. and Apple Value Services, LLC
18

19

20

21

22

23

24

25

26

27

28