UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CARL BARRETT, et al.,

          Plaintiffs,

    v.

APPLE INC. and APPLE VALUE
SERVICES, LLC,

          Defendants.

Case No.  5:20-cv-04812-EJD

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. Nos. 33, 34

      This class action suit is brought by Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach, Michael Rodriguez, and Maria Rodriguez, individually, and on behalf of others similarly situated ("Plaintiffs"). Plaintiffs recently filed a Class Action Complaint (Dkt. No. 1, "CAC") in this matter against Apple Inc., Apple Value Services, LLC, and Does 1–10 (unknown individuals legally responsible for unlawful acts alleged by Plaintiffs), inclusive. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Apple Inc. and Apple Value Services, LLC, (hereinafter, collectively "Apple" or "Defendants") seek to dismiss all causes of action in the CAC. Dkt. No. 33 ("Motion to Dismiss," "MTD"). The Court took the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, the Court **GRANTS** the motion to dismiss.

## I.    Background

      The Federal Trade Commission has reported that, between 2015 and 2019, scammers stole more than $93.5 million by carrying out a formulaic gift card scam. CAC ¶ 52; *see e.g.,* Emma Fletcher, *Scammers Increasingly Demand Payment by Gift Card*, FEDERAL TRADE COMMISSION (Oct. 16, 2018), https://www.ftc.gov/news-events/blogs/dataspotlight/2018/10/scammers-

United States District Court
Northern District of California

1   increasingly-demand-payment-gift-card. FTC data indicates that gift card scammers steal more

2   and more money with each passing year. *Id*. Gift card scammers stole approximately $24.4 million

3   in 2019 alone, and approximately $30 million in 2020 alone. *Id*. These figures may indicate only a

4   fraction of the theft occurring each year, as many scam victims may not file a report. *Id*.

5      Apple Inc. is a California corporation with its principal place of business in Cupertino,

6   California.[1] Apple Value Services, LLC, is a Virginia Corporation with its principal place of

7   business in Cupertino, California. *Id*. ¶ 24. About a quarter of all reported gift card scams involve

8   Apple's App Store & iTunes Gift Cards ("iTunes gift cards" or "gift cards"). *Id*. ¶ 52.

9      According to Plaintiffs' CAC, the iTunes gift card scam works as follows: The scammer

10  contacts an individual. *Id*. ¶¶ 56–65. The scammer induces panic or urgency in the individual or

11  otherwise induces the individual to give money to the scammer. *Id*. The scammer may, for

12  example, tell the individual that the individual has a time-sensitive opportunity to receive a

13  vaccine for Covid-19. *Id*. The scammer tells the individual that the individual can transfer money

14  to the scammer by using iTunes gift cards. *Id*. The scammer tells the individual to go to a nearby

15  retailer to buy one or more gift cards. *Id*. The scammer tells the individual to give to the scammer

16  the unique code(s) located on the back of the gift card(s). *Id*. If the individual complies, the

17  scammer may ask the individual to purchase more gift cards and share their codes as well. *Id*.

18     Once the scammer is in possession of a gift card code, the scammer is in possession of the

19  value associated with the gift card—at least until the individual who was the victim of the scam or

20  someone else with access to the code uses up that value. *Id*. At this point, the scammer does one of

21  two things. *Id*. The scammer may sell the code to a third party in exchange for money. *Id*.

22  Alternatively, the scammer may input the code into an Apple ID account controlled by the

23  scammer. *Id*. If the scammer inputs the code into his or her Apple ID account, the scammer can

24  use the value of the gift card as if it were his or her own, and can carry out transactions on either

---

[1] At CAC ¶ 23, Plaintiffs incorrectly state that Apple Inc. is a Delaware corporation, but elsewhere
in CAC Plaintiffs refer to Apple Inc. as a California corporation.

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
2

United States District Court
Northern District of California

the iTunes Store or the App Store. *Id*. For example, the scammer may purchase songs or movies on iTunes, or they may spend the money on or within applications ("apps") controlled by a third party. *Id*. Some apps are free but some cost money to download; moreover, some apps allow or induce users to pay money within the app itself—for example, to get access to special features of the app. *Id*.

In a typical version of the scam, however, the scammer will not spend the gift card value in the iTunes Store or on or within third-party apps. *Id*. Instead, scammers spend the value on or within an app that the scammer himself or herself controls. *Id*. This means that, prior to contacting the individual and inducing the individual to buy a gift card, the scammer has often already created his or her own app or otherwise obtained control over an app someone else created. *Id*. In order to create an app offered in Apple's App Store, one must become an Apple Developer. *Id*. ¶¶ 39–42. To become an Apple Developer, one must create an Apple ID, enroll in the Apple Developer Program, enter into the Apple Developer Program License Agreement, and pay a fee of $99 per year. *Id*. Whenever a purchase is made on or within an app (either with gift card value or with other loaded monetary value), Apple retains 100 percent of the value of that purchase until approximately 45 days after the end of the fiscal month, at which point Apple pays 70 percent of the value to the Apple Developer controlling the app. *Id*. ¶ 64. Apple retains a 30 percent commission on all app or in-app purchases in its App Store. *Id*. The scam, or at least one cycle of the scam, is complete when the Apple Developer-scammer receives his or her payment from Apple. The scammer has at this point effectively converted gift card codes into money.

Plaintiffs bring this action individually and also on behalf of a proposed nationwide class of persons in the United States who were victims of the iTunes gift card scam and who did not receive a refund from Apple. *Id*. ¶¶ 116–75. There are two proposed subclasses: one includes scam victims who contacted Apple following the scam; the other includes scam victims 65 years of age and older at the time of scam. *Id*. There are seven named Plaintiffs, all of whom fell victim to a typical version of the scam as described above. *Id*. ¶¶ 88–112. Two of the named Plaintiffs contacted Apple after being scammed, one contacted the police, and two contacted both the police

1    and a district attorney. *Id*. Two named Plaintiffs apparently sought no remedy. *Id*. According to

2    the CAC, the five individual Plaintiffs who did not contact Apple "[were] informed that once the

3    scammers redeemed the iTunes gift card there [was] nothing that Apple would do for them." *Id*.

4    Two of the named Plaintiffs are 65 years of age or older. *Id*. ¶¶ 16–22.  Named Plaintiffs are

5    residents of Maryland, Oregon, Florida, California, and New York. *Id*.

6         Plaintiffs allege that Apple has control of its iTunes Store and its App Store such that it

7    knew or should have known about specific iTunes gift card scams as they were occurring or soon

8    after they occurred. *See, e.g.*, *id*. ¶ 8. Plaintiffs allege that Apple knew or should have known:

9    which Apple IDs had uploaded the codes of stolen gift cards; which iTunes Store or App Store

10   purchases had been made with the value uploaded from stolen gift cards; and which Apple

11   Developer accounts were associated with purchases made with the value uploaded from stolen gift

12   cards. *See, e.g.*, *id*. ¶ 73. Plaintiffs further allege that "Apple is able to identify the Apple IDs that

13   participate in scams . . . *without* [Apple's having received] phone calls from victimized

14   consumers." Dkt. No. 39, Opposition at 4 (emphasis preserved). More generally, Plaintiffs allege

15   that Apple knew or should have known how the iTunes gift card scam works, and that it is a

16   widespread and impactful phenomenon. *See, e.g.*, CAC ¶ 56. Plaintiffs allege that Apple could

17   have used its knowledge and control of its online stores to suspend Apple ID accounts and Apple

18   Developer accounts associated with suspicious activity, to refuse to pay Apple Developer accounts

19   that seemed to be involved with scams, and to refund to scam victims Apple's 30 percent

20   commission on purchases associated with scams (if not the full 100 percent loss of the stolen gift

21   card value). *Id*. ¶¶ 74–75. Plaintiffs point out that in 2012 Apple started producing gift cards in

22   $500 denominations, potentially increasing the impact of individual scams. *Id*. ¶ 83. Plaintiffs

23   allege that Apple's actions or failures to act indicate that Apple is aiding and abetting the scams, or

24   is otherwise violating California fair competition statutes by knowingly paying scammers and

25   keeping funds received because of the scams. *See, e.g.*, *id*. ¶ 86.

26         Apple provides warning language in bold red lettering on the backs of iTunes gift cards. *Id*.

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
                                          4

Request for Judicial Notice ("RJN"), Dkt. No. 34 ("RJN"), Exhibit 1.[2] This warning language reads as follows: "Do not share your code with anyone you do not know." *Id*. Apple has created a webpage on which it shares information regarding gift card scams, including information about how to avoid scams and what to do in case a scam has occurred. RJN, Exhibit 3. This webpage is titled "About Gift Card Scams." *Id*. The language on the website states, among other things: "If you believe you're the victim of a scam involving Apple Gift Cards, App Store & iTunes Gift Cards, or Apple Store Gift Cards, you can call Apple at 800-275-2273 (U.S.) and say 'gift cards' when prompted." *Id*. The website also includes the following language: "Never provide the numbers on the back of a Gift Card to someone you do not know. Once those numbers are provided to the scammers, the funds on the card will likely be spent before you are able to contact Apple or law enforcement." *Id*.

Apple gift cards are subject to Terms and Conditions. *See, e.g.*, CAC ¶¶ 49–51. A partial version of the Terms and Conditions appears on the back of the packaging sleeve for iTunes gift cards. RJN, Exhibit 1. This partial version refers users to the full Terms and Conditions on Apple's website. *See, e.g.*, CAC ¶¶ 49–51. There is also a reference to the Terms and Conditions website on the back of the gift card itself. RJN, Exhibit 1. The Terms and Conditions language on the gift card packaging includes the following: "Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission." CAC ¶¶ 49–51. The Terms and Conditions on Apple's website includes the following:

> We reserve the right, without notice to you, to void or deactivate [iTunes gift cards] (including a portion of your Account balance) without a refund, suspend or terminate customer accounts, suspend or terminate the ability to use the Services, cancel or limit orders and bill alternative forms of payment if we suspect Store Credit was obtained,

---

[2] As discussed below, the Court grants Apple's motion to request judicial notice of this language and the other exhibits referenced throughout this Order.

1    used, or applied to an Apple ID fraudulently, unlawfully, or otherwise

2    in violation of these terms and conditions.

3  *Id*. In the CAC, which Plaintiffs filed July 17, 2020, Plaintiffs, acknowledging that Apple's Terms

4  and Conditions language changes slightly from time to time, indicate that Apple's Terms and

5  Conditions website included a governing law provision stating the following:

6    Except [for residents of certain foreign countries], this Agreement and

7    the relationship between you and Issuer shall be governed by the laws

8    of the State of California, excluding its conflict of laws provisions.

9    You and Issuer agree to submit to the personal and exclusive

10    jurisdiction of the courts located within the county of Santa Clara, to

11    resolve any dispute or claim arising from this Agreement.

12  *Id*.[3]

13    Plaintiffs cite an April 2016 NBC News report, in which an Apple spokesperson stated the

14  following:

15    [I]f someone contacts Apple Support after sending off the gift card

16    code – and the money has not been drained from the card – [the scam

17    victim] can freeze the account and have the money refunded to them.

18    If the money is already gone, Apple advises people to file a complaint

19    with the FTC.

20  *Id*. ¶ 71. Plaintiffs claim that this news report indicates, *inter alia*, that "Apple deceptively

21

22  _____

[3] As of February 1, 2021, Apple's Terms and Conditions website shows a governing law provision

23  indicating that "the laws of the State of Virginia [will govern the Terms and Conditions]"; the

24  website indicates that the Terms and Conditions were updated on July 31, 2020. Terms and

25  Conditions for Apple Gift Cards and Codes, Apple Account Associated Balance, and Content

26  Codes, https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html. However,

27  neither party appears to contest the fact that California law applies to this dispute.

28  Case No.: 5:20-cv-04812-EJD
   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1     suggests to scam victims that their money is 'gone,' even when [Apple] will retain a 30%

2     commission, and, in many cases, has not yet paid the remaining 70% into the scammer's bank

3     account." *Id*.

4         Plaintiffs allege that Apple has violated California unfair competition statutes by

5     committing affirmative misrepresentation and/or fraud by omission in its red warning language, its

6     "About Gift Card Scams" webpage, its Terms and Conditions, its communications with news

7     media, and its communications with gift card users who contacted Apple after having been

8     scammed. *See, e.g.*, *id*. ¶¶ 79, 100.

9         Plaintiffs allege eleven causes of action in the CAC: (I) violations of the California

10    Consumer Legal Remedies Act (Cal. Civ. Code §1750) ("CLRA"); (II) violations of the California

11    Unfair Competition Law (Cal. Bus. & Prof. Code §17200) ("UCL"); (III) violations of the

12    California False Advertising Law (Cal. Bus. & Prof. Code §17500) ("FAL"); (IV) breach of

13    contract; (V) "Money Had and Received / Unjust Enrichment / Restitution" claims; (VI) breach of

14    implied covenant of good faith and fair dealing; (VII) aiding and abetting intentional torts; (VIII)

15    violations of the California Elder Abuse Law (Cal. Welfare & Inst. Code § 15600); (IX) violations

16    of elder abuse statutes in 48 other states and Washington, D.C.; (X) violations of the Oregon Elder

17    Persons and Persons with Disability Abuse Prevention Act (Ore. Stat. §124.005); (XI) a request

18    for declaratory judgments under 28 U.S.C. § 2201. *Id*. at 26–45. Plaintiffs seek damages,

19    restitution, and injunction. *Id*. at 45.

20         Apple filed the present motion, seeking to dismiss all of Plaintiffs' claims. Plaintiffs filed

21    an opposition to the MTD (Dkt. No. 39, "Opposition"), in which they withdrew their breach of

22    contract claim.

23      **II.**      **Motion Requesting Judicial Notice**

24         Apple requests that the Court take judicial notice of Exhibits 1, 3, 4, 5, and 6, which are

25    attached to Apple's Request for Judicial Notice. RJN; Dkt. No. 43 Reply in Support of Apple's

26    Request for Judicial Notice (withdrawing a request for judicial notice regarding Exhibit 2).

27

28    Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    Plaintiffs oppose exhibits 1, 4, 5, and 6. Dkt. No. 40, Opposition to Request for Judicial Notice

2    ("Opposition to RJN").

3        As a general rule, the Court may not consider any material outside the pleadings in ruling

4    on a Rule 12(b)(6) motion. *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.

5    2011). There are two exceptions to this rule: when the complaint necessarily relies on the

6    documents (incorporation by reference), and when the documents are "matters of public record"

7    under Fed. R. Evid. 201(b). *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The

8    incorporation by reference doctrine allows for the consideration of material that is attached to the

9    complaint, as well as for the consideration of "unattached evidence on which the complaint

10   'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to

11   plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian*

12   *Colleges*, 655 F.3d at 999. Under the Federal Rules, a court may take judicial notice of a fact that

13   is "not subject to reasonable dispute in that it is either (1) generally known within the territorial

14   jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

15   sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

16       Exhibit 1 meets the standard for judicial notice under Fed. R. Evid. 201(b). Exhibit 1

17   includes three photographs of a $50 iTunes gift card purchased on August 18, 2020. RJN, Exhibit

18   1. One of the photographs depicts the front of the gift card while it is still in its packaging; one

19   depicts the back of the gift card while it is still in its packaging; and one depicts the back of the

20   gift card once it has been removed from its packaging. *Id.*

21       Plaintiffs dispute the authenticity of Exhibit 1, pointing out that the gift card was purchased

22   32 days after the CAC was filed, and arguing that "Apple does not assert or demonstrate that the

23   language and formatting on the packaging for the gift card that its counsel purchased is the same

24   as the packaging for the gift cards that Plaintiffs purchased." Opp'n to RJN, at 2–4. The Court

25   does not find this dispute reasonable. The language depicted in the photographs (e.g., the

26   disclaimer language on the back of the gift card packaging) matches verbatim the language quoted

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
     8

*United States District Court*
*Northern District of California*

1    in the CAC. CAC ¶ 166. Plaintiffs do not actually contend that the language and formatting of the

2    gift card in Exhibit 1 is different than that of the gift cards that Plaintiffs purchased.

3          Plaintiffs point to *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015 WL

4    6694104 (N.D. Cal. Nov. 3, 2015), where the court denied a request for judicial notice of

5    photographs of packaging labels, but in *Tsan* the plaintiffs argued, *inter alia*, that the photographs

6    may not have comprehensively depicted all relevant packaging labels, and that some of the

7    photographs depicting the front and back of the same packaging contained internal

8    inconsistencies. *Id*. at *2–3. Plaintiffs do not raise similarly specific disputes here. Plaintiffs also

9    cite *Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW, 2013 WL 12176843 (N.D. Cal. Apr. 15, 2013),

10   but the judicial notice dispute in *Shahar* involved numerous and specific potential discrepancies

11   between versions of the same document, including at least one discrepancy regarding dates. *Id*. at

12   *2. Plaintiffs cite *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), but the judicial

13   notice dispute in *Fraley* involved significant discrepancies, such as whether the document at issue

14   even existed during the time period relevant for the complaint. *Id.* at 795. In contrast, Apple's

15   Exhibit 1 presents language identical to that provided in the CAC, and Plaintiffs have raised no

16   reasonable basis to believe that Exhibit 1 depicts anything other than the exact same gift cards

17   Plaintiffs purchased. Thus, the Court GRANTS Apple's Request for Judicial Notice regarding

18   Exhibit 1.

19         Exhibit 3 meets the standard for judicial notice under the doctrine of incorporation by

20   reference. Exhibit 3 is a copy of Apple's "About Gift Card Scams" webpage. RJN, Exhibit 3.

21   Plaintiffs include references to the webpage in multiple sections of the CAC. *See, e.g.*, CAC ¶ 56.

22   Plaintiffs rely on the language included in the webpage to allege multiple violations of California

23   statutory fair competition laws. *See, e.g.*, *id*. ¶ 126. In their Opposition to RJN, Plaintiffs dispute

24   the authenticity of other exhibits but do not dispute the authenticity of Exhibit 3. Opp'n to RJN.

25   Thus, the Court GRANTS Apple's Request for Judicial Notice regarding Exhibit 3.

26         Exhibits 4, 5, and 6 meet the standard for judicial notice under Fed. R. Evid. 201(b).

27   "[I]nformation on government agency websites . . . [has] often been treated as [a] proper subject

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1   for judicial notice." *Paralyzed Veterans of Am. v. McPherson*, No. C064670SBA, 2008 WL

2   4183981, at *5 (N.D. Cal. Sept. 9, 2008). The Exhibits are press releases regarding gift cards,

3   published by the Federal Trade Commission and the Federal Deposit Insurance Corporation. RJN,

4   Exhibits 4–6. The Court finds that the accuracy of these government press releases is readily

5   verifiable. *See, e.g.*, *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal.

6   May 15, 2018)  (granting a request for judicial notice for press releases issued by the IRS on the

7   basis that "[p]ublically accessible websites and news articles are proper subjects of judicial

8   notice"). The Court GRANTS Apple's Request for Judicial Notice regarding Exhibits 4–6.

9       In sum, the Court GRANTS Apple's request and takes judicial notice of Exhibits 1, 3, 4, 5,

10   and 6.

11      **III.    Legal Standard**

12          A complaint must contain a "short and plain statement of the claim showing that the

13   pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the

14   grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

15   555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint does not need detailed factual

16   allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

17   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

18   action will not do. Factual allegations must be enough to raise a claim for relief above the

19   speculative level[.]" *Bell Atlantic Corp.*, 550 U.S. at 555 (cleaned up).

20          To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

21   which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v.

22   Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp.*,

23   550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

24   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

25   alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

26   more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atlantic

27   Corp.*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a

28   Case No.: 5:20-cv-04812-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
    10

United States District Court
Northern District of California

1    defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to

2    relief.'" *Id.* (cleaned up) (quoting *Bell Atlantic Corp.*, 550 U.S. at 557). "[The court] need not

3    accept as true allegations contradicting documents that are referenced in the complaint or that are

4    properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.

5    2008).

6            Fraud allegations elicit a more demanding standard. "In alleging fraud . . . a party must

7    state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and

8    other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means

9    that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the

10   misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Like

11   the basic "notice pleading" demands of Rule 8, Rule 9(b) assures that defendants are given fair

12   notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b)

13   demands that allegations of fraud be specific enough to give defendants notice of the particular

14   misconduct . . . so that they can defend against the charge and not just deny that they have done

15   anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.

16   2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

17           "Where fraud is not an essential element of a claim, only those allegations of a complaint

18   which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor*

19   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1102). "Any averments which

20   do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy

21   Rule 9(b)." *Kearns*, 567 F.3d at 1124.

22           "Where the claim [of fraud or mistake] is one of fraud by omission, . . . the pleading

23   standard is lowered on account of the reduced ability in an omission suit 'to specify the time,

24   place, and specific content, relative to a claim involving affirmative misrepresentations.'" *In re*

25   *Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008) (citing

26   *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)).

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
                                             11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## IV.    Discussion

### a.   Third-party Liability (Parts of Counts I-III, and Count VII)

Among other causes of action, Plaintiffs claim that Apple aided and abetted intentional torts—including conversion, fraud, and false pretenses—committed by the individuals who carried out iTunes gift card scams. CAC ¶¶ 187–91. Plaintiffs also claim that Apple violates the CLRA, UCL, and FAL by knowingly paying scammers and by knowingly retaining money received via gift card scams. *Id*. ¶¶ 132–63. These claims attempt to hold Apple liable for third-party conduct. Plaintiffs' pleadings do not satisfy the standard for such claims.

"Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325, 58 Cal. Rptr. 2d 308 (1996) (citations omitted). "A defendant can be held liable [for aiding and abetting] on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort." *Gerard v. Ross*, 204 Cal. App. 3d 968, 983, 251 Cal. Rptr. 604, 613 (Ct. App. 1988); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749, 3 Cal. Rptr. 2d 575 (1992), *modified* (Feb. 10, 1992) ("[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act").

Setting aside the question of whether Plaintiffs have satisfied the knowledge standard for third-party liability, Plaintiffs failed to establish that Apple gave "substantial assistance or encouragement" to the alleged perpetrators of the gift card scam as required under *Fiol*, 50 Cal. App. 4th at 1325. Nor do Plaintiffs' adequately allege that Apple "reach[ed] a conscious decision to participate," in the scam. *See Howard*, 2 Cal. App. 4th at 749. Plaintiffs allege that Apple transferred payments to parties it knew or could have known were engaging in unlawful activity, that Apple retained funds it knew or could have known were received because of unlawful activity, and that Apple made misleading or false statements regarding its ability to respond to

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
12

1    unlawful activity occurring within its iTunes ecosystem. CAC, ¶¶ 132–63, 187–91.  These actions

2    resemble those of the defendants in *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 116

3    Cal. Rptr. 2d 25 (2002), and in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir.

4    2007). The defendants in *Emery* and *Perfect 10* were financial institutions and associations of

5    financial institutions whose services were allegedly utilized by third-party wrongdoers and whose

6    actions were found insufficient to meet the standards of third-party liability.

7         In *Emery*, the plaintiff claimed that Visa International Service Association, a clearinghouse

8    whose members included "over 20,000 autonomous financial institutions," had committed "unfair

9    business practices in violation of [the UCL]." *Emery*, 95 Cal. App. 4th at 956, 958. A third-party

10   organization had sent California residents solicitations to participate in an unlawful foreign lottery.

11   *Id.* at 954–59. These solicitations indicated that recipients who wished to participate in the foreign

12   lottery had the option of paying with a VISA credit card. *Id.* The solicitations also included the

13   VISA logo and mark, which VISA licensed "to member institutions [who] in turn allow[ed]

14   merchants to [use them]." *Id.* (internal quotations omitted). The plaintiff "[did] not contend that

15   VISA either knew about or facilitated the solicitation[s]," and acknowledged that VISA did

16   cooperate with law enforcement upon learning of the illegal foreign lottery solicitations. *Id.* at

17   956–57. However, the plaintiff claimed that VISA acted too slowly in sending cease and desist

18   letters to offending merchants and was not sufficiently "proactive in protecting the use of its

19   mark." *Id.* at 957. The court granted summary judgment for VISA, holding that "[a] defendant's

20   liability must be based on his personal 'participation in unlawful practices' and 'unbridled control'

21   over the practices that are found to violate [the UCL]." *Id.* at 960. The court found that "VISA

22   exercised no control over the preparation or distribution of the solicitations, nor did it have any

23   relationship with the merchants who did." *Id.*

24        In *Perfect 10*, a publisher of "tasteful copyrighted images of the world's most beautiful

25   natural models" alleged that a number of websites "stole[] its proprietary images, altered them,

26   and illegally offered them for sale online." *Perfect 10, Inc.*, 494 F.3d at 793. Plaintiff brought

27   California statutory unfair competition and false advertising claims, among other claims, against

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Visa International Service Association, MasterCard International Inc., and "several affiliated banks and data processing services." *Id.* at 792. The plaintiff alleged that defendants "continue[d] to process credit card payments to websites that infringe[d] [on their] intellectual property rights after being notified by [the plaintiff] of infringement by those websites." *Id.* The defendants "admit[ted] receiving some of these notices, but they took no action in response to the notices after receiving them." *Id.* at 793. In contrast to *Emery*, where Visa International Service Association was the only defendant, *Perfect 10* involved defendant financial institutions who were members of Visa International Service Association and/or Mastercard International Inc. and who had direct connections with the merchants alleged of wrongdoing. *Id.* These defendants were therefore one tier closer, in terms of potential control, to the alleged copyright infringers than the defendant was to the illegal lottery solicitors in *Emery*. Nevertheless, the Court of Appeals affirmed the District Court's dismissal with prejudice, holding that "*Emery* [was] dispositive of Perfect 10's claims that the [d]efendants are secondarily liable under California unfair competition and false advertising laws." *Id.* at 809.

Plaintiffs point to *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 60 Cal. Rptr. 3d 810 (2007), as a more apposite case than *Emery* or *Perfect 10*. In *Schulz*, the defendants were four payment processing businesses—Neovi Data Corporation ("Neovi"), Ginix, Inc. ("Ginix"), PaySystems, Inc. ("PaySystems"), and PayPal, Inc. ("PayPal")—accused of violating the UCL by aiding and abetting an illegal online lottery. *Id.* at 88–90. The plaintiff was appealing the lower court's dismissal of his complaint. *Id.* The appellate court, reversing in part, held that the plaintiff had sufficiently pleaded third-party liability claims against Ginix and PaySystems, because the plaintiff's claims indicated that these businesses "had a direct stake in the success of the [third-party tortfeasor] and [had] contracted for use of [the third-party tortfeasor's] services to encourage participation and make more money." *Id.* at 96–97. The court further held that the plaintiff had not sufficiently pleaded third-party liability claims against PayPal and Neovi, because the plaintiff's claims did not indicate similarly direct involvement with the third-party tortfeasor. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The court in *Schulz* found that the plaintiff sufficiently stated claims regarding third-party liability theories against Ginix and PaySystems by alleging the following, *inter alia*:

- Ginix and PaySystems "knew" that the company EZ Expo was hosting an illegal online lottery but nevertheless "authorized" the use of their payment services "knowingly and intentionally," *id.* at 89–90 (internal citations omitted);

- Ginix and PaySystems acted under the perception that their participation in the scheme "would lend an aura of respectability to the site, deceive consumers into believing the activity was legal, and make participating easier, thereby generating more revenue, " *id.* (internal citations omitted);

- "Ginix and PaySystems authorized EZ to configure its site to display their respective logos so that consumers could link directly to their sites to process credit card payments," *id.* at 94 (internal quotations omitted);

- "[Ginix and PaySystems] did this with the knowledge and specific intent of aiding and abetting and facilitating [EZ's] illegal lottery operations," *id.* (internal quotations omitted);

- "PaySystems and Ginix hoped and believed that by allowing EZ . . . to take credit card orders, more persons would be able to participate in the illegal lottery, resulting in more revenue for [them]," *id.* (internal quotations omitted);

- "a specified person from Ginix personally assured [EZ] that Ginix did not have any problem with the operation of the lottery site and would not freeze funds paid by consumers [as PaySystems eventually came to do][,] . . . essentially promis[ing] it would have a 'stronger stomach' [than PaySystems]," *id.* (internal quotations omitted).

The court specifically distinguished the claims regarding Ginix and PaySystems from those regarding VISA in *Emery* because the plaintiff alleged that Ginix and PaySystems "had a direct stake in the success of the [third-party tortfeasor] and [had] contracted for use of their services to encourage participation and make more money." *Id*. at 96.

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    In contrast, the court in *Schulz* found that the plaintiff "[did] not sufficiently allege

2    PayPal's or Neovi's knowledge of the alleged illegal lottery or facts showing substantial assistance

3    or encouragement." *Id*. at 97. The court found that the plaintiff's complaint regarding PayPal was

4    "deficient" because "[i]t plead[ed] only that PayPal knew the site was an illegal lottery but agreed

5    EZ could use its payment system with the knowing intent to aid and abet EZ's operation because it

6    could be profitable for PayPal." *Id*. at 97. The court found that the complaint regarding Neovi was

7    similarly deficient because it "allege[d] only that [Neovi] knew of [EZ's] unlawful operations but

8    knowingly and intentionally aided and abetted the operation by setting up a system for consumers

9    to use its electronic check system, and, as a result, received a fee." *Id*. at 97 (internal quotations

10    omitted).

11    Apple argues that Plaintiffs' claims resemble the *Schulz* plaintiff's claims against PayPal

12    and Neovi, and are distinct from the *Schulz* plaintiff's claims against Ginix and PaySystems,

13    because Plaintiffs only claim that Apple knew that the gift card scams were illegal yet processed

14    payments associated with scams anyway in order to make a profit. Reply in Support of the Motion

15    to Dismiss ("Reply ISO MTD"), Dkt. No. 42, at 3. The Court agrees. Plaintiffs do not allege that

16    Apple gave any specific authorization to the Apple Developers or Apple IDs that were associated

17    with unlawful activity other than the authorization granted to all Apple Developers and Apple IDs

18    after standard initial reviews. Plaintiffs do not allege any facts indicating that Apple, after learning

19    that certain Apple Developers or Apple IDs were associated with unlawful activity, gave any

20    specific authorization to these accounts "with the knowledge and specific intent of aiding and

21    abetting and facilitating" this unlawful activity. *Id*. Instead, Plaintiffs only allege that Apple failed

22    to revoke previously granted authorizations. *See, e.g.*, CAC ¶ 75.

23    Plaintiffs also fail to allege that Apple "hoped and believed," *Schulz*, 152 Cal. App. 4th at

24    94, that by allowing gift card scams to persist, more persons would fall victim to them and render

25    Apple more money. Plaintiffs suggest, CAC ¶ 83, that Apple's 2012 decision to sell gift cards in

26    denominations of $500 might indicate this "hope[] and belie[f]," *Schulz*, 152 Cal. App. 4th at 94.

27    The Court finds this connection too attenuated to establish Apple's substantial assistance or

28

United States District Court
Northern District of California

1    encouragement of the scam, given the many possible reasons Apple might have had for

2    introducing this higher denomination of gift card. In any case, Apple introduced the higher

3    denomination gift card in 2012, three years before the Plaintiffs' Class Period begins and three

4    years before the earliest year Plaintiffs specifically allege that any gift card scams were occurring.

5    *Id*. ¶¶ 6, 117.

6            Plaintiffs do not plausibly allege that Apple realized that its failure to revoke authorization

7    from Apple Developers and Apple IDs would grant these accounts an "aura of respectability" that

8    would "encourage participation in the scams." *Schulz*, 152 Cal. App. 4th at 94. On the contrary,

9    Apple's actions, including its creation of a webpage warning of the scam, *see, e.g.*, CAC ¶ 56,

10   informed the public and brought disrepute to scammers. Finally, there are no allegations that any

11   representative of Apple communicated personal assurances to the scammers that Apple would

12   persist in supporting their unlawful activity despite the challenges the scammers might face, as

13   there were in *Schulz*. For these reasons, the allegations against Apple are distinct from the

14   allegations against Ginix and PaySystems in *Schulz*. Plaintiffs' allegations are more similar to the

15   allegations against PayPal and Neovi in *Schulz* and the allegations against the defendants in *Emery*

16   and *Perfect 10*—all of which were found to insufficiently state claims that defendants had given

17   "substantial assistance," *Fiol*, 50 Cal. App. 4th at 1325, to third-party tortfeasors.

18           This Court's holding in *Diaz*, 2018 WL 2215790, is also instructive for the present case. In

19   *Diaz*, the plaintiffs alleged that Intuit, Inc. ("Intuit"), a company that charged fees in

20   exchange for financial and tax preparation services, "deliberately implemented policies that it

21   knew directly enabled and encouraged the fraud" perpetrated by anonymous scammers who

22   created user accounts with stolen information or else hacked into pre-existing user accounts. *Id*. at

23   6. The plaintiffs alleged, for example, that Intuit "made no effort to contact" a user whose

24   "personal identifying information was being used to create . . . an account associated with a High

25   Risk Domain Name." *Id*. at 8 (internal quotations omitted). This Court held that the "substantial

26   assistance" requirement for aiding and abetting claims "necessarily requires a defendant to reach a

27   conscious decision to participate in tortious activity for the purpose of assisting another in

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    performing a wrongful act." *Id.* at 8. The Court therefore found that the plaintiffs' "failure to act

2    allegations regarding, *inter alia*, maintaining deficient protocols, policies and practices enabling

3    fraud, failing to provide notice, and failing to provide data to the IRS or state tax agencies . . .

4    [were] insufficient to establish substantial assistance for purposes of aiding and abetting liability."

5    *Id.* Plaintiffs' allegations regarding Apple's failures to act similarly fail to show a "conscious

6    decision to participate," *id.*, and fail to establish "substantial assistance," *Fiol*, 50 Cal. App. 4th at

7    1325, for the same reason.

8         Because Plaintiffs fail to allege that Apple substantially assisted or encouraged the gift

9    card scam, Plaintiffs' third-party liability claims fail and the Court need not address whether

10   Plaintiffs alleged that Apple had the requisite knowledge.

11        Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). *Miller*

12   *v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). A "proposed amendment is futile only if

13   no set of facts can be proved under the amendment that would constitute a valid claim." *Armas v.*

14   *USAA Cas. Ins. Co.*, No. 5:17-CV-06909-EJD, 2019 WL 3323057, at *3 (N.D. Cal. July 24, 2019)

15   (internal citation omitted). It is possible that additional facts exist that could cure the deficiencies

16   in Plaintiffs' third-party liability claims. Accordingly, this Court GRANTS, without prejudice,

17   Apple's motion to dismiss as to Count VII (aiding and abetting), as well as to Counts I–III

18   (California unfair competition statutory laws—the CLRA, the UCL, and the FAL) to the extent

19   Counts I–III are premised on third-party liability.

20                    **b.  Fraud Claims (Parts of Counts I-III)**

21        Plaintiffs allege that Apple violated the CLRA, the UCL, and the FAL by engaging in

22   affirmative misrepresentation and fraud by omission, thereby breaching a duty to disclose. CAC ¶¶

23   132–63.

24        "Under California law, a duty to disclose arises in four circumstances: (1) when the

25   defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

26   knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a

27   material fact from plaintiff; or (4) when the defendant makes partial representations but also

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
                                    18

1    suppresses some material facts." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039

2    (N.D. Cal. 2012) (internal citation omitted). Plaintiffs must show reliance, causation, and

3    damages. *Id.* at 1038. "For a non-disclosed fact to be material, a plaintiff must show that if the

4    omitted information had been available, the plaintiff would have been aware of it and behaved

5    differently." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 940 (C.D. Cal. 2012),

6    quoting *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd,* 322 F.

7    App'x 489 (9th Cir. 2009). Furthermore, "to be actionable the omission must be contrary to a

8    representation actually made by the defendant, or an omission of a fact the defendant was obliged

9    to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d

10   118, 126 (2006), *as modified* (Nov. 8, 2006).

### i. Affirmative Misrepresentation

12            Plaintiffs set forth four discernible theories of affirmative misrepresentation, three of which

13   are fatally flawed because Plaintiffs' claims do not sufficiently show reliance. Plaintiffs allege that

14   on the "About Gift Card Scams" webpage, in the disclaimer language in the Terms and Conditions

15   (which appears in full on Apple's website, and which is referenced on the packaging of iTunes gift

16   cards and on the gift cards themselves), and in at least one communication to a news network,

17   Apple affirmatively misrepresented its abilities to identify scammers, stop payments to scammers,

18   and return funds to scam victims. CAC ¶¶ 71, 132–63. Plaintiffs argue that the following

19   statement in particular is misleading: "Once [gift card codes] are provided to . . . scammers, the

20   funds on the [gift] card[s] will likely be spent before [the victim is] able to contact Apple or law

21   enforcement." CAC ¶ 5 (citing Apple's online Terms and Conditions). Plaintiffs allege that this

22   affirmative misrepresentation "discourage[d] victims from [contacting Apple and] vindicating

23   their rights." Opp'n at 8. However, Plaintiffs do not allege that they visited the website, read the

24   disclaimer, or knew about Apple's communications with news media—either before or after they

25   purchased the iTunes gift cards. Plaintiffs therefore fail to sufficiently plead that they relied on the

26   alleged misrepresentations as to the first three theories.

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    Plaintiffs' fourth discernible theory of affirmative misrepresentation also fails, due to

2    Plaintiffs' failure to allege causation. Plaintiffs allege that Apple, in its phone calls with scam

3    victims, affirmatively misrepresented its abilities to identify scammers, stop payments to

4    scammers, and return funds to scam victims. *See, e.g.*, CAC ¶ 100. Plaintiffs allege that this

5    affirmative misrepresentation "discourage[d] victims from [contacting Apple and] vindicating

6    their rights." *See, e.g.*, Opp'n at 8. In the CAC, Plaintiffs identify two instances when Plaintiffs

7    made phone calls to Apple after having been scammed. *See* CAC ¶¶ 100, 107. One of these

8    instances involved Plaintiff Martin, and the other involved Plaintiff Marinbach. *See id.* Martin and

9    Marinbach each allege that the Apple representative on the phone said in response that the stolen

10   gift cards had been redeemed and reiterated the provision of Apple's Terms and Conditions that

11   Apple does not refund stolen gift cards. *See* CAC ¶ 100 (Martin's allegations: "The Apple

12   representative informed Martin that the iTunes gift cards had already been redeemed and refused

13   to refund Martin anything. The Apple representative told Martin that Apple does not receive the

14   money she spent to purchase the iTunes gift cards."); *id.* ¶ 107 (Marinbach's allegations: "The

15   representative told Marinbach that the iTunes gift cards had been redeemed and refused to provide

16   Marinbach a refund for the iTunes gift cards. The representative told Marinbach that it is Apple's

17   policy not to refund iTunes gift cards, and refund requests must be directed to the merchant that

18   sold him his iTunes gift cards.").

19   The only allegation that Apple told a scam victim something that was incorrect in a phone

20   call is that "[t]he Apple representative told [the Plaintiff] that Apple d[id] not receive the money

21   [the Plaintiff] spent to purchase the iTunes gift cards," *id.* ¶ 100. Even assuming that this statement

22   was untrue, this purported misrepresentation is unrelated to the Plaintiff's subsequent decision to

23   stop following up with Apple regarding a refund. In that same phone call, the Apple representative

24   reiterated Apple's policy of not refunding gift cards. *Id.* It is not plausible that, but for the Apple

25   representative's claim that Apple received no money related to gift card scams, Plaintiff would

26   have followed up with Apple regarding a refund. In multiple other instances, including in the very

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
                                          20

1  same phone call, Apple told the Plaintiff that Apple would not refund stolen gift cards. *Id*.

2  Plaintiffs therefore fail to show causation.

3                 **ii.   Fraud By Omission**

4         Plaintiffs set forth five discernible theories of fraud by omission, four of which are fatally

5  flawed because Plaintiffs do not allege that had the omitted information been available, Plaintiffs

6  "would have been aware of it and behaved differently." *Keegan*, 838 F. Supp. 2d at 940. Plaintiffs

7  allege that Apple failed to disclose its abilities to identify scammers, stop payments to scammers,

8  and return funds to scam victims (1) in its "About Gift Card Scams" webpage, (2) in the Terms

9  and Conditions language (including the abbreviated Terms and Conditions language that appears

10  on the cardboard packaging sleeves of gift cards), and (3) in at least one communication to a news

11  network. CAC ¶¶ 71, 132–63. Plaintiffs allege that this omission "discourage[d] victims from

12  [contacting Apple and] vindicating their rights." Opp'n at 8.

13         As with the affirmative misrepresentation theories discussed above, Plaintiffs do not allege

14  that they read either the webpage or the disclaimer, or were aware of any specific news reports

15  regarding iTunes gift card scams. Because Plaintiffs were unaware of the existing information on

16  the webpage, disclaimer, or in the news report, they cannot argue that the alleged omissions, if

17  available, would have changed Plaintiffs' behavior such that they would have been more

18  encouraged to seek a remedy. Of the seven named Plaintiffs, two individual Plaintiffs actually did

19  contact Apple after being scammed, one contacted the police, and two contacted both the police

20  and a district attorney. CAC ¶¶ 88–112. Only two individual Plaintiffs sought no remedy. *Id*. For

21  each of the five individual Plaintiffs who did not contact Apple, the Complaint provides an

22  identical allegation that "[the Plaintiff] did not contact Apple after being victimized by scammers,

23  because [the Plaintiff was] informed that once the scammers redeemed the iTunes gift card there

24  [was] nothing that Apple would do for them." *Id*. Nowhere do Plaintiffs allege that, had they been

25  informed via Apple's webpage, disclaimer, or communications with news media that Apple could

26  identify scammers, that Apple paid scammers, or that Apple retained money from scams, they

27  would have contacted Apple or otherwise changed their behavior.

28  Case No.: 5:20-cv-04812-EJD
   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In Plaintiffs' Opposition, they allege a fourth discernible theory of fraud by omission: that

2    Apple failed to sufficiently disclose in the warning language on the gift card itself "that gift card

3    scams exist and are common, and that anyone asking for a gift card code for payment is a

4    scammer." Opp'n, at 11. Plaintiffs allege that this omission resulted in an "anemic" warning that

5    "does not convey the information a victim would need to understand that he or she is in the

6    process of being scammed." *Id*. Plaintiffs also allege that this warning came too late, as it is not

7    visible to consumers "at the point of retail purchase" because the cardboard packaging sleeves

8    cover it. *See, e.g.*, CAC ¶ 84. Similar to the analysis above, since none of the Plaintiffs claim that

9    they read the warning language or any of the language on the cardboard packaging sleeves, let

10   alone that this language influenced their behavior as they were being scammed, Plaintiffs cannot

11   argue that curing an alleged omission in the warning language would have changed Plaintiffs'

12   behavior such that they would have successfully identified and avoided the scam that was taking

13   place.

14   As to the fifth discernible theory of fraud by omission, Plaintiffs allege that Apple, in its

15   phone calls with scam victims, failed to disclose its abilities to identify scammers, stop payments

16   to scammers, and return funds to scam victims. *See, e.g.*, CAC ¶ 100. The Court finds that this

17   alleged omission does not contradict the representation made by Apple or any fact Apple was

18   obliged to disclose. "[T]o be actionable the omission [in a fraud by omission claim] must be

19   contrary to a representation actually made by the defendant, or an omission of a fact the defendant

20   was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835. Plaintiffs argue that Apple omitted

21   the information that "if [scam] victim[s] promptly contact[] Apple and provide[] [gift] card

22   numbers, Apple [can] stop the scam and return the full value of the card to the victim[s]." Opp'n at

23   8–9. Plaintiffs allege that this omission "discourage[d] victims from [contacting Apple and]

24   vindicating their rights." *See, e.g.*, *id.* at 8. Plaintiffs' claim includes references to two instances

25   where Apple representatives communicated with scam victims on the phone. CAC ¶¶ 100, 107;

26   Opp'n at 3–4, 7. Even assuming that Plaintiffs would have "behaved differently," *Keegan*, 838 F.

27   Supp. 2d at 940, had they been told that Apple could identify scammers, that Apple paid

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    scammers, and that Apple retained money received via scams, these purported omissions were not

2    "contrary to," *Daugherty*, 144 Cal. App. 4th at 835, Apple's disclaimer policies regarding refunds

3    for stolen gift cards. Apple's disclaimer policy states that "[n]either Issuer nor Apple is

4    responsible for lost or stolen [iTunes gift cards]." *See, e.g.*, CAC ¶ 220 (referencing the Terms and

5    Conditions as they appear on Apple's website).

6                    **iii.   Distinction from *In re Apple In-App Purchase Litig.***

7            In *In re Apple In-App Purchase Litig.*, this Court denied a motion to dismiss claims of

8    affirmative misrepresentative and fraud by omission brought against Apple, but those claims were

9    distinct from the claims in the instant case. In *In re Apple In-App Purchase Litig.*, the Court found

10   that plaintiffs had sufficiently pleaded reliance and causation regarding claims of affirmative

11   misrepresentation. 855 F. Supp. 2d at 1039 (some internal quotations omitted) ("Plaintiffs

12   [pleaded] specific facts that Apple . . . advertis[ed] . . . [certain] Apps as 'free' or nominal," and

13   "[t]he Complaint explicitly state[d] that at least one Plaintiff downloaded a game app and gave it

14   to her son [b]ecause it said it was 'free.'"). In the instant case, Plaintiffs do not similarly claim

15   reliance or causation regarding Apple's alleged misrepresentations. Plaintiffs do not allege any

16   facts suggesting that they were scammed, or that they were discouraged from seeking a refund

17   after having been scammed, because of Apple's alleged affirmative misrepresentations.

18           In *In re Apple In-App Purchase Litig.*, the Court also found that plaintiffs had sufficiently

19   pleaded that Apple's alleged omissions were material, because (1) plaintiffs claimed that had they

20   been aware of the omitted information they would have behaved differently, and (2) Plaintiffs had

21   claimed that the omitted material was contrary to actual representations made by Apple, or

22   contrary to facts Apple was obliged to disclose, both of which were sufficient to show materiality

23   under *Keegan*, 838 F. Supp. 2d at 940. *In re Apple In-App Purchase Litigation*, 855 F. Supp. 2d at

24   1039 ("Plaintiffs . . . assert they were not informed by Apple that once an iTunes account holder

25   entered a password, he or she could make purchases for up to fifteen minutes without re-entering

26   the password. . . . Plaintiffs contend that . . . '[h]ad any [p]laintiff or other member of the Class

27   known what their children were purchasing and for how much, they would not have permitted the

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
                                        23

sales transaction from being consummated.'"). In the instant case, Plaintiffs do not similarly claim that Apple's alleged omissions—regarding its ability to identify scammers, its distribution of money to scammers, and its retaining of money received via scams—were material facts. Nor do Plaintiffs claim that had they been aware of the omitted information they would have behaved differently, or  that the omitted material was contrary to actual representations made by Apple or contrary to facts Apple was obliged to disclose.

Accordingly, this Court GRANTS Apple's motion to dismiss as to Plaintiffs' affirmative misrepresentation and fraud by omission theories raised in Counts I–III without prejudice.

### c.   Unconscionability (Parts of Counts I and XI)

In Count I, Plaintiffs allege that Apple included an unconscionable disclaimer of liability in its gift card Terms and Conditions, in violation of the CLRA. CAC ¶¶ 132–48 (indicating that section (a)(19) of the CLRA prohibits "[i]nserting an unconscionable provision in [a] contract").[4] In Count XI (and elsewhere throughout the CAC), Plaintiffs allege that Apple's disclaimer is unconscionable and unenforceable. *Id.* ¶¶ 215–222; *see also, e.g.*, *id*. ¶ 51. Apple's disclaimer language states: "Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission." *Id*.  ¶ 166 (citing Apple's Terms and Conditions as they appear on the packaging of iTunes gift cards).

"Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, while substantive unconscionability focuses on overly-harsh or one-sided terms." *Antonelli v. Finish Line, Inc.*, No. 5:11-CV-03874 EJD, 2012 WL 525538, at *3

---

[4] Plaintiffs also allege that the disclaimer language in Apple's Terms and Conditions, in the event that it is valid, does not effectively absolve Apple of liability for aiding and abetting intentional torts or violating California unfair competition statutory laws. *See, e.g.*, CAC ¶ 168. As discussed above, the Court finds that Plaintiffs failed to state a claim based on third-party liability, and therefore the Court need  not reach this question. *See supra.*

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

(N.D. Cal. Feb. 16, 2012) (citation omitted); *see also Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, No. 5:13-CV-01007-EJD, 2013 WL 6158040, at *3 (N.D. Cal. Nov. 22, 2013). "Although contracts of adhesion often prove procedurally unconscionable, there is no automatic rule forbidding adhesion contracts on unconscionability grounds." *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, No. 5:13-CV-02559-EJD, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) (internal citations omitted) at *3. "[T]here can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices." *Id*. (internal citations omitted).

Plaintiffs argue that Apple's disclaimer is unconscionable and unenforceable "because Apple aids, abets, and profits from the gift card scams, has the ability to identify and/or knows the identity of gift card scammers, and knowingly transfers money obtain[ed] through gift card scams to the scammers' Apple Developer account." CAC ¶ 146. Plaintiffs argue that the disclaimer is "adhesive" and "misleading," and includes "non-negotiable terms." Opp'n at 13–14. Plaintiffs point to Calif. Civil Code §1668, which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." *Id*. at 14. Plaintiffs argue that Apple's disclaimer is invalid on these grounds, because it "attempts to disclaim liability for intentional conduct or violation of law." *Id*. Plaintiffs cite *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1500, 55 Cal. Rptr. 3d 59 (2007) and *Health Net of California, Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224, 235, 6 Cal. Rptr. 3d 235 (2003) to argue that courts have held that disclaimers similar to Apple's were invalid because they violated Cal. Civ. Code § 1668. *Id*.

Apple argues that Cal. Civ. Code § 1668 does not apply because Apple is not aiding and abetting third-party tortfeasors and is not otherwise liable for third-party tortfeasors. Apple further argues that its disclaimer is "precisely the sort of 'qualifying language' that the Ninth Circuit has applied to affirm the dismissal of similar consumer fraud claims." Reply ISO MTD at 9–10 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) and *Davis v. HSBC Bank Nevada, N.A.*,

1   691 F.3d 1152, 1169 (9th Cir. 2012)). Apple argues that its disclaimer language appears clearly

2   and conspicuously, both on its gift card packaging and online, that the disclaimer is not illegal, and

3   that customers who purchase their gift cards are bound by the Terms and Conditions regardless of

4   whether the customers read them. MTD at 16–19.

5          Plaintiffs do not sufficiently state a claim that Apple's disclaimer is substantively

6   unconscionable or that it is procedurally unconscionable. Plaintiffs fail to allege that Apple is

7   aiding and abetting third-party tortfeasors or is otherwise liable for third-party tortfeasors, *see*

8   *supra*, and therefore, the Court agrees with Apple that Plaintiffs fail to state a claim under Cal.

9   Civ. Code § 1668. Opp'n at 14. Plaintiffs cite *Manderville* and *Health Net of California* for their

10  argument, but the court in *Manderville* found a contract provision invalid on the basis that the

11  defendant had made an affirmative misrepresentation and thereafter attempted to avoid liability by

12  pointing to the provision, which contained various exculpatory clauses. 146 Cal. App. 4th at

13  1497–1502. Here, the court does not find that Apple made any affirmative misrepresentation (or

14  fraud by omission). *See supra*. The court in *Health Net of California* found a contract provision

15  invalid because the provision attempted to exempt the defendant from following laws. 113 Cal.

16  App. 4th at 228–29, 232–35 (where the contract provision in question reads: "[T]he parties agree

17  that any . . . applicable laws shall not be interpreted to create contractual obligations upon [the

18  parties], unless such applicable laws are expressly incorporated into [the contract].") Here,

19  Apple's disclaimer does not attempt to avoid California unfair competition statutes or otherwise

20  contract around the law. Plaintiff's assertion that Apple "attempts to disclaim liability for

21  intentional conduct or violation of law," therefore, fails to establish that the disclaimer is

22  substantively unconscionable.

23         While the Court agrees with Plaintiffs that the disclaimer may reflect unequal bargaining

24  power and could possibly constitute an adhesion contract, there are no allegations suggesting that

25  Plaintiffs lacked meaningful choice in deciding whether to purchase a gift card subject to the

26  disclaimer. Because Plaintiffs do not allege that they lacked meaningful choice, they fail to show

27

28  Case No.: 5:20-cv-04812-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    oppression and, therefore, fail to establish that Apple's disclaimer was procedurally

2    unconscionable.

3           The Court GRANTS Apple's motion to dismiss as to Plaintiffs' claims of unconscionable

4    disclaimer in Counts I and XI without prejudice.

5                       **d.  Quasi-contract claim (Count V)**

6           Plaintiffs assert a cause of action they term "Money Had and Received / Unjust

7    Enrichment / Restitution," alleging that "Apple received and is in possession of money that was

8    intended to be used for the benefit of, and rightfully belongs to, Plaintiffs and members of the

9    Class." CAC ¶¶ 175–79.  The Court interprets this cause of action as a quasi-contract claim.

10   *Friedman v. U.S. Bank Nat'l Ass'n*, No. CV16-2265-CAS(FFMX), 2016 WL 3226005, at *8 (C.D.

11   Cal. June 6, 2016) ("[A]n action for money had and received is based on the existence of a quasi-

12   contract."); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a

13   plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract

14   claim seeking restitution.") (internal citation omitted)).

15          In the instant case, Plaintiffs' argue that a quasi-contract exists because, "[t]o the extent the

16   agreements between Plaintiffs and the Class and Apple do not address the issue of Apple's receipt

17   of commissions from, and payments to, third party App and iTunes product merchants . . . for

18   scammed gift cards, Apple is still liable to the Class." CAC ¶ 176. Throughout their CAC and

19   Opp'n, Plaintiffs argue that Apple's Terms and Conditions are "illegal" and "invalid," because

20   Apple is aiding and abetting third-party tortfeasors, because the Terms and Conditions contain

21   affirmative misrepresentations and frauds by omission therein, and because the Terms and

22   Conditions contain unconscionable and/or unenforceable provisions. *See, e.g.*, Opp'n at 1–2.

23          Plaintiffs argue that they can make quasi-contract claims in the alternative that the Court

24   finds Apple's Terms and Conditions to be an invalid contract. Opp'n at 19 (citing, *inter alia*, Fed.

25   R. Civ. P. 8(d)(2-3) ((2) "A party may set out 2 or more statements of a claim or defense

26   alternatively or hypothetically, either in a single count or defense or in separate ones. If a party

27   makes alternative statements, the pleading is sufficient if any one of them is sufficient. (3) A party

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    may state as many separate claims or defenses as it has, regardless of consistency."). Plaintiffs

2    point to *Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986 (S.D. Cal.

3    June 19, 2018), where the court held that it would be inappropriate to dismiss plaintiffs' claims for

4    equitable relief, including a claim of unjust enrichment, even if the claims were duplicative of

5    other claims that had legal remedies. *Id.* at 6–8. Plaintiffs also cite *Beasley v. Conagra Brands,*

6    *Inc.*, 374 F. Supp. 3d 869 (N.D. Cal. 2019), and *Espineli v. Toyota Motor Sales U.S.A., Inc.*, No.

7    217CV00698KJMCKD, 2018 WL 3769383 (E.D. Cal. Aug. 9, 2018). In *Beasley*, the court stated

8    in a footnote that "questions about the appropriateness of specific remedies are premature at [the

9    motion to dismiss] stage." 374 F. Supp. 3d at 879. In *Espineli*, the defendant argued that plaintiffs'

10   equitable relief claims should be dismissed because plaintiffs pleaded them in the alternative and

11   offered no facts indicating their legal remedies were inadequate. The court "decline[d] to dismiss

12   plaintiffs' equitable claims on this basis." 2018 WL 3769383, at *4.

13          Apple points to *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194,

14   51 Cal. Rptr. 2d 622 (1996), and *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th

15   Cir. 1996), for the proposition that "an action based on an implied-in-fact or quasi-contract cannot

16   lie where there exists between the parties a valid express contract covering the same subject

17   matter." *Lance Camper Manufacturing Corp.*, 44 Cal. App. 4th at 203. Apple argues that its

18   Terms and Conditions, which include the provision that "Apple . . . is [not responsible] for any

19   loss or damage resulting from lost or stolen cards or for use without permission," RJN Exhibit 1,

20   constitute a valid express contract that "define[s] the scope of its duty to refund consumers." Reply

21   ISO MTD at 13. Apple argues that "courts have routinely held at the motion to dismiss stage that a

22   plaintiff cannot plead a quasi-contract claim when an express contract governs the substance of the

23   claim." *Id.* at 13 (citing *Lusson v. Apple, Inc.*, No. 16-CV-00705-VC, 2016 WL 10932723 (N.D.

24   Cal. June 20, 2016), and *Coldwell Banker Real Estate LLC v. New All. Properties, Inc.*, No.

25   CV1701505BROSKX, 2017 WL 5635023 (C.D. Cal. June 15, 2017). Apple argues that Plaintiffs'

26   use of *Wildin*, *Beasley*, and *Espineli* is incorrect because these stand for the proposition that

27   "plaintiff[s] can seek alternative *remedies* [when they have an adequate remedy at law]," and they

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

do not address the question of "whether [p]laintiffs can state a quasi-contract *claim* when an express contract covers the same subject matter." Reply ISO MTD at 13–14 (emphasis preserved). Apple further argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020) overruled these cases. *Id.*

The Court finds that *Beasley* and *Espineli* are inapposite to the present case because they do not involve instances where plaintiffs bring quasi-contract claims regarding subject matter covered in a valid contract.

In *Wildin*, the plaintiffs brought, *inter alia*, a breach of warranty claim and also an unjust enrichment claim that was based on similar facts as the breach of warranty claim. *Wildin*, 2018 WL 3032986, at *1–*2, *6–*8. The defendants argued there, similar to what Apple argues here, that "[a]s a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract." *Id.* at 8 (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682, 699 (2010)). The court in *Wildin* denied the motion to dismiss, and held that, even assuming the warranty-based claims and the unjust enrichment claims were the same, "it [was] not appropriate to resolve this remedy issue at the pleadings stage." *Id.* In effect, the court in *Wildin* allowed a quasi-contract claim to proceed even though there was a valid contract covering the subject matter of the claims. *Id.* at *7–*8. The court made this decision on the basis that discovery might come to reveal that the contract in question was invalid, failed to cover the subject matter of the claims, or otherwise did not provide an adequate legal remedy. *Id.* at *7. This reasoning was connected with and parallel to another holding in *Wildin*—that a party can bring a UCL-based equitable relief claim and also legal remedy claim even when both claims are based on identical facts. *Id.* at *6–*7 ("[S]everal district courts in this circuit have found it appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages. . . . Other district courts in this circuit, however, have declined to follow this practice. . . . The Court sides with the latter group of decisions in this intra-circuit split."). The *Wildin* court's rationale for this parallel holding was that the legal remedy claim might fail after the motion to dismiss stage. *Id.* at *7 ("Discovery may reveal that the

1    [plaintiffs'] claims providing legal remedies are inadequate for any number of reasons, despite the

2    fact that their allegations appear adequate [at the motion to dismiss stage].").  In other words, even

3    though a claim for equitable relief requires a party to allege a lack of adequate legal remedy, the

4    *Wildin* court held that a party can satisfy this requirement at the motion to dismiss stage by

5    alleging that a lack of adequate legal remedy might emerge in discovery. *Id*. at *6–*8.

6          But the United States Court of Appeal for the Ninth Circuit recently rejected this wait-and-

7    see approach. *Id*. at *7. *See Sonner*, 971 F.3d at 843–44. The *Sonner* court held that for a party to

8    bring equitable relief claims under the UCL and CLRA, the party must sufficiently allege a lack of

9    legal remedy in order to survive a motion to dismiss. *Id*. at 844 ("[T]he traditional principles

10   governing equitable remedies in federal courts, including the requisite inadequacy of legal

11   remedies, apply when a party requests restitution under the UCL and CLRA in a diversity

12   action."). Although the Ninth Circuit did not expressly overrule *Wildin*, this Court finds that under

13   *Sonner*, a quasi-contract claim cannot survive a motion to dismiss unless the proponent adequately

14   pleads that no legal remedy exists.

15         As indicated above, the Court finds that Plaintiffs have not sufficiently alleged that

16   Apple's Terms and Conditions are invalid or are in any way unenforceable. The Court further

17   finds that the Terms and Conditions cover the subject matter of whether gift card purchasers will

18   receive refunds for lost or stolen gift cards. Therefore, the Court finds that Plaintiffs fail to allege

19   that there is no legal remedy for their claims regarding refunds for lost or stolen gift cards and

20   their quasi-contract claim fails. *Lance Camper Manufacturing Corp.*, 44 Cal. App. 4th 194 at 203;

21   *see also, e.g.*, *Paracor Finance, Inc.*, 96 F.3d 1151; *Lusson*, 2016 WL 10932723; *Coldwell Banker*

22   *Real Estate LLC*, 2017 WL 5635023. Because the Court finds that amendment on this claim would

23   be futile, the Court GRANTS Apple's motion to dismiss as to Plaintiffs' quasi-contract claim with

24   prejudice.

25                    **e.   Breach of implied covenant of good faith and fair dealing (Count VI)**

26         In Count VI, Plaintiffs allege that Apple breached the implied covenant of good faith and

27   fair dealing. CAC ¶¶ 180–86. Plaintiffs allege Apple's Terms and Conditions implied a benefit—

28

1   specifically, that Apple would "act with 'good faith and fair dealing' in all duties relating to the

2   performance of the contract"—with which Apple interfered. *Id.* Plaintiffs allege Apple interfered

3   by failing to stop fraud, and by attempting to unconscionably disclaim its liability. *Id.*; *see also id.*

4   ¶ 49 (citing Apple's Terms and Conditions).

5           "The covenant of good faith and fair dealing [is] implied by law in every contract, [and]

6   exists merely to prevent one contracting party from unfairly frustrating the other party's right to

7   receive the *benefits of the agreement actually made.*" *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317,

8   349, 8 P.3d 1089, 1110 (2000) (emphasis preserved). "[T]he factual elements necessary to

9   establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a

10  contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent

11  to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's

12  rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's

13  conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010)

14  (internal citations omitted).

15          Plaintiffs point to Apple's Terms and Conditions language, in which "Apple reserves the

16  right to 'void or deactivate' stored value, 'cancel or limit orders,' and 'suspend or terminate the

17  ability to use [Apple's] Services' if Apple suspects the stored value was obtained or used

18  fraudulently or unlawfully." Opp'n at 16 (citing CAC ¶ 50). Plaintiffs allege that Apple's

19  reservation of these rights implies the benefit that "Apple can and will stop known or suspected

20  fraud in its tracks and prevent fraudsters from profiting from unlawful activity." Opp'n at 16. But

21  Apples' reservation of certain rights does not obligate Apple to act at all, let alone take the

22  substantial actions Plaintiffs indicate. In the absence of any contractual obligation, Plaintiffs do

23  not sufficiently allege that the purported benefit of Apple's "stop[ping] . . . fraud in its tracks,"

24  Opp'n at 16, was a "benefit[] of the agreement actually made," *Guz*, 24 Cal. 4th at 349.

25          Plaintiffs also allege that Apple's "limitation of liability is unconscionable due to Apple's

26  knowing or reckless participation in and profiting from gift card scams, and active concealment

27  and failure to disclose its involvement and its ability to track and stop payment to scammers."

28  Case No.: 5:20-cv-04812-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
    31

1   CAC ¶ 184. Plaintiffs allege that this allegedly unconscionable disclaimer amounts to a violation

2   of the implied covenant of good faith and fair dealing with respect to the contract formed on the

3   basis of Apple's Terms and Conditions. *Id.* Again, Plaintiffs do not plausibly allege that Apple's

4   disclaiming of liability for lost or stolen gift cards conflicts with any benefit of the agreement.

5   Plaintiffs cite *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517 (N.D.

6   Cal. 2009), but the case is not helpful for Plaintiffs. In *Realnetworks* the court denied a motion to

7   dismiss a counterclaim based on breach of implied covenant of good faith and fair dealing because

8   the defendant alleged that the purpose of the contract in question was to "prevent casual

9   consumers from making unauthorized copies of . . . DVD content," *id.* at 524 (citing the contract

10  itself), and that the plaintiff, Realnetworks, Inc. ("Realnetworks") had manufactured and/or

11  offered for sale products that could circumvent DVD protections intended to prevent copying, *id.*

12  at 522. In the instant case, Plaintiffs do not allege that Apple's Terms and Conditions had a

13  similarly clear purpose of giving gift card users the benefit of protection from fraud, or, assuming

14  there had been such an implied benefit, that Apple's alleged failures to stop fraud or its disclaimer

15  of liability specifically interfered with that benefit in the way that Realnetworks' software

16  specifically undermined with DVD protections preventing copying. Thus, Plaintiffs fail to

17  sufficiently allege that Apple "unfairly interfered," *Rosenfeld*, 732 F. Supp. 2d at 968, with any

18  bargained-for benefit of the contract.

19  Because the Court finds that further amendment on this claim would be futile, the Court

20  GRANTS Apple's motion to dismiss Plaintiffs' claim of breach of implied covenant of good faith

21  and fair dealing with prejudice.

22  ### f.   California Elder Abuse Law Claim (Count VIII)

23  Plaintiffs claim Apple violated California Elder Abuse Law. CAC ¶¶ 192–99. The

24  California Elder Abuse Law (Cal. Welfare & Inst. Code §15600, *et seq.*) states the following:

25  (a) "Financial abuse" of an elder or dependent adult occurs when a person or

26  entity does any of the following:

27

28  Case No.: 5:20-cv-04812-EJD
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(1) takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both;

(2) assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both; [or]

(3) takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence.

CAC ¶ 194 (citing Cal. Welfare & Inst. Code §15610.30(a)(1)–(3)).

### i.   §15610.30(a)(1)

Plaintiffs correctly point out that, for a defendant to be liable under §15610.30(a)(1) of the California Elder Abuse Law, it is required that the defendant "knew or should have known that [their] conduct [was] likely to be harmful to the elder or dependent adult." Opp'n at 17–18 (citing Cal. Welfare & Inst. Code §15610.30(b)). But this knowledge requirement is an "additional requirement"—not the only requirement. *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 657, 203 Cal. Rptr. 3d 785, 799 (2016). The Court first considers whether Plaintiffs plausibly allege that Apple "[took], … obtain[ed], or retain[ed]" the value of elder persons' stolen gift cards "for a wrongful use or with intent to defraud, or both." CAC ¶ 194 (citing Cal. Welfare & Inst. Code §15610.30(a)(1)).

Plaintiffs allege that Apple violated §15610.30(a)(1) of the California Elder Abuse Law because Apple "took, secreted, appropriated, obtained, and/or retained Plaintiffs' and Elder Subclass members' property . . . for wrongful use or with an intent to defraud Plaintiffs and Elder Subclass members." *Id*. ¶ 196. Plaintiffs allege that "Apple 'obtains' the iTunes gift card's stored value by virtue of its control over it for approximately 45 days." Opp'n at 17 (citing §15610.30(a)(1)). Plaintiffs allege that Apple misleads scam victims by telling them "there is nothing Apple can do, when, in fact, Apple has sufficient control over its systems to prevent the

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

33

scammers from obtaining the money." *Id*. Plaintiffs allege that Apple "fails to disclose its 30% commission and its control over the stored value[,] . . . knowing its omissions are likely to be harmful to the elderly scam victim, because a reasonable person would expect to be refunded while Apple still has control over the stored value." *Id*.

Plaintiffs point to *Wood v. Jamison*, 167 Cal. App. 4th 156, 83 Cal. Rptr. 3d 877 (2008), as an analogous case. Opp'n at 18. In *Wood*, The defendant was a lawyer whose client had falsely claimed to be the nephew of an elderly woman. *Wood*, 167 Cal. App. 4th at 158. Under the pretense that the two would open a night club together, the false nephew had persuaded the elderly woman to give him $174,000 and to take out a $250,000 loan bearing an annual percentage rate of 18.41 percent. *Id*. at 158–59. The defendant lawyer, while never telling the elderly woman that he was not acting as her attorney or advising her about the risks of loans, walked the elderly woman through all stages of the loan process, receiving a $4,000 referral fee from the lender, which came out of the elderly woman's funds, and $10,000 of the loan proceeds—neither of which he disclosed to the woman. *Id*. The California appellate court affirmed the trial court ruling, finding, among other things, that the defendant "committed financial elder abuse when he took the undisclosed [referral] fee." *Wood*, 167 Cal. App. 4th at 158, 164–65. The court held that "[a]ny attorney would know" that the false nephew was taking the elderly woman's funds for "an inappropriate use." *Id*. at 165. Plaintiffs allege that "Apple's conduct is akin to the attorney that allowed the defendant to obtain the loan and make a finder's fee" because "Apple is aware of the scams, and has the ability to prevent them or refund the monies, yet . . . allows the scams to continue and keeps ill-gotten gains from those transactions." Opp'n at 18.

Apple argues that "Plaintiffs' elder abuse claim is premised on nothing more than Apple's alleged refusal to refund the money stolen by third-party scammers — an obligation that Apple does not have and has also validly disclaimed." MTD at 21. Apple argues that "Plaintiffs have not plausibly alleged a claim under either prong of the statute." Reply ISO MTD at 11 (referencing Cal. Welfare & Inst. Code §15610.30(a)(1)–(2). Apple argues that "Plaintiffs' elder abuse claim fails because [Plaintiffs] have not alleged that Apple took or retained their property for a

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
34

'wrongful use' — which, under California law, requires a showing of 'improper conduct,' 'subjective bad faith,' or other wrongful conduct." Reply ISO MTD at 12 (citing *Paslay*, 248 Cal. App. 4th at 657–58). Apple argues that "Apple's processing of gift card transactions is not remotely analogous to *Wood v. Jamison*." *Id.* (citing *Wood*, 167 Cal. App. 4th 156).

The Court finds that Plaintiffs have adequately alleged that Apple "obtain[ed]" Plaintiffs' money over the course of various third-party scams. Cal. Welfare & Inst. Code §15610.30(a)(1). The Court next looks to determine whether Plaintiffs have plausibly alleged that Apple "obtain[ed]," this money with a "wrongful purpose" or "intent to defraud." *Id*. Having already granted Apple's motion to dismiss Plaintiffs' claims of affirmative misrepresentation and fraud by omission, the Court does not consider Plaintiffs' arguments of affirmative misrepresentation and fraud by omission as they pertain to showing "wrongful use" or "intent to defraud" for the purpose of establishing elder abuse. Apple's alleged behavior is distinct from the defendant's behavior in *Wood*. Plaintiffs do not allege that Apple openly shirked its professional responsibilities to elderly customers or specifically targeted elderly persons as part of a self-evidently inappropriate scheme. Whereas in *Wood* the defendant advised an elderly woman to enter into a scam, here Apple, with its red warning language, Terms and Conditions, and "About Gift Card Scams" webpage, attempts to lead all of the public including elderly persons away from scams. Plaintiffs allege only that Apple processed transactions made with gift cards that happened to be stolen from elder persons— in the exact same way that Apple processed all other gift card transactions. Apple's alleged behavior thus does not rise to the level of "wrongful use," or "intent to defraud," sufficient to state a claim for elder abuse under the California Elder Abuse Law §15610.30(a)(1).

### ii.    §15610.30(a)(2)

Plaintiffs alleged that Apple violated §15610.30(a)(2) of the California elder abuse statute because Apple "assisted in the taking, secreting, appropriating, obtaining, or training of Plaintiffs' and Elder Subclass members' property, for wrongful use or with an intent to defraud Plaintiffs and Elder Subclass members." CAC ¶ 196. Plaintiffs allege that Apple "fail[s] to suspend or cancel iTunes gift cards that were involved in scams, fail[s] to suspend or terminate Apple ID[] accounts

1    involved in gift card scams, permit[s] Apple ID accounts involved in gift card scams to make

2    purchases on iTunes or in the App Store, transfer[s] payment to Apple Developer accounts that

3    were involved in scams, fail[s] to suspend or terminate Apple Developer accounts that were

4    involved in gift card scams, and retain[s] for its own benefit commissions from purchases on

5    iTunes or in the App Store that were made with iTunes gift cards from scams perpetrated on

6    Plaintiffs and Elder Subclass members." *Id.* ¶ 197. Plaintiffs allege that Apple misleads scam

7    victims by telling them "there is nothing Apple can do, when, in fact, Apple has sufficient control

8    over its systems to prevent the scammers from obtaining the money." Opp'n at 17. Plaintiffs allege

9    that Apple "fails to disclose its 30% commission and its control over the stored value[,] . . .

10   knowing its omissions are likely to be harmful to the elderly scam victim, because a reasonable

11   person would expect to be refunded while Apple still has control over the stored value." *Id.*

12        Apple argues that "California's assistance-of-elder-abuse statute incorporates the 'common

13   law rule for subjecting a defendant to liability for aiding and abetting a tort,'" and "does not

14   impose 'liability on a defendant who 'provides ordinary services that effectuate financial abuse by

15   a third party.'" Reply ISO MTD at 12 (citing *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727,

16   744–45, 112 Cal. Rptr. 3d 439, 453–54 (2010)). Apple argues that, if the law were otherwise,

17   "liability would extend to every retailer or service provider where ill-gotten funds were used."

18   MTD at 21.

19        The Court agrees with Apple that the standard for determining whether a party "assist[ed]

20   in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or

21   dependent adult for a wrongful use or with intent to defraud, or both" under Cal. Welfare & Inst.

22   Code §15610.30(a)(2) is an aiding-and-abetting standard, and not a strict liability standard. *Das*,

23   186 Cal. App. 4th at 744. For the reasons stated above, Plaintiffs have not sufficiently stated a

24   claim that Apple aided and abetted third-party tortfeasors. Plaintiffs therefore do not state a claim

25   that Apple violated §15610.30(a)(2) of the elder abuse statute.

26        The Court GRANTS without prejudice Apple's motion to dismiss Plaintiffs' claim of elder

27   abuse under California law.

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
     36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### g.   Claims regarding elder abuse laws of other states (Counts IX and X)

Plaintiffs make elder abuse claims under the statutes of 49 other states and Washington, D.C. CAC ¶¶ 200–14. Plaintiffs specifically provide statutory language from the Oregon Elder Persons and Persons with Disability Abuse Prevention Act (Ore. Stat. § 124.005, *et seq.*), and make claims under that statute. *Id.* ¶¶ 207–14 (Count X). For the 49 other statutes, Plaintiffs provide a general theory of how Apple commits elder abuse, and then list the names of each respective statute. *Id.* 200–206 (Count IX). Apple argues that Apple's Governing Law provision in its Terms and Conditions, which indicates that California law will apply to disputes involving iTunes gift cards, and the authority of which Plaintiffs themselves cite in the CAC, precludes such claims. *Id.* ¶¶ 126–31. Apple argues that, even if the statutes of other states can apply in the present case, Plaintiffs' theory under the Oregon statute is "unavailing" and Plaintiffs' theories under the statutes of the other 48 states are non-existent. MTD at 22. In their Opposition, Plaintiffs do not provide any defense for their claim that Apple has violated the statutes of 48 states and Washington, D.C. The Court finds that Plaintiffs have effectively conceded those claims and that in any event, they are insufficiently pled.

Regarding Plaintiffs' claim under the Oregon statute, the Court sets aside the question of whether the governing clause precludes Plaintiffs' ability to bring a claim under Oregon state law because the Court finds that the claim fails on its merits. Part of the Oregon statute provides that the financial abuse of a vulnerable person occurs when a person "wrongfully takes of appropriates money or property of a vulnerable person." CAC ¶ 209 (citing Ore. Stat. §124.110(1)). Plaintiffs make an argument similar to the one they make under the California elder abuse statute. Plaintiffs argue that Apple "took and/or appropriated" the money of certain elderly Plaintiffs "by wrongfully obtaining [it] through scams." CAC ¶ 211. Plaintiffs argue that Oregon case law indicates that "wrongful" in this context refers to conduct "carried out in pursuit of an improper motive or by improper means." Opp'n at 19 (citing *Church v. Woods*, 190 Or. App. 112, 77 P.3d 1150 (2003)). Plaintiffs argue this taking and appropriating was "wrongful" in part because Apple committed

United States District Court
Northern District of California

1    affirmative misrepresentations and frauds by omission that resulted in harm for the Plaintiffs in

2    question. *Id.* ¶ 212.

3         In their Reply ISO MTD, Apple cites to *Bates v. Bankers Life & Cas. Co.*, 362 Or. 337,

4    408 P.3d 1081 (2018) for the proposition that the Oregon statute "requires the plaintiff to establish

5    the 'improper acquisition by another person of the vulnerable person's property or money — such

6    as by fraud, conversion, or theft.'" Reply ISO MTD at 18 (citing *Bates*, 362 Or. at 343–44). Apple

7    argues that Plaintiffs' allegations do not establish "wrongful" conduct as required by the Oregon

8    statute.

9         For the same reasons that the Court granted the dismissal of Plaintiffs' claims under the

10   California elder abuse statute, the Court finds that Plaintiffs fail to state a claim under the Oregon

11   elder abuse statute. For reasons given in sections above, the Court finds that Plaintiffs failed to

12   sufficiently plead affirmative misrepresentation, fraud by omission, or aiding and abetting fraud.

13   *See supra.* Plaintiffs otherwise fail to provide sufficient facts indicating that Apple's conduct was

14   "wrongful" when it processed transactions involving gift cards that had been stolen from elderly

15   persons.

16        The Court GRANTS Apple's motion to dismiss Plaintiffs' claims of elder abuse under

17   Oregon's state law, and the laws of 48 other states and Washington, D.C., without prejudice.

18                    **h.   Declaratory judgment (Count XI)**

19        Under the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs in their CAC seek

20   declaratory judgments with respect to their claims that Apple engaged in affirmative

21   misrepresentation and fraud by omission, that Apple aided and abetted intentional torts and

22   otherwise is liable for third-party misconduct, and that Apple included an unconscionable and/or

23   unenforceable provision in its disclaimer language. CAC ¶¶ 215–22. In the Motion to Dismiss,

24   Apple argues that the Court should dismiss Plaintiffs' declaratory relief claims because "'[w]hen

25   the issues invoked in a request for declaratory relief already [are] fully engaged by other causes of

26   action, . . . then declaratory relief is unnecessary and superfluous and must be dismissed." MTD at

27   23 (citing *Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, No.

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    SACV1501791JVSDFMX, 2016 WL 9045621, at *8 (C.D. Cal. Jan. 28, 2016) (internal quotations

2    omitted)). Plaintiffs' Opposition addresses only their claim for a declaration that "Apple's

3    disclaimer is unconscionable and unenforceable." Opp'n at 20. For the reasons stated above, the

4    Court finds that Plaintiffs fail to sufficiently allege that Apple's disclaimer is unconscionable

5    and/or unenforceable. Thus, the Court need not consider whether Plaintiffs declaratory relief

6    claims in the CAC are duplicative of and therefore precluded by their other causes of action.

7         The Court GRANTS Apple's motion to dismiss Plaintiffs' claim for declaratory judgment

8    without prejudice.

9              **i.   Prayer for restitution**

10        Plaintiffs seek equitable relief in their CLRA claims, their UCL claims, their FAL claims,

11   their quasi-contract claims, and their declaratory relief claims. *See, e.g.*, CAC ¶¶ 147, 156, 163,

12   175–79. Apple sets forth various arguments regarding why, in the event that the Court finds that

13   Plaintiffs have otherwise sufficiently stated these claims, Plaintiffs' claims for equitable relief will

14   still fail. *See* Reply ISO MTD at 14–15. Because the Court has determined that Plaintiffs have not

15   sufficiently stated any of their claims, the court need not consider whether equitable remedies are

16   available.

17             **j.   Request to allow leave to amend**

18        Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P.

19   15(a). *Miller*, 845 F.2d at 214. Apple argues that, in the event the Court dismisses Plaintiffs'

20   claims, the Court should not grant Plaintiffs leave to amend on the basis that Plaintiffs' amended

21   complaint would be an "exercise in futility." MTD at 25. The Court disagrees. *See Armas*, 2019

22   WL 3323057, at *3 (a "proposed amendment is futile only if no set of facts can be proved under

23   the amendment that would constitute a valid claim.") (quoting *In re Circuit Breaker Litig.*, 175

24   F.R.D. 547, 551 (C.D. Cal. 1997)). Because it may be possible to cure the pleading defects in

25   Counts I, II, III, VII, VIII, IX, X, and XI with an amended complaint, the Court dismisses those

26   claims without prejudice. Counts V and VI are dismissed with prejudice.

27

28   Case No.: 5:20-cv-04812-EJD
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1

**V.    Conclusion**

2

For the reasons stated above, the Court GRANTS Apple's motion to dismiss in full, with

3

leave for Plaintiffs to amend their complaint in accordance with this Order. Plaintiffs shall file an

4

amended complaint, if any, by no later than March 26, 2021.

5

**IT IS SO ORDERED.**

6

Dated: March 4, 2021

7

8

EDWARD J. DAVILA
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:20-cv-04812-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
40