**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
CHRISTOPHER M. BURKE (CA Bar No. 214799)
ALEX M. OUTWATER (CA Bar No. 259062)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
aoutwater@scott-scott.com

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Anthony F. Fata (admitted *pro hac vice*)
Nyran Rose Rasche
Nickolas J. Hagman
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
afata@caffertyclobes.com
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel on Signature Page.]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CARL BARRETT, MICHEL POLSTON, NANCY MARTIN, DOUGLAS WATSON, ERIC MARINBACH, MICHAEL RODRIGUEZ, MARIA RODRIGUEZ, GUANTING QIU, and ANDREW HAGENE Individually, and on Behalf of All Others Similarly Situated, | Case No. 5:20-cv-04812-EJD<br><br>Hon. Edward J. Davila |
| Plaintiffs, | |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| APPLE INC., a California Corporation; APPLE VALUE SERVICES LLC; and DOES 1 Through 10, Inclusive, | <u>**DEMAND FOR JURY TRIAL**</u> |
| Defendants. | |

Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach, Michael Rodriguez, Maria Rodriguez, Guanting Qiu, and Andrew Hagene (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this First Amended Class Action Complaint ("Complaint") against Defendants Apple Inc. and Apple Value Services LLC (collectively, "Apple") and DOES 1 through 10 (collectively, with Apple, "Defendants"). The following allegations are based upon personal knowledge as to Plaintiffs' own facts, upon investigation by Plaintiffs' counsel, and upon information and belief where facts are solely in possession of Defendants.

## NATURE OF THE CASE

1.      Over the last several years, Apple has knowingly kept for itself millions, if not billions, of dollars in stolen money.  Apple has done so despite the fact that some of the victims of the theft, described herein as the "Contact Subclass," have contacted Apple directly and provided Apple with the information necessary to identify and return the stolen funds.

2.      Apple's practice of knowingly keeping stolen funds for itself is, standing alone, unfair.  It is also, standing alone, unlawful.

3.      Apple also employs a number of practices designed to perpetuate the theft at issue – a common gift card scam which is well known to Apple – and to make it easier for Apple to keep the stolen funds for itself.  Those practices, separately and particularly when taken together, are unfair.  They are also, separately and taken together, unlawful, and many of them are also deceptive.

4.      Apple plays a direct and vital role in the gift card scams by converting stolen gift card codes into U.S. dollars or other currency for the scammers and depositing that money directly into the scammers' bank accounts.

5.      Notably, Apple deposits only 70% of the stolen funds into the bank accounts of the scammers, while unfairly and unlawfully retaining 30% of the funds for itself as a commission for the service of knowingly converting the stolen gift card codes into dollars.

6.      Incredibly, on information and belief, in some cases, Apple does not even pay out the 70% of the stolen funds to the scam artists, but instead actually retains 100% of the scammed

FIRST AMENDED CLASS ACTION COMPLAINT
                                                       Case No. 5:20-cv-04812-EJD

funds for its own use and benefit, despite having actual knowledge of the scam and the identity of the victims of the crime.

## **PARTIES**

7.      Plaintiff Carl Barrett is a resident and citizen of Prince George's County, Maryland, living in Hyattsville, Maryland.

8.      Plaintiff Michel Polston is a resident and citizen of Marion County, Oregon, living in Salem, Oregon.

9.      Plaintiff Nancy Martin is a resident and citizen of Sarasota County, Florida, living in Nokomis, Florida.

10.      Plaintiff Douglas Watson is a resident and citizen of Butte County, California, living in Chico, California.

11.      Plaintiff Eric Marinbach is a resident and citizen of Queens, New York, living in Bayside, New York.

12.      Plaintiff Michael Rodriguez is a resident and citizen of Los Angeles County, California, living in Walnut, California.

13.      Plaintiff Maria Rodriguez is a resident and citizen of Los Angeles County, California, living in Walnut, California.

14.      Plaintiff Guanting Qiu is a resident and citizen of Essex County, Massachusetts, living in Peabody, Massachusetts.

15.      Plaintiff Andrew Hagene is a resident and citizen of St. Louis, Missouri, an independent city not located within a county.

16.      Defendant Apple Inc. ("Apple") is a business incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  Apple is engaged in the business of designing, manufacturing, distributing, and selling, *inter alia*, smartphones, tablet computers, wearable technology, headphones, laptops and desktop computers that come with software programs that Apple develops pre-installed.  Apple designs its products in California, and its marketing efforts emanate from California.  Defendant Apple is a citizen of the State of California.

17.     Defendant Apple Value Services LLC is a Virginia corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014.  Defendant Apple Value Services is a citizen of the State of Virginia.

18.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names.  Each of the Defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of Court to amend their Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because: (1) there are 100 or more (named or unnamed) class members; (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest or costs; and (3) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

20.     This Court may exercise jurisdiction over Defendants because Apple is a citizen of this State and District and maintains its principle place of business in this District, has continuous and systematic contacts with this District, does substantial business in this State and within this District, receives substantial revenues from marketing, distribution, and sales of iTunes gift cards in this District, and engages in unlawful practices in this District as described in this Complaint, so as to subject itself to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.

21.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) because Apple is headquartered in this District, advertises in this District, receives substantial revenues and profits from the sale of iTunes gift cards which it directs into the stream of commerce in this District; therefore, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

22.  <u>Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))</u>.  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## **FACTUAL ALLEGATIONS**

23.  Apple describes the iTunes gift card scam as follows:

> A string of scams are taking place asking people to make payments over the phone for things such as taxes, hospital bills, bail money, debt collection, and utility bills.
>
> *        *        *
>
> Regardless of the reason for payment, the scam follows a certain ***formula***:  The victim receives a call instilling panic and urgency to make a payment by purchasing App Store & iTunes Gift Cards or Apple Store Gift Cards from the nearest retailer (convenience store, electronics retailer, etc.).  After the cards have been purchased, the victim is asked to pay by sharing the code(s) on the back of the card with the caller over the phone.

*See* Apple, About Gift Card Scams, https://support.apple.com/itunes-gift-card-scams (emphasis supplied).  The scam is made possible by the nature of Apple's iTunes business.

**Apple's Digital Products**

24.  Apple owns and operates online platforms including the App and iTunes stores. Consumers who access the App and iTunes stores can purchase and download digital applications for mobile devices ("apps") or digital multimedia (such as songs, movies, and television shows).

25.  Apple describes the App Store as an "ecosystem" it created and controls.[1]  The App Store hosts millions of apps that consumers purchase or download directly from the App Store. Apple separates the apps available on the App Store into different categories, including various types of free apps and paid apps.[2]

---

[1]  *See, e.g.*, *In re Apple iPhone Antitrust Litigation*, 139 S. Ct. 1514 (2019), Petition for Writ of Certiorari at 6 ("Apple designed – from the ground up – an ecosystem for the use, development, sale, and distribution of apps.").

[2]  *See App Store – Principles and Practices*, APPLE (*formerly available at:* https://www.apple.com/ios/app-store/principles-practices) (last visited July 16, 2020) (available with Plaintiffs' counsel).

**Apple's Oversight of Its Platforms**

26.     Apple reviews all apps before they are made available for consumers.  Before an app is available on the App Store, developers must submit the prospective app to Apple for review and approval.[3]  Apple "carefully review[s] each app" before it becomes available on the App Store using "a combination of automated systems and hundreds of human experts."[4]  Apple may require the developer to modify or remove functions from the app.[5]

27.     Apple represents that most apps are reviewed "within 24 hours of the developer's submission."  Apple says it rejects 40% of app submissions for issues such as "minor bugs [and] privacy concerns."[6]  Apple thus has knowledge of the contents and design of all apps available on the App Store.

28.     One of the purposes of Apple's review process is to determine whether the app will be used for or facilitate illegal activity.  Apple reserves the right to reject any app used for illegal or criminal activities.[7]  After Apple approves an app, it becomes available to purchase or download from the App Store.  Apple reserves the right to suspend an approved app if it is suspected of facilitating illegal activity.[8]

---

[3]     *See App Review – App Store*, APPLE (https://developer.apple.com/app-store/review) (last visited Mar. 25, 2021).

[4]     *See supra* note 2.

[5]     *See supra* note 3.

[6]     *See App Review – App Store*, APPLE, (*formerly available at:* (https://developer.apple.com/app-store/review) (last visited July 14, 2020) (available with Plaintiffs' counsel).

[7]     *See App Store Review Guidelines – Apple Developer*, APPLE (https://developer.apple.com/app-store/review/guidelines) (last visited Mar. 25, 2021); *Apple Developer Agreement – English*, APPLE (June 8, 2015) (https://developer.apple.com/terms/apple-developer-agreement).

[8]     *See Apple Developer Agreement – English*, *supra* note 7.

**Payment for Apple's Digital Products**

29.     Apple receives a 30% commission on all sales of paid apps, purchases made within apps (often called "in-app purchases"), and paid subscriptions to apps.[9]  On information and belief, Apple take a similar 30 % commission for purchases from iTunes.[10]

30.     To purchase digital content from either iTunes or the App Store, consumers must create and register an account with Apple, called an "Apple ID."[11]  Purchasing songs, movies, or apps from either iTunes or the App Store requires the purchaser to sign in with the user's unique Apple ID and provide Apple with a valid method of payment.

31.     To create an Apple ID, consumers must provide Apple with a valid email address, credit card or billing information, and their date of birth.[12]  Apple requires that all Apple ID accounts be verified with a telephone number or the email address associated with the Apple ID account.[13]

32.     Consumers make purchases from the App or iTunes stores by providing Apple with their credit or debit card information, through PayPal or Apple Pay, or with Apple iTunes gift

---

[9]      *See id.*; *see also Apple Inc. v. Pepper*, No. 17-204, 587 U.S. __ (2019), Brief of Petitioner to the Supreme Court of the United States at 9 (Apple acknowledges that it "review[s]apps for safety and compatibility, host[s] the App Store, act[s] as the developers' sales and delivery agent, collect[s] the purchase price (if any) from consumers on the developers' behalf, and remit[s] proceeds to developers from around the world" and that "developers agree to pay Apple an annual $99 membership fee, and a 30% commission on their sales revenue from paid apps and in-app purchases.").

[10]     *See e.g.*, *iTunes Connect Resources and Help*, APPLE (*formerly available at:* https://itunespartner.apple.com/en/music/faq/Payments%20and%20Financial%20ReportsReading%20Your%20Financial%20Reports) (last visited July 16, 2020) (available with Plaintiffs' counsel).

[11]     *See Apple ID FAQ*, APPLE (https://appleid.apple.com/faq/#!&page=faq) (last visited Mar. 25, 2021).

[12]     *See Create Your Apple ID*, APPLE (https://appleid.apple.com/ account#!&page=create) (last visited Mar. 25, 2021); *How to Create a New Apple ID*, APPLE (https://support.apple.com/en-us/HT204316#macos) (last visited Mar. 25, 2021).

[13]     *See id.*

FIRST AMENDED CLASS ACTION COMPLAINT
                                                  Case No. 5:20-cv-04812-EJD

cards.[14]  Even if consumers wish to use only Apple iTunes gift cards for purchases, Apple requests

valid credit card or billing information.[15]

**App Developers**

33.     Individuals and companies who develop apps distributed on the App Store are

called "Apple Developers."  Apple Developers are required to create and register an Apple ID,

enroll in the Apple Developer Program, enter into the Apple Developer Program License

Agreement, and pay an annual fee of $99.[16]

34.     If Apple Developers want to distribute an app which charges a fee for download

and/or has in-app purchases, they must enter into Apple's Schedule 2 agreement.  By entering into

the Schedule 2 agreement, Apple Developers appoint Apple as their agent relative to their apps

made available on the App Store.

35.     Apple pays Apple Developers after a consumer purchases a Paid App from the App

Store, makes an in-app purchase, or pays a subscription to an app downloaded from the App Store.

Apple makes all payments to Apple Developers electronically.[17]  In order to be paid by Apple,

Apple Developers must provide Apple with their bank account information, and may also be

required to submit tax forms to Apple.[18]

36.     Apple does not pay Apple Developers immediately after consumer transactions.

Instead, Apple waits for its fiscal month (the monthly period during which the purchase was made)

to close, and then waits up to 45 days after the close of that fiscal month before it electronically

---

[14]     *See Payment methods that you can use with your Apple ID*, APPLE (https://support.apple.com/en-us/HT202631) (last visited Mar. 25, 2021).

[15]     *See Redeem App Store & iTunes Gift Card and content codes – Apple Support*, APPLE (https://support.apple.com/en-us/HT201209) (last visited Mar. 25, 2021).

[16]     *See Purchase and Activation – Support – Apple Developer*, APPLE (https://developer.apple.com/support/purchase-activation) (last visited Mar. 25, 2021).

[17]     *See iTunes Connect Resources and Help*, APPLE (https://itunespartner.apple.com/en/ movies/faq/Banking%20and%20Tax_Banking) (last visited Mar. 25, 2021).

[18]     *See Agreements, Tax, and Banking Overview – Apple Store Connect Help*, APPLE (https://help.apple.com/app-store-connect/#/devb6df5ee51) (last visited Mar. 25, 2021).

transfers the money to the Apple Developer's bank account.[19]  Moreover, Apple will not transfer payment unless the Apple Developer meets the minimum payment threshold for that period.[20]  As such, there is a delay of several weeks between the time a consumer purchases an app from the App Store or makes an in-app purchase or subscription payment, and the time Apple pays the Apple Developer.

**iTunes Gift Cards**

37.     Apple sells iTunes gift cards for use on iTunes, in the App Store, or inside of apps purchased or downloaded from the App Store (as noted, the latter are often called "in-app purchases").  iTunes gift cards are sold by Apple both directly to consumers, and indirectly to consumers through retailers.

38.     iTunes gift cards are country/region specific.  iTunes gift cards sold in the United States cannot be used outside of the United States.[21]

39.     iTunes gift cards generally are sold for the amount shown on the face of the iTunes gift card (or an amount selected by the consumer within the range reflected on the face of the card), and generally reflect a stored value equal to the amount paid by the consumer.

40.     Every iTunes gift card has a unique redemption code and PIN on the back of the card.  iTunes gift cards are not active until purchased.  Once purchased, the retailer activates the card.  Unless properly activated, an iTunes gift card cannot be redeemed.  Accordingly, Apple knows the moment a particular iTunes gift card has been purchased and the amount of "stored value" on the card because the retailer must activate the card at the point of sale.

**Apple IDs**

41.     A valid Apple ID is required to redeem iTunes gift cards.  Consumers redeem iTunes gift cards by logging into their Apple ID account and entering the redemption code and PIN on the back of the card.  The value of the iTunes gift card is then transferred to the consumer's

---

[19]     *See Getting paid overview – App Store Connect Help*, Apple (https://help.apple.com/app-store-connect/#/dev6a92b6d7b) (last visited Mar. 25, 2021).

[20]     *See id.*

[21]     *See If You Can't Redeem Your App Store & iTunes Gift Card, Apple Music Gift Card, or Content Code*, Apple (https://support.apple.com/en-us/HT201195) (last visited Mar. 25, 2021).

Apple ID account, and is immediately available to make purchases on iTunes, from the App Store, or in apps.  Once an iTunes gift card has been redeemed, the physical card is worthless, as the entire value of the iTunes gift card has been transferred to the redeemer's Apple ID account.

42.     Apple tracks redemption codes on iTunes gift cards to ensure that a single iTunes gift card is not redeemed multiple times.  Therefore, when an iTunes gift card is redeemed, Apple knows which iTunes gift card was redeemed ***and which Apple ID account redeemed the iTunes gift card***.

43.     The packaging for iTunes gift cards contains minimal terms and conditions.[22]  For example, the outer packaging, which is visible to consumers prior to purchase on iTunes gift card packaging, often provides:

> **Terms and Conditions**
> Valid only on purchases made in the U.S. from Apple Media Services.  Use requires an Apple ID and prior acceptance of license & usage terms.  Not redeemable for cash, for resale, for shipments outside the U.S. & no refunds or exchanges (except as required by law).  Data collection and use subject to Apple's Privacy Policy; see apple.com/privacy.  Neither Apple nor Issuer is responsible for any loss or damage resulting from lost or stolen cards or for use without permission.  Void where prohibited.  Terms apply; see apple.com/us/go/legal/gc.  App Store and iTunes gift cards are issued and managed by Apple Value Services ("Issuer").  © 2017 Apple Inc. all rights reserved.

44.     The web address on the back of the iTunes gift card packaging directs users to the full terms and conditions for iTunes gift cards (the "Online Terms and Conditions").  Until July 31, 2020, the Online Terms and Conditions, which apply to iTunes gift cards and their related codes (together, "Store Credit") provided, *inter alia*, that:

> You agree to not use Store Credit in any manner that is misleading, deceptive, unfair, or otherwise harmful to Issuer, Apple or its customers.  We reserve the right, without notice to you, to void or deactivate [iTunes gift cards] (including a portion of your Account balance) without a refund, suspend or terminate customer accounts, suspend or terminate the ability to use the Services, cancel or limit orders and bill alternative forms of payment if we suspect Store Credit was obtained, used, or applied to an Apple ID fraudulently, unlawfully, or otherwise in violation of these terms and conditions.

*            *            *

> **Risk of Loss:** Neither Issuer nor Apple is responsible for lost or stolen Store Credit or Content Codes. . . .    Apple reserves the right to close accounts and request

---

[22] Apple occasionally changes the language on the iTunes gift card packaging, but the terms on all iTunes gift card packaging are all substantially similar.

alternative forms of payment if Store Credit or a Content Code is fraudulently obtained or used on the Service.

**Governing Law** Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions.  You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.

45.     When consumers purchase an iTunes gift card at retail, they become bound by the terms on the packaging, which incorporate the full Online Terms and Conditions.  However, no victim of an iTunes gift card scam is bound by Apple's attempt to apply its disclaimer language, (which purports to limits Apple's liability for iTunes gift cards which are lost, stolen, or used without permission) to gift cards which are subject to the iTunes gift card scam.  Even if that limitation of liability applied by its terms – which it arguably does not – Apple cannot disclaim liability for loss or damage resulting from its own unfair and unlawful conduct.

46.     Any attempt by Apple to apply its disclaimer language in a manner that exculpates itself from liability for loss or damage resulting from iTunes gift card scams would be unconscionable and unenforceable in light of its role in those scams, the profit that it makes and retains from such scams, its violation of California law in connection with those scams, and the adhesive nature of the terms and conditions foisted upon scam victims who purchase iTunes Gift cards.

47.     Apple understands that the "formula" for the scams involves deceiving consumers into believing that they have a need to make payment, and that the *only* form of payment which will be accepted is an iTunes gift card.

48.     Thus, Apple knows that scam victims believe they have no meaningful choice but to purchase iTunes gift cards, yet Apple makes ***no effort whatsoever to warn consumers at the time and place where the scam can be avoided entirely*** (that is, in the retail store prior to purchase, when targets of the scam can be prevented from making fraudulently induced gift card purchases and becoming victims of the scam).

49.     Apples know that *all* targets of the scam will go to a retail location and select an iTunes gift card from a retail sales rack, believing it to be the only acceptable form of payment

under urgent circumstances.  Yet Apple does not inform targets prior to the sale of that card, *i.e.*, on the exterior packaging, that anyone who is asking for iTunes gift cards as payment is actually a scammer.

50.     Indeed, Apple fails to put this simple, critical information on its packaging or cards, despite the fact that the FTC states, on a page of its website of which Apple sought judicial notice, that "anyone who insists that you pay by gift card is always a scammer."[23]

51.     In fact, as discussed below, Apple never informs consumers who are about to be victimized that *anyone* who asks for payment via iTunes gift card is a scammer.  Even after a target purchases Apple's product and opens the packaging, Apple fails to warn about the scams. Victims are merely instructed, on the back of the card only, "Do not share your code with anyone you do not know."[24]

52.     Apple knows its "warning" language, even when bolded, fails to inform potential victims of the existence or nature of iTunes gift card scams, or provide them with the information they would need to realize they are being scammed.  Indeed, Apple knows that scammers often pose as friends, family members, and authority figures, or otherwise identify themselves and/or form a relationship with victims, such that victims believe they "know" the person who is requesting gift card codes.

53.     Moreover, even that ineffective warning language was *not added to Apple's gift cards until midway through the Class Period*, and did not appear on the gift cards purchased by some of the Plaintiffs.

54.     All targets of the scam will see the outer packaging before purchasing Apple's gift cards, but Apple does not place *any* warning on the outer packaging because Apple hopes and believes that more iTunes gift cards will be sold if people who otherwise had no intent to purchase iTunes gift cards – such as Plaintiffs – are successfully persuaded to do so by scammers.

---

[23]     ECF No. 34-4 at 1.

[24]     In contrast, gift cards for another company state that the gift card "should never be used for payment outside of the [company's website, and] other payment requests may be a scam."

55.     Similarly, Apple provides only an ineffective warning on the card itself (and did not even provide that ineffective warning for much of the Class Period), because Apple hopes and believes that it is more likely to be able to keep some or all of the proceeds from gift card purchases induced by fraud if the victim shares the codes.[25]  Apple currently justifies its failure to provide refunds to victims by stating or implying that the funds are spent or gone and that there is nothing Apple can do.  By contrast, Apple would be hard-pressed to deny refunds if the victims called Apple after purchasing the cards but ***before*** sharing the codes.

56.     Because Apple will sell more gift cards and be able to keep the revenue from those sales if the scammers successfully convince victims to purchase iTunes gift cards, Apple has a direct stake in the success of the scams.  Apple does not merely charge a small transaction fee in connection with each scam, but rather sells product that it would not otherwise have sold and keeps, at minimum, a large commission from each such sale.

57.     Unlike mere payment processors, who keep a small per-transaction fee but ultimately remit the vast majority of payments made in connection with illegal scams to the organizers of those scams, here Apple's interests are more directly at stake. Successful scams mean not only that Apple will sell more gift cards, resulting in more revenue, but also on information and belief that Apple will – in some cases – retain the full dollar amount of those additional, fraudulently induced sales.  Unlike passive payment processors, who are generally limited to their small contractual fees, Apple retains at least a 30% commission, and retains the right to, and sometimes does, refuse to convert the stolen funds to dollars for the scammers and instead keeps the scammers' 70% "share" of the profits for itself.

---

[25]     Apple's hope that its failure to adequately warn consumers will perpetuate the scams have been realized.  Gift card scams have not only increased significantly each year, *see infra*, ¶58, but also the amount of losses per victim from gift card scams has also increased.  *Compare* Emma Fletcher, *Scammers Increasingly Demand Payment by Gift Card*, FEDERAL TRADE COMMISSION (Oct. 16, 2018) (https://www.ftc.gov/news-events/blogs/data-spotlight/2018/10/scammers-increasingly-demand-payment-gift-card) (stating that total losses from gift card scams increased from $20 million in 2015 to $40 million in 2017, and the medial loss per incident is $500), *with* Emma Fletcher, *Gift Cards Top Scammers' Wish Lists*, FEDERAL TRADE COMMISSION (Dec. 21, 2020) (https://www.ftc.gov/news-events/blogs/data-spotlight/2020/12/gift-cards-top-scammers-wish-lists) (stating that losses from gift card scams in 2018 through 2020 totaled $245 million, and the median loss per incident is $840).

**The iTunes Gift Card Scam Costs Hundreds of Millions of Dollars or More**

58.     The overwhelming majority of iTunes gift card scam victims do *not* report the scam to the Federal Trade Commission ("FTC").  Yet even the losses of the small percentage of victims who do report to the FTC exceeded an estimated $92.9 million during 2015-2019, with the dollar amounts increasing significantly each year.  According to FTC data, iTunes gift cards make up approximately 23.7% of all gift card scams.  Applying this 23.7% figure to the total gift card scams reported results in the following estimated figures of scams reported to the FTC: 2015-$4.7 million; 2016-$6.4 million; 2017-$9.5 million; 2018-$18.5 million; 2019: $24.4 million; and 2020: $29.4 million; for a total of $92.9 million.  This dollar amount is limited to consumers who fill out a detailed online FTC form asking for their personal information.  Given the time required to fill out the FTC form and its potential privacy implications, it can reasonably be inferred that only a small percentage of victims submit a report to the FTC (versus another governmental entity).  As a result, this publicly reported $92.9 million figure appears to be only the tip of the iceberg.  If only 10% of scam victims reported to the FTC (versus local police, attorney general offices, Apple, or nobody at all), the iTunes gift card scam would approach $1 billion in scammed proceeds, with Apple retaining $300 million in commissions.

59.     Apple is aware of the widespread nature of the scam and has been for years.  Apple has been receiving inquiries from victims (beginning on a date known only to Apple) *and* requests for information from law enforcement officials.  Since July 1, 2016 (the date for which Apple first began separately disclosing this data), U.S. government entities have asked Apple to provide customer data related to more than 60,000 "specific financial identifiers," such as credit card numbers or gift card numbers.  Apple has noted in its public transparency reports that the "[h]igh number" of "financial identifier requests" from government entities in the United States is "predominantly due to iTunes Gift Card and credit card fraud investigations."[26]

---

[26]     *Apple Transparency Report: Government and Private Party Requests, January 1–June 30, 2019* at 5, 20, APPLE (https://www.apple.com/legal/transparency/pdf/requests-2019-H1-en.pdf).

60.     Of course, the large number of financial identifiers included in law enforcement requests are, again, only the tip of the iceberg.  Many victims don't report gift card fraud to any law enforcement entity,[27] and even if they do, there is no guarantee their information will be investigated, much less included in a law enforcement subpoena or other formal government request for information to Apple.

61.     Indeed, in 2017, the FTC settled an enforcement action against Western Union where it failed to prevent scammers from duping customers into sending money through Western Union.  In announcing the settlement, FTC Chairwoman Edith Ramirez stated: "Western Union owes a responsibility to American consumers to guard against fraud, but instead the company looked the other way, and its system facilitated scammers and rip-offs. . . .  The agreements we are announcing today will ensure Western Union changes the way it conducts its business and provides more than a half billion dollars for refunds to consumers who were harmed by the company's unlawful behavior."[28]

62.     Indeed, following changes in practices designed to detect previously popular money order scams, iTunes gift cards became the most requested type of gift card brand by scammers "by a wide margin."[29]

---

[27]     *See, e.g.*, Tamara Lytle, *Give Gift Cards to Friends and Family – Not Fraudsters*, AARP (Nov. 24, 2020), (https://www.aarp.org/money/scams-fraud/info-2019/prevent-gift-card-fraud.html) (director of fraud victim support at the American Association for Retired Persons, or AARP, says that victims often do not contact law enforcement because "[t]hey are embarrassed and ashamed and they don't think it does any good").

[28]     *See Western Union Admits Anti-Money Laundering Violations and Settles Consumer Fraud Charges, Forfeits $586 Million in Settlement with FTC and Justice Department*, FEDERAL TRADE COMMISSION (Jan. 29, 2017), (https://www.ftc.gov/news-events/press-releases/2017/01/western-union-admits-anti-money-laundering-violations-settles).

[29]     *See* Meagan Morris, *Why Online Scammers Ask for an iTunes Gift Card*, METRO (July 12, 2018) (https://www.metro.us/why-online-scammers-ask-for-an-itunes-gift-card/).  *See also* Emma Fletcher, *Scammers Increasingly Demand Payment by Gift Card*, FEDERAL TRADE COMMISSION (Oct. 16, 2018) (https://www.ftc.gov/news-events/blogs/data-spotlight/2018/10/scammers-increasingly-demand-payment-gift-card).

**The Mechanics of the "Formulaic" iTunes Gift Card Scam**

**Step One:  Victims Buy iTunes Gift Cards and Provide Numbers to Scammers**

63.     As Apple acknowledges, the first step in the formulaic iTunes gift card scam is to obtain a gift card number from the victim:

> Regardless of the reason for payment, the scam follows a certain **_formula_**: The victim receives a call instilling panic and urgency to make a payment by purchasing App Store & iTunes Gift Cards or Apple Store Gift Cards from the nearest retailer (convenience store, electronics retailer, etc.).  After the cards have been purchased, the victim is asked to pay by sharing the code(s) on the back of the card with the caller over the phone.

*See* Apple, About Gift Card Scams, https://support.apple.com/itunes-gift-card-scams.[30]

64.     Most recently, scammers are preying on the high levels of emotion generated by the Coronavirus and COVID-19 pandemic.  Consumers are home more often, and senior citizens may be more isolated than before.  Scammers prey on fears and sympathies by promising testing kits, vaccines, and cleaning services, and soliciting donations for charities or organizations impacted by the pandemic.[31]  Many such scammers are seeking payment in iTunes gift cards.

65.     If scammers successfully convince victims to purchase iTunes gift cards a first time, they will often demand that victims purchase more iTunes gift cards from retail stores.

66.     Once scammers obtain gift card numbers, they can monetize the stored value into U.S. dollars or other currency in one of two ways.  First, scammers may control an app on which they make in-app purchases.  In this situation, scammers keep 100% of the gift card's value, less Apple's 30% commission.  Alternatively, scammers can resell the gift card number.  Due to the discounts associated with resale markets and the counterparty risks, this is the less profitable way of monetizing a scammed gift card.  In either instance, Apple can track the gift card number's history and subsequent use, and Apple keeps 30% of the stored value.

---

[30]      *See also Paying Scammers with Gift Cards*, FEDERAL TRADE COMMISSION (Oct. 2018) (https://www.consumer.ftc.gov/articles/paying-scammers-gift-cards); Jim Pavia, *Scam Victims Pay "Back Taxes" with iTunes Gift Cards*, CNBC (Mar. 5, 2018) (https://www.cnbc.com/2018/03/05/would-you-pay-those-back-taxes-with-itunes-gift-cards.html).

[31]      *See e.g.*, Karen Hobbs, *Socially Distancing from COVID-19 Robocall Scams*, FEDERAL TRADE COMMISSION (Mar. 27, 2020) (https://www.consumer.ftc.gov/blog/2020/03/socially-distancing-covid-19-robocall-scams); *Police Warn of Scams During COVID-19 Pandemic*, JAMES CITY COUNTY, VIRGINIA (Mar. 26, 2020) (https://jamescitycountyva.gov/CivicAlerts.aspx?AID=3774&ARC=5633).

1           **Step Two: Loading the iTunes Gift Card Numbers onto Apple IDs**

2        67.    If scammers choose to monetize the stored value by making in-app purchases on

3 apps they control, they will upload the iTunes gift card number onto Apple IDs they control.

4 Alternatively, scammers can resell iTunes gift card numbers to third parties who will eventually

5 upload the iTunes gift card numbers onto their Apple IDs.  In either case, Apple knows the Apple

6 IDs onto which the gift card numbers have been uploaded.

7           **Step Three: Spending the Stored Value on Apps or iTunes Products**

8        68.    The third step in transforming the iTunes gift cards' stored value into currency

9 involves spending stored value on Apps or iTunes products.

10        69.    The Apple ID where the gift card was uploaded will spend stored value by

11 purchasing apps, making in-app purchases, or buying iTunes products.

12        70.    By this point, Apple has three important data points: (1) the retail store where the

13 gift cards were purchased; (2) the Apple IDs where the gift cards' stored value was uploaded; and

14 (3) the Apps or iTunes products where the stored value was spent.

15           **Step Four: Distributing the Proceeds of the Scam**

16        71.    Approximately 45 days after the end of the fiscal month, Apple either pays Apple

17 Developers 70% of the total purchases for the period (including those from Apple IDs associated

18 with scammed iTunes gift cards), or retains that amount for itself based on indicia of fraud.  Either

19 way, Apple retains at least 30% of the stolen funds from the scam as its commission.

20 **Apple Fails to Disclose the Whereabouts of the Stolen Funds or Return Them to Victims**

21        72.    Victims usually realize they have been scammed within a few hours or days, and

22 often contact Apple before any of the funds stolen from them have been disbursed to scammers.

23 When victims identify themselves and provide the codes from the gift cards they purchased, Apple

24 then knows that those particular gift card codes were stolen, and that scammers are in the process

25 of attempting to turn 70% of the money paid by the victim for those particular gift cards into dollars

26 for the scammers' own use.

27        73.    Apple thus knows that it has, or soon will have, possession and control of stolen

28 property, and knows the identity of, and contact information for, the rightful owner.

74. When Apple learns that it has possession of stolen property, it has a duty to return it to its rightful owner, the victim.  However, Apple neither returns it nor informs the rightful owner of its whereabouts.

75. Apple does not disclose to victims that it has the money that was stolen from them. Instead, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████

76. As discussed herein, when Apple says ███████████████████████ ███████████████████ Apple does not explain that is currently in possession of the stolen funds, and that it will convert 70% the stored value on the cards into dollars for the scammers, who have used the stolen codes to "purchase" their own content.

77. Apple also does not explain that it will keep for itself either 30%, or in some cases 100%, of the money stolen from the victim.

78. Instead, Apple allows victims to believe that the scammers have redeemed, and or either have used or will use the cards for the only purpose of the cards victims are likely to know about, *i.e.*, to purchase apps, songs, and other content from legitimate sellers.

79. Victims thus believe that the funds which were stolen from them ***now rightfully belong to innocent third-party content providers, rather than to Apple or the scammers***.

80. Believing any efforts to get their money back will be futile because they believe that an innocent third party has a legitimate claim to that money, most victims quietly accept Apple's refusal to issue a refund, and neither pursue legal action, nor approach the press, nor raise the issue with law enforcement, much less with legislators.

81. However, some victims do contact Apple directly, and thus become members of the "Contact Subclass" alleged herein.

82. In fact, ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████

83.     When victims contact it for help, Apple uniformly records the victim's name and contact information, records the gift card information, and takes steps which will helps it track the scam and the stolen funds through Apple's system:

a. ███████████████████████████████████████
███████████████████████████████████████;

b. ███████████████████████;

c. █████████████████████████████;

d. ███████████████████████████████████████
████████████████████;

84.     Even when a victim contacts Apple before the scammers have redeemed the codes, or before the funds have been used by the scammers, ████████████████████████
█████████████████████████████████████████████████
████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██
██  ███████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████

87.     And, even for such victims, on information and belief, cash refunds from Apple in connection with gift card scams are exceedingly rare, if they ever occur at all.  Indeed, despite

investigation by their counsel, Plaintiffs are unaware of a single instance in which Apple has issued a cash refund to the victim of a gift card scam.

**Apple Perpetuates and Profits from the iTunes Gift Card Scam**

88.     As noted above, Apple keeps at least 30% of the proceeds from all iTunes gift card scams.

89.     Apple is fully aware of the iTunes gift card scam but does little to stop it.  Instead, Apple engages in conduct that it hopes and believes – and actually does – perpetuate gift card scams.

90.     In particular, Apple tells victims that once redemption codes are provided to scammers, "the funds on the card will likely be spent before you are able to contact Apple or law enforcement."[32]  This statement is highly misleading and suggests to victims that there is nothing Apple can do.  First, telling a victim that the funds likely have been "spent" suggests that the funds have been spent for legitimate content and that the funds are no longer in Apple's possession but, instead, are now in the hands of legitimate content sellers.  In other words, Apple intends to and does convey the false impression that the funds are now the property of an innocent party who had no involvement in the scam.  Second, Apple does not inform consumers that it is keeping at least 30% of the scammed iTunes gift card proceeds.  Finally, Apple does not inform victims of the whereabouts of the funds that were stolen from them, that is, that it keeps the stored value for 45 days before converting it into currency and paying third-party vendors – who often are the scammers themselves.

91.     If victims of the scam contact Apple, it responds uniformly and, on information and belief, using a standardized protocol or message.  Apple requests and records victims' Apple ID accounts and redemptions codes on the back of the iTunes gift cards and determines whether the iTunes gift cards have been redeemed.  If the iTunes gift cards have not been redeemed or exchanged for content, Apple may cancel the iTunes gift cards and return the money to victims. If the iTunes gift cards have been redeemed and exchanged for content – which is most often the

---

[32]     *See About Gift Card Scams*, APPLE (https://support.apple.com/gift-card-scams) (last visited Mar. 25, 2021).

case by the time a scam victim reaches Apple – Apple informs victims there is nothing it can do, even if the content was "sold" *by* a scammer *to* himself or herself in an effort to convert the stolen gift card codes to dollars, with Apple's knowing assistance.

92.     Moreover, if the victim contacts Apple within 45 days of providing the codes to the scammers, even if the scammers have redeemed the gift card codes before the victim contacts Apple reporting a scam, Apple's statement that there is nothing it can do about the scam is false. When the victim provides the codes to Apple, Apple verifies that the gift cards have been redeemed, and will suspend both the gift card codes and the Apple ID account that redeemed the gift card.  At that point, Apple will have prevented the scam from being completed – the stored credit on the gift cards cannot be used for any purchases, and the scammers will not receive the profits from the scam.  Despite stopping the scam from being completed, Apple representatives follow the standard script and inform the victims that there is nothing further Apple can do and that Apple cannot return the stolen funds.  Apple's knowing retention of the funds that were stolen from the scam victim is unfair and unlawful.  Further, Apple's statements that the gift cards have already been spent and that there is nothing that Apple can do conceal the fact that Apple retains 100% of the victim's property.

93.     Although Apple remains largely silent about this epidemic – addressing it almost exclusively through the page on its website referenced above – it has described a common corporate protocol for dealing with victims who call Apple after realizing scammers swindled them by exploiting Apple's gift card system.

94.     When NBC News contacted Apple in 2016, the network reported:

> A spokesman said that if someone contacts Apple Support after sending off the gift card code – and the money has not been drained from the card – they can freeze the account and have the money refunded to them.  If the money is already gone, Apple advises people to file a complaint with the FTC.[33]

---

[33]     Herb Weisbaum, *Fraud Alert: Scammers Get Victims to Pay with iTunes Gift Cards*, NBC NEWS (May 27, 2016) (https://www.nbcnews.com/tech/apple/fraud-alert-scammers-get-victims-pay-itunes-gift-cards-n581591).

Apple's spokesman thus confirmed that Apple does not restore funds to scam victims who contact Apple after their cards have been redeemed. Apple's spokesman also confirmed that Apple deceptively suggests to scam victims that their money is "gone," even when it will retain a 30% commission, and, in many cases, has not yet paid or will not pay the remaining 70% into the scammer's bank account.

95. Apple's suggestions of futility and statements that there is nothing it can do are false.

96. When Apple receives redemption codes from victims or law enforcement, it can identify:

- the Apple ID that uploads the gift card number and its stored value;
- apps or digital media purchased, or in-app purchases made, with funds from gift cards;
- the Apple Developer financial accounts associated with App Store purchases; and
- whether Apple has paid Apple Developers for those purchases.

97. Because Apple can identify Apple ID accounts involved in scams, it can suspend the Apple ID accounts that redeemed fraudulently obtained iTunes gift cards.

98. Moreover, because Apple does not transfer payment to Apple Developers for purchases of apps or in-app purchases until approximately 45 days after its fiscal month, Apple can and does stop payment to the Apple Developer's bank account, and can suspend or remove from the App Store any apps involved in a scam. Indeed, it reserves the right to cancel payment to, or obtain reimbursement from, App Developers if there is a complaint.

99. On information and belief, Apple – a highly sophisticated participant in the technology industry which monitors and tracks key information at each point in the process of the scam, from the time the iTunes gift card is sold through redemption and use – possesses other means and technology to determine which iTunes gift cards have been redeemed by scammers, the identity of the Apple ID and Apple Developer accounts involved in gift card scams, and the identity of victims of gift card scams.

100.    Despite such means and technology, Apple uniformly and consistently informs victims using a standardized script that there is nothing that Apple can do if the iTunes gift card has been redeemed by scammers.  Apple knows that representation is false.

101.    Further, Apple fails to inform consumers – online or by telephone – that, regardless of whether the iTunes gift card was redeemed, if the victim contacts Apple after becoming the victim of a scam and provides the redemption code to Apple, Apple can determine the identities of the Apple ID and Apple Developer accounts involved in the scam, stop payment to the Apple Developer account, and refund the value of the iTunes gift card to the victim.

102.    Apple has a duty to disclose and not conceal from Plaintiffs and Class members the foregoing material facts.  Apple's duty to disclose arises out of: (1) its misrepresentation to consumers that if the iTunes gift card has been redeemed there is nothing Apple can do as the funds have been spent; and (2) its exclusive knowledge and active concealment of the material facts that Apple can identify all accounts involved in iTunes gift card scams, stop payment to scammers, and return the value of iTunes gift cards to scam victims.

103.    Apple's omissions and false and misleading statements, as set forth above, are intentional and done for the purpose of retaining, at a minimum, its 30% commission on all purchases made with fraudulently obtained iTunes gift cards, and to perpetuate iTunes gift card scams to continue to profit from the scams.

104.    Apple intentionally aids and abets scammers, and ensures that the iTunes gift card scams will continue, to the direct benefit of Apple.

105.    In addition to misleading consumers and refusing to refund their money – even when consumers contact Apple and directly provide Apple with all the information needed to do so – Apple makes payment to Apple Developers it knows are scammers, and thus encourages additional scams by those same Apple Developers and future Apple Developers.

106.     Further, in 2012, prior to the current start of the Class Period but while iTunes gift card scams were occurring,[34] Apple began making iTunes gift cards sold by retailers available for purchase in amounts up to $500.  Making iTunes gift cards available in such large denominations dramatically increased the amount scammers could obtain from unwitting consumers, and thus dramatically increased gift card revenue for Apple.  On information and belief, Apple knows that a disproportionate number of $500 iTunes gift cards were being redeemed by scammers, and yet it continued to sell them through at least 2016, including to Plaintiff Qiu, and either continues to sell them or has quietly discontinued their use.

107.     Apple also fails to warn consumers about iTunes gift card scams at the point of retail purchase.  Apple knows that iTunes gift card scams are designed to instill "panic and urgency" in victims, thus preventing them from doing the research and investigation that would lead them to Apple's "About Gift Card Scams" website page.  Despite this knowledge, Apple generally provides no warning to consumers on the outer retail packaging of its gift cards.

108.     Apple could, and should, state prominently on its outer packaging that consumers should beware of telephone and internet scams involving gift cards and should not purchase the card in their hands if they have been asked to do so by anyone who claims to be able to accept payment by iTunes gift card.

109.     Instead, Apple aids and abets scammers, and perpetuates the scams, by issuing only a weak warning *after* its iTunes gift card has been purchased.  Even that ineffective warning was not added to Apple's cards until midway through the Class Period.

110.     Because Apple hopes and believes that more gift cards will be sold if people who have no independent desire to purchase them are persuaded to do by scammers – and because Apple also hopes and believes that its "no refund" policy and attempted disclaimer of liability will be unchallenged by victims if those card purchasers proceed to provide the codes on the cards to scammers so that Apple can suggest that the funds have been "spent" – Apple says nothing on its

---

[34]     *See* Catalin Cimpanu, *Apple sued for not taking action against iTunes gift card scams*, ZDNET (July 26, 2020) (https://www.zdnet.com/article/apple-sued-for-not-taking-action-against-itunes-gift-card-scams/) ("The iTunes gift card scam has been around since the mid-2000s when Apple introduced gift card for the iTunes store[.]").

outer packaging or even the iTunes gift cards themselves regarding scams or urgent demands for payment by unknown persons.  Instead, Apple instructs, on the back of the card only, "Do not share your code with anyone you do not know."  This anemic instruction, even when bolded, not only fails to alert consumers of the widespread phenomenon known to Apple, but is visible to consumers only after they have ***already*** purchased an iTunes gift card and committed those funds to Apple in a transaction which, by its terms, permits no refunds.

111.    As a direct and proximate result of Apple's unfair and unlawful business practices described herein, Plaintiffs and Class members suffered damages including the amount of money that each Plaintiff and class member spent on iTunes gift cards that was not refunded to them by Apple.

## **FACTS PERTAINING TO PLAINTIFFS**

***Plaintiff Barrett***

112.    In May 2017, Plaintiff Barrett was experiencing computer problems, and searched online for assistance.  Eventually, Barrett was contacted by someone who told him that they could fix his computer problems.

113.    After the individual obtained remote access to Barrett's computer, the individual told Barrett that he needed to purchase a $100 iTunes gift card and provide the code on the back of the gift card to tech support, who would refund him the money he paid for the gift card. Plaintiff Barrett was specifically advised to purchase an iTunes gift card.

114.    Plaintiff Barrett selected a $100 iTunes gift card from a retail display and read the outer packaging for the card before purchasing it.  After purchasing the card and opening the packaging, Plaintiff Barrett scanned all of the language on the card itself, including looking at the back of the card to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize he was in the process of being scammed.

115.    Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Barrett would not have purchased the card.

116.    Had the card itself, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Barrett would not have provided the codes to the scammer.

117.    However, no such information appeared on either the packaging or the card (in fact the card purchased by Plaintiff Barrett contained no warning at all), and Plaintiff Barrett provided the codes on the back of the iTunes gift cards to the person who accessed his computer.

118.    The individual then told Barrett that he needed to purchase another iTunes gift card and provide the codes on the back before he received his refund, this time for the full amount of both cards.  At that point Barrett realized he had been scammed.

119.    Neither the packaging nor the card contained any instructions for victims of this prevalent scam, which is well known to Apple.  If any language on the card itself had instructed consumers to call Apple immediately if they were deceived into providing the code on the card to scammers, Plaintiff Barrett would have called Apple and provided his name, contact information and gift card code well before any of the funds stolen from him would have been deposited into the bank account of scammers.

120.    Plaintiff Barrett did not contact Apple after being victimized by scammers, for those reasons and because he was informed by law enforcement that that there was nothing that Apple would do for him.

***Plaintiff Polston***

121.    In 2019, Plaintiff Polston received text messages from a person who was posing as a family member.  The individual told Polston that if he purchased gift cards and provided the codes to him, Polston would win money. Plaintiff Polston was specifically advised to purchase iTunes gift cards.

122.    Plaintiff Polston selected $350 in iTunes gift cards from a retail display and read the outer packaging for the cards before purchasing them.  After purchasing the cards and opening the packaging, Plaintiff Polston scanned all of the language on the cards themselves, including looking at the back of the cards to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize he was in the process

of being scammed.  Plaintiff Polston did not believe that the language on the back of the gift cards applied to him because thought he was providing the codes to someone he knew.

123.    Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Polston would not have purchased the cards.

124.    Had the cards themselves, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Polston would not have provided the codes to the scammer.

125.    However, no such information appeared on either the packaging or the cards, and Plaintiff Polston provided the codes on the back to the individual who was posing as a family member.

126.    Soon thereafter, Plaintiff Polston realized he was the victim of a scam.

127.    Upon realizing he had been scammed, Plaintiff Polston re-read all of the language on the packaging and the card to determine his next steps.  He was discouraged from contacting Apple by Apple's disclaimer language, which suggested that he was not legally entitled to the return of the funds that had been stolen from him.

128.    Moreover, neither the packaging nor the card contained any instructions for victims of this prevalent scam, which is well known to Apple.  If any language on the card had instructed consumers to call Apple immediately if they were deceived into providing the code on the card to scammers, Plaintiff Polston would have called Apple and provided his name, contact information and gift card code well before any of the funds stolen from him would have been deposited into the bank account of scammers.

129.    Plaintiff Polston contacted his local police department to report that he was the victim of a scam involving gift cards.  Polston did not contact Apple after being victimized by scammers, for the reasons above and because he was informed by law enforcement that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for him.

*Plaintiff Martin*

130.    In January 2020, Plaintiff Martin received a telephone call from a person who threatened to disable Martin's computer unless she purchased $125 in iTunes gift cards and provided the code on the back of the cards. Plaintiff Martin was specifically advised to purchase iTunes gift cards.

131.    Plaintiff Martin selected three iTunes gift cards from a retail display and read the outer packaging for the cards before purchasing them.  After purchasing the cards and opening the packaging, Plaintiff Martin scanned all of the language on the cards themselves, including looking at the back of the cards to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize she was in the process of being scammed.

132.    Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Martin would not have purchased the cards.

133.    Had the cards themselves, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Martin would not have provided the codes to the scammer.

134.    However, no such information appeared on either the packaging or the cards, and Plaintiff Martin provided the codes on the back to the caller.

135.    Later the same day, Martin realized she was the victim of a scam and contacted Apple.  She told an Apple representative what happened and provided the codes on the back of the three cards.  Martin asked Apple to refund the money she spent on the iTunes gift cards.

136.    The Apple representative informed Martin that the iTunes gift cards had already been redeemed.  The Apple representative told Plaintiff Martin that because the gift cards had been redeemed, there was nothing that Apple could do, and refused to return to Plaintiff Martin any portion of the money she spent on the gift cards.  The Apple representative told Plaintiff Martin that Apple does not receive the money she spent to purchase the iTunes gift cards.

*Plaintiff Watson*

137.    In November 2019, Plaintiff Watson was contacted by an unknown individual over social media.  After a couple of months of communicating, the individual began asking Watson for financial assistance.  The individual asked Watson to purchase gift cards, including iTunes gift cards specifically, and provide the codes on the back.

138.    Plaintiff Watson selected approximately $250 of iTunes gift cards from a retail display and read the outer packaging for the cards before purchasing them.  After purchasing the cards and opening the packaging, Plaintiff Watson scanned all of the language on the cards themselves, including looking at the back of the cards to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize he was in the process of being scammed.

139.    Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Watson would not have purchased the cards.

140.    Had the cards themselves, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Watson would not have provided the codes to the scammer.

141.    However, no such information appeared on either the packaging or the cards, and Plaintiff Watson provided the codes on the back to the individual.

142.    Watson realized he was the victim of a scam when he noticed social media profiles using the same profile pictures as the individual, but with different names.

143.    Upon realizing he had been scammed, Plaintiff Watson re-read all of the language on the packaging and the cards to determine his next steps.  He was discouraged from contacting Apple by Apple's disclaimer language, which suggested that he was not legally entitled to the return of the funds that had been stolen from him.

144.    Moreover, neither the packaging nor the card contained any instructions for victims of this prevalent scam, which is well known to Apple.  If any language on the card itself had

1    instructed consumers to call Apple immediately if they were deceived into providing the code on

2    the card to scammers, Plaintiff Watson would have called Apple and provided his name, contact

3    information and gift card code well before any of the funds stolen from him would have been

4    deposited into the bank account of scammers.

5            145.   Plaintiff Watson did not contact Apple after being victimized by scammers, for the

6    reasons above and because he was informed that once the scammers redeemed the iTunes gift card

7    there is nothing that Apple would do for Watson.

8    ***Plaintiff Marinbach***

9            146.   In 2018, Plaintiff Marinbach began communicating with an individual on social

10   media.  After a couple of months, the individual began asking Marinbach for financial assistance.

11   The individual asked Marinbach to purchase iTunes gift cards specifically, and provide the codes

12   on the back.

13           147.   Plaintiff Marinbach selected approximately $600 of iTunes gift cards from a retail

14   display and read the outer packaging for the cards before purchasing them.  After purchasing the

15   cards and opening the packaging, Plaintiff Marinbach scanned of the language on the cards,

16   including looking at the back of the cards to locate the codes, but remained unaware of the

17   existence, much less the prevalence and nature of iTunes gift card scams, and did not realize he

18   was in the process of being scammed.

19           148.   Had the packaging advised purchasers of the existence and nature of gift card scams

20   and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so

21   prominently, Plaintiff Marinbach would not have purchased the cards.

22           149.   Had the cards themselves, once opened, advised purchasers of the existence and

23   nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a

24   scammer, and done so prominently, Plaintiff Marinbach would not have provided the codes to the

25   scammer.

26           150.   However, no such information appeared on either the packaging or the cards (in

27   fact most of the cards purchased by Plaintiff Marinbach contained no warning at all), and Plaintiff

28   Marinbach provided the codes on the back to the individual.

151.    Marinbach realized that he was the victim of a scam after the individual did not show up to an in-person meeting.

152.    Marinbach contacted Apple approximately a week after he purchased the iTunes gift cards, and provided the codes on the back to an Apple representative.  The representative told Marinbach that the iTunes gift cards had been redeemed.  The Apple representative told Plaintiff Marinbach that because the gift cards had been redeemed, there was nothing that Apple could do, and refused to return to Plaintiff Marinbach any portion of the money he spent on the gift cards. The representative told Plaintiff Marinbach that it is Apple's policy not to refund iTunes gift cards, and refund requests must be directed to the merchant that sold him his iTunes gift cards.  Plaintiff Marinbach informed Apple that the retailer denied his request for a refund, but Apple advised Plaintiff Marinbach that there was nothing further that Apple could do.

***Plaintiffs Michael and Maria Rodriguez***

153.    In December 2016, Plaintiff Michael Rodriguez believed that the computer that he shared with his mother, Plaintiff Maria Rodriguez, was infected with a computer virus.  The computer was locked and the monitor displayed the telephone number for a computer company they needed to call to resolve their computer problems.  The company's computer technician convinced Maria and Michael Rodriguez to provide him with remote access to their computer.

154.    After the technician gained remote access to the computer, he told Michael and Maria Rodriguez that he would not fix their computer until they purchased iTunes gift cards and provided him with the codes on the back.  Plaintiffs Maria and Michael Rodriguez were specifically advised to purchase iTunes gift cards.

155.    Plaintiffs Michael and Maria Rodriguez selected approximately $1,000 in iTunes gift cards from a retail display and read the outer packaging for the cards before purchasing them. After purchasing the cards and opening the packaging, Maria and Michael Rodriguez scanned all of the language on the cards themselves, including looking at the back of the cards to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize they were in the process of being scammed.

156.   Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiffs Maria and Michael Rodriguez would not have purchased the cards.

157.   Had the cards themselves, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiffs Maria and Michael Rodriguez would not have provided the codes to the scammer.

158.   However, no such information appeared on either the packaging or the cards (in fact the cards purchased by Plaintiffs Maria and Michael Rodriguez contained no warning at all), and Plaintiffs Maria and Michael Rodriguez provided the codes on the back to the individual.

159.   Michael and Maria Rodriguez realized they were victims of a scam when the company stopped answering their phone calls.

160.   Upon realizing they had been scammed, Plaintiffs Michael and Maria Rodriguez re-read all of the language on the packaging and the cards to determine their next steps.  They were discouraged from contacting Apple by Apple's disclaimer language, which suggested that they were not legally entitled to the return of the funds that had been stolen from them.

161.   Moreover, neither the packaging nor the cards contained any instructions for victims of this prevalent scam, which is well known to Apple.  If any language on the card itself had instructed consumers to call Apple immediately if they were deceived into providing the code on the card to scammers, Plaintiffs Michael and Maria Rodriguez would have called Apple and provided their name, contact information, and gift card code well before any of the funds stolen from them would have been deposited into the bank account of scammers.

162.   Michael and Maria Rodriguez contacted the district attorney and local police to report that they were victims of a scam.  Michael and Maria Rodriguez did not contact Apple after being victimized by scammers, for the reasons above and because they were informed by law enforcement and their own internet research that once the scammers redeemed the iTunes gift card there is nothing that Apple would do for them.

*Plaintiff Qiu*

163.    In June 2016, Plaintiff Qiu received a telephone call from an individual who stated that he was a representative of the Internal Revenue Service.  The individual informed Plaintiff Qiu that her taxes had been miscalculated and that she owed the IRS thousands of dollars in back taxes and legal fees.  The individual threatened Plaintiff Qiu that unless she paid them she would be arrested and all of her financial accounts would be frozen.

164.    The individual instructed Plaintiff Qiu to purchase iTunes gift cards specifically, and to provide the codes on the back of the cards to settle the matter.

165.    Plaintiff Qiu selected approximately $2,600 in iTunes gift cards from retail displays, including at an Apple Store, and read the outer packaging for the cards before purchasing them.  After purchasing the cards and opening the packaging, Qiu scanned all of the language on the cards themselves, including looking at the back of the cards to locate the codes, but remained unaware of the existence, much less the prevalence and nature of iTunes gift card scams, and did not realize she was in the process of being scammed.

166.    Had the packaging advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Qiu would not have purchased the cards.

167.    Had the cards themselves, once opened, advised purchasers of the existence and nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so prominently, Plaintiff Qiu would not have provided the codes to the scammers.

168.    However, no such information appeared on either the packaging (in fact, the cards purchased by Plaintiff Qiu contained no warning at all), nor did the card contain any indication that it could not be used to pay taxes, and Plaintiff Qiu provided the codes on the back of the card.

169.    Later that day, Plaintiff Qiu realized that she was the victim of a scam and contacted Apple. Plaintiff Qiu provided the codes on the gift cards to the Apple representative, who informed her that the cards had been redeemed.  The Apple representative further informed Plaintiff Qiu that

1   Apple was able to identify the individual who redeemed the gift cards that she purchased, and was

2   able to freeze both the gift cards and the Apple ID account that redeemed the gift cards, so that

3   stored credit on the gift cards could not be spent.  However, Apple despite telling her that the funds

4   had not been spent, Apple refused to provide Plaintiff Qiu with a refund, and told her there was

5   nothing Apple could do.

6   ***Plaintiff Hagene***

7        170.    In July 2020, Plaintiff Hagene received emails from an individual purporting to be

8   his supervisor.  The individual instructed Plaintiff Hagene that he needed iTunes gift cards to

9   provide to clients, but that he was in a meeting and could not talk or purchase the gift cards himself,

10   and instructed Plaintiff Hagene to purchase iTunes gift cards specifically, and to provide the codes

11   on the back of the cards.

12        171.    Plaintiff Hagene selected approximately $2,600 in iTunes gift cards from a retail

13   display and read the outer packaging for the cards before purchasing them.  After purchasing the

14   cards and opening the packaging, Plaintiff Hagene scanned the language on the cards, including

15   looking at the back of the cards to locate the codes, but remained unaware of the existence, much

16   less the prevalence and nature of iTunes gift card scams, and did not realize he was in the process

17   of being scammed.

18        172.    Had the packaging advised purchasers of the existence and nature of gift card scams

19   and/or stated that anyone asking for payment via iTunes gift card was a scammer, and done so

20   prominently, Plaintiff Hagene would not have purchased the cards.

21        173.    Had the cards themselves, once opened, advised purchasers of the existence and

22   nature of gift card scams and/or stated that anyone asking for payment via iTunes gift card was a

23   scammer, and done so prominently, Plaintiff Hagene would not have provided the codes to the

24   scammers.

25        174.    However, no such information appeared on either the packaging or the card, and he

26   provided the codes on the back of the card.

27        175.    After providing the codes to the individual who contacted him, Plaintiff Hagene

28   became suspicious of the interaction, and contacted his supervisor through alternative means.

Plaintiff Hagene then realized that he was a victim of a scam.  Plaintiff Hagene re-read the language on the packaging and the card, researched gift card scams online, and decided to contact Apple regarding the scam.

176.    Within approximately a half hour of providing the codes to the scammer, Plaintiff Hagene contacted Apple, informed Apple that he was the victim of a gift card scam and provided the codes on the gift cards to Apple.  The Apple representative informed Plaintiff Hagene that the cards had been redeemed and stated that he would need 24 hours to investigate whether the stored credit from the gift cards had been spent.

177.    The next day, the Apple representative informed Plaintiff Hagene that because the gift cards had been spent, there was nothing that Apple could do.  Apple denied Plaintiff Hagene's requests for a refund.

## **TOLLING OF STATUTES OF LIMITATIONS**

178.    Any applicable statute(s) of limitations were tolled by Apple's knowing, active concealment, and denial of the facts alleged herein.  Apple's conduct is inherently self-concealing because Apple does not disclose the details of its iTunes gift card tracking capabilities, Apple ID tracking capabilities and App and iTunes Store merchant policies.  As a result, Plaintiffs and members of the Class could not have reasonably discovered the true nature of Apple's conduct until shortly before this class action litigation was commenced.

179.    In addition, even after Plaintiffs and Class members contacted Apple concerning gift card scams, Apple routinely told them that, if their gift cards were redeemed, there was nothing Apple can do, or that Apple does not retain any money from the gift card.  Apple's representations of futility and statements that it does not profit from the scam are false.

180.    Apple was and remains under a continuing duty to disclose to Plaintiffs and Class members the true nature of its involvement in gift card scams, including that it can identify all accounts involved in the scam, stop payment to scammers, and return the value of iTunes gift cards to victims.  As a result of Apple's active concealment, any and all statutes of limitations otherwise applicable to the allegations herein were tolled.

1

## CLASS ALLEGATIONS

2      181.    Plaintiffs bring this action, individually, and on behalf of a nationwide class,

3  pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

4      **Nationwide Class**

5          All persons in the United States who, during the Class Period, purchased one or
           more gift cards redeemable on iTunes or the App Store, provided the redemption
6          codes to people unknown to them who sought the codes under false pretenses, and
           were not refunded the value of the gift cards by Apple.

7

8      182.    The Class Period is initially defined as the period between January 1, 2015 and

9  July 31, 2020.[35]

10     183.    Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs also seek to

11  represent a subclass, defined as follows:

12     **Contact Subclass**

13         All persons in the United States who, during the Class Period, purchased one or
           more gift cards redeemable on iTunes or the App Store, provided the redemption
14         codes to people unknown to them who sought the codes under false pretenses,
           contacted Apple regarding the scam, and were not refunded the value of the gift
15         cards by Apple.

16     184.    The Nationwide Class and Contact Subclass shall be collectively referred to herein

17  as the "Class."  Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents,

18  employees, officers and directors; (c) Plaintiffs' counsel and Defendant's counsel; and (d) the

19  judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

20  Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth

21  above based on discovery and further investigation.

22     185.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of

23  all members is impracticable.  While the exact number and identity of individual members of the

24  Class is unknown at this time, such information being in the sole possession of Apple and/or third

25  parties and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on

26

27

28  [35]    Plaintiffs reserve the right to expand or amend the Class Period based on discovery
produced in this matter.

1  that basis allege, that the Class consists of hundreds of thousands of people.  The number of Class

2  members can be determined based on Apple's and other third party's records.

3      186.   **Commonality**: Common questions of law and fact exist as to all members of each

4  Class.  These questions predominate over questions affecting individual Class members.  These

5  common legal and factual questions include, but are not limited to:

6      a.    whether Apple engaged in unfair business practices;

7      b.    whether Apple engaged in unlawful business practices;

8      c.    whether Apple engaged in deceptive business practices;

9      d.    whether Apple kept stolen property for itself;

10     e.    whether Apple converted the property of others to its own use;

11     f.    whether Apple knowingly and intentionally profited from gift card scams involving

12           iTunes gift cards;

13     g.    whether Apple misrepresents that there is nothing that Apple can do after iTunes

14           gift cards are redeemed;

15     h.    whether Apple conceals material facts regarding its ability to stop payments to

16           scammers and return money to scam victims;

17     i.    whether Apple's conduct violates the California consumer protection statutes

18           asserted herein;

19     j.    whether money Apple obtained from gift card scams rightfully belongs to Plaintiffs

20           and Class members;

21     k.    whether Apple should be required to return money it received as a result of gift card

22           scams to Plaintiffs and Class members;

23     l.    whether Apple converts at least 30% of the money stolen during gift card scams for

24           its own use; and

25     m.    whether Apple aids and abets scammers in perpetrating gift card scams and

26           converting 70% of the proceeds of many of those scams to their own use.

27     187.   **Typicality**: Plaintiffs have the same interest in this matter as all Class members,

28  and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class

members.  Plaintiffs' and Class members' claims all arise out Apple's uniform misrepresentations, omissions, and unlawful and unfair business practices related to iTunes gift cards.

188.  **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously.  Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation.  Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

189.  **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Apple's conduct.  It would be virtually impossible for individual Class members to effectively redress the wrongs done to them.  Even if Class members could afford individualized litigation, the court system could not.  Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case.  Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

190.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

### CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

191.  California's substantive laws apply to every member of the Class, regardless of where in the United States the Class members reside.  Apple's applicable terms and conditions state:

> **Governing Law**.  Except [for residents of certain foreign countries], this Agreement and the relationship between you and Issuer shall be governed by the laws of the State of California, excluding its conflict of laws provisions.  You and Issuer agree to submit to the personal and exclusive jurisdiction of the courts

located within the county of Santa Clara, to resolve any dispute or claim arising from this Agreement.[36]

192.   By choosing California law for the resolution of disputes in the agreement, Apple concedes that it is appropriate for this Court to apply California law to the instant dispute.

193.   Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

194.   Apple's headquarters and principal place of business is located in California.  Apple also owns property and conducts substantial business in California, and therefore California has an interest in regulating Apple's conduct under its laws.  Apple's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

195.   California is also the state from which Apple's alleged misconduct emanated. On information and belief, the decision-making regarding the design and marketing of Apple products, including the iTunes gift cards, app store and iTunes occurred in and emanated from California, and Apple received commissions from purchases with fraudulently obtained iTunes gift cards in California.  As such, the conduct complained of herein emanated from California.  This conduct similarly injured and affected Plaintiffs and all other Class members.

196.   The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

---

[36]   *See Legal – iTunes Gift Cards and Codes*, APPLE (Mar. 20, 2018) (https://www.apple.com/legal/internet-services/itunes/giftcards/us/terms.html) (available with Plaintiffs' counsel).

**FIRST CAUSE OF ACTION**

**Unfair Practices**
**in Violation of the California Consumers Legal Remedies Act**
**Cal. Civil Code §1750, *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

197.    Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

198.    At all relevant times there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §1750, *et seq.*

199.    Plaintiffs and Class members are "consumers" as that term is defined by California Civil Code §1761(d).

200.    Apple is a "person" as that term is defined by California Civil Code §1761(c).

201.    Apple engaged in unfair acts in violation of the CLRA by engaging in the practices described above, including knowingly and intentionally disbursing illegally obtained money to scammers, and knowingly and intentionally retaining money (either 30% or 100% of the proceeds of the scam) that rightfully belongs to Plaintiffs and other victims of iTunes gift card scams.

202.    Apple also engaged in a number of practices designed to perpetuate the scheme and the stream of revenue it generates for Apple.  Those practices, which are unfair separately and particularly when taken together, include, but are not limited to, failing to adequately warn consumers about the existence, nature, and prevalence of the scams on the packaging of its gift cards, failing to adequately warn consumers on the cards themselves about the existence, nature, and prevalence of scams, reducing the numbers of victims who contact Apple by including an unconscionable and adhesive disclaimer on its packaging and in its term and conditions, reducing the numbers of victims who contact Apple by failing to include an instruction to do so on its cards, and reducing the number of victims who contact Apple by falsely suggesting on its website that, by the time a victim can call, the funds will have become the rightful property of legitimate content sellers.

203.    Apple's unfair practices designed to perpetuate the scheme and the stream of revenue it generates for Apple also include discouraging victims who do contact Apple from

1   vindicating their rights or otherwise taking action against Apple by similarly suggesting that the

2   funds now rightfully belong to someone other than Apple or the scammers, and by uniformly

3   failing to inform victims who hear that message from Apple of the contrary material facts, known

4   only to Apple, that redeemed funds are not "spent" on bona fide content but rather "used" by the

5   scammers on their own apps, and that Apple waits weeks before knowingly depositing 70% of

6   money stolen from victims into the bank accounts of scammers and knowingly keeping 30% – and

7   sometimes keeping 100% – of the stolen funds for itself.

8       204.   In the course of their business, Defendants repeatedly and regularly engaged in

9   unfair acts or practices that imposed a serious harm on consumers, including Plaintiffs and Class

10  members.

11      205.   Apple's acts and practices are unfair because they offend public policy, are

12  immoral, unethical, oppressive unscrupulous, and substantially injurious to consumers, including

13  Plaintiffs and members of the Class.  The injuries suffered by Plaintiffs and Class members greatly

14  outweigh any potential countervailing benefit to consumers or competition, and are not injuries

15  that Plaintiffs and Class members should have reasonably avoided.

16      206.   The acts and practices complained of herein violate, at a minimum, §a(19) of the

17  CLRA, which prohibits inserting an unconscionable provision in a contract.

18      207.   As set forth above, Apple inserted an unconscionable and adhesive provision in the

19  Gift Card terms and conditions.  Apple's attempt to disclaim liability for all lost or stolen Gift

20  Cards discourages consumers from contacting Apple, and the provision cannot lawfully be applied

21  to gift cards involved in iTunes gift card scams because Apple engages in conduct in connection

22  with those scams that is unlawful, including but not limited to violation of penal code provisions

23  and consumer protection statutes.   Apple's attempt to disclaim liability for its knowing

24  participation in and profiting from gift card scams is unconscionable.

25      208.   Under California Civil Code §1780(a), Plaintiffs and Class members seek damages,

26  injunctive and equitable relief for Apple's violations of the CLRA.  Pursuant to California Civil

27  Code §§1782(a) & (d), on or about July 17, 2020, Plaintiffs provided Apple with notice and their

28

1  intent to amend the Complaint to seek damages if Apple did not cease its unfair and unlawful

2  conduct, and Apple has failed to do so.

3      209.   Plaintiffs and the Class therefore also request this Court enter such orders or

4  judgments necessary to restore to any person any money acquired as a result of Apple's unfair

5  business practices, and for such other relief, including attorneys' fees and costs, as provided in

6  California Civil Code §1780 and the Prayer for Relief.

7                              **SECOND CAUSE OF ACTION**

8                                   **Unfair Practices**
                    **in Violation of the California Unfair Competition Law**
9                          **Cal. Bus. & Prof. Code §17200**
                   **(on Behalf of the Nationwide Class and the Contact Subclass)**
10

11     210.   Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as

12  though fully set forth herein.

13     211.   At all relevant times there was in full force and effect the California Unfair

14  Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits, *inter alia*,

15  "any unlawful, ***unfair***, or fraudulent business act or practice" and "unfair, deceptive, untrue, or

16  misleading advertising."  Cal. Bus. & Prof. Code §17200 (emphasis supplied).

17     212.   Apple has unfairly retained millions of dollars in funds that it knows were stolen

18  from Plaintiffs and other victims of the iTunes gift card scam.

19     213.   Apple has also engaged in other business acts and practices which are "unfair"

20  under the UCL, including knowingly and intentionally disbursing illegally obtained money to

21  scammers.

22     214.   Apple also engaged in a number of practices designed to perpetuate the scheme and

23  the stream of revenue it generates for Apple.  Those practices, which are unfair separately and

24  particularly when taken together, include but are not limited to failing adequately warn consumers

25  about the existence, nature, and prevalence of gift card scams on the packaging of its gift cards,

26  failing to adequately warn consumers about the existence, nature, and prevalence of gift card scams

27  on the cards themselves, reducing the numbers of victims who contact Apple by including an

28  unconscionable and adhesive disclaimer on its packaging and in its term and conditions, reducing

1   the numbers of victims who contact Apple by failing to include an instruction to do so on its cards,

2   and reducing the number of victims who contact Apple by falsely suggesting on its website that,

3   by the time a victim can call, the funds will have become the rightful property of legitimate content

4   sellers.

5        215.   Apple's unfair practices designed to perpetuate the scheme and the stream of

6   revenue it generates for Apple also include discouraging victims who do call Apple from

7   vindicating their rights or otherwise taking action against Apple by similarly suggesting that the

8   funds now rightfully belong to someone other than Apple or the scammers, and by failing to inform

9   victims who hear that message of the contrary material facts, known only to Apple, that redeemed

10  funds are "spent" on bona fide content but rather "used" by the scammers on their own apps, and

11  that Apple waits weeks before knowingly depositing 70% of money stolen from victims into the

12  bank accounts of scammers and knowingly keeping 30% – and sometimes keeping – 100% of the

13  funds for itself.

14       216.   Unfair acts under the UCL have been interpreted using three different tests:

15  (1) whether the public policy which is a predicate to a consumer unfair competition action under

16  the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory

17  provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business

18  practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is

19  substantial, not outweighed by any countervailing benefits to consumers or competition, and is an

20  injury that consumers themselves could not reasonably have avoided.  Apple's conduct alleged is

21  unfair under all of these tests.

22       217.   As a direct and proximate result of Apple's unfair practices, Plaintiffs and Class

23  members suffered injury and have paid monies that Apple has improperly retained from the iTunes

24  gift cards.  Apple's participation in the gift card scams and concealment of its role and ability to

25  track and stop payments to scammers, aids and abets scammers, and perpetuates the scams.

26       218.   Plaintiffs seek to enjoin further unfair acts or practices by Apple, to obtain

27  restitution and disgorgement of all monies generated as a result of such practices, and for all other

28  relief allowed under California Business & Professions Code §17200.

**THIRD CAUSE OF ACTION**

**Unlawful Practices**
**in Violation of the California Consumers Legal Remedies Act**
**Cal. Civil Code §1750, *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

219.    Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

220.    At all relevant times there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*

221.    Plaintiffs and Class members are "consumers" as that term is defined by California Civil Code §1761(d).

222.    Apple is a "person" as that term is defined by California Civil Code §1761(c).

223.    Apple engaged in unlawful acts in violation of the CLRA by the practices described above.

224.    In the course of their business, Defendants repeatedly and regularly engaged in unlawful acts or practices that imposed a serious harm on consumers, including Plaintiffs and Class members.

225.    Apple's acts and practices are unlawful for many reasons, including because Apple violates Cal. Penal Code §496 by, *inter alia*, intentionally secreting stolen property in violation of its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

226.    Apple's acts and practices are also unlawful because they violate the California Unfair Competition Law.

227.    Apple's acts and practices are also unlawful because Apple attempts to apply its disclaimer language to exculpate itself from its own violations of the Penal Code and consumer protection statutes and its own acts of conversion.

228.    Under California Civil Code §1780(a), Plaintiffs and Class members seek damages, injunctive and equitable relief for Apple's violations of the CLRA.  Pursuant California Civil Code §§1782(a) & (d), on or about July 17, 2020, Plaintiffs provided Apple with notice and their intent

1   to amend the Complaint to seek damages if Apple did not cease its unfair and unlawful conduct,

2   and Apple has failed to do so.

3       229.    Plaintiffs and the Class therefore also request this Court enter such orders or

4   judgments necessary to restore to any person any money acquired as a result of Apple's deceptive

5   and/or unfair business practices, and for such other relief, including attorneys' fees and costs, as

6   provided in California Civil Code §1780 and the Prayer for Relief.

7                   **FOURTH CAUSE OF ACTION**

8                        **Unlawful Practices**
    **in Violation of the California Unfair Competition Law**
9                    **Cal. Bus. & Prof. Code §17200**
    **(on Behalf of the Nationwide Class and the Contact Subclass)**
10

11      230.    Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as

12  though fully set forth herein.

13      231.    At all relevant times there was in full force and effect the California Unfair

14  Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits, *inter alia*,

15  "any ***unlawful***, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or

16  misleading advertising."  Cal. Bus. & Prof. Code §17200 (emphasis supplied).

17      232.    Apple has unlawfully retained millions of dollars in funds that it knows were stolen

18  from Plaintiffs and other victims of the iTunes gift card scam.

19      233.    In the course of their business, Defendants repeatedly and regularly engaged in

20  unlawful acts or practices that imposed a serious harm on consumers, including Plaintiffs and Class

21  members.

22      234.    Apple's acts and practices are unlawful for many reasons, including because Apple

23  violates Cal. Penal Code §496 by, *inter alia*, intentionally secreting stolen property in violation of

24  its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

25      235.    Apple's acts and practices are also unlawful because they violate the California's

26  Consumers Legal Remedies Act.

27

28

236. Apple's acts and practices are also unlawful because Apple attempts to apply its disclaimer language to exculpate itself from its own violations of the Penal Code and consumer protection statutes and its own acts of conversion.

237. As a direct and proximate result of Apple's unlawful practices, Plaintiffs and Class members suffered injury and have paid monies that Apple has improperly retained from the iTunes gift cards.

238. Plaintiffs seek to enjoin further unlawful acts or practices by Apple, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under California Business & Professions Code §17200.

## FIFTH CAUSE OF ACTION

**Deceptive Practices
in Violation of the California Consumers Legal Remedies Act
Cal. Civil Code §1750, *et seq.*
(on Behalf of the Nationwide Class and the Contact Subclass)**

239. Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

240. At all relevant times there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §1750, *et seq.*

241. Plaintiffs and Class members are "consumers" as that term is defined by California Civil Code §1761(d).

242. Apple is a "person" as that term is defined by California Civil Code §1761(c).

243. Apple engaged in deceptive acts and practices in violation of the CLRA, including by knowingly and intentionally omitting material facts from the packaging of its gift cards and the gift cards themselves, as described above, including the nature, existence and prevalence of gift card scam, and the fact that consumers should call Apple immediately if they are victimized in a gift card scam.

244. Apple also omitted material facts in violation of the CLRA when victims contacted Apple directly, including failing to tell victims that Apple is in possession of the property that was stolen from them, and that Apple keeps 30% or 100% of the scam proceeds for itself.

245.   Apple also engaged in deceptive acts and practices in violation of the CLRA by telling victims that the money was redeemed and/or spent, and that there was nothing Apple could do, and thus suggesting that the scammers purchased bona fide content from legitimate sellers, and that the money thus no longer was in Apple's or the scammers' possession, but rather belonged to innocent third parties.   When Apple made these statements to victims, it did not disclose the material (and contrary) fact that Apple retains the funds for weeks before paying it out to vendors, and that those vendors are not innocent third parties, but rather the scammers themselves in the case of gift card scams.

246.   Defendants knowingly and intentionally made false representations and omissions of material fact because Apple knows that it has the capability of determining the Apple ID account that redeemed the iTunes gift card, the accounts that created the products that were distributed on iTunes or the App Store that were purchased with the funds from the iTunes gift card involved in a scam, and that Apple can stop payment to the Apple Developer accounts and return the Plaintiffs' and Class members' money.   Instead, Apple makes payment to Apple Developers who are known to Apple to be profiting from scams, and thus encourages additional scams by those same Apple Developers and future Apple Developers.   As such, Apple misrepresented its affiliation, connection, or association with the scammers.

247.   Defendants knowingly and intentionally made false representations and omissions of material fact because Apple fails to inform consumers and falsely represents that, if the victim of a gift card scam provides the redemption code on the back of an iTunes gift card, Apple can identify the Apple ID accounts involved in a gift card scam, stop payment to Apple Developer accounts for purchases made with funds from fraudulently obtained iTunes gift cards, and can return the money to Plaintiffs and Class members.   Instead, by informing consumers that the funds have been or likely have been "spent" or that there is nothing that Apple can do if a scammer has redeemed the iTunes gift card, Apple misrepresents the characteristics and uses of iTunes gift cards.

248.   Apple knows that its representations and omissions are false and deceptive because when victims contact Apple directly and report being the victim of a scams – and through other

1  means that Apple has to identify gift cards, Apple IDs, apps, and Apple Developers associated

2  with scams – Apple has actual knowledge that it is in possession of the victim's stolen property.

3        249.   Apple was under a duty to warn consumers of the scam and to disclose to Plaintiffs

4  and Class members that it retains a minimum of 30% of the scammed funds at all time, because

5  Apple can identify the iTunes gift card, Apple ID, and Apple Developer accounts involved in a

6  gift card scam, and can stop payment to scammers and return the money that victims of gift card

7  scams paid because:

8        a.     Apple misrepresents that there is nothing that it can do if the iTunes gift card has

9              been redeemed;

10       b.     Apple has exclusive knowledge of the methods of identifying scammers, stopping

11            payment to scammers, and returning the value of the iTunes gift card to victims;

12            and

13       c.     Apple actively conceals the material facts that it is in possession of the victim's

14            property and can identify the scammers, stop payment to scammers, and return the

15            value of the iTunes gift card to the victim.

16        250.   Apple knowingly and intentionally concealed those material facts and breached its

17  duty not to do so.

18        251.   Apple fails to disclose on the packaging of the gift cards that consumers should

19  beware of telephone and internet scams involving gift cards and should not purchase the card if

20  they have been asked to do so by persons unknown to them who claim that payment by iTunes gift

21  card is urgently needed.

22        252.   The facts concealed or not disclosed by Apple to Plaintiffs and Class members are

23  material in that a reasonable consumer would have acted differently by, *inter alia*, not purchasing

24  the gift card in the first place, not providing the redemption code on the back of the iTunes gift

25  card to scammers, contacting Apple to provide their information and demand that Apple return the

26  value of the gift card, and/or the 30% commission that Apple retains, to the victim of the gift card

27  scam, and pursuing legal and other action against Apple regarding its involvement and profiting

28  from gift card scams.

253.    Apple inserted a deceptive provision in the Gift Card terms and conditions by attempting to disclaim liability for lost or stolen Gift Cards.  The disclaimer of liability is deceptive because it suggests to victims that they are not legally entitled to the return of the stolen fund, and discourages them from contacting Apple and providing actual knowledge of their particular scam.

254.    Under California Civil Code §1780(a), Plaintiffs and Class members seek damages, injunctive and equitable relief for Apple's violations of the CLRA.  Pursuant to California Civil Code §§1782(a) & (d), on or about July 17, 2020, Plaintiffs provided Apple with notice and their intent to amend the Complaint to seek damages if Apple did not cease its unfair and unlawful conduct, and Apple has failed to do so.

255.    Plaintiffs and the Class therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Apple's unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in California Civil Code §1780 and the Prayer for Relief.

## SIXTH CAUSE OF ACTION

**Deceptive Practices
in Violation of the California Unfair Competition Law
Cal. Bus. & Prof. Code §17200
(on Behalf of the Nationwide Class and the Contact Subclass)**

256.    Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

257.    At all relevant times there was in full force and effect the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code §17200.

258.    Apple engaged in business acts and practices which are deceptive under the UCL, because Apple fails to disclose to consumers on the packaging of the gift cards, on the gift cards themselves, on its website, and directly to consumers who contact Apple, the extent and nature of the gift card scams, that Apple can identify and stop the scams, that Apple retains the proceeds

from the gift card scams, and that Apple is under a duty to return the stolen money to the victims if they contact Apple regarding the scam.

259.    Apple also engaged in deceptive acts and practices in violation of the CLRA by telling victims that the money was redeemed and/or spent, and that there was nothing Apple could do, and thus suggesting that the scammers purchased bona fide content from legitimate sellers, and that the money thus no longer was in Apple's or the scammers' possession, but rather belonged to innocent third parties.   When Apple made these statements to victims, it did not disclose the material (and contrary) fact that Apple retains the funds for weeks before paying it out to vendors, that those vendors are not innocent third parties but rather the scammers themselves in the case of gift card scams.

260.    Apple knows that its representations and omissions are false and deceptive because when victims contact Apple directly and report being the victim of a scams – and through other means that Apple has to identify gift cards, Apple IDs, apps, and Apple Developers associated with scams – Apple has actual knowledge that it is in possession of the victim's stolen property.

261.    Apple was under a duty to warn consumers of the scam and to disclose to Plaintiffs and Class members that it retains a minimum of 30% of the scammed funds at all time, and that Apple can identify the iTunes gift card, Apple ID, and Apple Developer accounts involved in a gift card scam, and stop payment to scammers and return the money that victims of gift card scams paid because:

     a.     Apple fails to inform consumers, on the outer packaging of iTunes gift cards on the cards themselves, once opened, of the existence, prevalence, or nature of iTunes gift card scams, or to provide information sufficient to inform potential victims that they are in the process of being scammed, such as stating that anyone seeking payment via iTunes gift cards is a scammer;

     b.     Apple misrepresents that there is nothing that it can do if the iTunes gift card has been redeemed;

c.    Apple has exclusive knowledge of the methods of identifying scammers, stopping payment to scammers, and returning the value of the iTunes gift card to victims; and

d.    Apple actively conceals the material facts that it can identify the scammers, stop payment to scammers, and return the value of the iTunes gift card to the victim.

262.    The facts concealed or not disclosed by Apple to Plaintiffs and Class members are material in that a reasonable consumer would have acted differently by, *inter alia*, not purchasing the gift card in the first place, not providing the codes on the card to scammers, or failing that, contacting Apple and providing the redemption code on the back of the iTunes gift card involved in the gift card scam, demanding that Apple return the value of the Gift Card and/or the 30% commission that Apple retains to the victim of the gift card scam, and pursuing legal, legislative and/or public relations action against Apple regarding its involvement and profiting from gift card scams.

263.    Apple inserted a deceptive provision in the Gift Card terms and conditions by attempting to disclaim liability for lost or stolen Gift Cards.  The disclaimer of liability is deceptive because it suggests to victims that they are not legally entitled to the return of the stolen fund, and discourages them from contacting Apple and providing actual knowledge of their particular scam.

264.    As a direct and proximate result of Apple's deceptive practices, Plaintiffs and Class members suffered injury and have paid monies that Apple has improperly retained from the iTunes gift cards.  Apple's participation in the gift card scams and concealment of its role and ability to track and stop payments to scammers, aids and abets scammers, and perpetuates the scams.

265.    Plaintiffs seek to enjoin further deceptive acts or practices by Apple, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under California Business & Professions Code §17200.

**SEVENTH CAUSE OF ACTION**

**Violation of the California False Advertising Law
Cal. Bus. & Prof. Code §17500
(on Behalf of the Nationwide Class and the Contact Subclass)**

266.   Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

267.   At all relevant times there was in full force and effect the California False Advertising Law ("FAL"), Cal Bus. & Prof. Code §17500, *et seq.*, which prohibits, *inter alia*, making or disseminating "any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable case should be known, to be untrue or misleading." *See* Cal. Bus. & Prof. Code §17500.

268.   Apple caused to be made or disseminated throughout California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and members of the Class.

269.   Apple violated §17500 because the misrepresentations and omissions as set forth in this Complaint were material and likely to deceive a reasonable consumer.

270.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Plaintiffs and Class members relied on the misrepresentations and/or omissions of Apple. Defendants' representations were untrue because Apple actually possesses the ability to identify the Apple ID and Apple Developer accounts involved in iTunes gift card scams, stop payment to the scammers, and return the money to the victims of the scam, including Plaintiffs and Class members. Had Plaintiffs and Class members known this, they would have contacted Apple before Apple paid the scammers. Accordingly, Plaintiffs and the Class members suffered injuries as a direct and proximate result of Apple's conduct.

271.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or

generalized course of conduct that is still being perpetuated and repeated, both in the state of California and nationwide.

272.    Plaintiffs, individually and on behalf of all the other Class members, request that this Court enter such orders or judgements as may be necessary to enjoin Apple from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class members any money Apple acquired, including restitution and/or disgorgement, and for such other relief set forth below.

**EIGHTH CAUSE OF ACTION**

**Receiving, Retaining, Withholding or Concealing Stolen Property**
**Cal. Penal Code §496**
**(on Behalf of the Nationwide Class and the Contact Subclass)**

273.    Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

274.    California Penal Code §496 declares unlawful for any "person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, [to] conceal[], sell[], withhold[], any property from the owner . . . ." Cal. Penal Code §496(a).

275.    California Penal Code §496 also creates a private right of action for "any person who has been injured by a violation of subdivision (a)." Cal. Penal Code §496(c).

276.    At all relevant times, Plaintiffs and Class members were the rightful owners of the money used to purchase the iTunes gift cards, which was converted to stored value in the iTunes gift cards.

277.    Plaintiffs' and Class members' property was stolen or obtained in a manner constituting theft or extortion by the scammers. The scammers, through false representations and/or false pretenses defrauded Plaintiffs and Class members, convincing them to purchase iTunes gift cards and provide the codes on the back of the cards to the scammers.

278.    Apple comes into possession of Plaintiffs' and Class members' property.

279.    Apple has actual knowledge that it is in possession of Plaintiffs' and Class members' stolen property when victims of iTunes gift card scams contact Apple, advise Apple that

1   they were the victim of a scam, and provide Apple with the numbers on the back of the gift card.

2   Additionally, on information and belief, Apple possesses other means and technology to determine

3   which iTunes gift cards have been redeemed by scammers, the identity of the Apple ID and Apple

4   Developer accounts involved in gift card scams, and the identity of victims of gift card scams.

5         280.   Apple wrongfully conceals the location of Plaintiffs' and Class members' property

6   by informing them that the gift card funds have been spent, despite the fact that Apple does not

7   pay Apple Developers for purchases made with iTunes gift cards until approximately 45 days after

8   the purchase.  Additionally, Apple conceals that, when it freezes the gift cards and/or Apple ID

9   accounts associated with gift card scams, it retains 100% of the victim's property.

10        281.   Apple wrongfully retains the property stolen from Plaintiffs and Class members by

11   refusing to return the property that rightfully belongs to Plaintiff and Class members.  After Apple

12   transfers the money to Apple Developers, Apple continues to wrongfully retain possession of

13   Plaintiffs' and Class members' property by retaining the 30% commission on purchased made with

14   the funds from the iTunes gift cards, and sometimes retaining 100% of the stolen funds.

15        282.   As a direct and proximate result of Apple's conduct, Plaintiffs and Class members

16   suffered damages.

## NINTH CAUSE OF ACTION

### Conversion
### (on Behalf of the Nationwide Class and the Contact Subclass)

20        283.   Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as

21   though fully set forth herein.

22        284.   At all relevant times, Plaintiffs and Class members had a right to possession in, and

23   were the rightful owners of, the money used to purchase the iTunes gift cards, which was converted

24   to stored credit in the iTunes gift cards. Plaintiffs' and Class members' property was used to

25   purchase iTunes gift cards under false pretenses.

26        285.   Apple has actual knowledge that it is in possession of Plaintiffs' and Class

27   members' property when victims of iTunes gift card scams contact Apple, advise Apple that they

28   were the victim of a scam, and provide Apple with the numbers on the back of the gift card.

Additionally, on information and belief, Apple possesses other means and technology to determine which iTunes gift cards have been redeemed by scammers, the identity of the Apple ID and Apple Developer accounts involved in gift card scams, and the identity of victims of gift card scams.

286.   Apple substantially interfered with Plaintiffs' and Class members' property by knowingly and intentionally by retaining a commission on all purchased made with the stolen property, and refusing to return Plaintiffs' and Class members' property.  Apple permanently deprived Plaintiffs and Class members from the use and enjoyment of their property.

287.   Plaintiffs and Class members who contacted Apple demanded that Apple return their property. Apple denied the demands to return the property.  Moreover, it was unnecessary for Plaintiffs and Class members to demand return of the property as, on information and belief, Apple possesses other means and technology to determine which iTunes gift cards have been redeemed by scammers, the identity of the Apple ID and Apple Developer accounts involved in gift card scams, and the identity of victims of gift card scams.

288.   Plaintiffs and Class members did not consent for Apple to exercise dominion or control or to retain their property.

289.   Apple's conduct was a substantial factor in the harm caused to Plaintiffs and Class members.

## TENTH CAUSE OF ACTION

### Aiding and Abetting Intentional Torts
### (on Behalf of the Nationwide Class and the Contact Subclass)

290.   Plaintiffs hereby re-allege and incorporate all allegations in the Complaint, as though fully set forth herein.

291.   The gift card scams that were perpetrated on Plaintiffs and Class members by the scammers constitute intentional torts, including conversion of 70% of the stolen funds to their own use, fraud, and false pretenses.

292.   Apple had knowledge of the tortious acts perpetrated on Plaintiffs and Class members by means of, including but not limited to, Plaintiffs and Class members contacting Apple to inform them that they were a victim of a gift card scam, providing Apple with the redemption

codes on iTunes gift cards that were involved in scams, and Apple's internal processes and technology that are able to, and do, identify iTunes gift cards, Apple IDs, and Apple Developers that are associated with gift card scams before Apple pays the scammers or decides to retain the full proceeds of a given scam for itself.

293.    Apple provides substantial assistance to the scammers, and ratifies and conceals the wrongful and unlawful conduct perpetrated upon victims of scams involving iTunes gift cards, including Plaintiffs and Class members, by failing to suspend or cancel iTunes gift cards that are involved in scams, failing to suspend or terminate Apple IDs accounts involved in gift card scams, permitting Apple ID accounts involved in gift cards scams to make purchases on iTunes, in the App Store, or in apps, transferring payment to Apple Developer accounts that were involved in scams, failing to suspend or terminate Apple Developer accounts that are involved in gift cards scams, and retaining for its own benefit commissions from purchases on iTunes or in the App Store that were made with iTunes gift cards from scams perpetrated on Plaintiffs and Class members.

294.    As a direct and proximate result of Apple's conduct, Plaintiffs and Class members suffered injury and have paid monies that Apple has improperly retained for the iTunes gift cards.

## ELEVENTH CAUSE OF ACTION

### Declaratory Judgment
### 28 U.S.C. §2201
### (on Behalf of the Nationwide Class and the Contact Subclass)

295.    Plaintiffs hereby re-allege and incorporate all allegations raised in the Complaint, as though fully set forth herein.

296.    Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

297.    Plaintiffs seek a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. §2201.

298.    An actual and justiciable controversy exists between the parties in light of Defendants' misrepresenting that there was nothing that they can do when Plaintiffs contacted Apple to report being a victim of a scam involving iTunes gift cards, and by failing to disclose that Apple can identify the iTunes gift cards, Apple ID accounts, Apple Developer accounts, knowingly making payments to Apple Developer accounts involved in gift card scams, and failing to return the money to Plaintiffs and the Class.

299.    Plaintiffs and Class members lack an adequate remedy at law.

300.    Apple purports to bind Plaintiffs and Class members to the terms and conditions set forth on the back of iTunes gift cards and the Online Terms and Conditions on Apple's website. The back of the iTunes gift cards provides, in part: "Card will not be replaced if lost, stolen, or used without permission.    Use of card constitutes acceptance of terms; see apple.com/us/go/legal/gc."   The Online Terms and Conditions provide, in part, that: "Neither Issuer nor Apple is responsible for lost or stolen [iTunes gift cards] or Content Codes."

301.    Apple cannot, as a matter of law, disclaim or assign the liability of loss, conversion, or destruction of the balance of iTunes gift cards when Apple knows that the iTunes gift cards were purchased as a result of wrongful and unlawful conduct, Apple has knowledge of the gift card scams perpetrated on Plaintiffs and Class members, Apple aids and abets the gift card scams, and Apple knowingly retains profits from gift card scams perpetrated on Plaintiffs and Class members.  Apple cannot, as a matter of law, disclaim or assign the liability of loss for its own criminal conduct, including its violation of California Penal Code §496.

302.    Apple's attempt to disclaim liability is unconscionable and unenforceable as to Plaintiffs and Class members, and Plaintiffs seek a declaration to that effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the Classes defined above;

1         B.      Appoint Plaintiffs as the representatives of the Class and their counsel as Class

2   counsel;

3         C.      Award all actual, general, special, incidental, statutory, punitive, and consequential

4   damages, treble damages, and restitution to which Plaintiffs and the Class members are entitled by

5   law;

6         D.      Award pre-judgment and post-judgment interest on such monetary relief;

7         E.      Grant appropriate injunctive and/or declaratory relief, including, without limitation,

8   an order that requires Defendants to refrain from seeking to enforce the iTunes gift card terms and

9   conditions on victims of gift card scams who did not register or redeem the iTunes gift card, and

10  to refrain from transferring any money to Apple Developer accounts associated with gift card

11  scams;

12        F.      Award reasonable attorneys' fees and costs; and

13        G.      Grant such further relief that this Court deems appropriate.

14                                  **JURY DEMAND**

15        Plaintiffs, on behalf of themselves and the putative Class demand a trial by jury on all

16  issues so triable.

17  Dated: March 26, 2021                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

18                                       *s/* Alex M. Outwater

19                                CHRISTOPHER M. BURKE (CA Bar No. 214799)
                              ALEX M. OUTWATER (CA Bar No. 259062)

20                                600 W. Broadway, Suite 3300
                              San Diego, CA 92101

21                                Telephone: 619-233-4565
                              Facsimile:  619-233-0508

22                                cburke@scott-scott.com
                              aoutwater@scott-scott.com

23                                Joseph P. Guglielmo (admitted *pro hac vice*)
                              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

24                                The Helmsley Building
                              230 Park Ave., 17th Floor

25                                New York, NY 10169
                              Telephone: 212-223-6444

26                                Facsimile:  212-223-6334
                              jguglielmo@scott-scott.com

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anthony F. Fata (admitted *pro hac vice*)
Nyran Rose Rasche
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
afata@caffertyclobes.com
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

***Attorneys for Plaintiffs and the Putative Class***