UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CARL BARRETT, et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>APPLE INC. and APPLE VALUE SERVICES, LLC,<br><br>                    Defendants. | Case No. 5:20-cv-4812-EJD<br><br>The Honorable Edward J. Davila<br><br>**ESI STIPULATION AND [PROPOSED] ORDER**<br><br>Re: Dkt. No. 71 |

Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach, Michael Rodriguez, Maria Rodriguez, Guanting Qiu, and Andrew Hagene ("Plaintiffs"), and Defendants Apple Inc. and Apple Value Services, LLC ("Apple"), hereby agree that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case:

1. **Custodians.** The parties shall meet and confer to reach agreement on a reasonable list of custodians and non-custodial sources for purposes of collection, review, and production of electronically stored information. In connection with the meet and confer process, as soon as is practicable after entry of this Stipulation, each party shall provide a proposed list of their individual custodians and non-custodial sources who are knowledgeable about and were involved with the core issues or subjects in this case and/or possess relevant information relating to the claims and defenses.

2. **Search terms.** As soon as is practicable after entry of this Stipulation, the parties shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from those custodians, and the scope of collection from non-custodial sources. Each party shall provide a list of their proposed search terms or methods to be used to search their custodial and non-custodial sources. ESI, including but not limited to electronic files and email, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes. Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of search restrictions (*e.g.*, if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results. The parties shall make good faith efforts to identify appropriate custodians and produce ESI on the schedule to be agreed upon following entry of this Order, but reserve the right to seek ESI from additional custodians identified through discovery.

3. **Format for production of documents – documents existing in electronic format.** Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be produced

in multiple page, searchable group IV TIFF or PDF format at a resolution of at least 400 dpi in accordance with the following:

    A.    The document's original orientation should be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape).

    B.    Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF or PDF image files should be provided in an "Images" folder.

    C.    Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in the cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

    D.    TIFF or PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document.

    E.    Media and electronic information containing audio or video components should be produced in their native format. For all other files, the parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

    F.    To the extent spreadsheets are provided in native format, the file name for a produced spreadsheet should contain the bates number assigned to the file and the confidentiality designation. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions, or hearings.

    G.    Documents produced natively shall be produced with the native link (*i.e.*, the link between the native and PDF or TIFF file) provided. Such documents shall be represented in the set of

imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

   H. For documents which already exist in PDF format prior to production (*i.e.*, which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

   I. Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original if it is not possible to automate the creation of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

   J. Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives, SFTP or email, as appropriate. A producing party wishing to encrypt its productions shall do so using WinRAR encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or SFTP to which the production data is saved.

   K. Each production shall be accompanied by a dated production letter (on paper if accompanying physical production media, or in .pdf if accompanying a production by email or SFTP) describing the production by sources, and for each source, by date range and bates number, and identifying the document requests which the production responds to.

  4. **Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

  5. **Parent and child emails.** The parties shall produce email attachments sequentially after the parent email. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

6.       **Production of documents in native format.**  To the extent the parties produce any documents in native format, those documents should be linked to their associated placeholder PDF or TIFF image by the metadata field "Native Link."  The corresponding Load File shall include native file link information for each native file that is produced.  To the extent produced in native format and PDF or TIFF, the native file will be named as the first Bates number of the respective document.  Where native files are produced in lieu of TIFF or PDF images, each native file will be assigned a unique Bates number.  The Producing Party will produce a placeholder (a single-page TIFF or PDF slipsheet indicating that the native item was produced) along with the file itself in native format.  The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.  To the extent that a native spreadsheet must be redacted, the Producing Party may redact either the native file or produce TIFF or PDF images with burned in redactions in lieu of a native file and TIFF or PDF placeholder image.  If redacting TIFF or PDF images and to the extent that any of the following can be automated, the Producing Party, or its eDiscovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) process comments so that they are produced at the end of the spreadsheet; and (6) process spreadsheets so that they print across, then down.  If good cause exists, the Requesting Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Requesting Party to the extent the document was originally produced with concealed information.  The Producing Party shall not unreasonably deny such a request.

7.       **Databases.**  To the extent any request calls for the production of data maintained or stored in a database, the parties shall meet and confer in an attempt to agree upon the form of production, including the specific fields, tables and other information that will be produced.  The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce and will meet and confer over the scope of additional information that may be requested regarding such databases.  Nothing herein shall be construed as requiring a producing party to produce data in the form

sought by a requesting party nor shall anything herein prevent or limit either party from seeking relief from the Court regarding a request for the production of data. The parties reserve all rights to object, including but not limited to, objections for relevance, undue burden, and/or inaccessibility.

8. **Embedded documents.** Substantive embedded files (*e.g.*, attachments) in emails, iCals, and iMessages shall be extracted during processing and produced as separate documents. The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A. To the extent the Requesting Party identifies substantive embedded files in documents produced by the Producing Party that are not covered by this paragraph and are not viewable by the Requesting Party, the Requesting Party shall identify such documents to the Producing Party and the Producing Party shall use reasonable efforts to locate and produce such files.

9. **Deduplication.** A party is required to produce only a single copy of a responsive document and a party shall make best reasonable efforts to de-duplicate responsive ESI (based on MD5 or SHA-256 hash values at the document level) across Custodians. A party may also de-duplicate "near duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-256 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. The Producing Party will include any additional custodians that were included in a de-duplicated document in an Additional Custodian metadata field.

10. **Requests for hi-resolution or color documents.** The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the document as originally produced is illegible or difficult to read. The Producing Party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

11. **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the Producing Party shall produce both the original document and all English-language versions. In addition, if the Producing Party has a certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation) the Producing Party shall produce both the original document and the certified translation. Nothing in this agreement shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

12. **Document preservation.** The parties will undertake good faith efforts to preserve ESI that are proportionate and reasonable. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms. If any disputes arise concerning the scope of party's preservation efforts, the parties agree to meet and confer to fully discuss the reasonableness and proportionality of the preservation.

13. **Date format.** Dates and times must be concatenated into a single field, with a format of MM/dd/YYYY HH:MM:ss (zzz). Date delimiters, such as slashes and colons, must be consistent across all fields. In the format of MM/dd/YYYY, there are no spaces and only forward slashes. Date formats must be consistent within any one field. Date formats must be consistent across all fields, *i.e.*, a record with a sent date should have the same format in the last modified date field. To the extent reasonably practicable, all ESI shall be processed using Coordinated Universal Time as the uniform time zone. To the extent a Producing Party cannot process ESI with that time zone, it shall disclose the same and the parties shall meet and confer regarding a reasonable alternative.

14. **Production media.** The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via encrypted flash drive, or encrypted hard drive. To the extent possible, physical media should be protected before it is produced.

15. **Naming convention for production media.** Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc. The

compressed file should be named so as to indicate the Producing Party, the date of the production, and the sequence of the production (*e.g.*, "Apple Gift Card 20201111-001"). If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *Barrett v. Apple Inc. and Apple Value Services, LLC*, and (b) the Bates number range of the materials contained on the media.

16. **Technology Assisted Review or "TAR."** Nothing in this Order prevents the parties from agreeing to use TAR insofar as it improves the efficacy of discovery. Such topics should be discussed consistent with this Order.

17. **Privilege logs.** The parties agree that privilege logs shall be produced no later than 90 days after a production is made and in no event fewer than 30 days prior to the close of discovery. Privilege logs shall be produced as Excel spreadsheets, and shall include for each withheld document, a Bates number or other unique privilege log identifier, the type of privilege asserted, all custodians of the document, the date and time of creation or sending, the author or sender, all recipients (separated into primary recipients, courtesy copy recipients, and blind courtesy copy recipients to the extent they are available), and the name of the file or subject line of the email as reflected in the metadata. The log shall also contain a brief description of the general type and subject matter of the document, sufficient to enable another party to evaluate the claim of privilege or protection. All attorneys appearing on the log will be identified as such wherever they appear in the log, whether by an asterisk or some other means. All individuals will be identified by first and last name and email address, wherever they appear in the log, as long as that information is contained in the metadata. Where metadata, such as the subject line of an email, reflects privileged or protected information, a party may substitute a description of the document sufficient to allow parties to assess the claim of privilege or protection, provided that it indicates within the log where it has done so. Parties may use reasonable technological processes to identify documents likely to be privileged or protected, but nothing in this agreement relieves a party of its duty to review a document and determine whether it is actually privileged or protected before including it on a log produced to other parties. The parties further agree that:

A. If an embedded email communication has not otherwise been produced, then it must be separately identified and logged.

B. The following documents presumptively need not be included on a privilege log: 1) written or oral communications occurring between a Party and its counsel, whether external or in-house, following commencement of this action, and which concern the performance of duties specifically related to the litigation of this action; or 2) work product created by outside or in-house counsel, or by an agent of outside counsel other than a Party, after commencement of this action, and which concerns the performance of duties specifically related to the litigation of this action.

C. Nothing herein shall prevent a party from seeking further information about specific documents after reviewing the initial log.

18. **Third party documents.** A party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the parties to the Action have requested that third Parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other parties when it receives non-party productions, and shall, upon request by other parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third-party. In the event that the format of a third-party production does not conform with the specifications set forth herein, the parties shall meet and confer regarding the format of production to Requesting Parties. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

19. **Authentication.** The parties will meet and confer regarding an authentication stipulation concerning Documents produced in this Action.

20. **Rule 502(d).** The issues implicated by FRE 502(d) are addressed and governed by the Protective Order entered in this Action.

1  IT IS SO STIPULATED AND AGREED:

3  Dated: June 9, 2021

By:  s/ Joseph P. Guglielmo
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Christopher M. Burke
Alex M. Outwater
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Anthony F. Fata
Nyran Rose Rasche
Nickolas J. Hagman
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 318-782-4485

*Attorneys for Plaintiffs and the Class*

Dated: June 8, 2021

By:  s/ Kate T. Spelman
Kate T. Spelman
Alexander M. Smith
Madeline P. Skitzki
**JENNER & BLOCK LLP**
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: 213-239-5100
Facsimile: 213-239-5199

*Attorneys for Defendants*
*Apple, Inc. and Apple Value Services, LLC*

# ATTESTATION

Pursuant to L.R. 5-1(i), I attest that concurrence in the filing of this document has been obtained by the other signatories.

                                                 s/ Joseph P. Guglielmo
                                                 Joseph P. Guglielmo

# ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: __June 10__, 2021   By: _/s/ Virginia K. DeMarchi_
~~HON. EDWARD J. DAVILA~~
~~United States District Judge~~

                                                   Virginia K. DeMarchi
                                                 United States Magistrate Judge

# EXHIBIT A

**EXHIBIT A**

**TABLE OF METADATA FIELDS**

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Attachment Count | Number of attachments to an email | Number | The number of attachments for an email. | The number of attachments for an email. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| DateSent | | Date (MM/DD/YYYY format) | The date the email was sent. | For email attachments, the date the parent email was sent. |
| Time Sent | Time Sent | (mm/dd/yyyy hh:mm:ss format) | The time an email was sent. | The time a document was sent. |
| Date Received | Date Received | Date received (mm/dd/yyyy hh:mm:ss format) | The date the email was received. | For email attachments, the date the parent email was received. |
| Time Received | Time Received | Time received (mm/dd/yyyy hh:mm:ss format) | | |
| Date Created | Date created | Date created (mm/dd/yyyy hh:mm:ss format) | | |
| Date Last Modified | Date Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |

2

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| Other Custodian | Other Custodian | | Individual(s) whose documents de-duplicated out. | Individual(s) whose documents de-duplicated out. |
| File Size | File Size | Size | The size of an email file (MB) | The size of an email file (MB) |
| Path/Link | | Path/Link to Native File (Relative path to any files produced in native format, such as Excel spreadsheets or PowerPoints or media files) | | |
| Hash Value (MD5 or SHA-256) | Hash Value | Unique electronic signature of electronic file | | |
| Production Volume | Vol. 1 | Production volume name | | |

3

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Redaction | Redaction | Indication (*) that document contains redaction or redactions | Redaction(s) within the document. | Redaction(s) within the document. |