January 28, 2022

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:     Joint Discovery Letter Brief Concerning Timing of Apple's 30(b)(6) Deposition
        *Barrett v. Apple Inc.,* Case No. 5:20-cv-04812-EJD-VKD

Dear Judge DeMarchi:

        Pursuant to Section 4 of the Court's Standing Order for Civil Cases, Plaintiffs and
Defendants Apple Inc. and Apple Value Services LLC ("Apple") respectfully request the Court's
assistance in resolving a dispute concerning the timing of Apple's 30(b)(6) deposition.

## STATEMENT OF THE DISPUTE

        Plaintiffs served their 30(b)(6) deposition notice on Apple on June 30, 2021.  The parties
have met and conferred on multiple occasions regarding the timing of Apple's deposition but have
been unable to reach an agreement.[1]  Plaintiffs believe Apple's deposition should proceed
promptly. Apple believes the deposition should not proceed until the Court decides its Motion to
Dismiss the First Amended Complaint ("FAC").

**A.      Timing of Apple's 30(b)(6) Deposition**

**        1.      Plaintiffs' Position**

        Plaintiffs' position is simple—since discovery is not stayed, Apple's 30(b)(6) deposition
should proceed in a timely manner, consistent with Judge Davila's October 22, 2020 Order
rejecting Apple's attempt to resist discovery based on a pending motion to dismiss.

        Apple argues that the deposition should not proceed because its Motion to Dismiss will be
dispositive of the entire case. That argument was not previously successful in staying discovery,
and it should not be successful now. Plaintiffs have cured the defects cited in Judge Davila's Order
dismissing the initial complaint (ECF No. 51).  And when the Court takes a "preliminary peek" at
the briefing on Apple's Motion to Dismiss the FAC, it will find that the FAC alleges additional
facts in support of Plaintiffs' aiding-and-abetting claims.  The FAC also adds new counts for

---

[1]     The parties have not resolved all issues relating to Plaintiffs' Notice and continue to discuss
issues such as the scope and length of the deposition. The parties hope to reach agreement on the
remaining issues promptly.

***Receiving, Retaining, Withholding, or Concealing Stolen Property in violation of Cal. Penal Code §496***, and ***Conversion***.  These two new counts are based entirely on Apple's own conduct.  Notably, Apple refuses to acknowledge this fact.

The Court should also order the deposition to proceed because the 30(b)(6) deposition is designed to elicit fundamental information from Apple without the need for the completion of document discovery.  It will allow Plaintiffs to proceed in an efficient manner and focus their further discovery efforts.

### a.   <u>Procedural History</u>

Plaintiffs filed their Complaint on July 17, 2020. (ECF No. 1.) Apple filed a Motion to Dismiss the Complaint on October 8, 2020. (ECF No. 33.) On October 15, 2020, Apple filed an Administrative Motion to Stay Discovery Pending Resolution of Apple's Motion to Dismiss. (ECF No. 33.) Plaintiffs opposed Apple's attempt to delay discovery. (ECF No. 37.) Judge Davila denied Apple's Administrative Motion one week after it was filed. (ECF No. 38.)

On March 4, 2021, Judge Davila granted Apple's Motion to Dismiss. (ECF No. 51.) Judge Davila granted Plaintiffs leave to amend eight of their ten claims. *See id.*, *passim*.  Plaintiffs filed their First Amended Complaint ("FAC") under seal on April 14, 2021. (ECF No. 59.) The FAC alleges statutory counts under the Unfair, Unlawful, and Deceptive prongs of the Unfair Competition Law (Cal. Bus. & Prof. Code §17200) and the Consumers Legal Remedies Act (Cal. Civ. Code §1750); the False Advertising Law (Cal. Bus. & Prof. Code §17500); for Receiving, Retaining, Withholding, or Concealing Stolen Property (Cal. Penal Code §496); and Declaratory Judgment (28 U.S.C. §2201); and common law counts for Conversion and Aiding and Abetting Intentional Torts.  As noted, the claims under Penal Code §496 and for Conversion are new and arise from Apple's own conduct in connection with the funds it knowingly receives in connection with the widespread gift card scam and keeps for itself.

In drafting the FAC, Plaintiffs worked diligently to cure the deficiencies identified in Judge Davila's Order and added two new counts (bolded and italicized above) which are uniquely suited to the facts of this case and focus exclusively on Apple's own conduct.  The FAC also adds allegations that Plaintiffs' investigation and discovery has failed to uncover a single instance in which Apple has issued a cash refund to the victim of a gift card scam, even when victims contact Apple on the day of the scam. FAC, ¶87, ¶¶130-36.

Apple filed its Motion to Dismiss the FAC on April 28, 2021. (ECF No. 61.) Plaintiffs timely opposed the motion (ECF No. 67) and Apple filed a Reply on June 23, 2021. (ECF No. 74.) Plaintiffs served their Notice of Deposition of Apple pursuant to Fed. R. Civ. P. 30(b)(6) on June 30, 2021.[2]  Plaintiffs have met and conferred with Apple regarding the timing and scope of Apple's corporate deposition on several occasions.  On December 21, 2021, Apple's counsel stated definitively that Apple did not intend to produce witnesses before its Motion to Dismiss is decided because doing so would be, in Apple's view, unduly burdensome.

---

[2]     A true and correct copy of Plaintiffs' deposition notice is attached as Exhibit A.

Apple will tell the Court that it has been diligent throughout the discovery process. Plaintiffs disagree.  Apple has attempted to delay discovery repeatedly, as evidenced below:

- **Administrative Motion to Stay Discovery** – Apple filed its Administrative Motion to Stay Discovery before Plaintiffs were required to file an opposition to the Motion to Dismiss. Attempting to stay discovery before seeing Plaintiffs' opposition suggests it was done as a matter of course and not because of the merits of the case.

- **Document Production** – Plaintiffs served the first of two sets of requests for production of documents on October 15, 2020.  Apple's first production was made on March 2, 2021 and its last production was on July 15, 2021. Apple has produced 4,530 pages. Apple says it "has diligently engaged in discovery," pointing to the fact that it "is in the process of reviewing tens of thousands of additional documents, and anticipates that it will produce tens (if not hundreds) of thousands of pages more." However, more than 15 months have passed since Plaintiffs served their initial and primary document requests.  Apple has now failed to produce ***any*** documents for a six-month period after producing only a tiny fraction of the universe of responsive documents.  Apple's conduct has been anything but diligent.

- **Apple's 30(b)(6) Deposition** – Plaintiffs noticed Apple's 30(b)(6) deposition on June 30, 2021.  Apple's counsel repeatedly questioned whether it was in Plaintiffs' best interests to take the 30(b)(6) at this early stage of the case before stating on December 21, 2021 that Apple would not provide a 30(b)(6) witness before a decision on its Motion to Dismiss the FAC unless it was ordered to do so by the Court.

### b. <u>Argument</u>

 "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2018 WL 3036734, at *1 (N.D. Cal. June 19, 2018) (citing *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011)). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Id.* (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)). "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray*, 133 F.R.D. at 40 (citation omitted).

Courts in the Ninth Circuit consider two factors when determining whether to grant a protective order to stay discovery pending resolution of a dispositive motion: (1) whether the pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed; and (2) whether the pending dispositive motion can be decided absent additional discovery. *The Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 352 (N.D. Cal. 2003). When applying this test, the Court takes a "'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted." *Nexus6P*, 2017 WL 3581188, at *1 (quoting *Tradebay, LLC v. eBay, Inc.,* 278 F.R.D. 597, 602

(D. Nev. 2011)). If the two above questions are answered affirmatively, the Court may issue a protective order. *Pacific Lumber,* 220 F.R.D. at 352. "However, if either prong of this test is not established, discovery proceeds." *Id.*

Apple satisfies the second prong of the *Pacific Lumber* test. Plaintiffs do not need additional discovery to oppose Apple's motion to dismiss. It is fully briefed. However, Apple cannot satisfy the first *Pacific Lumber* prong because a "preliminary peek" at the briefing for Apple's motion to dismiss will show that it is not potentially dispositive of the entire case. Plaintiffs amended nine counts and added two new counts in the FAC that focus on Apple's own conduct. Plaintiffs also added new factual allegations, including new allegations regarding the intentional ineffectiveness of Apple's "warnings" to consumers, and new plaintiffs. Apple, for its part, does nothing but repeat the same arguments that were rejected by Judge Davila about the time and resources that will be required to comply with the deposition notice. "The resources required to respond to discovery are part of the 'traditional burdens of litigation". (ECF No. 38 at 3) (citing *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,* No. 5:16-CV-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018)).

Apple should not be permitted to stay deposition discovery. Plaintiffs request that the Court order the 30(b)(6) deposition of Apple to proceed as noticed, with Apple providing witnesses to testify as to the noticed topics within the next 60 days.

### 2.   Apple's Position

Judge Davila dismissed Plaintiffs' initial complaint in its entirety, and Plaintiffs' amended complaint fails to cure the fundamental deficiencies Judge Davila identified. Apple's pending motion to dismiss is therefore likely to dispose of this case. Though Apple accordingly has a strong basis to seek a discovery stay, it has not done so. Rather, Apple has responded to written discovery, commenced what it anticipates to be significant document production, and engaged in extensive meet-and-confers with Plaintiffs' counsel. Apple requests a far more modest remedy here: an order temporarily relieving its corporate representatives from the undue burden of preparing and sitting for a Rule 30(b)(6) deposition until and unless Judge Davila determines that Plaintiffs' claims are viable.

There is no dispute that this Court can control the sequence of discovery, and it should exercise that authority to prevent Plaintiffs from subjecting Apple's employees to a premature and burdensome 30(b)(6) deposition. Doing so will not subject Plaintiffs to any prejudice, as there is no scheduling order in place. If the Court permits Apple's 30(b)(6) deposition to proceed now (which it should not), it should make clear that Plaintiffs are not entitled to take another 30(b)(6) deposition later, as "the second deposition of an organization is subject to the one-deposition limitation." *Vasquez v. Leprino Foods Co.*, 2021 WL 2661451, at *14 (E.D. Cal. June 29, 2021).

### a.   Background

This case involves gift card scams in which third-party fraudsters allegedly pressure victims to resolve fictitious emergencies by making payments with Apple gift cards. Plaintiffs do not allege that Apple misled consumers into transferring gift card funds to third-party fraudsters; in fact, they expressly acknowledge that Apple warned consumers of potential scams.

Nonetheless, Plaintiffs claim Apple could have done more to prevent these scams, and they allege that Apple "aids and abets" third-party scammers by taking insufficient measures to unwind fraudulent gift card activity or refund the money Plaintiffs spent on the gift cards they transferred to third-party scammers.  Apple vigorously disputes these allegations and has moved to dismiss Plaintiffs' lawsuit twice.

On March 4, 2021, Judge Davila granted Apple's initial motion to dismiss, recognizing that Plaintiffs "attempt to hold Apple liable for third-party conduct" and "do not satisfy the standard for such claims."  ECF No. 51, at 12.  Plaintiffs filed an amended complaint, which Apple again moved to dismiss because it failed to cure the deficiencies Judge Davila identified.  That motion has been fully briefed since June 23, 2021 and under submission since October 15, 2021. In the meantime, Apple has diligently engaged in discovery: it made initial document productions totaling 4,530 pages, is in the process of reviewing tens of thousands of additional documents, and anticipates producing tens (if not hundreds) of thousands of pages more.  Plaintiffs' focus on a temporary lull in Apple's document production ignores that the lull is due, in large part, to Plaintiffs' ever-increasing demands regarding ESI search terms and custodians. This necessitated extensive negotiations between the parties, involving over a dozen emails, letters, and lengthy meet and confers over a five-month period.  Since the parties finally reached agreement in November, Apple has been reviewing a universe of 150,000 documents and anticipates beginning a rolling production in February.

On June 30, 2021, Plaintiffs served a 30(b)(6) deposition notice seeking testimony on twelve broad and disparate topics, including:

- Apple's organizational structure and computer systems related to numerous business units;

- Apple's storage of gift card scam-related data, including the creation and maintenance of related systems;

- Apple's practices related to refunding gift card funds and paying app developers;

- All internal assessments related to processing or transmitting gift cards; and

- All "actions considered and/or taken by Apple" to prevent gift card scams, identify and communicate with alleged victims, freeze or disable gift cards, Apple IDs, and/or developer accounts, and withhold payments to developers due to fraud.

Apple first objected to the timing of the 30(b)(6) deposition in August and reiterated multiple times its intent to seek intervention because it was premature.  Apple will need to produce multiple witnesses to cover these topics, who will need to spend hours preparing to testify as corporate representatives.  Moreover, the witnesses most knowledgeable about these topics are individuals Plaintiffs will likely seek to depose in their individual capacities, meaning they will need to sit for multiple depositions without the opportunity to coordinate timing to minimize burden, should the 30(b)(6) depositions proceed now.

While Apple remains willing to participate in discovery, it asks this Court to relieve its witnesses of the burden associated with these depositions until and unless Judge Davila determines that Plaintiff has any viable claims.

### b.   Argument

This Court has "broad discretion to dictate the sequence of discovery." *Russell v. Maman*, 2020 WL 5943844, at *4 (N.D. Cal. Oct. 7, 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). This Court should exercise that authority to relieve Apple of the undue burden of preparing its employees for depositions now—particularly given the significant likelihood that Judge Davila will dismiss this lawsuit in its entirety.

The topics on which Plaintiffs seek testimony are extremely broad and touch on virtually every issue in the case (as well as issues beyond the case). Multiple Apple witnesses would need to divert significant time and focus away from their full-time jobs to prepare for and attend these depositions. Apple has no objection to engaging in document discovery; it has been reviewing and producing documents, even as its likely dispositive motion remains pending. But the unique burden a 30(b)(6) deposition imposes on Apple's employees weighs strongly in favor of Apple's requested relief—particularly given the "broad topics" of testimony. *WI-LAN Inc. v. Lenovo (U.S.), Inc.*, 2017 WL 3194692, at *2 (S.D. Cal. July 27, 2017).

In contrast to the significant burden a 30(b)(6) deposition would impose on Apple's employees, Plaintiffs will face no prejudice waiting to depose Apple unless and until their claims are deemed viable. The Court has not issued a scheduling order, so there are no pending deadlines. *See Allen v. Protective Life Ins. Co.*, 2020 WL 5878276, at *5 (E.D. Cal. Oct. 2, 2020) (granting stay of discovery and finding it was "unlikely that Plaintiff [would] suffer any significant harm by a stay," as no scheduling order had been entered and no initial case management conference had occurred). If anything, delaying the deposition will give the parties clarity about the scope of this lawsuit and allow Plaintiffs to depose Apple based on a better-developed record.

Pausing Plaintiffs' requested deposition is particularly appropriate given Apple's pending motion to dismiss. Courts routinely stay (or limit) discovery when a pending motion to dismiss "can be decided absent discovery" and is "potentially dispositive of the entire case." *Malley v. San Jose Midtown Dev't, LLC*, 2020 WL 5877575, at *7 (N.D. Cal. Oct. 2, 2020) (granting discovery stay). This case readily satisfies both criteria:

- <u>First</u>, Plaintiffs concede they "do not need additional discovery to oppose Apple's motion to dismiss." *Supra* at 4.

- <u>Second</u>, Apple's motion—like the motion Judge Davila granted earlier—will likely dispose of the entire case. In granting Apple's earlier motion to dismiss, Judge Davila held that Plaintiffs "attempt to hold Apple liable for third-party conduct" and "do not satisfy the standard for such claims." ECF No. 51, at 12. Plaintiffs have tried to plead around Judge Davila's order by alleging that Apple somehow "converted" their funds, withheld "stolen property" by purportedly failing to refund gift cards Plaintiffs purchased and used, and improperly disclaimed liability for stolen gift cards. But these allegations still run headfirst

into the fundamental problem Judge Davila identified: Apple is simply not liable for the criminal acts of third-party scammers.

Plaintiffs are therefore incorrect that Apple's motion to dismiss is not "potentially dispositive of the entire case." *Supra* at 4. Even if dismissal were not a "foregone conclusion," there is a "clear possibility" that Judge Davila will entirely dismiss Plaintiffs' lawsuit, which would render the 30(b)(6) deposition moot. *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 287 (S.D. Cal. 2000). It is accordingly more efficient to relieve Apple of the burden of preparing for the deposition until and unless Judge Davila determines that Plaintiffs have viable claims.

Finally, and despite Plaintiffs' assertion to the contrary, it is irrelevant that Judge Davila declined to stay discovery in its entirety at the outset of this case. Since that time, Judge Davila has dismissed this lawsuit once. Courts frequently grant discovery stays after initial dismissals to ensure that claims "can at least partially withstand a motion to dismiss." *Hall v. Apollo Grp., Inc.*, 2014 WL 4354420, at *7 (N.D. Cal. Sept. 2, 2014); *see also, e.g.*, *Song Fi, Inc. v. Google, Inc.*, 2016 WL 9185325 (N.D. Cal. Apr. 27, 2016) (similar). Moreover, Apple does not seek a complete discovery stay again; it requests only that the Court pause Apple's 30(b)(6) deposition until Judge Davila determines that Plaintiffs have stated a viable claim. *See, e.g.*, *Flsmidth Spokane, Inc. v. Emerson*, 2014 WL 979187, at *2 (D. Idaho Mar. 12, 2014) (ordering limited stay of depositions and written discovery).

## NEED FOR HEARING

The parties defer to the Court regarding the need for a hearing. To the extent that a hearing would assist the Court in resolving the parties' dispute, the parties will present these issues to the Court at the Court's convenience.

## RELEVANT DATES

The Court took Apple's Motion to Dismiss under submission on October 15, 2021 and vacated the motion hearing and Case Management Conference scheduled for October 21, 2021. (ECF No. 82.) There are currently no discovery-related deadlines in the case.

## COMPLIANCE WITH LEAD COUNSEL MEETING REQUIREMENT

The parties have conferred about this dispute on several occasions, including most recently via Zoom on December 21, 2021 and January 18, 2022. Participants for Plaintiffs were Joseph Guglielmo, Alex Outwater, Nyran Rose Rasche, and Nickolas Hagman. Participants for Apple were Kate Spelman and Alexander Smith.

DATED:  January 28, 2022                    Respectfully submitted,


By:  */s/ Alex M. Outwater*                By:  */s/ Kate T. Spelman*
SCOTT+SCOTT ATTORNEYS AT LAW LLP           JENNER & BLOCK LLP
Christopher M. Burke (Bar No. 214799)      Kate T. Spelman (CA Bar No. 269109)
Alex M. Outwater (Bar No. 259062)          Alexander M. Smith (CA Bar No. 295187)
600 W. Broadway, Suite 3300                633 West 5th Street, Suite 3600
San Diego, CA  92101                       Los Angeles, CA 90071-2054
Telephone: 619-233-4565                    Telephone: 213-239-5100
Facsimile:  619-233-0508                   Facsimile:  213-239-5199
cburke@scott-scott.com                     kspelman@jenner.com
aoutwater@scott-scott.com                  asmith@jenner.com


SCOTT+SCOTT ATTORNEYS AT LAW LLP           ***Attorneys for Defendants Apple Inc. and***
Joseph P. Guglielmo (*pro hac vice*)       ***Apple Value Services, LLC***
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com


CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
Anthony F. Fata (*pro hac vice*)
Nyran Rose Rasche *(pro hac vice)*
Nickolas J. Hagman
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
afata@caffertyclobes.com
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com


***Attorneys for Plaintiffs and the Putative***
***Class***

## **ATTESTATION OF ALEX M. OUTWATER**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Alex M. Outwater.  By his signature, Mr. Outwater attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.


Dated:  January 28, 2022                          By:    */s/ Alex M. Outwater*_____
                                                                     Alex M. Outwater


## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.


Dated:  January 28, 2022                          By:    */s/ Alex M. Outwater*_____
                                                                     Alex M. Outwater

# EXHIBIT A

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
CHRISTOPHER M. BURKE (CA Bar No. 214799)
ALEX M. OUTWATER (CA Bar No. 259062)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
aoutwater@scott-scott.com

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Anthony F. Fata (admitted *pro hac vice*)
Nyran Rose Rasche
Nickolas J. Hagman
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
afata@caffertyclobes.com
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

***Attorneys for Plaintiffs and the Class***

[Additional Counsel on Signature Page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| CARL BARRETT, MICHEL POLSTON, NANCY MARTIN, DOUGLAS WATSON, ERIC MARINBACH, MICHAEL RODRIGUEZ, MARIA RODRIGUEZ, GUANTING QUI, and ANDREW HAGENE, individually, and on Behalf of All Others Similarly Situated, | Case No. 5:20-cv-04812-EJD |
| Plaintiffs, | |
| v. | |
| APPLE INC., a California Corporation; APPLE VALUE SERVICES LLC; and DOES 1 Through 10, Inclusive, | **PLAINTIFFS' F.R.C.P. 30(b)(6) NOTICE OF DEPOSITION OF APPLE INC. AND APPLE VALUE SERVICES LLC** |
| Defendants. | |

1

1

2    PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

3    Procedure, counsel for Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric

4    Marinbach, Michael Rodriguez, Maria Rodriguez, Guanting Qiu, and Andrew Hagene ("Plaintiffs")

5    will take the deposition of Defendants Apple Inc. and Apple Value Services LLC ("Defendants") on

     a date, time, and location to be agreed upon by counsel.

6    PLEASE TAKE FURTHER NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of

7    Civil Procedure, Defendants' designee or designees shall be qualified and prepared to testify during

8    the examination fully and knowledgeably regarding the subject matters set forth in the attached

9    Schedule A.   The deposition will be videotaped and recorded by an officer duly qualified to

10   administer oaths and may be recorded by stenographic, audio, audiovisual, video and/or real-time

11   computer means.   The deposition will be taken in accordance with and for all purposes permissible

12   under the Federal Rules of Civil Procedure.  Counsel of record are invited to attend and participate.

13   Dated: June 30, 2021

14

15                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

16

17                          _____s/ Alex M. Outwater_____

18                          Christopher M. Burke (CA Bar No. 214799)
                            Alex M. Outwater (CA Bar No. 259062)

19                          600 W. Broadway, Suite 3300
                            San Diego, CA 92101

20                          Telephone: 619-233-4565
                            Facsimile:  619-233-0508

21                          cburke@scott-scott.com
                            aoutwater@scott-scott.com

22

23

24

25

26

27

28

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

Anthony F. Fata (admitted *pro hac vice*)
Nyran Rose Rasche
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
afata@caffertyclobes.com
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

***Attorneys for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

I, Alex Outwater, hereby certify that on June 30, 2021, I caused a true and correct copy of the foregoing Plaintiffs' F.R.C.P. 30(b)(6) Notice of Deposition of Apple Inc. and Apple Value Services LLC to be served upon the following by electronic mail:

Kate T. Spelman
kspelman@jenner.com
Alexander M. Smith
asmith@jenner.com
**JENNER & BLOCK LLP**
633 West 5th Street, Suite 3600
Los Angeles, CA 90071


_s/_      Alex M. Outwater

## SCHEDULE A

## DEFINITIONS

1.      "Apple," "Defendants," "You," or "Your" collectively refer to Apple Inc. and Apple Value Services LLC, and any of their parents, subsidiaries, affiliates, alter-egos, directors, officers, employees, partners, members, representatives, agents, attorneys, accountants, consultants, contractors or vendors, and any other Person acting or purporting to act on Apple's behalf.

2.      "Action" means *Barrett v. Apple Inc.*, 5:20-cv-04812, pending in the U.S. District Court for the Northern District of California.

3.      "Apple ID" means the account registered with Apple that is used to access Apple services.

4.      "App" means digital applications, software, or programs that can be downloaded on mobile devices.

5.      "App Store" means Apple's app and digital software distribution platform.

6.      "Communication" means the transmittal of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise) and Includes correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type.

7.      "Computer System" Includes any server (whether physical or virtual), desktop computer, laptop computer, tablet computer, point-of-sale system, debit or credit card reader, payment processing system, smart phone, cellular telephone, networking equipment, internet site, intranet site, and the software, programs, applications, scripts, operating systems, or databases used to control, access, store, add, delete, or modify any information stored on any of the foregoing non-exclusive list.

8.      "Employee" means any current or former officer, director, or other Person who is or was employed by Apple.

9.      "ESI" means electronically stored information and includes, but is not limited to, the following: all items covered by Fed. R. Civ. P. 34(a)(1)(A); files, information, or data that are generated, received, processed, recorded, or stored by computers or other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.); files, information, or data saved on backup media, including tapes and hard drives; files, information, or data stored on external servers administered and maintained by third parties; files, information, or data stored on employees' smartphones, notebook computers, or other portable computing devices used for work purposes; internal or external websites; output resulting from the use of any software program, application, platform, or the like, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs, outlines, images, electronic mail, instant messages (or similar programs), "chat" features (such as Slack, Microsoft Teams and other instant messaging software), bulletin board (or online forum) programs, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside, regardless of whether such data exists in an active file, a deleted file, or file fragment; activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants, hand-held wireless devices, smartphones, tablets, or similar devices.

10.     "Including" or "Includes" means "including, but not limited to" and "including, without limitation."

11.     "iTunes Gift Card" means any iTunes Gift Card containing a redemption code that is used in lieu of cash or other forms of tender to purchase goods or services on iTunes or the App Store, or in-app purchases from apps purchased or downloaded from the App Store.

12.     "Gift Card Scams" mean the formulaic scams described online at https://support.apple.com/gift-card-scams, and further described in the First Amended Class Action Complaint, or subsequent operative complaint, in this Action.

13.     "Person" means any natural person or any business, legal, or governmental entity or association.

14.     "Personal Identifying Information" means any information that can be used on its own or in conjunction with other information to identify, contact, or locate an individual person or to otherwise identify an individual, Including names, home and email addresses, social security numbers, driver's license numbers, Payment Card Data, dates of birth, age, gender, race, and telephone numbers.

15.     "Plaintiffs" means Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach, Michael Rodriguez, Maria Rodriguez, Guanting Qiu, and Andrew Hagene.

16.     "Structured Data" means ESI stored in a structured format, such as databases or data sets, according to specific form and content rules, as defined by each field of the database.

## RULES OF CONSTRUCTION

1.     The "Relevant Time Period" for these topics is from January 1, 2012 through July 31, 2020, unless otherwise specifically indicated.  The Relevant Time Period applies to all topics below unless otherwise specified.

2.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring anything within the scope of the topic that might otherwise be construed to be outside the scope of the topic.

3.     "Any," and "each" shall be construed broadly to bring within the scope of the Topic both the identification of the individual and collective that might otherwise be construed to be outside the scope of the topic.

4.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      The singular form of a noun or pronoun includes the plural form and vice versa.

6.      The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

**DEPOSITION TOPICS**

1.      Apple's corporate structure and organization, Including the identity, location, description, and reporting structure of each of Your business groups, divisions, departments, units, and personnel primarily responsible for, and the identities, locations, and descriptions of the Computer System, applications, platforms, ESI, and Structured Data used by Your personnel for:

   a.   marketing and sales of iTunes Gift Cards, Including transactional data;

   b.   the processing, transmitting, protection, collection, and storage of data relating to iTunes Gift Cards transactions, Including stored value contained within iTunes Gift Cards;

   c.   identifying, investigating, and responding to Gift Card Scams, Including the gift cards, Apple IDs, and Developer Accounts involved in such scams, and any automated or non-automated analysis or investigation of the specific transactions related to the claims of the Plaintiffs;

   d.   issuing refunds to Gift Card Scam victims;

   e.   recording, tracking, and quantifying Apple's revenue and earnings from gift card scams, Including sales revenue and commissions;

   f.   communications within Apple concerning Gift Card Scams, and externally with Gift Card Scam victims;

   g.   the text appearing on iTunes Gift Cards and packaging, and development of same (Including, but not limited to, alternate warning language considered and rejected, and reasons for same);

   h.   the text appearing on the "About Gift Card Scams" web page (Including, but not limited to, language considered and rejected, and reasons for same);

   i.   the text of Apple's disclaimer language (Including, but not limited to, language considered and rejected, and reasons for same); and

      j.   any focus groups, surveys, or consumer research relating in any manner to iTunes Gift Card fraud, Including those relating to the purported warnings, disclaimers, or other text appearing on iTunes Gift Cards or their packaging.

2.    Apple's creation, implementation (Including written policies and training of personnel), monitoring, servicing, Security of, and IT support for, its Computer System storing, managing, processing, transmitting, or otherwise maintaining ESI and Structured Data relating to Gift Card Scams and Gift Card Scam victims.

3.    Actions considered and/or taken by Apple to prevent Gift Card Scams, Including any related policies or procedures.

4.    Actions considered and/or taken by Apple to identify, communicate with, and respond to Gift Card Scam victims, Including any related policies or procedures.

5.    Actions considered and/or taken by Apple to freeze or disable gift cards, Apple IDs, Developer Accounts, and any other accounts or codes related to Gift Card Scams, Including any related policies or procedures.

6.    Actions considered and/or taken by Apple to determine which Apple Developer commissions should not be paid as a result of fraud, Including any related policies or procedures, what becomes of the commissions not paid as a result of fraud, and Apple's systems which can or do track such unpaid commissions.

7.    Actions considered and/or taken by Apple to refund any stored amounts or monies to Gift Card Scam victims, Including any related policies or procedures and the actual amounts refunded to Gift Card Scam victims, if any, during the Relevant Time Period.

8.    The nature, timing, and scope of all internal or third-party investigations, audits, evaluations, or assessments of Apple's processing, transmitting, or protection of Gift Cards and any stored value on Gift Cards.

9.    The nature, timing, and scope of all internal or third-party investigations, audits, evaluations, or assessments of Apple's policies relating to the identification and prevention of Gift Card Scams, Including any evaluation of Apple's compliance with consumer protection standards.

10.   All measures taken by Apple to remedy deficiencies identified by internal or third-party investigations, audits, evaluations, or assessments of Apple relating to Gift Card Scams.

11.   Apple's knowledge of how Gift Card Scams operate, Including any Notifications received by Apple identifying or describing known or potential means used by App Developers or scammers to engage in Gift Card Scams.

12.   The nature, timing, and scope of any studies or investigations performed by You related to the impact and effects of Gift Card Scams, Including identity theft, fraud, loss of Personal Identifying Information and related costs and expenses incurred by consumers.