1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    CARL BARRETT, et al.,                    Case No.  5:20-cv-04812-EJD

9                  Plaintiffs,                **AMENDED ORDER GRANTING IN
                                              PART AND DENYING IN PART
10            v.                              MOTION TO DISMISS FIRST
                                              AMENDED COMPLAINT; DENYING
11   APPLE INC., et al.,                      MOTION FOR PROTECTIVE ORDER
                                              TO STAY 30(B)(6) DEPOSITION**
12                 Defendants.

13                                            Re: Dkt. No. 61

14

15         Plaintiffs Carl Barrett, Michel Polston, Nancy Martin, Douglas Watson, Eric Marinbach,

16   Michael Rodriguez, Maria Rodriguez, Guanting Qiu, and Andrew Hagene bring this putative class

17   action against Defendants Apple, Inc., Apple Value Services LLC (collectively, "Apple"), and

18   Does 1-100.  In their First Amended Complaint ("FAC"), Plaintiffs assert the following claims:

19   (1) unfair practices in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal.

20   Civ. Code § 1750 et seq.; (2) unfair practices in violation of the California Unfair Competition

21   Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (3) unlawful practices in violation of the CLRA;

22   (4) unlawful practices in violation of the UCL; (5) deceptive practices in violation of the CLRA;

23   (6) deceptive practices under the UCL; (7) violation of the California False Advertising Law

24   ("FAL"), Cal. Bus. & Prof. Code § 17500; (8) receiving, retaining, withholding, or concealing

25   stolen property in violation of California Penal Code § 496; (9) conversion; (10) aiding and

26   abetting intentional torts; and (11) declaratory judgment under 28 U.S.C. § 2201.  First Am. Class

27   Action Compl. ("FAC"), Dkt. No. 59.

28

United States District Court
Northern District of California

Before the Court is Apple's motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Apple's motion for a protective order to stay depositions pursuant to Rule 30(b)(6).  Defs. Apple Inc. and Apple Value Servs., LLC's Not. of Mot. and Mot. to Dismiss First Am. Compl. ("Mot."), Dkt. No. 61; Defs. Apple Inc. and Apple Value Servs., LLC's Not. of Mot. and Mot. for Protective Order to Stay 30(b)(6) Deposition, Dkt. No. 85.  The Court finds the matter suitable for resolution without oral argument.  Civ. L.R. 7-1(b).  Having considered the parties' written submission, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss and DENIES the motion for a protective order.

## I.      BACKGROUND

### A.      Factual Background

Defendant Apple Inc. is a California corporation with its principal place of business in Cupertino, California.  FAC ¶ 16.  Apple Value Services, LLC, is a Virginia corporation with its principal place of business in Cupertino, California.  *Id*. ¶ 17.  Plaintiffs are residents of Maryland, Oregon, California, New York, Massachusetts, and Missouri, all of whom fell victim to scams involving the purchase of Apple's App Store & iTunes gift cards.  *Id.* ¶¶ 7-15, 112-177.

The Federal Trade Commission has reported that, between 2015 and 2019, scammers stole more than $93.5 million by carrying out a formulaic gift card scam.  FAC ¶ 58.  FTC data indicates that gift card scammers steal more and more money with each passing year.  *Id*.  Gift card scammers stole approximately $24.4 million in 2019 alone, and $29.4 million in 2020 alone.  *Id*.  These figures may indicate only a fraction of the theft occurring each year, as many scam victims may not file a report.  *Id*.  About a quarter of all reported gift card scams involve Apple gift cards.  *Id*.

According to Plaintiffs, the scam works as follows: The scammer contacts an individual.  *Id*. ¶¶ 63-71.  The scammer induces panic or urgency in the individual or otherwise induces the individual to give money to the scammer.  *Id*.  The scammer may, for example, tell the individual that the individual has a time-sensitive opportunity to receive a vaccine for COVID-19.  *Id*.  The scammer tells the individual that the individual can transfer money to the scammer by using

Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   iTunes gift cards. *Id.* The scammer tells the individual to go to a nearby retailer to buy one or

2   more gift cards. *Id.* The scammer tells the individual to give to the scammer the unique code(s)

3   located on the back of the gift card(s). *Id.* If the individual complies, the scammer may ask the

4   individual to purchase more gift cards and share their codes as well. *Id.*

5         Once the scammer is in possession of a gift card code, the scammer is in possession of the

6   value associated with the gift card—at least until the individual who was the victim of the scam or

7   someone else with access to the code uses up that value. *Id.* At this point, the scammer does one

8   of two things. *Id.* The scammer may sell the code to a third party in exchange for money. *Id.*

9   Alternatively, the scammer may input the code into an Apple ID account controlled by the

10  scammer. *Id.* If the scammer inputs the code into their Apple ID account, the scammer can use

11  the value of the gift card as if it were their own and carry out transactions in either the iTunes

12  Store or the App Store. *Id.* For example, the scammer may purchase songs or movies on iTunes,

13  or they may spend the money on or within applications ("apps") controlled by a third party. *Id.*

14  Some apps are free but some cost money to download; moreover, some apps allow or induce users

15  to pay money within the app itself—for example, to get access to special features of the app. *Id.*

16        In a typical version of the scam, however, the scammer will not spend the gift card value in

17  the iTunes Store or on or within third-party apps. *Id.* Instead, scammers spend the value on or

18  within an app that the scammer theirself controls. *Id.* This means that, prior to contacting the

19  individual and inducing the individual to buy a gift card, the scammer has often already created

20  their own app or otherwise obtained control over an app someone else created. *Id.* In order to

21  create an app offered in Apple's App Store, one must become an Apple Developer. *Id.* ¶¶ 33-36.

22  To become an Apple Developer, one must create an Apple ID, enroll in the Apple Developer

23  Program, enter into the Apple Developer Program License Agreement, and pay a fee of $99 per

24  year. *Id.* Whenever a purchase is made on or within an app (either with gift card value or with

25  other loaded monetary value), Apple retains 100% of the value of that purchase until

26  approximately 45 days after the end of the fiscal month, at which point Apple either pays 70% of

27  the value to the Apple Developer controlling the app or retains the entire amount based on indicia

28  Case No.: 5:20-cv-04812-EJD
    AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1  of fraud. *Id.* ¶¶ 5-6, 71.  Either way, Apple retains at least 30% of the value.  *Id.*  The scam, or at

2  least one cycle of the scam, is complete when the Apple Developer-scammer receives their

3  payment from Apple.  The scammer has at this point effectively converted gift card codes into

4  money.

5       Plaintiffs allege that Apple has control of its iTunes and App Store such that it knew or

6  should have known about specific iTunes gift card scams as they were occurring or soon after they

7  occurred. *See, e.g.*, *id.* ¶ 25.  Plaintiffs allege that Apple knew or should have known: which

8  Apple IDs had uploaded the codes of stolen gift cards; which iTunes Store or App Store purchases

9  had been made with the value uploaded from stolen gift cards; and which Apple Developer

10 accounts were associated with purchases made with the value uploaded from stolen gift cards. *See,*

11 *e.g.*, *id.* ¶ 73.  More generally, Plaintiffs allege that Apple knew or should have known how the

12 iTunes gift card scam works, and that it is a widespread and impactful phenomenon.  *See, e.g.*,

13 FAC ¶ 63.  Plaintiffs allege that Apple could have used its knowledge and control of its online

14 stores to suspend Apple ID accounts and Apple Developer accounts associated with suspicious

15 activity, to refuse to pay Apple Developer accounts that seemed to be involved with scams, and to

16 refund to scam victims Apple's 30% commission on purchases associated with scams (if not the

17 full 100% loss of the stolen gift card value). *Id.* ¶¶ 97-98.  Plaintiffs point out that in 2012 Apple

18 started producing gift cards in $500 denominations, potentially increasing the impact of individual

19 scams. *Id.* ¶ 106.  Plaintiffs allege that Apple's actions or failures to act indicate that Apple is

20 aiding and abetting the scams, or is otherwise violating California fair competition statutes by

21 knowingly paying scammers and keeping funds received because of the scams. *See, e.g.*, *id.* ¶¶

22 108-110.

23      Apple provides warning language in bold red lettering on the backs of iTunes gift cards.

24 *Id.*; *see also* Req. for Jud. Not. in Supp. of Apple's Mot. to Dismiss Plfs.' First Am. Compl.

25 ("RJN"), Dkt. No. 62, Ex. 1.[1]  This warning language reads as follows: "Do not share your code

26

27   [1] As discussed below, the Court grants Apple's motion to request judicial notice of this language and the other exhibits referenced throughout this Order.  *See infra* Section III.A.

28 Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

with anyone you do not know." *Id.*; FAC ¶ 110.  Apple has created a webpage on which it shares

information regarding gift card scams, including information about how to avoid scams and what

to do in case a scam has occurred.  RJN, Ex. 3.  This webpage is titled "About Gift Card Scams."

*Id*.  The language on the website states, among other things: "If you believe you're the victim of a

scam involving Apple Gift Cards, App Store & iTunes Gift Cards, or Apple Store Gift Cards, you

can call Apple at 800-275-2273 (U.S.) and say 'gift cards' when prompted."  *Id*. at 1.   The

website also includes the following language: "Never provide the numbers on the back of a Gift

Card to someone you do not know.  Once those numbers are provided to the scammers, the funds

on the card will likely be spent before you are able to contact Apple or law enforcement."  *Id*.

Apple gift cards are subject to Terms and Conditions.  *See, e.g.*, *id.* ¶¶ 43-46.  A partial

version of the Terms and Conditions appears on the back of the packaging sleeve for iTunes gift

cards.  RJN, Ex. 1.  This partial version refers users to the full Terms and Conditions on Apple's

website.  *See, e.g.*, FAC ¶¶ 43-46.  There is also a reference to the Terms and Conditions website

on the back of the gift card itself.  RJN, Ex. 1.  The Terms and Conditions language on the gift

card packaging includes the following: "Neither Apple nor Issuer is responsible for any loss or

damage resulting from lost or stolen cards or for use without permission."  FAC ¶¶ 43-46.  The

Terms and Conditions on Apple's website includes the following:

> We reserve the right, without notice to you, to void or deactivate
> [iTunes gift cards] (including a portion of your Account balance)
> without a refund, suspend or terminate customer accounts, suspend
> or terminate the ability to use the Services, cancel or limit orders and
> bill alternative forms of payment if we suspect Store Credit was
> obtained, used, or applied to an Apple ID fraudulently, unlawfully,
> or otherwise in violation of these terms and conditions.

*Id.* ¶ 44.  The version of the Terms and Conditions at issue here state that California law applies.

*Id.*

Plaintiffs cite an April 2016 NBC News report, in which an Apple spokesperson stated:

> [I]f someone contacts Apple Support after sending off the gift card
> code – and the money has not been drained from the card – [the
> scam victim] can freeze the account and have the money refunded to
> them. If the money is already gone, Apple advises people to file a
> complaint with the FTC.

Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

5

United States District Court
Northern District of California

1   *Id.* ¶ 94.  Plaintiffs claim that this news report indicates, among other things, that "Apple

2   deceptively suggests to scam victims that their money is 'gone,' even when [Apple] will retain a

3   30% commission, and, in many cases, has not yet paid or will not pay the remaining 70% into the

4   scammer's bank account."  *Id.*

5       Plaintiffs allege that Apple has violated California unfair competition statutes by

6   committing affirmative misrepresentation and/or fraud by omission via its red warning language,

7   its "About Gift Card Scams" webpage, its Terms and Conditions, its communications with news

8   media, and its communications with gift card users who contacted Apple after having been

9   scammed.  *See, e.g.*, *id.* ¶¶ 79, 100.

10      Plaintiffs bring this action individually and also on behalf of a proposed nationwide class

11  of persons in the United States who were victims of the iTunes gift card scam and who did not

12  receive a refund from Apple.  *Id.* ¶¶ 181-302.  Plaintiff proposes one subclass that includes scam

13  victims who contacted Apple following the scam.  *Id.*  There are nine named Plaintiffs, all of

14  whom fell victim to a typical version of the scam as described above.  *Id.* ¶¶ 112-177.  Four of the

15  named Plaintiffs contacted Apple after being scammed, two contacted law enforcement, and two

16  contacted both the police and a district attorney.  *Id.*  One named Plaintiff apparently sought no

17  remedy.  *Id.*  According to the FAC, the four individual Plaintiffs who did not contact Apple

18  "[were] informed that once the scammers redeemed the iTunes gift card there [was] nothing that

19  Apple would do for them."  *Id.*  Those who contacted Apple were informed that after the cards had

20  been redeemed, "there was nothing Apple could do."  *Id.*

21          **B.**      **Procedural Background**

22      Plaintiffs filed this action on July 17, 2020, asserting claims for violations of the UCL,

23  CLRA, FAL, as well as claims for breach of contract, quasi-contract, and state elder abuse laws.

24  Dkt. No. 1.  The Court granted Apple's motion to dismiss the original complaint with leave to

25  amend, except for the breach of contract claim (which Plaintiffs withdrew) and the quasi-contract

26  claims.  Order Granting Defs.' Mot. to Dismiss ("MTD Order"), Dkt. No. 51.  In the operative

27  FAC, Plaintiffs dropped the elder abuse claims and instead added claims for violation of

United States District Court
Northern District of California

1   California Penal Code § 496 and conversion.  Dkt. No. 59.  The motion to dismiss the FAC now

2   before the Court followed.  Dkt. No. 61.

3   **II.    LEGAL STANDARD**

4          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

5   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

6   it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

7   complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state

8   a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule

9   12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts

10  to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

11  1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept

12  as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give

13  rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court must also

14  construe the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915

15  F.2d 1242, 1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations,

16  it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

17  plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

18         A court generally may not consider any material beyond the pleadings when ruling on a

19  Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated

20  as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, documents

21  appended to the complaint, incorporated by reference in the complaint, or which properly are the

22  subject of judicial notice may be considered along with the complaint when deciding a Rule

23  12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal*

24  *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

25  Likewise, a court may consider matters that are "capable of accurate and ready determination by

26  resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank,*

27  *N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R.

28  Case No.: 5:20-cv-04812-EJD
    AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    Evid. 201(b)).

2    **III.    DISCUSSION**

3        **A.        Request for Judicial Notice**

4        Apple requests the Court take judicial notice of six exhibits: (1) a set of photographs of an

5    Apple $50 gift card; (2) an AppleCare Support article entitled ███████████████████████

6    ███████████████; (3) an article entitled "About Gift Card Scams" from Apple's website;

7    (4) an October 2018 press release from the FTC entitled "Paying Scammers with Gift Cards,"

8    available on the FTC's website; (5) a November 24, 201 press release from the FTC entitled "FTC

9    Has Gift Card Tips for Holiday Buying," available on the FTC's website; and (6) a December

10   2019 press release from the Federal Deposit Insurance Corporation entitled "FDIC Consumer

11   News: What You Should Know About Gift Cards," available on the FDIC's website.  RJN.  The

12   Court previously granted Apple's request for judicial notice of Exhibits 1, 3, 4, 5, and 6.  Dkt. No.

13   51 at 7–10.  Plaintiffs oppose only the request for judicial notice of Exhibits 1 and 2.  Plfs.' Opp'n

14   to Apple's Req. for Jud. Not. ("RJN Opp'n"), Dkt. No. 68.

15       Exhibit 1 includes three photographs of a $50 iTunes gift card purchased on August 18,

16   2020.  RJN, Ex. 1.  One of the photographs depicts the front of the gift card while it is still in its

17   packaging; one depicts the back of the gift card while it is still in its packaging; and one depicts

18   the back of the gift card once it has been removed from its packaging.  *Id.*  The Court previously

19   took judicial notice because the disclaimer language on the back of the gift card packaging

20   matched verbatim the language quoted in the complaint, and Plaintiffs did not assert that the

21   language and formatting of the gift card shown in Exhibit 1 was different from the gift cards they

22   purchased.  Dkt. No. 51 at 8–9.  In the FAC, Plaintiffs now allege that no such warning language

23   appeared on the cards purchased by Barrett, Marinbach, the Rodriguezes, and Qiu.  FAC ¶¶ 116-

24   117, 149-150, 157-158, 167-168.  Plaintiffs further allege that the warning language was not

25   added to Apple gift cards until midway through the class period.  *Id.* ¶ 53.  However, Plaintiffs do

26   not allege that the language did not appear on the cards purchased by Polston, Martin, Watson, and

27   Hagene.  The Court's earlier ruling thus still applies to those four named Plaintiffs and to putative

28
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
     8

United States District Court
Northern District of California

class members who purchased gift cards in the first half of the class period.  Accordingly, the Court grants the request for judicial notice of Exhibit 1 as incorporated in the complaint.  *Id.* ¶¶ 51-55.

██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
███████████████████

Accordingly, the Court grants Apple's request for judicial notice of Exhibits 1, 2, 3, 4, 5, and 6.

**B.     Rule 12(b)(6)**

**1.     California Penal Code § 496 (Claim 8)**

California Penal Code § 496 provides a civil cause of action to "[a]ny person who has been injured" by a defendant "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained."  Cal. Penal Code § 496(a), (c).  A criminal conviction is not necessary for civil liability to attach.  *Switzer v. Wood*, 247 Cal. Rptr. 3d 114, 121 (2019).  To state a claim for a violation of section 496(a), Plaintiffs must plead that: (1) the property was stolen or obtained in a manner constituting theft, (2) the defendant knew the property was stolen or so obtained, and (3) the defendant received or had possession of the stolen property.  *Id.*  For the purposes of section 496(a), stolen property extends to property that has been stolen by conversion or false pretense, and the same allegations giving

1    rise to Plaintiffs' conversion claim may suffice to state a claim under section 496.  *Casamassima*

2    *v. Cuadra*, No. 20-cv-04071-JSC, 2020 WL 7482214, at *4 (N.D. Cal. Nov. 16, 2020) (citing *Bell*

3    *v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013); *Sustainable Pavement Techs., LLC v. Holiday*,

4    No. 2:17-cv-02687-WBS-KJN, 2019 WL 2483294, at *3 (E.D. Cal. June 14, 2019)).

5            The parties do not dispute that Plaintiffs' gift card funds are property within the meaning

6    of section 496(a), nor do they dispute that the funds are stolen or obtained in a manner constituting

7    theft.  Instead, Apple argues that Plaintiffs have not stated a section 496 claim for three reasons:

8    (1) section 496 applies only to property that has already been stolen or obtained in a manner

9    constituting theft, but Plaintiffs' purchase of the gift cards was a lawful transaction; (2) Plaintiffs

10   have not pled Apple's actual knowledge that the money was stolen; and (3) Apple has a refund

11   policy despite having no duty to offer a refund.  Mot. at 10–13.  In response, Plaintiffs argue that

12   (1) the precise moment Apple receives the funds from the gift card retailer is a question for

13   discovery, and that even if the funds were not stolen at the time of purchase, Apple still

14   subsequently concealed and withheld them in violation of section 496; (2) Apple obtained

15   knowledge once named Plaintiffs contacted Apple and informed Apple the funds were stolen; and

16   (3) Apple's current refund policy does not negate Apple's past failure to provide refunds.  Opp'n

17   at 3–7.

18           As to Apple's first argument, California courts are split on whether the property in

19   question must already be stolen before it is received, concealed, or withheld.  *Compare, e.g.*,

20   *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 971 (2018) (no liability under section

21   496 where property was not stolen at the time defendant obtains it) *and Hueso v. Select Portfolio*

22   *Servicing, Inc.*, 527 F. Supp. 3d 1210, 1231–32 (S.D. Cal. 2021) (same) *and Instant Brands, Inc.*

23   *v. DSW Solutions, Inc.*, No. EDCV 20-399 JGB (KKx), 2020 WL 5947914, at *3–5 (C.D. Cal.

24   Aug. 20, 2020) (same) *with Farms v. Calcot, Ltd.*, No. F077565, 2021 WL 236326, at *10–11

25   (Cal. Ct. App. Jan. 25, 2021) (rejecting *Lacagnina*'s holding as "an erroneous interpretation of the

26   statute").  Based on a plain reading of the statute's use of past tense, the Court agrees with the

27

28   Case No.: 5:20-cv-04812-EJD
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
     10

courts holding that the property must be stolen before receipt.[2]  Plaintiffs contend that the exact point at which Apple receives the gift card funds after purchase is a question for fact discovery, but that is beside the point—the question is whether Plaintiffs have adequately pled that the property was stolen before Apple received it.  Opp'n at 3–4.  Plaintiffs argue that they do so allege, but the paragraphs to which they cite do not support that proposition.  *Compare id.* at 4 (citing FAC ¶¶ 63-65, 75) *with* FAC ¶¶ 63-65 (describing how scammers may induce victims into purchasing gift cards) *and id.* ¶ 75 ("Apple thus knows that it has, *or soon will have*, possession and control of stolen property . . . ." (emphasis added)).  The scammers mislead victims into purchasing the cards, but the theft is not complete until the scammers obtain the redemption codes and redeem the funds for their own purposes.  Accordingly, the Court finds that Plaintiffs have not pled that the property was stolen before Apple received the funds.

Receipt of stolen property, however, is not the only way to violate section 496(a)—concealing or withholding stolen property is also actionable.  *See, e.g.*, Cal. Jury Instr. – Crim. 14.65 (distinguishing between purchasing or receiving stolen property, selling or aiding in selling stolen property, or concealing or withholding stolen property); *Grouse River II*, 848 F. App'x at 243 n.4 ("[T]he withholding of funds after demand is an alternative basis for liability . . . ."); *Switzer*, 35 Cal. App. 5th at 132 (noting that one purpose for the proposed legislation creating section 496(c) was to "[e]stablish a civil remedy for persons who have been injured by another's purchase, *concealment*, sale, or *withholding* of property where such person knows the property has been stolen" (emphass added)); *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013) (finding that evidence established that defendant violated section 496(a) not only by receiving property by false pretenses, but also by withholding that property when the owner asked for it back).  Here,

---

[2] Plaintiffs contend that *Lacagnina*, *Hueso*, and *Instant Brands* rely on the district court's decision in *Grouse River Outfitters Ltd. v. NetSuite, Inc.* ("*Grouse River I*"), No. 16-cv-02954-LB, 2016 WL 5930273 (N.D. Cal. October 12, 2016), which the Ninth Circuit reversed.  *Grouse River Outfitters, Ltd. v. Oracle Corp.* ("*Grouse River II*"), 848 F. A'ppx 238 (9th Cir. 2021).  The Ninth Circuit in *Grouse River II* does not directly address the question of whether property must be stolen at the time of receipt.  *See id.* at 242–43.

Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
11

1    Martin, Marinbach, Qiu, and Hagene contacted Apple the same day or within one week of falling

2    victim to the scam, but Apple refused to refund the stolen gift card funds.  FAC ¶¶ 135, 152, 169,

3    176-177.  Plaintiffs have alleged that Apple retains 100% of app purchases until approximately 45

4    days after the end of the fiscal month, when Apple pays 70% of the value to the app developer or

5    retains the entire amount based on indicia of fraud.  *Id.* ¶¶ 5-6, 71.  Either way, Apple retains at

6    least 30% of the value stolen from Plaintiffs.  *Id.*

7            This potential alternative theory of liability leads to Apple's second argument, which is

8    that Plaintiffs have only pled that Apple has "knowledge of a *claim* of theft—not *actual*

9    *knowledge* that a theft had taken place."  Mot. at 11 (citing *Freeney v. Bank of Am. Corp.*, No. 15-

10   2376-JGB-PWJx, 2016 WL 5897773, at *12 (C.D Cal. Aug. 4, 2016); *Kidron v. Movie*

11   *Acquisition Corp.*, 40 Cal.  App. 4th 1571, 1586 (1995)).  The cases Apple relies on are inapposite

12   or otherwise unpersuasive.  California courts have long held that the knowledge element of a

13   conversion claim is typically proven not through direct evidence but rather by inference through

14   circumstantial evidence, such as a defendant's failure to explain how they came to possess a stolen

15   item or suspicious circumstances concerning the possession of the item.  *See, e.g.*, *Yates v.*

16   *Marshall*, No. ED CV 08-398-AHM(E), 2008 WL 4809413, at *9–10 (C.D. Cal. Nov. 4, 2008)

17   (citing cases).  "Possession of recently stolen property is so incriminating that to warrant

18   conviction there need only be, in addition to possession, slight corroboration in the form of

19   statements or conduct of the defendant tending to show his guilt."  *People v. McFarland*, 58 Cal.

20   2d 748, 754 (1962).  Here, Plaintiffs have pled direct knowledge: Martin, Marinbach, Qiu, and

21   Hagene directly informed Apple that they had been scammed and their money had been stolen.

22   Plaintiffs have also pled indirect suspicious circumstances: that Apple stands to benefit from

23   proliferation of the scam, that Apple is fully capable of determining which accounts redeemed the

24   stolen gift card funds and preventing payout of those funds, and that Apple nevertheless informed

25   Martin, Marinbach, Qiu, and Hagene that there was nothing it could do for them despite those

26

27

28   Case No.: 5:20-cv-04812-EJD
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    Plaintiffs' prompt notification of the theft.[3]  Accordingly, the Court finds that Martin, Marinbach,

2    Qiu, and Hagene have adequately pled a claim for concealing or withholding stolen property under

3    section 496(a).

4        Apple's reliance on its refund policy is misplaced.  ████████████████████

5    ████████████████  ████████  ████████████████████████████████████████████████

6    ███████████████████████████████████.  Even if the refund policy existed before

7    Plaintiffs fell victim to the scam, the refund policy does not in negate the knowledge element.

> [T]he mere receipt of stolen goods with knowledge that they have
> been stolen is not itself a crime if the property was received with
> intent to restore it to the owner without reward or with any other
> innocent intent.  *The critical factor is the defendant's intent at the
> time he receives or initially conceals the stolen property from the
> owner.*  The intent to restore must exist at the moment the stolen
> property is accepted by the receiver if he is to be acquitted.  *If the
> defendant received or concealed stolen property with general
> criminal intent* to aid the thief, or *to deprive the owner of
> possession, or renders more difficult a discovery by the owner, . . .
> he possesses the requisite wrongful intent,* and it is no defense that
> he [s]ubsequently intended to return the stolen property to the
> owner.

15   *People v. Wielograf*, 101 Cal. App. 3d 488, 494 (Cal. Ct. App. 1980) (emphases added).  The

16   refund policy thus does not immunize Apple from section 496 liability.

17       Accordingly, the Court finds that only Plaintiffs Martin, Marinbach, Qiu, and Hagene have

18   adequately pled a section 496 claim, and that it would be futile to grant leave to amend to the

19   remaining named Plaintiffs.

20                    **2.    Conversion (Claim 9)**

21       "Conversion is the wrongful exercise of dominion over the property of another."  *Mindys*

22   *Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (internal quotation marks omitted).

23

---

24   [3] An Apple representative went so far as to inform Martin that "Apple does not receive the money

25   she spent to purchase the iTunes gift cards."  FAC ¶ 136.

26   [4] ████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████

     ████████████████████████████████████████

28   Case No.: 5:20-cv-04812-EJD
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
     13

United States District Court
Northern District of California

1   The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

2   property at the time of the conversion; (2) the defendant's conversion by a wrongful act or

3   disposition of property rights; and (3) damages. *Id.* The alleged converter must have assumed

4   control over the property or applied the property to his own use. *Id.*

5        Apple contends that Plaintiffs have not pled the requisite affirmative act to deprive them of

6   their property. Mot. at 9–10. Apple relies principally on *Archer v. Coinbase, Inc.*, 53 Cal. App.

7   5th 266 (2020), but that case is distinguishable. In *Archer*, the California Court of Appeals

8   affirmed the grant of summary judgment to the defendant online digital currency platform, ruling

9   that Coinbase's refusal to support a new form of forked cryptocurrency was not action amounting

10  to conversion. 53 Cal. App. 5th at 276–77. Because Coinbase did not host the forked

11  cryptocurrency in the first instance, it could not have deprived the plaintiff of a property right or

12  exercised dominion over the forked cryptocurrency. That situation is simply not comparable to

13  the one alleged in the FAC, where upon prompt notification that certain named Plaintiffs had been

14  scammed, Apple nevertheless refused to provide a refund to Plaintiffs, even where the scammer

15  had not yet redeemed the funds. FAC ¶¶ 112, 121, 130, 137, 146, 153, 163, 170, 177. Apple

16  concedes that it at least processed payments and refused to provide refunds, but nevertheless

17  argues that this case is distinguishable from *Archer* "only . . . if one accepts Plaintiffs' false

18  narrative that Apple 'affirmatively' 'split[]s the funds' with scammers." Reply at 9. But on a

19  motion to dismiss, the Court must accept as true all well pleaded facts. *Reese v. BP Exploration*

20  *(Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

21       At any rate, "conversion can occur when a *willful* failure to return property deprives the

22  owner of possession." *Fearon v. Dep't of Corr.*, 162 Cal. App. 3d 1254, 1257 (1984) (emphasis

23  added) (citing *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 918 (1974)). However, "[n]ot

24  every failure to deliver property to the rightful owner constitutes a conversion. To establish a

25  conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods

26  and to exercise ownership over them, or to prevent the owner from taking possession of the

27  property." *Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208, 222 (2003) (internal citation

United States District Court
Northern District of California

and quotation marks omitted).  The Court finds that Martin, Marinbach, Qiu, and Hagene have alleged facts from which it may be inferred that by refusing to refund the scammed funds, Apple prevented them from taking possession of their property and, indeed, benefitted from perpetuation of the scam.  As to the other named Plaintiffs, however, the FAC contains no allegations that Apple was on notice that they were victims of a scam, and thus Apple could not have had an intent to prevent them from recovering their property and could not have taken any affirmative act to do so.

Accordingly, the Court finds that only Plaintiffs Martin, Marinbach, Qiu, and Hagene have stated a claim for conversion, and that it would be futile to grant leave to amend to the remaining named Plaintiffs.

### 3. Third-party liability (Claims 1-4, 10: CLRA, UCL, FAL, aiding and abetting intentional torts)

"Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act."  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996) (citations omitted).  "A defendant can be held liable [for aiding and abetting] on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort."  *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992), *modified* (Feb. 10, 1992) ("[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act").

In its prior order, the Court dismissed Plaintiffs' CLRA, UCL, FAL, and aiding and abetting claims that attempted to assert liability for third-party conduct.  MTD Order at 12–18. The Court found that Plaintiffs had not pled facts from which it could be inferred that Apple gave "substantial assistance or encouragement" to the scammers, or that Apple "reached a conscious decision to participate" in the scam.  *Id.*

Apple contends that the FAC does not cure the deficiencies the Court previously identified. Mot. at 5–8. In response, Plaintiffs assert that Apple "affirmatively assisted the scammers" by uploading gift card codes onto Apple IDs, converting the codes into stored value, transferred the stored value to iTunes apps, converting the stored value into U.S. dollars, transferring the U.S. dollars to scammers' financial accounts, and transferring 30% or more of the U.S. dollars into Apple's own bank accounts. Opp'n at 11 (citing FAC ¶¶ 67, 39-41, 66, 68-69, 71-81). Plaintiffs also point to the fact that Apple retains at least some portion of the gift card funds despite notice that the theft is actively ongoing as to the named Plaintiffs who contacted Apple. *Id.* Plaintiffs argue that they have now alleged that Apple "hopes and believes" that by permitting the gift card scam to persist, Apple will profit, thereby overcoming the Court's earlier distinction between this situation and *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007). *Id.* at 11–12. Finally, Plaintiffs argue that they have now pled that Apple offered gift cards in large denominations prior to the start of the alleged class period but while the gift card scams were ongoing, in the hopes of further facilitating the scam. *Id.* at 12 (citing FAC ¶ 106).

The Court disagrees with Plaintiffs' assertion that they have adequately pled "substantial assistance or encouragement" to the scammers. As to Plaintiffs' list of "affirmative" acts concerning converting and transferring funds, these acts amount to nothing more than payment processing, which is not sufficient standing alone to plead a claim for aiding and abetting. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007); *Schulz*, 152 Cal. App. 4th at 97; *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952 (2002). As the Court previously held, the fact that Apple benefits from the scam is also insufficient to plead a claim for aiding and abetting, and Plaintiffs offer no legal support for their proposition that the relative amount Apple stands to obtain is dispositive. *Compare* FAC ¶ 57 (distinguishing "mere payment processors, who keep a small per-transaction fee" from Apple's retention of at least a 30% commission) *with Schulz*, 152 Cal. App. 4th at 96–97 (allegations that PayPal and Neovi profited from illegal lottery's use of their payment systems are insufficient to show substantial assistance or encouragement). Plaintiffs' attempt to plead around *Schulz* by marginally modifying their allegations concerning

United States District Court
Northern District of California

1    Apple's "hope and belief" and its decision to offer gift cards in large denominations is

2    unpersuasive, and these modified allegations do not alter the Court's prior analysis.  MTD Order

3    at 16–17 (rejecting Plaintiffs' suggestion that Apple's decision to offer $500 gift cards as support

4    for its "hope and belief" that people would fall victim to the scam as "too attenuated to establish

5    Apple's substantial assistance or encouragement of the scam, given the many possible reasons

6    Apple might have had for introducing this higher denomination of gift card").  Plaintiffs still do

7    not point to any affirmative acts comparable to those of the Ginix and PaySystems defendants in

8    *Schulz*, such as authorizing use of their logos on the illegal lottery's website that linked directly to

9    the Ginix and PaySystems websites, contracting directly with the lottery company, and providing

10   personal assurances from a corporate representative that "Ginix did not have any problem with the

11   operation of the lottery site and would not freeze funds paid by consumers."  *Schulz*, 152 Cal.

12   App. 4th at 94, 96–97.  Because the Court finds that Plaintiffs have not pled substantial assistance

13   or encouragement, it need not reach the question of whether Plaintiffs have adequately pled

14   knowledge of the third-party conduct.

15        Accordingly, the Court finds that Plaintiffs have again not adequately pled third-party

16   liability.  Because Plaintiffs were not able to plead facts supporting third-party liability despite

17   being granted leave to amend to do so, the Court finds that further leave to amend would be futile

18   and dismisses the aiding and abetting claim and the portions of the CLRA, UCL, and FAL claims

19   that are premised on third-party liability with prejudice.

20              **4.    Fraud (Claims 1-2, 5-7: CLRA, UCL, FAL)**

21        Plaintiffs allege that Apple violated the CLRA, the UCL, and the FAL by engaging in

22   affirmative misrepresentation and fraud by omission, thereby breaching a duty to disclose.  FAC

23   ¶¶ 197-218, 239-272.

24                   **a.    Affirmative misrepresentations**

25        The elements of intentional misrepresentation in California are: (1) misrepresentation; (2)

26   knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5)

27   resulting damage.  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977–78 (N.D. Cal. 2016) (citing

28   Case No.: 5:20-cv-04812-EJD

United States District Court
Northern District of California

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997)).

The Court previously found that Plaintiffs' four theories of affirmative misrepresentations were flawed.  MTD Order at 19–20.  First, Plaintiffs did not adequately plead reliance on Apple's website, the Terms and Conditions disclaimer, and a communication to a news network, because they did not plead that any of them had viewed the website, disclaimer, or statement to the news.  Second, Plaintiffs did not adequately plead causation as to statements Apple made to the two Plaintiffs who contacted Apple.

In the FAC, Plaintiffs now appear to allege three theories of affirmative misrepresentations: (1) "falsely suggesting on its website that by the time a victim can call, the funds will have become the rightful property of legitimate content sellers"; (2) "misrepresent[ing] its affiliation, connection, or association with the scammers"; and (3) informing the named Plaintiffs who spoke to Apple that "the money was redeemed and/or spent, and that there was nothing Apple could do."  FAC ¶¶ 202-203, 214-215, 245-249, 259-261.  Apple asserts that Plaintiffs do not state a claim under any theory.  Mot. at 17–19.  In their opposition brief, Plaintiffs opted not to address their claim based on affirmative misrepresentation.  Opp'n at 16.  The Court understands Plaintiffs to have effectively conceded the point, if not waived it.  Nevertheless, the Court proceeds to address the deficiencies in pleading affirmative misrepresentation.

Plaintiffs' first theory cannot support a claim for an affirmative misrepresentation, as Plaintiffs still do not allege that any of them viewed the alleged misrepresentation on Apple's website, much less relied on it.  *See id.* ¶¶ 112-177.  The second theory likewise does not state a claim, as the FAC is devoid of any allegations concerning specific affirmative misrepresentation from Apple about its relationship with the scammers.

The third theory presents a somewhat closer call.  Plaintiffs Martin, Marinbach, Qiu, and Hagene each allege that the Apple representative they spoke to over the phone informed them that "there was nothing Apple could do."  *Id.* ¶¶ 135-136 ("The Apple representative told Plaintiff Martin that because the gift cards had been redeemed, there was nothing that Apple could do, and refused to return to Plaintiff Martin any portion of the money she spent on the gift cards.  The

Apple representative told Plaintiff Martin that Apple does not receive the money she spent to purchase the iTunes gift cards."); ¶ 152 ("The Apple representative told Plaintiff Marinbach that because the gift cards had been redeemed, there was nothing that Apple could do, and refused to return to Plaintiff Marinbach any portion of the money he spent on the gift cards.  The representative told Plaintiff Marinbach that it is Apple's policy not to refund iTunes gift cards, and refund requests must be directed to the merchant that sold him his iTunes gift cards.  Plaintiff Marinbach informed Apple that the retailer denied his request for a refund, but Apple advised Plaintiff Marinbach that there was nothing further that Apple could do."); ¶ 169 ("[D]espite telling her that the funds had not been spent, Apple refused to provide Plaintiff Qiu with a refund, and told her there was nothing Apple could do."); ¶ 177 ("[T]he Apple representative informed Plaintiff Hagene that because the gift cards had been spent, there was nothing that Apple could do. Apple denied Plaintiff Hagene's requests for a refund.").  Plaintiffs adequately plead facts suggesting that there was, in fact, something Apple could do—based on Apple's complete control over the iTunes ecosystem, it could have easily determined who redeemed the stolen gift card funds, dealt with them accordingly, halted the processing of any payments, and returned at least some of the funds to Plaintiffs.

However, while Plaintiffs have pled a false statement with knowledge of falsity and facts suggestive of intent, they do not adequately plead reliance and resulting damage necessary to state a claim for fraud by affirmative misrepresentation.  The only things Plaintiffs allege that a reasonable consumer would have done differently at this stage of the scam had Apple not misrepresented that "there was nothing Apple could do" are: (1) demand at least a partial refund, and (2) pursue legal or other action against Apple regarding its involvement in and profiting from the scam.  *Id.* ¶¶ 252, 262.  However, each of the Plaintiffs who contacted Apple were denied a refund, suggesting that they did demand at least a partial refund.  *Id.* ¶¶ 135-136, 152, 169, 176-77.  And this lawsuit itself is evidence that Plaintiffs were not prevented from pursuing legal action against Apple.  Plaintiffs tacitly acknowledge their inability to adequately plead reliance by expressly choosing not to address fraud by affirmative misrepresentation in their opposition brief.

Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

1    Opp'n at 16 ("However, because reliance is most clear in connection with Apple's omissions of

2    material fact on the packaging sleeve and the cards themselves . . . Plaintiffs focus on those

3    omissions here.").

4         Accordingly, the Court finds that Plaintiffs again have failed to state a claim for fraud

5    based on affirmative misrepresentations.

6                              **b.      Fraud by omission**

7         "Omissions may be the basis of claims under California consumer protection laws, but to

8    be actionable the omission must be contrary to a representation actually made by the defendant, or

9    an omission of a fact the defendant was obliged to disclose."  *Hodsdon v. Mars, Inc.*, 891 F.3d

10   857, 861 (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006);

11   internal quotation marks and emphasis omitted).  "Under California law, a duty to disclose arises

12   in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

13   when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when

14   the defendant actively conceals a material fact from plaintiff; or (4) when the defendant makes

15   partial representations but also suppresses some material facts."  *In re Apple In-App Purchase*

16   *Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (internal citation omitted); *see also LiMandri*

17   *v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  Plaintiffs must plead reliance, causation, and

18   damages.  *In re Apple In-App Purchase*, 855 F. Supp. 3d at 1038.  "For a non-disclosed fact to be

19   material, a plaintiff must show that if the omitted information had been available, the plaintiff

20   would have been aware of it and behaved differently."  *Keegan v. Am. Honda Motor Co.*, 838 F.

21   Supp. 2d 929, 940 (C.D. Cal. 2012) (quoting *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964,

22   971 (N.D. Cal. 2008)), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

23        In the FAC, Plaintiffs now espouse two theories of fraud by omission[5]: (1) the failure to

24   adequately warn customers about the existence, nature, and prevalence of the scam and to direct

25   _____

26   [5] An FAL claim cannot be predicated on an omission.  *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d
     954, 969–70 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th
27   Cir. 2018).

28   Case No.: 5:20-cv-04812-EJD
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
                                      20

United States District Court
Northern District of California

1   victims to call Apple immediately on the gift card packaging and on the cards themselves; and (2)

2   failing to tell victims who contacted Apple that Apple possessed their stolen gift card funds, that

3   Apple retains those funds for weeks before paying them out to vendors, that the vendors are the

4   scammers themselves, and that Apple keeps 30% or 100% of the proceeds for itself.  FAC ¶¶ 202,

5   214, 243-252, 258-262, 270.  The Court previously rejected earlier versions of these theories

6   because Plaintiffs did not allege that they read the language on the packaging or the cards, and

7   because the purported omissions concerning Apple's alleged participation in or control over

8   aspects of the scam was not contrary to Apple's disclaimer policy stating that Apple is not

9   responsible for stolen gift cards.  MTD Order at 21–23.

10       As to the first theory relating to omissions on the gift cards and their packaging, Plaintiffs

11   now allege that each of them read both the outer packaging and the card but nevertheless still

12   failed to realize that they were being scammed.  FAC ¶¶ 114-119, 121-128, 130-134, 137-144,

13   146-150, 153-161, 163-168, 170-175.  They further allege that had the cards or the card packaging

14   advised of the existence and nature of the scams, or stated that anyone asking for payment by gift

15   card was a scammer, or advised the purchaser to call Apple immediately if they had been deceived

16   into providing the code to a scammer, Plaintiffs would have either not purchased the card, not

17   given the code(s) to the scammer, and contacted Apple immediately.  *Id.*  Furthermore, Barrett,

18   Marinbach, the Rodriguezes, and Qiu allege that no warning language appeared on the cards they

19   purchased.  *Id.* ¶¶ 116-117, 149-150, 157-158, 167-168.  The Court accepts these factual

20   allegations as true.  *See Reese.*, 643 F.3d at 690.

21       Apple argues that Plaintiffs cannot plead an omission claim under either of their theories

22   because they have not adequately pled a duty to disclose "the existence, nature, and prevalence of

23   gift card scams" in the absence of a safety hazard or physical defect affecting the gift cards'

24   central function.  Mot. at. 13–17; Reply at 9–11 (citing *Hodsdon*, 891 F.3d at 863; *Daugherty*, 144

25   Cal. App. 4th at 835).  Plaintiffs respond that because they have adequately pled exclusive

26   knowledge of material facts and active concealment of material facts under *LiMandri*, they need

27   not plead a safety hazard or physical defect affecting central functionality under *Hodsdon*.  Opp'n

28   Case No.: 5:20-cv-04812-EJD
    AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
    21

1    at 16–19.  Plaintiffs rely on *In re Toyota Rav4 Hybrid Fuel Tank Litig.* for this proposition.  534 F.

2    Supp. 3d 1067, 1102 (N.D. Cal. 2021) (agreeing that "the *Wilson* and *Hodsdon* tests, on the one

3    hand, and the *LiMandri* test, on the other, represent *alternative* means of pleading a pure-omission

4    claim" (emphasis original)).

5          The Court respectfully disagrees with the holding of *In re Toyota Rav4*, which states that

6    *Hodsdon* "left the relationship between *LiMandri* materiality and safety hazard/central

7    functionality defects unsettled but did not affirmatively require plaintiffs to plead both to state an

8    omission-based consumer protection claim."  *Id.* at 1102.  On the contrary, the *Hodsdon* court

9    dismissed the plaintiff's CLRA, UCL, and FAL claims precisely because the information about

10   child and slave labor that was allegedly omitted from the defendant's chocolate candy labels did

11   not concern a physical product defect relating to the central function of chocolate—thus, no duty

12   to disclose the nature of the labor existed.  *Hodsdon*, 891 F.3d at 863–66.  *Hodsdon*'s result,

13   therefore, was predicated specifically on the question of central functionality.  *See id.* at 863

14   (holding that *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015) and *Collins v.

15   eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) "sanction a UCL omission claim when: the

16   plaintiff alleges that the omission was material; second, the plaintiff must plead that the defect was

17   central to the product's function; and third, the plaintiff must allege one of the four *LiMandri*

18   factors"); *see also Nalick v. Seagate Tech. LLC*, No. A158237, 2021 WL 1135226, at *9 (Cal. Ct.

19   App. Mar. 25, 2021) ("We follow *Collins*, *Rutledge*, and *Hodsdon* in concluding omission claims

20   are viable provided they relate to the product's central functionality.").  Plaintiffs do not point to

21   any facts in the FAC from which it may be inferred that the absence of information concerning the

22   existence, prevalence, and nature of the gift card scams somehow impeded the central function of

23   the gift cards.  Indeed, that the scammers were generally able to redeem the gift card funds for

24   their own use indicates that central function of the gift cards—to serve as a form of payment for

25   Apple products or services—was not, in fact, at all impeded.  *See* *Hodsdon* at 864 ("Here, the

26   alleged lack of disclosure about the existence of slave labor in the supply chain is not a physical

27   defect at all, much less one related to the chocolate's function as chocolate. . . . [T]he central

1   functionality of the product is not based on subjective preferences about a product.").

2          In the absence of a duty to disclose, Plaintiffs may still plead an omission claim if the

3   omission is contrary to a representation that Apple made.  *Daugherty*, 144 Cal. App. 4th at 835.

4   This brings the Court to Plaintiffs' second theory, which is that Apple's omissions concerning its

5   control over and retention of the gift card funds were contrary to its statements to victims that

6   contacted it that "the money was redeemed and/or spent, and that there was nothing Apple could

7   do." FAC ¶¶ 245, 259.  Based on the facts pled, the distinction between Plaintiffs' affirmative

8   representation theory and contrary omission theory is unclear.  Regardless, Plaintiffs have not

9   adequately alleged reliance and causation as to those contrary omissions for the same reasons they

10  fail to plead reliance on affirmative misrepresentations.  *See supra* Section III.B.4.a.

11         Accordingly, the Court finds that Plaintiffs again have not stated a claim for fraudulent

12  omission.

13         Because the Court has already afforded Plaintiffs an opportunity to amend their fraud

14  claims, the Court finds that further leave to amend would be futile and dismisses the fraud claims

15  under the CLRA, UCL, and FAL with prejudice.

16                    **5.      Unconscionability (Claims 1, 2 and 11: CLRA, UCL, declaratory
                              judgment)**

17         In the FAC, Plaintiffs allege that their claims for unfair practices in violation of the CLRA

18  and UCL include the use of an unconscionable and adhesive disclaimer on the gift card packaging

19  and in Apple's Terms and Conditions.  FAC ¶¶ 43-46, 202, 206-207, 214.  Plaintiffs say that

20  Apple's attempt to disclaim liability discourages victims from contacting Apple and is unlawful as

21  to Apple's conduct in connection with violation of California Penal Code § 496 and California's

22  consumer protection statutes.  *Id.* ¶ 46, 301-302.

23         "Under California law, a contractual clause is unenforceable if it is both procedurally and

24  substantively unconscionable.  Procedural unconscionability focuses on oppression or surprise due

25  to unequal bargaining power, while substantive unconscionability focuses on overly-harsh or one-

26  sided terms." *Antonelli v. Finish Line, Inc.*, No. 5:11-CV-03874 EJD, 2012 WL 525538, at *3

27

28  Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.
23

*United States District Court*
*Northern District of California*

1    (N.D. Cal. Feb. 16, 2012) (citation omitted); *see also Fimby-Christensen v. 24 Hour Fitness USA,*

2    *Inc.*, No. 5:13-CV-01007-EJD, 2013 WL 6158040, at \*3 (N.D. Cal. Nov. 22, 2013).  "Although

3    contracts of adhesion often prove procedurally unconscionable, there is no automatic rule

4    forbidding adhesion contracts on unconscionability grounds."  *Brookdale Inn & Spa v. Certain*

5    *Underwriters at Lloyds, London*, No. 5:13-CV-02559-EJD, 2014 WL 116442, at \*3 (N.D. Cal.

6    Jan. 13, 2014) (internal citations omitted).  "[T]here can be no oppression establishing procedural

7    unconscionability, even assuming unequal bargaining power and an adhesion contract, when the

8    customer has meaningful choices."  *Id.* (internal citations omitted).

9          Apple focuses almost entirely on arguing that its disclaimer is neither substantively nor

10   procedurally unconscionable to the extent it disclaims third-party liability.  Mot. at 21–24.  The

11   Court previously held that the disclaimer does not violate California Civil Code § 1668, and that

12   conclusion remains unchanged in the absence of a properly pled claim for third-party liability.

13   MTD Order at 25–27; *see supra* Section III.B.3.

14         However, Plaintiffs have now stated claims for violation of section 496 and conversion,

15   which concern Apple's own conduct, not that of third parties.  *See supra* Sections III.B.1-2.  Apple

16   offers no real opposition other than to say such a theory is irrelevant because Plaintiffs have not

17   stated a claim for those acts.  Reply at 13.  The disclaimer is substantively unconscionable in that

18   it purports to avoid liability for Apple's own conduct as to withholding or concealing stolen

19   property and conversion.  Cal. Civ. Code § 1668 ("All contracts which have for their object,

20   directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to

21   the person or property of another, or violation of law, whether willful or negligent, are against the

22   policy of the law.").

23         As to procedural unconscionability, the "analysis begins with an inquiry into whether the

24   contract is one of adhesion."  *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (quoting *Armendariz*

25   *v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000); internal quotation marks

26   omitted).  The parties do not dispute that Apple's Terms and Conditions appear to be a contract of

27   adhesion.  *Id.* ("An adhesive contract is standardized, generally on a preprinted form, and offered

United States District Court
Northern District of California

by the party with superior bargaining power 'on a take-it-or-leave-it basis.'"); *see* Mot. at 23 (acknowledging that the terms of Apple's disclaimer are not negotiable and the disclaimer is thus no more oppressive than any other "take-it-or-leave-it" contract); Opp'n at 22.  Where a contract is adhesive, the question is "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required."  *OTO*, 8 Cal. 5th at 126.  "*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."  *Id.* (internal quotation marks omitted; emphases original).  Here, Plaintiffs do not argue surprise—nor could they, given that they plead that each of them read the card packaging displaying the disclaimer prior to purchase.  FAC ¶¶ 43, 114, 122, 141, 138, 147, 155, 165, 171; *see* Opp'n at 21–23.

Instead, Plaintiffs contend that the disclaimer's procedural unconscionability is based on oppression.  According to the California Supreme Court:

> The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO*, 8 Cal. 5th at 126–27 (citation and quotation marks omitted).  Plaintiffs plead that the scams depend on deceiving consumers into believing that they need to make a payment and that the only acceptable form of payment is an iTunes gift card, and that scam victims believe they have no meaningful choice but to purchase the cards in an urgent situation.  FAC ¶¶ 47-49; *see also id.* ¶¶ 112-113, 121, 130, 137, 146, 153-154, 163-164, 170.  Apple asserts that for procedural unconscionability to exist, the oppressing party must be Apple itself, not any third-party scammer. Mot. at 23–24; Reply at 14.  However, Apple cites to no case law supporting such a limitation, and at least one other court in this District has rejected such an argument.  *See Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, at *9 (N.D. Cal. June 21, 2016) (rejecting

United States District Court
Northern District of California

argument that an adhesive contract requires the imposition of coercive pressure to sign *by the party with superior bargaining power*, because procedural unconscionability only requires "an absence of meaningful choice" in the bargaining process (emphasis added)).

Although an adhesive contract is not per se unconscionable, "California courts apply a 'sliding scale,' so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981–82 (9th Cir. 2007) (quoting *Armendariz*, 24 Cal. 4th at 114; internal quotation marks omitted).  Under these circumstances, where Plaintiffs have pled a significantly substantively unconscionable disclaimer, they need only make a modest allegation of procedural unconscionability, which they have done by alleging an adhesive contract and an absence of meaningful choice.  *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree."); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("Of course, not every opportunity to seek an alternative source of supply is 'realistic.'  Courts have recognized a variety of situations where adhesion contracts are oppressive, despite the availability of alternatives.  For example, a sick patient seeking admittance to a hospital is not expected to shop around to find better terms on the admittance form.  Similarly, few employees are in a position to refuse a job because of an arbitration agreement in an employment contract." (internal citations and quotation marks omitted)); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 711, 552 P.2d 1178, 1185–86 (1976) ("In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service.").

Accordingly, the Court dismisses with prejudice the portions of the CLRA and UCL unfair practices claims concerning unconscionability of Apple's disclaimer as to third-party liability.  Otherwise, Plaintiffs have pled a claim that Apple's disclaimer of its own tortious acts is

Case No.: 5:20-cv-04812-EJD
AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

unconscionable and an unfair practice.  As a result, Plaintiffs have also stated a claim for declaratory judgment seeking a declaration that Apple's attempt to disclaim liability is unconscionable and unenforceable as to its own conduct.

### 6.   Unlawful conduct (Claims 3 and 4: CLRA, UCL)

Claim 3 of the FAC alleges unlawful practices in violation of the CLRA based on violation of the UCL, California Penal Code § 496, and Apple's unconscionable disclaimer.  FAC ¶¶ 219-229.  Similarly, Claim 4 of the FAC alleges unlawful practices in violation of the UCL based on violation of the CLRA, section 496, and Apple's unconscionable disclaimer.  *Id.* ¶¶ 230-238.

Apple argues that the CLRA does not generally apply to unlawful or unfair conduct and simply prohibits a discrete list of business practices.  Mot. at 19.  Apple further contends that the UCL requires a violation of a predicate statute or law, which it believes Plaintiffs have not pled. But as discussed above, Plaintiffs have adequately pled a section 496 claim and unconscionability of Apple's disclaimer as to Apple's own tortious acts.  *See supra* Sections III.B.1, 5.  The CLRA prohibits the insertion of an unconscionable provision into a contract.  Cal. Civ. Code § 1770(a)(19).  Therefore, Plaintiffs have adequately stated a claim for violation of the CLRA on that basis, and for violation of the UCL based on violation of section 496 and the CLRA.  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) ("By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." (alteration and internal quotation marks omitted)); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001) ("Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL].").

Accordingly, the Court finds that Plaintiffs have stated claims for unlawful conduct under the CLRA and UCL.

### C.   Apple's Motion for Protective Order

While the motion to dismiss the FAC was pending, Plaintiffs sought to take Apple's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).  Apple moved for a protective order barring Plaintiffs from seeking those depositions "until and unless the Court determines that

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiffs have stated a viable claim against Apple . . . ."  Dkt. No. 85 at 1.  Because the Court has

2   now ruled on the motion to dismiss and determined that Plaintiffs have stated viable claims against

3   Apple, the Court DENIES as moot the motion for a protective order.

4   **IV.    CONCLUSION**

5          For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the

6   motion to dismiss as follows:

7          (1) The portions of Claims 1-7 and 10 relating to third-party liability are dismissed with

8              prejudice.

9          (2) The portions of Claims 1-2 and 5-7 relating to fraud by affirmative misrepresentation

10             or by omission are dismissed with prejudice.

11         (3) The portions of Claims 1, 2, and 11 relating to unconscionability of disclaiming third-

12             party liability are dismissed with prejudice.

13         (4) The Court dismisses with prejudice Claims 8 and 9 only as to Plaintiffs Barrett,

14             Polston, Watson, Michael Rodriguez, and Maria Rodriguez.

15         (5) The Court otherwise denies the motion to dismiss as to Claims 8 and 9, the portions of

16             Claims 3 and 4 concerning unlawful conduct, and the portions of Claims 1, 2, and 11

17             relating to unconscionability of disclaiming Apple's own tortious or illegal conduct.

18   Apple shall file its answer by **June 24, 2022**.

19         The Court DENIES as moot Apple's motion for a protective order.

20         The parties shall submit a joint case management statement by **July 18, 2022** and appear

21   before the Court for an initial case management conference on **July 28, 2022 at 10:00 a.m.**

22         **IT IS SO ORDERED.**

23   Dated: June 13, 2022

24

25                                                        _____

26                                                        EDWARD J. DAVILA
                                                         United States District Judge
27

28   Case No.: 5:20-cv-04812-EJD
     AMENDED ORDER GRANTING MOT. TO DISMISS FIRST AM. COMPL.