<u>**VIA CM/ECF FILING**</u>

March 10, 2023

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:  Discovery Letter Brief: Responsive Data Relating to Plaintiffs' Cards – *Barrett v. Apple Inc.*, Case No. 5:20-cv-04812-EJD-VKD

Dear Judge DeMarchi:

Pursuant to §4 of the Court's Standing Order for Civil Cases, Plaintiffs and Defendants Apple Inc. and Apple Value Services LLC ("Apple") respectfully request the Court's assistance in resolving a dispute concerning the production of all responsive data relating to the Apple Gift Cards purchased by the named Plaintiffs in this action.

## STATEMENT OF THE DISPUTE

Plaintiffs served discovery requests seeking from Apple all documents relating to themselves (Request for Production No. 1) and the specific gift cards they purchased (Request for Production No. 22), and class-wide structured data relating to transactions involving gift cards sold at retail during the Class Period and efforts to identify those gift cards involved in fraud (Request for Production No. 23). Apple has identified and produced (or committed to produce) certain documents and data, but has refused to either (1) confirm that no further responsive documents or data exist, or (2) identify and produce any additional responsive documents or data that it is withholding.

**A.  Plaintiffs' Position**

*1.  Background*

This is a class action arising from Apple's role in formulaic "false pretenses" gift card scams. Plaintiffs allege that hundreds of thousands of consumers have been tricked by third-party scammers into purchasing Apple gift cards which they otherwise had no intention of purchasing, and then giving the serial numbers of the cards – together with the redemption codes – to the scammers. In a typical scam, the scammers then redeem the cards and spend them on digital content on Apple's platforms (apps, in-app purchases, etc.) in a manner which allows the scammers to monetize the value on the cards. Apple takes a 30% commission on each digital purchase made by the scammer with the victim's money, and refuses to return the stolen money to the victim, even though Apple learns which specific gift cards were involved in fraud (by serial number) ***before*** it pays the remaining 70% of the purchase price to the developers/owners of that content (known as Apple Developers).

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 2

Judge Davila sustained several claims, including Withholding or Concealing Stolen Property (Cal. Penal Code §496) and common law Conversion. Such claims give rise to issues of whether and when Apple knew that specific gift cards were purchased in connection with fraud, as well as the timing of payments *to* Apple in connection with those cards and the resulting payments *by* Apple (to the Apple Developers).

### 2. *Requests for Production*

On October 15, 2020, Plaintiffs served Apple with 22 Requests for Production, including the following relevant to this dispute:

Request for Production No. 1:

Documents and Communications concerning Plaintiffs.

Request for Production No. 22:

Documents and Communications concerning the following Gift Cards, including but not limited to the dates times and locations of purchase/activation of the Gift Cards, the dates, times and Apple IDs that redeemed the Gift Cards, the stored value in those Apple ID accounts prior to redemption of the Gift Cards, the dates, times and nature of the purchases made with the Gift Cards, the dates, times, amounts and recipients of payments made to Apple Developers and commissions retained by Defendants from the purchases made the Gift Cards, and any indicators of suspiciousness or potential fraud known to Apple or analyses related to detecting fraud done by Apple before it made such payments to Apple Developers.

- [List of 17 Specific Card Serial Numbers]

On June 1, after several months of meeting and conferring, Plaintiffs served an additional request for production:

Request for Production No. 23:

Structured Data reflecting or relating in any way to transactions involving Gift Cards sold at retail during the Relevant Time Period, efforts to identify those gift cards involved in fraud, and the identities of fraud victims, including (see Exhibit A for subcategories).

### 3. *Apple's Responses and Current Position*

Apple agreed to search for and produce documents responsive to Request for Production Nos. 1 and 22. *See* November 13, 2020 Responses (attached as Exhibit A). However, with respect to Request for Production No. 23, Apple served only a series of six numbered objections followed by a statement that it would not produce responsive documents or data. *See* July 1, 2021 Responses (attached as Exhibit B).

2

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 3

    Apple has now produced (or committed to produce) several representative samples of responsive data, using the Plaintiffs' card numbers as the sample records.  The parties are currently drafting a stipulation to defer negotiations on many of the larger, non-sample "full pulls" of data until after a ruling on class certification.  Plaintiffs thus do not seek to compel any "full pulls" of class-wide data at this time.  However, Plaintiffs seek an order compelling Apple to produce all documents and data relating to Plaintiffs' own card numbers, and at least a sample of all data responsive to Request for Production No. 23.

    Apple refuses to either confirm that it has produced samples of all responsive data, or to produce samples of the remaining responsive data.  Instead, Apple argues that there is no further "relevant" data, making a unilateral determination of relevance.

    For example, Apple refuses, on relevance grounds, to identify or produce:

- any fields of data which exist in databases for which it has already produced samples, but which were not produced in connection with those samples (such as any undisclosed fields in its gift card database);

-  ; and

- any financial documents or databases which contain fields or information that can be traced to specific gift cards or aggregations of gift cards.

### 4. *Argument*

    Apple is not entitled to unilaterally determine the scope of relevance and refuse to state whether and what additional responsive documents and data exist because Apple has unilaterally deemed any additional responsive documents and data to be "irrelevant."  Doing so is inconsistent with Fed. R. Civ. P. 34(b)(2)(C), which requires that any objection to a request for production "'must state whether any responsive materials are being withheld on the basis of that objection.'" *See Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV 18-10513, 2020 WL 10052403, at *9-*10 (C.D. Cal. July 8, 2020) (quoting Fed. R. Civ. P. 34(b)(2)(C)) (ordering supplemental responses that "fully comply with Rule 34(b)(2)(C) by stating any objections with specificity and stating without equivocation whether [the defendant] is withholding documents on the basis of those objections"); *see also Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004) (compelling production of all non-privileged, responsive documents where the defendant's response had been "limited by its unilateral designation of relevance").  Indeed, this Court ordered production in *Kannan v. Apple Inc.*, where Apple served requests seeking relevant documents and it appeared that the other party was "withholding documents responsive to these requests because he contends such documents are not relevant."  No. 17-CV-07305-EJD(VKD), 2019 WL 5386667, at *1 (N.D. Cal. Oct. 22, 2019).

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 4

      The six objections Apple asserted to Request for Production No. 23 are not relevant to this dispute.  For purposes of this discovery dispute, Plaintiffs have agreed to defer class-wide data and narrowed the scope of the current request to all responsive ***data relating to the cards purchased by the named Plaintiffs***.  Thus, Apple's time period, proportionality, type-of-fraud, and confidentiality/privacy objections (Objection Nos. 1-4) fall away.  If Objection No. 5 – that Request for Production No. 23 "unilaterally requires Apple to produce certain structured data fields without meeting and conferring" – was ever valid, it is clearly no longer valid in light of the parties' meeting and conferring.  And Apple confirmed long ago that it did not intend to stand on Objection No. 6 (objecting to overlap with other document requests).

### 5. *Relief Requested*

      Plaintiffs request that the Court order Apple to produce, within 30 days, any additional documents or sample data responsive to Request for Production Nos. 1, 22 or 23 and related to the Plaintiffs' cards.

### 6. *Reply to Apple's Section*

      Apple's arguments (set forth below) are predicated on its view that it has already produced excessive discovery, and its characterization of Plaintiffs as insatiable.  Apple's claims about what it has produced are exaggerated, and it ignores critical facts about discovery in this case.  For example, the number of pages of documents produced in this litigation is knowable to Apple with precision, and it is fewer than 680,000.  Critically, Apple also knows its production totals are inflated by approximately one half because the productions contain unusable pages improperly generated by .pdfing large spreadsheets, which results in "page after page" of "illegible unconnected pieces."  *See* Transcript of Initial Case Management Conference at 10:2-10 (Plaintiffs advising Judge Davila of same).  Yet, despite an actual number near 680,000 pages and its knowledge that about half of those pages are unusable, Apple was prepared to assert to this Court that it has produced "approximately one million pages" in this litigation.  Upon seeing Plaintiffs' response, Apple revised its number down to 677,072.  Even giving Apple the benefit of the doubt on the discrepancy, Apple's response does not account for the uselessness of approximately half of those pages.  In any event, Apple's production – fewer than 90,000 documents and fewer than 680,000 pages – is actually not excessive nor is it a basis to withhold the information Plaintiffs seek.

### B. **Apple's Position**

      Throughout the past two years and seven months, Plaintiffs have barraged Apple with never-ending discovery.  Apple has accommodated Plaintiffs' many requests, including by adding 176 new search terms, three new custodians on top of the original five, and agreeing to produce many categories of documents Plaintiffs have requested (formally and informally) in the parties' many meet-and-confers.  But Plaintiffs' requests for more information have never slowed, even

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 5

though Apple has produced approximately 85,000 documents—including approximately 670,000[1] pages and separately millions of lines of data—made ten employees available for depositions (including on ten 30(b)(6) topics), and answered 56 RFAs.  Instead, every production, deposition, and discovery response by Apple has been met with demands for more discovery.

Apple's productions responsive to RFPs 1, 2, and 23 are no exception.  Apple has worked diligently to produce responsive documents—even with regards to RFP 23, which is grossly overbroad and disproportionate to the needs of the case. ████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

Yet Plaintiffs now insist that Apple must produce further documents or sample data.  Plaintiffs assert, without basis, that Apple is withholding responsive documents or sample data relating to Plaintiffs' gift cards solely on the basis that such documents are irrelevant.  Apple has never made such a representation and to be clear, has *not* been withholding responsive documents or sample data solely on this basis.  Indeed, to be amenable and avoid discovery disputes, Apple has produced thousands of documents and lines of data that are responsive to Plaintiffs' incredibly broad discovery requests but are in fact irrelevant to Plaintiffs' claims.  Apple *has* withheld documents or data on the basis that they are unresponsive to Plaintiffs' requests, or that the collection of such documents or data is disproportionately burdensome in comparison to their relevance to the case.

Apple addresses each of the categories Plaintiffs identify above in turn.

*First*, Plaintiffs assert that Apple refuses to identify or produce "any fields of data which exist in databases for which it has already produced samples, but which were not produced in connection with those samples (such as any undisclosed fields in its gift card database)."  As an initial matter, Plaintiffs made this request informally through meet-and-confers, not through an interrogatory or RFA.  While Apple has worked tirelessly to cooperate with Plaintiffs in resolving many discovery disputes, Apple was not obligated to respond to such informal discovery requests.  Instead, Plaintiffs should have served formal requests and provided Apple with the opportunity to assert its objections and responses.  *See Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047, *7 (C.D. Cal. Aug. 6, 2015) (responding to plaintiff's complaint that defendant declined to respond to an informal request during a meet and confer, the Court noted that plaintiff could have served

---

[1]   A prior draft of this letter included a larger number based on a preliminary run count, but Apple has since confirmed with its vendor that it has produced 677,072 pages to date.

5

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 6

formal discovery requests and defendant had no obligation to comply with such an informal request). Further, in response to RFPs, Apple has produced all responsive fields of data that exist in databases for which it has already produced samples. Plaintiffs offer no support for the assertion that Apple is required to provide a list of every nonresponsive field or document to justify its responsiveness determinations. *See Trujillo v. Princess Cruise Lines, Ltd.*, 2021 WL 3604518, *7 (C.D. Cal. Apr. 23, 2021) ("[T]he court cannot order a party to produce documents that do not exist . . . Rather, the moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld."); *see also Perez v. DirecTV Grp. Holdings*, LLC, 2020 WL 5875026, *2 (C.D. Cal. Aug. 17, 2020) (denying motion to compel the production of documents constituting "discovery about discovery"). Indeed, Plaintiffs spent hours during depositions questioning Apple witnesses about the data in question, and Plaintiffs did not uncover any responsive fields that are missing. The discovery process relies on parties to make unilateral determinations of responsiveness—distrust of Apple's responsiveness determinations alone is not a proper basis to demand an accounting of what Apple did not produce.



---

[2]     While Plaintiffs assert that Apple's proportionality objection "fall[s] away" because Plaintiffs "narrowed the scope of the current request to all responsive ***data relating to the cards purchased by the named Plaintiffs***" for the purposes of this dispute, this request cannot be narrowed in such a way. Athena works on a massive scale, not gift-card-by-gift-card. Asking for



*Finally*, Plaintiffs assert that Apple refuses to identify or produce "any financial documents or databases which contain fields or information that can be traced to specific gift cards or aggregations of gift cards." This is false. Apple has already agreed to produce—and is currently collecting—samples of financial documents and data that contain fields or information that can be traced to specific gift cards or aggregations of gift cards.

Plaintiffs' continued demands that Apple produce more documents and data is inconsistent with the parties' discovery obligations. Apple thus respectfully requests the Court deny Plaintiffs' motion.

### **NEED FOR HEARING**

The parties agree that, in light of the number of discovery disputes and the complex nature of the discovery process in this class action, a hearing would assist the Court in resolving the parties' dispute. The parties jointly request a single hearing to address this and all other discovery disputes filed concurrently herewith. The parties also jointly request that, should such a hearing be granted, it be conducted in a closed session so that the parties may freely discuss confidential documents and testimony with the Court.

---

fields of data fed into or created by Athena for particular gift cards is thus tantamount to asking for them all, regardless of Plaintiffs' attempt to portray their request as narrow.

## RELEVANT DATES

The fact discovery cut-off was February 24, 2023. Following a hearing on February 17, 2023, Judge Davila extended the period for filing discovery disputes to March 10, 2023. ECF No. 128.

## COMPLIANCE WITH LEAD COUNSEL MEETING REQUIREMENT

The parties have conferred about this dispute several times, including most recently via Zoom on February 28, 2023 and March 2, 3, and 6, 2023. Participants for Plaintiffs included Nyran Rose Rasche, Joseph Guglielmo, and Amanda Rolon. Participants for Apple included David Singh, Morgan MacBride, David Bier, and Amy Le.

DATED: March 10, 2023

Respectfully submitted,

*s/ Nyran Rose Rasche*
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Nyran Rose Rasche (*pro hac vice*)
Nickolas J. Hagman (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
Facsimile: 318-782-4485
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

**KIRBY MCINERNEY LLP**

**s/** *Anthony F. Fata*
Anthony F. Fata (*pro hac vice*)
Sarah E. Flohr (*pro hac vice*)
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Telephone: 312-767-5180
afata@kmllp.com
sflohr@kmllp.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

s/ *Joseph P. Guglielmo*
Joseph P. Guglielmo (*pro hac vice*)
Amanda Rolon (*pro hac vice*)
The Helmsley Building
230 Park Ave., 17th Floor

*s/ David R. Singh*
**WEIL, GOTSHAL & MANGES LLP**
David R. Singh (Bar No. 300840)
Morgan D. MacBride (Bar No. 301248)
Amy Le (Bar No. 341925)
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com
morgan.macbride@weil.com
amy.le@weil.com

Sarah Coyne (pro hac vice)
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
sarah.coyne@weil.com

***Attorneys for Defendants Apple Inc. and Apple Value Services, LLC***

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 9

New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

Alex M. Outwater (Bar No. 259062)
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
aoutwater@scott-scott.com

*Interim Co-lead Counsel for Plaintiffs and the Putative Class*

The Honorable Virginia K. DeMarchi
March 10, 2023
Page 10

## **ATTESTATION OF JOSEPH P. GUGLIEGMO**

   This document is being filed through the Electronic Case Filing (ECF) system by attorney Joseph P. Guglielmo.  By his signature, Mr. Guglielmo attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: March 10, 2023          *s/ Joseph P. Guglielmo*
                   Joseph P. Guglielmo

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: March 10, 2023                                                                 *s/ Joseph P. Guglielmo*
                                                                                                                Joseph P. Guglielmo