NYRAN ROSE RASCHE (*pro hac vice*)
nrasche@caffertyclobes.com
NICKOLAS J. HAGMAN (*pro hac vice*)
nhagman@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
135 South LaSalle Street, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

Attorneys for Plaintiffs and the Putative Class

[Additional counsel on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CARL BARRETT, et al., | Case No. 5:20-cv-04812-EJD |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| APPLE INC., et al., | |
| Defendants. | Judge: Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor<br>Date: May 16, 2024<br>Time: 9:00 a.m. |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on May 16, 2024, at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiffs,[1] through their undersigned counsel and on behalf of the proposed Settlement Class, will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of an Order: (i) preliminarily approving the Settlement with Defendants; (ii) certifying the proposed Settlement Class and appointing Plaintiffs' Counsel as Class Counsel; (iii) approving the proposed form and manner of notice to the Settlement Class; (iv) approving the proposed plan of allocation; (v) approving the proposed selection of the Settlement Administrator; and (vi) scheduling a Final Approval Hearing before the Court.

      The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Joint Declaration and the exhibits attached thereto including the Settlement Agreement, the notice plan and the corresponding Declaration of Carla A. Peak, the pleadings and records on file in this Action, and, should the Court deem a hearing necessary for preliminary approval, other such matters and argument as the Court may consider at the hearing of this Motion.

      On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Preliminary Approval Order.

---

[1] Unless otherwise indicated, defined terms have the meanings set forth in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement"). The Settlement Agreement and its exhibits are attached as Exhibit A to the accompanying Joint Declaration of Nyran Rose Rasche, Anthony F. Fata, and Joseph P. Guglielmo in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement ("Joint Declaration" or "Joint Decl.").

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy so as to warrant: (a) the Court's preliminary approval; (b) certification of the Settlement Class for settlement purposes; (c) dissemination of notice of its terms to Settlement Class Members; and (d) setting a hearing date on final approval of the Settlement as well as Plaintiffs' forthcoming application for attorneys' fees and costs and service awards;

2.      Whether the proposed notice plan adequately apprises Settlement Class Members of the terms of the Settlement and their rights with respect to it;

3.      Whether the selection of KCC Class Action Services, LLC as Settlement Administrator should be approved; and

4.      Whether the proposed plan for allocation of Settlement proceeds should be preliminarily approved.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 1

III.    THE PROPOSED SETTLEMENT..................................................................... 3

    A.      Class Definition ...................................................................................3

    B.      Released Claims...................................................................................3

    C.      Class Relief ..........................................................................................4

        1.      Settlement Fund .......................................................................4

        2.      Distribution of Settlement Funds to Class Members ..................5

        3.      Payment of Costs of Notice and Administration ........................5

        4.      Payment of Service Awards.....................................................5

        5.      Payment of Attorneys' Fees and Costs .....................................6

        6.      Unclaimed Funds .....................................................................6

    D.      Settlement Administration ....................................................................7

    E.      Dissemination of Notice to the Class....................................................7

    F.      Opportunity to Object or Opt Out.........................................................8

    G.      The Court Retains Jurisdiction.............................................................8

IV.     PROPOSED SCHEDULE ................................................................................. 9

V.      ARGUMENT ................................................................................................... 9

    A.      The Court Should Certify The Class For Purposes Of Settlement ........10

        1.      The Settlement Class Satisfies Rule 23(b)................................10

            a.      Numerosity................................................................... 10

            b.      Commonality................................................................. 11

            c.      Typicality ..................................................................... 12

            d.      Adequacy ..................................................................... 13

        2.      The Settlement Class Satisfies Rule 23(b)(3) ...........................14

| | | | |
|---|---|---|---|
| | B. | The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval | 15 |
| | | 1. The Settlement Should Be Preliminarily Approved | 15 |
| | | 2. The Notice Plan Should Be Preliminarily Approved | 19 |
| | | 3. The Plan Of Allocation Should Be Preliminarily Approved | 20 |
| | C. | Analysis Under the Procedural Guidance for Class Action Settlements Factors Supports Preliminary Approval | 21 |
| | | 1. Information About the Settlement | 21 |
| | | 2. Settlement Administration | 24 |
| | | 3. Remaining Procedural Guidelines | 25 |
| VI. | CONCLUSION | | 25 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................ 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................... 9, 10, 14, 15

*In re Anthem, Inc. v. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................ 4

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ............................................................................................. 16

*In re Apple Inc. Device Performance Litig.*,
   No. 18 MD 2827, 2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) ..................................... 4

*Billups-Larkin v. Aramark Servs., Inc.*,
   No. 21 Civ. 6852, 2023 WL 4600409 (N.D. Cal. July 17, 2023) .................................... 18

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .......................................................................................... 16

*Carter v. Vivendi Ticketing US LLC*,
   No. 22 Civ. 1981, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) .................................... 18

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) ............................................................................................ 14

*Chang v. Wells Fargo Bank, N.A.*,
   No. 19 Civ. 1973, 2022 WL 17825122 (N.D. Cal. Dec. 20, 2022) ................................. 18

*In re Chase Bank USA, N.A. Check Loan Contract Litig.*,
   274 F.R.D. 286 (N.D. Cal. 2011) ...................................................................................... 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................ 19

*Custom LED, LLC v. eBay, Inc.*,
   No. 12 Civ. 0350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ..................................... 4

*De Leon v. Ricoh USA, Inc.*,
   No. 18 Civ. 3725, 2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ................................... 10

*Deaver v. Compass Bank*,
   No. 13 Civ. 0222, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ................................... 18

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ............................................................................... 15

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) ..................................................................................... 21

*Dimercurio v. Equilon Enters. LLC*,
   No. 19 Civ. 4029, 2022 WL 17669711 (N.D. Cal. Dec. 14, 2022) ..................... 18, 21

*In re Easysaver Rewards Litig.*,
   906 F.3d 747 (9th Cir. 2018) ..................................................................................... 21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................. 19

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ................................................................................... 11

*Fleming v. Impax Labs. Inc.*,
   No. 16 Civ. 6557, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ............................. 18

*Foster v. Adams & Assocs., Inc.*,
   No. 18 Civ. 2723, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ....................... 10, 11

*Gatchalian v. Atlantic Recovery Sols., LLC*,
   No. 22 Civ. 4108, 2023 WL 8007107 (N.D. Cal. Nov. 16, 2023) ............................. 18

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................. 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................. 10, 11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..................................................................................... 12

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ..................................................................................... 11

*Hefler v. Wells Fargo & Co.*,
   No. 16 Civ. 5479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................. 20

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ....................................................................................... 4

*Hopson v. Hanesbrands Inc.*,
   No. 08 Civ. 0844, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................. 25

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................... 10, 15

*James v. Uber Techs. Inc.*,
   338 F.R.D. 123 (N.D. Cal. 2021) ................................................................................. 14

*Johnson v. Serenity Transp., Inc.*,
   No. 15 Civ. 2004, 2021 WL 3081091 (N.D. Cal. July 21, 2021) ...................................... 10, 18

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ................................................................................ 12, 13

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ....................................................................................... 16

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13 MD 2420, 2017 WL 1086331 (N.D. Cal. Mar. 20, 2017) ........................................ 19

*Luz Bautista-Perez v. Juul Labs, Inc.*,
   No. 20 Civ. 1613, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) .......................................... 18

*In re Lyft, Inc. Sec. Litig.*,
   No. 19 Civ. 2690, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ..................................... 18

*In re MacBook Keyboard Litig.*,
   No. 18 Civ. 2813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ................................. 16

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ....................................................................................... 12

*Miguel-Sanchez v. Mesa Packing, LLC*,
   No. 20 Civ. 0823, 2022 WL 10757077 (N.D. Cal. Oct. 18, 2022) ..................................... 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................. 19

*In re MyFord Touch Consumer Litig.*,
   No. 13 Civ. 3072, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ..................................... 18

*In re Nexus 6P Prods. Liab. Litig.*,
   No. 17 Civ. 2185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ..................................... 21

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) .................................................................................. 19

*Philips v. Munchery Inc.*,
   No. 19 Civ. 0469, 2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) ...................................... 10

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................. 11

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .................................................................................... 13

vii

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ........................................................................ 16

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ........................................................................ 14

*Scholl v. Mnuchin*,
489 F. Supp. 3d 1008 (N.D. Cal. 2020) .......................................................... 14

*Seene v. Kan. City Royals Baseball Corp.*,
No. 14 Civ. 0608, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ........................... 4

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ................................................................... 13

*Smith v. Keurig Green Mountain, Inc.*,
No.18 Civ. 6690, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023)............................ 4

*Stanton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................ 13

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966)..................................................................................... 13

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ....................................................................... 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .................................................................................... 15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 15 Civ. 1614, 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)...................... 16, 17

*Utne v. Home Depot U.S.A., Inc.*,
No. 16 Civ. 1854, 2023 WL 4850183 (N.D. Cal. July 28, 2023).......................... 18

*Vikram v. First Student Mgmt., LLC*,
No. 17 Civ. 4656, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019).......................... 10

*Villegas v. J.P. Morgan Chase & Co.*,
No. 09 Civ. 0261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012).......................... 10

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ........................................................................ 15

*In re Volkswagen "Clean Diesel" Mktg.*,
No. 15 MD 2672, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ......................... 16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .......................................................................................... 11, 12

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 15

**Statutes**

28 U.S.C. § 1711 ......................................................................................................... 8

**Other Authorities**

5 Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* § 24.25 (3d ed. 1992) .................................................. 13

7AA C. Wright, A. Miller, & M. Kane,
    Federal Practice and Procedure § 1778 (3d ed. 2005) ........................................ 15

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.       INTRODUCTION

The Parties have agreed to a proposed $35 million non-reversionary settlement to resolve this putative class action lawsuit, in which Plaintiffs assert claims relating to Apple's alleged conduct in connection with "false pretenses" gift card scams perpetrated by third-party fraudsters. In light of the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Plaintiffs' Counsel believe the Settlement is fair, reasonable, and adequate, in the best interests of the Settlement Class, and should be preliminarily approved.

Since the commencement of this Action, Plaintiffs and Plaintiffs' Counsel have vigorously pursued relief on behalf of the Settlement Class, and Defendants' Counsel has vigorously defended against Plaintiffs' allegations. The Parties agreed to the Settlement after more than three years of extensive motion practice, completion of fact discovery, and months of arm's-length negotiations by experienced counsel, including private mediation before Randall W. Wulff, an experienced and highly respected neutral mediator. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in recovery of less than that provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied. As such, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed plan for direct and publication notice set forth in the Settlement Agreement and Exhibits 1 and 4-7 attached thereto.

### II.      RELEVANT BACKGROUND

On July 17, 2020, Plaintiffs filed this Action, individually and on behalf of a putative nationwide class, asserting claims relating to Apple's alleged conduct in connection with a common gift card scam in which unwitting consumers were tricked into purchasing Apple App Store & iTunes gift cards by third-party scammers who contact victims under false pretenses. *See* Complaint, ECF No. 1. On October 8, 2020, Apple filed a motion to dismiss Plaintiffs' initial

Complaint (ECF No. 33), which Plaintiffs opposed. ECF No. 39. On October 15, 2020, Plaintiffs served their first set of document requests, and on October 22, 2020, the Court denied Apple's motion for a stay of discovery pending resolution of the motion to dismiss. ECF No. 38. On March 4, 2021, the Court granted Apple's motion to dismiss in full, with leave to amend. ECF No. 51. On April 14, 2021, as permitted by the Court, Plaintiffs filed their First Amended Complaint ("FAC"). ECF No. 59. On April 28, 2021, Apple filed a motion to dismiss Plaintiffs' FAC (ECF No. 61), which Plaintiffs opposed. ECF No. 67. On June 13, 2022, the Court granted in part and denied in part Apple's motion to dismiss Plaintiffs' FAC. ECF No. 97. On June 24, 2022, Apple answered Plaintiffs' FAC. ECF No. 102. By that point, the Parties had been engaging in substantial discovery efforts for nearly two years, including written discovery requests and responses, voluminous document productions, and third-party discovery. On June 15, 2023, after taking the depositions of ten Apple witnesses, Plaintiffs disclosed expert reports and filed a motion seeking to certify a nationwide class. *See* Plaintiffs' Motion for Class Certification, ECF No. 238 ("Class Cert."); §§ 6.2, 6.3.[2]

On July 28, 2023, after Plaintiffs filed their Motion for Class Certification, but before Apple filed its opposition, the Parties conducted a mediation before Randall W. Wulff, Esquire, a well-respected neutral who has mediated thousands of cases since 1994, including many complex cases with claims of the kind at issue here. Joint Decl. ¶ 8. In preparation for the mediation, the Parties communicated their positions regarding the merits of Plaintiffs' claims and Defendants' defenses, whether the Court would grant Plaintiffs' Motion for Class Certification, and Plaintiffs' potential recovery in this action. *Id.* The Parties also exchanged briefs prior to a full-day mediation session and provided follow-up information during the mediation. *Id.* The initial mediation session concluded with a Mediator's Proposal. *Id.* On August 1, 2023, the Parties moved to stay proceedings while the Parties evaluated the Mediator's Proposal and jointly determined next steps. ECF No. 248. The Court granted the Parties' proposed stay. ECF No. 249. Since then, the Court has extended the stay to allow the Parties time to draft a term sheet and ultimately a long-form

---

[2] Unless otherwise noted, all citations to "§ __" refer to paragraphs of the Settlement Agreement.

1   settlement agreement, and to file these preliminary approval papers. ECF Nos. 250, 251, 253, 254,

2   257, 258, 264, 265.

3       The Settlement Agreement provides that, in exchange for dismissal of the Action and a

4   release of claims, Defendants will pay $35 million to be allocated to Settlement Class Members

5   who submit a valid and approved claim and will provide Settlement Class Members with a limited

6   release. §§ 2.2, 2.3, 8.5. It also describes Plaintiffs' anticipated requests for payment of attorneys'

7   fees and costs and for service awards, all of which are subject to the Court's approval. §§ 7.1, 7.2.

8   **III.         THE PROPOSED SETTLEMENT**

9       **A.      Class Definition**

10      The Settlement Class is defined as follows:

11      [A]ll persons who purchased an Apple App Store & iTunes gift card (an "Eligible
        Gift Card") in the United States and its territories from January 1, 2015 to July 31,
12      2020, provided the redemption code of such Eligible Gift Card to a third party
        unknown to them who sought the code under false pretenses, and did not receive a
13      full refund or other form of compensation for their complete losses from Apple or
        any third party. Excluded from the Class are Defendants, their parents, subsidiaries,
14      affiliates, officers, directors, and employees; any entity in which Defendants have
        a controlling interest; all employees of any law firm involved in prosecuting or
15      defending this litigation, as well as their immediate family members and all judges
        assigned to hear any aspect of this litigation, as well as their staff and immediate
16      family members.

17

18  § HH.

19      **B.      Released Claims**

20      If the Court grants Final Approval of the Settlement Agreement, the Settlement Class will

21  be deemed to have released Defendants from all claims as described in Section 8.2 therein. These

22  claims include the claims in the operative FAC, as well as any claims against Defendants or certain

23  of their business partners involved in the manufacture, distribution, and sale of the gift cards at

24  issue, arising out the same subject matter, occurring prior to the date of the Settlement, whether

25  known or unknown. § 8.2. Courts within the Ninth Circuit have approved releases similar in scope

26  as necessary consideration for settlement benefits, as such release language is intended to assure

27  defendants that they will not be required to engage in additional litigation arising out of the same

28

facts, whether directly as defendants or indirectly, either as respondents in discovery or in connection with a request for contribution or indemnification from the named defendant(s).

"[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Anthem, Inc. v. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Courts in this District have approved a release of claims "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action." *Anthem*, 327 F.R.D. at 327 (quoting *Custom LED, LLC v. eBay, Inc.*, No. 12 Civ. 0350, 2013 WL 6114379, at *4 (N.D. Cal. Nov. 20, 2013)). Similarly, language releasing all claims "known or unknown" has been approved in this District. *See Seene v. Kan. City Royals Baseball Corp.*, No. 14 Civ. 0608, 2023 WL 2699972, at *13 (N.D. Cal. Mar. 29, 2023). Non-defendants may also be identified as released parties. *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, No.18 Civ. 6690, 2023 WL 2250264, at *3 (N.D. Cal. Feb. 27, 2023) (released parties included "all Persons in the stream of commerce for the labeling, marketing, sale, and/or distribution of the Challenged Products," including "Defendant and its Affiliates, Partner Brands, licensors, suppliers, distributors, wholesalers, and retailers and all of their affiliated and subsidiary companies"); *In re Apple Inc. Device Performance Litig.*, No. 18 MD 2827, 2021 WL 1022867, at *3 (N.D. Cal. Mar. 17, 2021) (citing Stipulation of Settlement, ECF No. 416) (released parties included the defendant's independent contractors, consultants, and insurers).

## C. Class Relief

### 1. Settlement Fund

The Settlement provides for the creation of a $35 million fund in exchange for the release of the claims described above. The $35 million fund will be used to pay the following amounts: (1) compensation to each participating Class Member; (2) all claims for attorneys' fees and costs approved by the Court; (3) all costs necessary to provide notice to the Settlement Class and administer the Settlement, including, among other things, payment for publication notice and the

1   services of the Settlement Administrator; and (4) payment of service awards to the Plaintiffs, not

2   to exceed $10,000 each, subject to Court approval. §§ 2.1, 2.2, 2.3, 7.1, 7.2.

3            2.       <u>Distribution of Settlement Funds to Class Members</u>

4           The amount paid to each Class Member will be based on the face value of the Eligible Gift

5   Card(s) which are the subject of the Settlement Class Member's claim, less any amounts the

6   Settlement Class Member has already been refunded, cashed out, or received in compensation

7   from any source. § 2.2. Each Settlement Class Member who submits a valid claim will be eligible

8   to recover that full amount, and will receive a check or ACH transfer for that amount unless the

9   funds available to pay claims must be reduced pro rata, which will occur only if the funds available

10  to pay claims (*i.e.*, the funds remaining after all notice and administration expenses, any attorneys'

11  fees and costs, and any service awards are paid) are less than the total value of valid claims by

12  eligible Settlement Class members. *Id.* In other words, the vast majority of Settlement Class

13  Members (*i.e.*, those who have not received partial refunds or reimbursement of their losses) will

14  be eligible to submit claims to recover <u>the full amount they paid for the gift cards at issue</u> unless

15  the number of claims requires a pro rata reduction. *See id.* No Settlement Class Member will

16  receive any improper preferential treatment; indeed, all such individuals will be eligible to recover

17  an amount calculated on the same basis. The only difference in treatment between Settlement Class

18  Members is the level of proof they must provide to substantiate their claims: those who previously

19  contacted Apple to report the scam—and thus appear in Apple's records and will be sent direct

20  Email or Mail notice of the Settlement (*i.e.*, those known as the "Contact Subclass" in the FAC)—

21  will have additional options for documenting their claims.  §§ 6.2, 6.3.

22           3.       <u>Payment of Costs of Notice and Administration</u>

23          As set forth in more detail below, the costs of notice and administration of the Settlement

24  have been capped by the Settlement Administrator at $977,500, and will be paid from the

25  settlement fund. § 6.5.

26           4.       <u>Payment of Service Awards</u>

27          Plaintiffs anticipate asking the Court to approve service awards of up to $10,000 per

28  Plaintiff to be paid out of the settlement fund to compensate Plaintiffs for their time and effort

litigating the case for the benefit of the Settlement Class.[3] Plaintiffs have actively participated in the litigation over the course of several years, and have assisted Plaintiffs' Counsel in investigating the claims at issue and drafting the respective complaints and other documents. Joint Decl. ¶ 9. The Plaintiffs have also consulted with Plaintiffs' Counsel as needed, complied with discovery-related requests for information, and sat for their depositions. *Id*. Consistent with awards regularly granted under similar circumstances, Plaintiffs believe that they should be compensated for their work supporting the litigation and assisting Plaintiffs' Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this action.[4]

### 5.   Payment of Attorneys' Fees and Costs

At Final Approval, Plaintiffs' Counsel anticipates seeking an award of attorneys' fees of up to one-third of the common fund established by the Settlement, plus reimbursement of all reasonable and necessary costs advanced by Plaintiffs' Counsel and carried for the duration of the litigation (which costs will not exceed $700,000), subject to the approval of the Court. Plaintiffs' Counsel prosecuted this Action on a contingent basis and advanced all associated costs, including expert costs, with no expectation of recovery in the event the litigation did not result in recovery for the Settlement Class. Joint Decl. ¶ 21.

### 6.   Unclaimed Funds

If any funds remain unclaimed after the Settlement Administrator has made all payments to Settlement Class Members, and disbursed funds for any Court-approved notice and administration costs, attorneys' fees and costs, and service awards, then the Parties will meet and

---

[3] Plaintiffs Michael Rodriguez and Maria Rodriguez were joint victims of a single gift card scam and have jointly prosecuted their shared claim. As such, only a single service award will be sought for the Rodriguez Plaintiffs.

[4] Apple recognizes that the Settlement may entitle Class Counsel to seek a reasonable service award for Plaintiffs, and will not object to the application, but has reserved the right to object to or oppose the amount of any Service Award sought. § 7.2.

confer to discuss a proposal to present to the Court regarding a *cy pres* distribution. § 2.4. The Settlement explicitly prohibits reversion of any unclaimed funds to Defendants. *Id.*

### D. Settlement Administration

The proposed Settlement Administrator, whom Plaintiffs' Counsel selected and the Parties have contractually agreed upon, is KCC Class Action Services, LLC ("KCC"). KCC is a settlement administrator with over 20 years of experience administering class action settlements and has successfully administered hundreds of complex class action settlements in an efficient and effective manner. Joint Decl. ¶ 11; Ex. A-7 ¶ 6. KCC has agreed to cap notice and administration costs at $977,500, which is less than 3% of the settlement fund. Joint Decl. ¶ 11.

KCC has provided notice and administration services in more than forty class actions in the Northern District of California. Ex. A-7 ¶ 7 (listing cases). KCC also has robust procedures for handling class member data and sufficient insurance coverage. Joint Decl. ¶ 11; Ex. C. Moreover, based upon their experience working with KCC in similar cases, Plaintiffs' Counsel is confident that KCC will perform its work in an efficient, secure, and cost-effective manner, while attempting to ensure a high claims rate among Settlement Class Members. *Id*.

The Settlement Administrator shall administer the Settlement subject to the supervision of Plaintiffs' Counsel, Apple Counsel, and the Court as circumstances may require. The Settlement Administrator will be responsible for providing notice to the Class, as described below; for maintaining the Settlement Website and a toll-free telephone number which Settlement Class Members can call with questions about the Settlement; and for processing claims submitted by Settlement Class Members. § 6. The primary responsibilities of the Settlement Administrator are set forth in the Settlement. *Id*.

### E. Dissemination of Notice to the Class

Within 60 days of entry of the Preliminary Approval Order, the Settlement Administrator shall provide notice of the Settlement to likely Settlement Class Members by electronic mail (if an email address is available) or first-class mail (if no email address is available, but a mailing address is available). §§ 6.1, 6.2; *see also* Ex. B. The Website and Email Notice shall include Plaintiffs' Counsel's contact information, the Settlement Administrator's contact information, and the

address of the Settlement Website, which will include a list of key deadlines and copies of key documents, including but not limited to the Preliminary Approval Order, the motions for preliminary and final approval and application for attorneys' fees, costs and service awards, and the FAC. Exs. A-1, A-6. The Mail Notice will similarly provide the Settlement Administrator's contact information and the address of the Settlement Website. Ex. A-4.

Additionally, the Settlement Administrator shall publish in print publications and in a digital media campaign a copy of the Publication Notice. § 6.2.5; Exs. A-5, A-7. The Publication Notice shall inform Settlement Class Members of the fact of the Settlement and that information is available on the Settlement Website. *Id.* The Settlement Administrator shall also establish a toll-free telephone number to which Settlement Class Members can direct questions about the Settlement. § 6.2.2.

Apple shall use reasonable efforts to locate and provide necessary information to the Settlement Administrator so that it may effectuate notice, implement the plan of allocation, and distribute the settlement funds. §§ 6.1, 6.2.

Upon Plaintiffs' filing of the motion requesting issuance of the Preliminary Approval Order, *i.e.*, this Motion, Apple will provide timely notice of such motion to the appropriate officials as required by the Class Action Fairness Act, 28 U.S.C. § 1711. § 3.3.

### F.    Opportunity to Object or Opt Out

Members of the Settlement Class shall be permitted to object to the Settlement and/or Plaintiffs' forthcoming motion for attorneys' fees, costs, and service awards, or to opt out of the Settlement. All four forms of Notice (Email, Mail, Publication, and Website) will advise Settlement Class Members of these options and provide the deadlines for doing so, and the Website Notice shall provide instructions for objecting or opting out. §§ 4, 5. Settlement Class Members shall have at least 90 days after the Notice Date to file written objections prior to the Final Approval hearing, which will be held no sooner than 60 days after the end of the notice period. *Id.*

### G.    The Court Retains Jurisdiction

The Parties and each member of the Settlement Class will submit to the exclusive and continuing jurisdiction of the Court for any dispute related to the Settlement. § 10.13.

## IV.        PROPOSED SCHEDULE

Plaintiffs propose the following schedule:

| Event | Preliminary Approval Order Reference | Proposed Deadline |
|---|---|---|
| Preliminary Approval Hearing | n/a | If the Court deems necessary, May 16, 2024 at 9:00 am, or another date convenient for the Court |
| Apple to provide data necessary to implement notice plan to Settlement Administrator | ¶ 7 | Within 15 days of entry of Preliminary Approval Order |
| Settlement Administrator to commence transmission of the Email Notice, mailing of the Mail Notice, and publication of the Publication Notice and Website Notice ("Notice Date") | ¶ 8 | Within 60 days of entry of Preliminary Approval Order |
| Plaintiffs' Counsel to file Motion for Attorneys' Fees, Costs and Service Awards | ¶ 16 | At least 35 days before the Objection and Exclusion Deadline |
| Plaintiffs' Counsel to file Motion for Final Approval | ¶ 15 | At least 30 days before the Final Approval Hearing |
| Deadline to submit a claim to the Settlement Administrator | ¶ 11 | Not earlier than 90 days after the Notice Date |
| Deadline to submit an Objection to the Court or an Opt-Out request to the Settlement Administrator | ¶¶ 12, 13 | Not earlier than 90 days after the Notice Date |
| Deadline for Parties to respond to any objections or file any additional papers in support of Settlement | ¶ 17 | Not later than 10 days before the Final Approval Hearing |
| Final Approval Hearing | ¶ 14 | On a date convenient for the Court no sooner than 60 days after the date set forth in the Preliminary Approval Order for the end of the Notice Period |

## V.        ARGUMENT

Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed settlement, it must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Class certification under Rule 23 has two primary components: a proposed class must meet

1  the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).

2  *Id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998).

3        Once a settlement class is certified, approval of a settlement under Rule 23 involves a two-

4  step process: "First, the Court decides whether the class action settlement deserves preliminary

5  approval. Second, after notice is given to class members, the Court determines whether final

6  approval is warranted." *Vikram v. First Student Mgmt., LLC*, No. 17 Civ. 4656, 2019 WL 1084169,

7  at *3 (N.D. Cal. Mar. 7, 2019).

8        In order to grant preliminary approval, the Court must preliminarily determine whether the

9  Settlement is fair, reasonable, and adequate. "At the preliminary approval stage, 'the settlement

10 need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15 Civ. 2004, 2021 WL

11 3081091, at *4 (N.D. Cal. July 21, 2021) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377,

12 386 (C.D. Cal. 2007)). At the final approval hearing, the court will fully assess these factors. *De*

13 *Leon v. Ricoh USA, Inc.*, No. 18 Civ. 3725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019).

14        **A.        The Court Should Certify The Class For Purposes Of Settlement**

15        "The criteria for class certification are applied differently in litigation classes and

16 settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

17 When "[c]onfronted with a request for settlement-only class certification, a district court need not

18 inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521

19 U.S. at 620. However, the Court must "examine whether the Settlement Agreement 'provides

20 preferential treatment to any class member.'" *Philips v. Munchery Inc.*, No. 19 Civ. 0469, 2020

21 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No.

22 09 Civ. 0261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)).

23              1.        The Settlement Class Satisfies Rule 23(b)

24                    a.    *Numerosity*

25        The numerosity requirement of Rule 23 requires that a putative class must be "so numerous

26 that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However,

27 "[i]mpracticability is not impossibility, and instead refers only to the 'difficulty or inconvenience

28 of joining all members of the class.'" *Foster v. Adams & Assocs., Inc.*, No. 18 Civ. 2723, 2019

WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)) (finding that this factor was "easily satisfied" with 2,766 vested plan participants). While no specific number is required, courts in this Circuit have routinely found that a class greater than 40 satisfies the requirement. *Foster*, 2019 WL 4305538, at *3 (citing *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, Plaintiffs' Counsel estimates there are approximately 500,000 Settlement Class members, based on discovery produced in this case. Joint Decl. ¶ 10. Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

b. *Commonality*

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).[5] Commonality involves "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Foster*, 2019 WL 4305538, at *3 (quoting *Hanlon*, 150 F.3d at 1019). Ultimately, the commonality inquiry only requires the court to look "for some shared legal issue or a common core of facts," *id.*, and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Foster*, 2019 WL 4305538, at *3 (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

---

[5] "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that these requirements also often merge with adequacy of representation). While this memorandum discusses the requirements separately, the discussions of each element are related and arguments supporting one requirement frequently support the others.

Plaintiffs asserted claims relating to Apple's alleged conduct in connection with "false pretenses" gift card scams conducted by third parties related to iTunes and App Store Gift Cards. Plaintiffs allege that they and all members of the Settlement Class were subject to the same conduct. Thus, Plaintiffs' claims involve legal and factual questions that inherently affect all members of the Settlement Class.

The core questions in this Action are common to all Settlement Class members and include, *inter alia*: (i) whether Apple was obligated to refund consumers in connection with "false pretenses" gift card scams; (ii) whether Settlement Class members suffered resulting losses; and (iii) the manner in which to calculate Settlement Class members' losses. Plaintiffs' Motion for Class Certification identifies numerous other questions common to all Settlement Class members. *See* Class Cert. at 13-14 (citing Joint Trial Setting Conference Statement, ECF No. 161, at 2-4).

While a single common question is sufficient to meet the commonality requirement, the common questions here are numerous. *See Wal-Mart*, 564 U.S. at 359. Here, Plaintiffs' claims and each Settlement Class members' claims are based on the same events and legal theory, *i.e.*, Apple's alleged refusal to refund consumers in connection with false pretenses gift card scams and related conduct. Because the central allegations concern Apple's actions, or lack thereof, they are common to all Settlement Class members. All that commonality requires is that "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350).

c.   *Typicality*

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations omitted)).

Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Kanawi*, 254 F.R.D. at 110 (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). The representatives' claims need not be "identical or substantially identical to those of the absent class members." *Stanton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 24.25 at 24-105 (3d ed. 1992)). Instead, they must "arise[] from the same course of events" and involve "similar legal arguments to prove the defendant's liability." *In re Chase Bank USA, N.A. Check Loan Contract Litig.*, 274 F.R.D. 286, 292 (N.D. Cal. 2011) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)).

Here, Plaintiffs and their interests are tightly aligned with all other members of the proposed Class. Plaintiffs allege that all members of the Settlement Class were injured in the same manner, that is, by Apple's refusal to refund money stolen from them in a false pretenses gift card scam, and related conduct. Class Cert. at 14-15. Plaintiffs allege the claims arise from Apple's practices and policies, which were uniformly applied, and that Defendants' refusal to refund customers in connection with gift card scams are typical of all members of the proposed Settlement Class, including themselves. *Id.* In sum, Plaintiffs' claims are typical of all Settlement Class members' claims.

### d. *Adequacy*

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry analyzes "whether any conflicts of interest exist between the named plaintiffs and the class members" and "whether the named Plaintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 110. Here, Plaintiffs and Class members are all victims of the same type of fraud and have the same interest in recovering the money they lost to that fraud.

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that the class representatives here easily surpass. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Here, the interests of Plaintiffs are not antagonistic

13

to the members of the Settlement Class. Joint Decl. ¶ 9. Moreover, they have demonstrated their commitment to pursuing this Action on behalf of a Settlement Class and have achieved a favorable result, which does not favor any member of the Settlement Class at the expense of others. § 2.2. They filed the case for the benefit of the Class and have put many hours into reviewing draft pleadings, searching for documents, and preparing for and sitting for depositions. Joint Decl. ¶ 9; Class Cert. at 17.

In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy has already been recognized by the Court. Plaintiffs' Counsel were appointed Co-Lead Interim Class Counsel in this Action based on their "skill shown to date, and knowledge and experience in the kind of case before the Court." ECF No. 132 at 2. Plaintiffs now seek appointment as Class Counsel of the same three law firms that were appointed on an interim basis, with one change to the list of attorneys, *i.e.*, substitution of Amanda Rolon of Scott+Scott for Alex Outwater and Christopher Burke. *See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020) (when determining adequacy of counsel, "a court may consider the proposed counsel's professional qualifications, skill, and experience, as well as such counsel's performance in the action itself").

### 2.   The Settlement Class Satisfies Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs must satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Courts routinely grant certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members ('predominance' requirement), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ('superiority' requirement)." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 129 (N.D. Cal. 2021) (citing Fed. R. Civ. P. 23(b)) (internal quotation marks omitted).

Predominance demands that the proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). It does not require proof that "each element" of the claims is "susceptible to class-wide proof, so long as one or more common questions predominate." *James*, 338 F.R.D. at 135 (quoting *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020)) (internal quotation marks omitted).

14

As the Supreme Court recognized, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 at 123-24 (3d ed. 2005)). In the settlement context, "[t]he focus is 'on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *In re Hyundai*, 926 F.3d at 558 (quoting *Amchem*, 521 U.S. at 621). Here, the Settlement Class satisfies the "predominance" requirement because all of the factual and legal issues identified in Section V.A.1.b, *supra*, are common to all Settlement Class members.

The Settlement Class also satisfies the "superiority" requirement because "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Plaintiffs' losses range from less than two hundred dollars to more than two thousand dollars, and based on discovery produced in the case, Plaintiffs' Counsel believe those amounts are typical for "false pretense" gift card scams industry-wide. Even at the highest end of the claim range, no individual claim would justify the hundreds of thousands of dollars in expenses, much less the attorneys' fees, necessary to litigate a case of this nature against Apple. Indeed, as Plaintiffs' Counsel will detail in a forthcoming motion, out-of-pocket costs in this case have totaled hundreds of thousands of dollars. Finally, even if individual suits on behalf of each Settlement Class member were feasible, they "would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)).

**B.     The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval**

1.     <u>The Settlement Should Be Preliminarily Approved</u>

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same). "To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15 Civ. 1614, 2018 WL 3000490, at *3 (C.D. Cal. Feb. 6, 2018) (citing Fed. R. Civ. P. 23(e)(2)). In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel. *Id.*; *see also In re MacBook Keyboard Litig.*, No. 18 Civ. 2813-EJD, 2023 WL 3688452, at *5 (N.D. Cal. May 25, 2023) (same). The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Urakhchin*, 2018 WL 3000490, at *3 (citations and alterations omitted).

"[C]lass settlements reached prior to formal class certification require a 'heightened fairness inquiry.'" *MacBook Keyboard Litig.*, 2023 WL 3688452, at *6 (citing *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022)); *see also In re Volkswagen "Clean Diesel" Mktg.*, No. 15 MD 2672, 2022 WL 17730381, at *5 (N.D. Cal. Nov. 9, 2022) (citing *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)) (same). "When reviewing such a pre-certification settlement, the district court must not only explore [the factors identified above], but also 'look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *MacBook Keyboard Litig.*, 2023 WL 3688452, at *6 (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)). The "subtle signs" of collusion district courts must look for include:

> (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Roes*, 944 F.3d at 1049 (internal quotations omitted).

The Settlement easily survives the "heightened scrutiny" search for signs of self-dealing. Plaintiffs' Counsel will not be receiving a disproportionate distribution from the settlement; in

1 fact, they have agreed to limit their request for attorneys' fees and costs to no more than one third

2 of the settlement fund. § 7.1. Plaintiffs' counsel also have not agreed to any reversionary

3 provisions, nor have they asked Defendants to agree not to object to any specific amount in

4 attorneys' fees or costs. Indeed, the only agreement between the Parties with respect to attorneys'

5 fees is the term which *limits* Plaintiffs' Counsel's forthcoming fee application to one third of the

6 settlement fund, and Apple has expressly reserved all rights to challenge the fee application. *Id.*

7   The Settlement also satisfies the remaining factors to be considered by the Court. Although

8 Plaintiffs believe there is legal and factual support for their claims, there is inherent risk in

9 continued litigation of these complex claims. The Parties have engaged in significant motion

10 practice, including the disclosure of Plaintiffs' class certification experts and the filing of a motion

11 for class certification, and additional dispositive and expert exclusion motions likely would have

12 been filed. Trial presentations would rely heavily on competing expert testimony and likely given

13 way to a complex appeal. The Settlement is the product of an extensive arm's-length process in

14 recognition of these risks. *See Urakhchin*, 2018 WL 3000490, at *4.

15   Additionally, Plaintiffs' Counsel conducted substantial investigation and analysis of over

16 680,000 pages of relevant documents and communications reflecting Apple's actions taken with

17 regards to Eligible Gift Card(s). Joint Decl. ¶ 17. "Discovery can be both formal and informal[,]"

18 and, here, Plaintiffs and Plaintiffs' Counsel engaged in significant investigation of the Parties'

19 claims and defenses even before filing the initial complaint, and since then have undertaken

20 significant formal fact and expert discovery. *See Urakhchin*, 2018 WL 3000490, at *5. Indeed, the

21 Parties were engaged in vigorous litigation when they agreed to the Settlement and further

22 litigation promised to be similarly lengthy and complex, involving numerous competing experts

23 on both class certification and liability issues concerning Plaintiffs' claims and Defendants'

24 defenses as well as Settlement Class members' alleged losses. As already discussed, the Parties

25 likely would have filed dispositive motions and pretrial motions. Thus, Plaintiffs faced meaningful

26 challenges in their ability to obtain a recovery on behalf of the Settlement Class, even setting aside

27 the additional complexity and delay of likely appeals, which strongly supports the preliminary

28 approval of the Settlement. *See id.*

Finally, where a settlement is the result of arm's-length negotiations among experienced counsel, this weighs in favor of preliminary approval. *See Carter v. Vivendi Ticketing US LLC*, No. 22 Civ. 1981, 2023 WL 8153712, at *4 (C.D. Cal. Oct. 30, 2023) ("The Settlement, which is the product of a full day of vigorous negotiations between counsel before a neutral mediator, appears to be the result of arms-length negotiations between the parties.").

"Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Johnson*, 2021 WL 3081091, at *4 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also Gatchalian v. Atlantic Recovery Sols., LLC*, No. 22 Civ. 4108, 2023 WL 8007107, at *7 (N.D. Cal. Nov. 16, 2023); *Utne v. Home Depot U.S.A., Inc.*, No. 16 Civ. 1854, 2023 WL 4850183, at *2 (N.D. Cal. July 28, 2023); *Billups-Larkin v. Aramark Servs., Inc.*, No. 21 Civ. 6852, 2023 WL 4600409, at *2 (N.D. Cal. July 17, 2023); *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20 Civ. 1613, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022) (same); *Chang v. Wells Fargo Bank, N.A.*, No. 19 Civ. 1973, 2022 WL 17825122, at *7 (N.D. Cal. Dec. 20, 2022) (same); *In re Lyft, Inc. Sec. Litig.*, No. 19 Civ. 2690, 2022 WL 17740302, at *4 (N.D. Cal. Dec. 16, 2022) (same); *Dimercurio v. Equilon Enters. LLC*, No. 19 Civ. 4029, 2022 WL 17669711, at *3 (N.D. Cal. Dec. 14, 2022) (same). Here, Plaintiffs' experts have estimated the total actual losses of the Settlement Class if all claims are successful at trial to be approximately $165 million. Joint Decl. ¶ 19. Accordingly, the Settlement provides monetary relief of approximately 21% of the estimated losses of the Class, which is well within and significantly exceeds the accepted range of recovery in class action settlements across the country and in this district. *Id.*; *see also Fleming v. Impax Labs. Inc.*, No. 16 Civ. 6557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.*, No. 13 Civ. 3072, 2019 WL 1411510, at *10 (N.D. Cal. Mar. 28, 2019) (approving settlement providing for 5.7% of total possible recovery); *Deaver v. Compass Bank*, No. 13 Civ. 0222, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015)

1  (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13 MD 2420, 2017 WL

2  1086331, at *4 (N.D. Cal. Mar. 20, 2017) (overruling objections to settlement amount representing

3  between 2.2% and 11.2% of total possible damages).

4     In sum, the Settlement is the product of vigorous litigation and serious, arm's-length

5  negotiation by experienced and well-informed counsel, adequately reflects the strength of the

6  Parties' claims and defenses, treats all members of the Settlement Class equally, is based on

7  sufficient discovery and information, provides significant relief to the Settlement Class, and bears

8  no signs of self-dealing by counsel. Accordingly, the Court should find the Settlement is fair,

9  reasonable, and adequate, and merits preliminary approval.

10        2. <u>The Notice Plan Should Be Preliminarily Approved</u>

11     In addition to preliminarily approving the proposed Settlement, the Court must approve the

12  proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2). Due process

13  and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice

14  must be "reasonably calculated, under all the circumstances, to apprise interested parties of the

15  pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

16  *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[I]ndividual notice must be provided

17  to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle &*

18  *Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it generally describes the terms of

19  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

20  forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

21  (internal citations omitted).

22     The notice plan is reasonably calculated to reach the largest number of Settlement Class

23  members practicable under the circumstances. *See* Peak Declaration, attached as Ex. A-7. Likely

24  Settlement Class Members who can be identified through Apple's records with reasonable effort

25  will receive direct notice by email and/or first-class mail prior to the Final Approval Hearing. *See*

26  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (quoting *Eisen*, 417

27  U.S. at 173) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s

28  requirement that class members receive 'the best notice practicable under the circumstances.'").

1    The Settlement Administrator will also administer a publication notice program designed to reach

2    Settlement Class Members who cannot be identified through Apple's records with reasonable

3    effort. Ex. A-5. The publication notice program will include not only extensive digital notice via

4    social media and search engines, but also print notice in multiple national publications. *Id.* In

5    addition, the notice will be published on the case-specific Settlement Website, together with copies

6    of the Settlement Agreement, the preliminary and final approval motions and related orders, and

7    other litigation documents, and the Settlement Administrator will establish and monitor a toll-free

8    number to field Settlement Class member inquiries. Exs. A-5, A-6. Each form of notice will

9    provide Settlement Class Members with the address of Settlement Website, contact information

10   for the Settlement Administrator and/or Plaintiffs' Counsel, information on their options, and the

11   date and time of the final approval hearing. *Id.*

12         The notice plan satisfies all due process considerations and meets the requirements of Rule

13   23(e). Members of the Settlement Class will receive and have access to materials clearly

14   describing: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released

15   Claims; (iii) the maximum attorneys' fees and costs, and service awards that may be sought; (iv)

16   the procedure and timing for objections and opting out; and (v) the date and location of the hearing

17   impacting their rights.

18              3.    The Plan Of Allocation Should Be Preliminarily Approved

19         The plan of allocation provides recovery to members of the Settlement Class in an amount

20   equal to the face value of the Eligible Gift Card(s) which are the subject to the Settlement Class

21   Member's claim, less any amounts the Settlement Class Member has already been refunded,

22   cashed out, or received in compensation from any source. If, after all notice and administration

23   expenses, any attorneys' fees and costs, and any service awards are paid, the total value of

24   payments to eligible Settlement Class members would exceed the remaining Settlement Amount,

25   the plan of allocation provides that the payments of all eligible Settlement Class members shall be

26   reduced *pro rata*. A *pro rata* distribution based on each class member's loss relative to that of the

27   class as a whole "has frequently been determined to be fair, adequate, and reasonable." *Hefler v.*

28   *Wells Fargo & Co.*, No. 16 Civ. 5479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018).

20

Additionally, courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, No. 17 Civ. 2185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (internal quotation omitted). In light of the equitable treatment of all Settlement Class Members and the recommendation of competent and experienced counsel, the Court should find that the plan of allocation is also fair, reasonable, and adequate.

Similarly, if after all notice and administration expenses, any attorneys' fees and costs, and any service awards are paid, the total value of payments to eligible Settlement Class members is less than the remaining Settlement Amount, the plan of allocation provides that the Parties will meet and confer to discuss a proposal to present to the Court regarding a *cy pres* distribution. "*Cy pres* provides a mechanism for distributing unclaimed funds to the next best class of beneficiaries." *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20 Civ. 0823, 2022 WL 10757077, at *1 (N.D. Cal. Oct. 18, 2022) (quoting *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018)). The *cy pres* approach typically involves an indirect benefit to class members through defendant donations to a third party, rather than a direct monetary payment. *Miguel-Sanchez*, 2022 WL 10757077, at *1. The Court will assess at the final approval stage whether the proposed *cy pres* beneficiary is "tethered to the nature of the lawsuit and the interests of the . . . class." *Dimercurio*, 2022 WL 17669711, at *7 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012)).

### C.    Analysis Under the Procedural Guidance for Class Action Settlements Factors Supports Preliminary Approval

Preliminary approval of the Settlement is further supported by analysis under the Northern District of California's Procedural Guidance for Class Action Settlements:

1.    Information About the Settlement

a.    *Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.*

There are no significant differences between the Nationwide Class proposed in the operative FAC and the proposed Settlement Class.

21

The Nationwide Class proposed in the operative FAC is defined as follows:

> All persons in the United States who, during the Class Period [defined as "the period between January 1, 2015 and July 31, 2020"], purchased one or more gift cards redeemable on iTunes or the App Store, provided the redemption codes to people unknown to them who sought the codes under false pretenses, and were not refunded the value of the gift cards by Apple.

FAC ¶ 181. The proposed Settlement Class is defined as follows:

> All persons who purchased an Apple App Store & iTunes gift card ("an Eligible Gift Card") in the United States and its territories from January 1, 2015 to July 31, 2020, provided the redemption code of such Eligible Gift Card to a third party unknown to them who sought the code under false pretenses, and did not receive a full refund or other form of compensation for their complete losses from Apple or any third party.

§ HH. Excluded from both class definitions are Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. The Settlement Class definition further excludes all employees of any law firm involved in prosecuting or defending this litigation, as well as their immediate family members.

Thus, the only substantive differences are the expansion of the Class to include persons in the territories of the United States (a common feature of class action settlements), and language recognizing the possibility that Class members may have received refunds or compensation from sources other than Apple, and properly excluding from the Class anyone who has already been fully compensated for the losses at issue in this Action.

        b.    *Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.*

The claims released include the claims alleged in the FAC, as well as any claims against Defendants or certain of their business partners, occurring prior to the date of the Settlement, whether known or unknown. §§ 8.1-8.2. The scope of the release is appropriate as it is a standard and necessary consideration for the Settlement benefits; it is intended to assure Defendants that they will not be required to engage in additional litigation brought by Settlement Class members

and arising out of the same facts, whether as defendants, as respondents in discovery, or in connection with a request for contribution or indemnification. *See* Section III.B herein.

        c.     *The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.*

The class recovery under the Settlement will be $35 million, which represents approximately 21% of the losses incurred by the Settlement Class. *See* Section II.B herein.

        d.     *Any other cases that will be affected by the settlement.*

No such cases are known.

        e.     *The proposed allocation plan for the settlement fund.*

Settlement Class Members who submit valid claims will be eligible to recover 100% of the money they lost, unless: (1) they have already recovered some of that money (in which case their recovery will be reduced by the amount already recovered); or (2) the funds available to pay claims are less than the amount necessary to cover all valid claim submitted by Settlement Class Members (in which case the payments will be reduced pro rata). *See* Section III.C.2 herein; § 2.2.

        f.     *If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.*

Based on the Settlement Administrator and Plaintiffs' Counsel's experience in similar cases, Plaintiffs anticipate that the claim rate will be in the range of comparable consumer settlements that have been approved in this District. *See* Ex. D (providing a breakdown of comparative class action settlements).

        g.     *In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.*

The Settlement explicitly prohibits reversion of any of the $35 million Settlement Amount to Defendants. §§ 2.1, 2.4.

2.   <u>Settlement Administration</u>

a.   *Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what method of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.*

As discussed in Section III.D herein, the Parties propose that KCC be appointed as the Settlement Administrator. The Parties solicited and reviewed proposals from three settlement administrators, held meetings with the candidates to clarify and negotiate those proposals, and selected KCC based on its pricing, responsiveness, and vast experience administering class action settlements, including in a wide range of class actions in the Northern District of California. The methods of notice included in the proposals were Email Notice, Mail Notice, Publication Notice, and Website Notice. §§ 2.3, 6.2.3, 6.2.4, 6.2.5, 6.2.6. The methods of claim payment included in the proposals were physical check or ACH transfer. §§ 6.2.7, 6.3.1(b). None of the three law firms serving as interim class counsel and proposed as Class Counsel have entered into any new engagements with KCC to serve as a claims administrator in the last two years.

b.   *Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay costs.*

KCC has developed a comprehensive cyber security framework aligned with ISO/IEC 27002:2013. Joint Decl. ¶ 11; Ex. C (description of KCC services and resume of Carla A. Peak, Vice President of Legal Notification Services for KCC). KCC's cryptographic solutions protect data in transit and at rest utilizing industry-recognized leading practices. *Id.* Employee screening, annual mandatory training, and employee termination/departure procedures are also standard protocols. *Id.* The Information Security team actively monitors the internal and external threat environment to ensure that the current security controls deployed are both appropriate and effective. *Id.* KCC has Professional Indemnity Insurance totaling $10 million and Comprehensive Crime / Electronic & Computer Crime Insurance with a limit of not less than $10 million. *Id.*

KCC's notice and administration costs are capped at $977,500 absent unanticipated circumstances, and could be lower depending upon the claims rate. Thus, the Parties anticipate that a maximum of 3% of the $35 million settlement fund will be spent on notice and administration. *See Hopson v. Hanesbrands Inc.*, No. 08 Civ. 0844, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (finding administration costs of 3% of the settlement fund reasonable).

### 3.    Remaining Procedural Guidelines

The remaining Procedural Guidelines are addressed throughout this Motion and its exhibits, including the Settlement. Specifically, regarding: (3) Notice, *see* Sections III.E and V.B, *supra*, *see also* § 6.2; (4) Opt Outs, *see* Section III.F, *supra*, *see also* § 5; (5) Objections, *see* Section III.F, *supra*, *see also* § 4; (6) Attorneys' Fees and Costs, *see* Section III.C.4, *supra*, *see also* § 7; (7) Service Awards, *see* Section III.C.3, *supra*, *see also* § 7; (8) *Cy Pres*, *see* Section III.C.6, *supra*, *see also* § 2.4; (9) Timeline, *see* Section IV, *supra*; (10) CAFA, *see* Section III.E, *supra*, *see also* § 3.3; and (11) Comparative Outcomes, *see* Section V.C.1.f, *supra*, *see also* Ex. D.

## VI.    CONCLUSION

Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion and enter the proposed Order preliminarily approving the Settlement with Defendants, certifying the proposed Settlement Class and appointing Plaintiffs' Counsel as Class Counsel, approving the proposed form and manner of notice to the Settlement Class, approving the proposed selection of the Settlement Administrator, and setting a date for the Final Approval Hearing.

Dated: April 2, 2024

Respectfully submitted,

**KIRBY McINERNEY LLP**
/s/ *Anthony F. Fata*
Anthony F. Fata (*pro hac vice*)
Sarah E. Flohr (*pro hac vice*)
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Telephone: 312-767-5180
afata@kmllp.com
sflohr@kmllp.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (*pro hac vice*)
Amanda M. Rolon (*pro hac vice*)
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
jguglielmo@scott-scott.com
arolon@scott-scott.com

Hal D. Cunningham (CA Bar No. 243048)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
hcunningham@scott-scott.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Nyran Rose Rasche (*pro hac vice*)
Nickolas J. Hagman (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

*Attorneys for Plaintiffs*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I, Anthony F. Fata, certify that on April 2, 2024 the foregoing document entitled

3

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY

4

APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND

5

AUTHORITIES IN SUPPORT THEREOF was filed electronically in the Court's ECF; thereby

6

upon completion the ECF system automatically generated a "Notice of Electronic Filing" as

7

service through CM/ECF to registered e-mail addresses of parties of record in this case.

8

 /s/ *Anthony F. Fata*
ANTHONY F. FATA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28