1
JOSEPH P. GUGLIELMO (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

2
230 Park Ave., 24th Floor
New York, NY 10169

3
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

4
jguglielmo@scott-scott.com

5
*Co-Lead Class Counsel*

6
[Additional Counsel Listed on Signature Page.]

7
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8
SAN JOSE DIVISION

9
CARL BARRETT, *et al.*,

Case No. 5:20-cv-04812-EJD

10
Plaintiffs,

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF LAW IN SUPPORT THEREOF**

11
v.

12
APPLE, INC., *et al.*,

13
Defendants.

Dept.:  Courtroom 4 – 5th Floor
Judge:  Honorable Edward J. Davila

14
Date: December 12, 2024
Time: 9:00 a.m.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2024 at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building and U.S. Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiffs Michel Polston, Nancy Martin, Maria Rodriguez, and Andrew Hagene (collectively, "Plaintiffs"),[1] will and do hereby move for an Order pursuant to Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2) to award: (i) attorneys' fees to Class Counsel equal to just under one third of the non-reversionary $35 million Settlement fund ("Settlement Fund"), or $11.65 million[2]; (ii) unreimbursed litigation expenses paid by each firm to the litigation fund and each firm's individual unreimbursed litigation expenses totaling $546,657.27; and (iii) Service Awards of $10,000 for each of the four named Plaintiffs, totaling $40,000.

The Motion is based upon this Notice of Motion, the Memorandum of Law set forth below, the accompanying Joint Declaration of Joseph P. Guglielmo, Nyran Rose Rasche, and Anthony F. Fata, and the individual Declarations of Scott+Scott Attorneys at Law LLP, Cafferty Clobes Meriwether & Sprengel LLP, and Kirby McInerney LLP, and all exhibits attached thereto, the pleadings and filings in this Action, and such other matters and arguments as the Court may consider at the hearing of this Motion.

---

[1] On June 13, 2024, Plaintiffs filed a Notice of Suggestion of Death of Plaintiff Michael Rodriguez. ECF No. 272. Prior to Mr. Rodriguez's death, the parties had agreed that only a single service award would be sought for the Rodriguez Plaintiffs in connection with their joint claim, and that the award would be sought in the name of Maria Rodriguez. *See id.*

[2] All capitalized words and terms are defined in the Class Action Settlement and Release Agreement ("Settlement Agreement"), ECF No. 266-2, unless otherwise defined herein.

i

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Court should approve Class Counsel's request for an award of attorneys' fees in an amount $11.65 million, or just under one-third of the Settlement Fund;

2.  Whether the Court should approve Class Counsel's request for $546,657.27 for reimbursement of in out-of-pocket litigation expenses reasonably and necessarily incurred in furtherance of this Action;

3.  Whether the Court should approve Service Awards of $10,000 to each of the four named Plaintiffs for their time and effort in pursuing this Action.

## TABLE OF CONTENTS

MEMORANDUM OF LAW ........................................................................................................1

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL & PROCEDURAL BACKGROUND ......................................................3

        A.      Investigation and Filing ................................................................................3

        B.      Motions to Dismiss and to Stay Discovery...................................................4

        C.      Discovery Efforts on Behalf of the Class .....................................................4

        D.      Motion for Class Certification ......................................................................5

        E.      Mediation and Settlement Administration Efforts on Behalf of the Class ..............6

III.    THE ATTORNEYS' FEE REQUEST SHOULD BE APPROVED ...................................6

        A.      Legal Standards Governing the Award of Attorneys' Fees ....................................6

        B.      A Fee Award of Approximately One-Third of the Settlement Fund Is
                Appropriate ...................................................................................................9

                1.      Class Counsel Achieved an Exceptional Result for the
                        Class.....................................................................................................9

                2.      Class Counsel Undertook Substantial Risk in this Litigation........11

                3.      The Settlement Required Expertise and Exemplary
                        Performance ..............................................................................12

                4.      The Requested Fee Is Consistent with Those Awarded in
                        Similar Cases .............................................................................13

                5.      The Burdens Class Counsel Experienced Favor the
                        Requested Fee ............................................................................15

                6.      The Case Was Handled on a Fully-Contingent Basis for
                        Years .........................................................................................15

IV.     A LODESTAR CROSS-CHECK SUPPORTS THE FEE REQUEST ...........................16

V.      THE REQUESTED LITIGATION EXPENSES ARE REASONABLE .........................20

VI.     THE SERVICE AWARDS ARE WARRANTED ..............................................21

VII.    CONCLUSION....................................................................................................22

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................12

*Barrett v. Apple Inc. et al.*,
   Case No. 5:20-cv-04812-EJD, 2024 WL 2927182 (N.D. Cal. May
   16, 2024) ..............................................................................................................1

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..............................................................................................7

*Bower v. Cycle Gear, Inc.*,
   No. 14 Civ. 02712, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ......................11

*Buccellato v. AT & T Operations, Inc.*,
   No. 10 Civ. 0463, 2011 WL3348055 (N.D. Cal. June 30, 2011) .........................14

*Budicak Inc. v. Lansing Trade Grp.*,
   LLC, No. 19-CV-02449, ECF Nos. 369 and 380, 2023 WL
   7189144 (D. Kan. June 16, 2023) ........................................................................18

*Carlin v. DairyAmerica, Inc.*,
   380 F. Supp. 3d 998 (E.D. Cal. 2019), *appeal dismissed sub nom.*
   *Carlin v. Spooner,* 808 F. App'x 571 (9th Cir. 2020).............................................14

*Ching v. Siemens Industry, Inc.*,
   No. 11 Civ. 04838, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ......................16

*Covillo v. Specialtys Cafe*,
   No. 11 Civ. 0594, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ...........................17

*Cullen v. Whitman Medical Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) ..........................................................................10

*Destefano v. Zynga, Inc.*,
   Case No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11,
   2016) ....................................................................................................................12

*Fischel v. Equitable Life Assurance Soc'y*,
   307 F.3d 997 (9th Cir. 2002) ................................................................................7

*Harrison v. Bank of Am. Corp.*,
No. 19 Civ. 0316, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021)..............................................7

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
No. 07 Civ. 2245, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ...........................................16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................................................................................................................9

*Hopkins v. Stryker Sales Corp.*,
No. 11 Civ. 2786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)...............................................14

*In re American Apparel, Inc. S'holder Litig.*,
No. 10 Civ. 6352, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................13, 17

*In re Anthem, Inc. Data Breach Litig.*,
Master File No. 15-md-02617, 2018 WL 3960068 (N.D. Cal.
Aug. 8, 2018) ..........................................................................................................................10

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................................7, 8, 16

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ..................................................................................................15

*In re Corel Corp., Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................................................10

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789, 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018),
*aff'd sub nom. Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296
(2d Cir. 2019)...........................................................................................................................18

*In re General Instr. Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) .......................................................................................10

*In re Google Buzz Privacy Litig.*,
No. 10 Civ. 672-JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)..........................................10

*In re Google Inc. Street View Electronic Communications Litig.*,
21 F.4th 1102 (9th Cir. 2021) ..................................................................................................10

*In re Google Location History Litig*,
Case No. 5:18-cv-05062-EJD, 2024 WL 1975462 (N.D. Cal. May
3, 2024) ..........................................................................................................................2, 11, 17

*In re Heritage Bond Litig.*,
No. 02–ML–1475 DT, 2005 WL 1594403 (C.D. Cal. June 10,
2005) ........................................................................................................................................13

*In re HPL Techs., Inc. Sec. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................................19

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   MDL No. 1891, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ................................7

*In re LendingClub Sec. Litig.*,
   No. 16 Civ. 2627, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018)..........................20

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24,
   2019) ....................................................................................................................13

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20,
   2018) ....................................................................................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ................................14

*In re Netflix Privacy Litig.*,
   No. 11 Civ. 0379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..........................10

*In re Nexus 6P Products Liability Litig.*,
   No. 17 Civ. 02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)........................16

*In re Omnivision Techs. Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................... *passim*

*In re Online DVD-Rental Antitrust Litigation*,
   779 F.3d 934 (9th Cir. 2015) ...............................................................................21

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03 Civ. 5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)....................14, 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007).....................................................................17

*In re Vaxart, Inc. Securities Litig.*,
   No. 20 Civ. 59490, ECF No. 274 (N.D. Cal. Jan. 25, 2023) ................................18

*In re Washington Public Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .........................................................................15, 16

*Knight v. Red Door Salons, Inc.*,
   No. 08 Civ. 1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).................................8

*Ladore v. Ecolab, Inc.*,
   No. 11 Civ. 9386, 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013)..................11, 16

vi

*Lane v. Facebook*,
  696 F.3d 811 (9th Cir. 2012) ......................................................................10

*Lusby v. GameStop Inc.*,
  No. 12 Civ. 3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...........................14

*Martin v. Marriott Int'l, Inc.*,
  No. 18 Civ. 0494, 2021 WL 4888973 (D. Haw. Oct. 19, 2021)............................8, 16

*Moore v. PetSmart, Inc.*,
  No. 12 Civ. 3577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4,
  2015) .....................................................................................................22

*Munoz v. Big Bus Tours Ltd.*,
  No. 18 Civ. 05761, 2020 WL 13533045 (N.D. Cal. Feb. 12, 2020)........................9

*Nelson v. Avon Products, Inc.*,
  No. 13 Civ. 2276, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017)............................21

*Patel v. Trans Union, LLC*,
  No. 14 Civ. 0522, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .........................14

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ......................................................................8

*Rihn v. Acadia Pharms. Inc.*,
  No. 15 Civ. 0575, 2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ...........................13

*Roberti v. OSI Systems, Inc.*,
  No. 13 Civ. 09174, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .........................12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................21

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ......................................................................2

*Smith v. CRST Van Expedited, Inc.*,
  No. 10 Civ. 1116, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ...........................14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................21

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14 Civ. 1160, 2018 WL 2234598 (N.D. Cal. May 15, 2018) .....................7, 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................ *passim*

*Waldbuesser v. Northrop Grumman Corp.*,
    No. 06 Civ. 6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ...........................................14

*Wallace v. Countrywide Home Loans, Inc.*,
    No. 08 Civ. 1463, 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015).........................................12

*Williamson v. Microsemi Corp.*,
    No. 14 Civ. 01827-LHK, 2015 WL 13650045 (N.D. Cal. Feb. 19,
    2015) ........................................................................................................................................7

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ................................................................................................13

*Zyda v. Four Seasons Hotels and Resorts*,
    No. 16 Civ. 0591, 2020 WL 9762910 (D. Haw. Apr. 1, 2020) ..............................................17

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
    Fed. R. Civ. P. 12(b)(6)............................................................................................................4
    Fed. R. Civ. P. 23....................................................................................................................1
    Fed. R. Civ. P. 23(h)...........................................................................................................1, 9
    Fed. R. Civ. P. 30(b)(1)............................................................................................................5
    Fed. R. Civ. P. 30(b)(6)............................................................................................................5
    Fed. R. Civ. P. 54(d)(2)............................................................................................................1
    Fed. R. Civ. P. 54.2(f)..............................................................................................................1

California Penal Code §496 .................................................................................................................4

Local Rule 54-5(b) ..............................................................................................................................1

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation, §21.71
    (4th ed. 2004) ........................................................................................................................9

## MEMORANDUM OF LAW

Plaintiffs Michel Polston, Nancy Martin, Maria Rodriguez, and Andrew Hagene and Court-appointed Class Counsel respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for an award of attorneys' fees of $11.65 million, or just under one-third of the Settlement Fund, reimbursement of out-of-pocket litigation expenses in the amount of $546,657.27, and Service Awards of $10,000 to each of the four named Plaintiffs.  Plaintiffs and Class Counsel submit this Memorandum pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and the Court's Order Granting Preliminary Approval of Class Action Settlement in *Barrett v. Apple Inc. et al.*, Case No. 5:20-cv-04812-EJD, 2024 WL 2927182 (N.D. Cal. May 16, 2024) ("Preliminary Approval Order").  Plaintiffs also submit the Joint Declaration of Joseph P. Guglielmo, Nyran Rose Rasche, and Anthony F. Fata ("Joint Decl."), and the individual Declarations of Scott+Scott Attorneys at Law LLP, Cafferty Clobes Meriwether & Sprengel LLP, and Kirby McInerney LLP ("Indiv. Decls.") in compliance with Civil Local Rule 54-5(b) in support of this Motion and to address the various factors referenced under Federal Rules of Civil Procedure 23 and 54.2(f).

## I.      INTRODUCTION

After more than three years of litigation and more than six months of active settlement negotiations, Class Counsel successfully obtained a Settlement that provides meaningful relief to the proposed Class and a remarkable resolution of this trailblazing Action, which is the first of its kind to be filed and the first to provide relief to victims of gift card scams.  Class Counsel is unaware of any prior class action settlement that obtained a recovery for victims of gift card scams.  The Settlement provides that Apple will pay $35 million into a non-reversionary Settlement Fund from which Settlement Class Members can be made whole, potentially receiving 100% of the amount they were defrauded into paying for Apple App Store and iTunes gift cards.  Class Counsel vigorously litigated this case and achieved an excellent result for the Settlement Class.

In recognition of the dedicated and substantial work performed for the Class and the extraordinary result achieved, Class Counsel request that the Court approve the requested attorneys' fee award of just under one-third of the Settlement Fund, in the amount of $11.65 million

(plus interest earned), litigation expenses totaling $546,657.27, and Service Awards of $10,000 for each of the four named Plaintiffs.

As set forth below, an award of approximately one-third of the Settlement Fund is reasonable and appropriate under Ninth Circuit authority based on the exceptional results achieved for the Settlement Class, and the fact that it represents a negative multiplier, utilizing Class Counsel's historical hourly rates that have previously been approved by courts in this District and elsewhere.

Although an award of 25% of a common fund is the benchmark for attorneys' fee awards in this District, exceptional circumstances present in this first-of-its-kind litigation support approval of an upward adjustment to just under one-third of the Settlement Fund. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also In re Google Location History Litig,* Case No. 5:18-cv-05062-EJD, 2024 WL 1975462, at *14 (N.D. Cal. May 3, 2024). As discussed below, the quality of the result achieved in this ground-breaking litigation and the existence of considerable litigation risk support the fee requested. Moreover, the fee request of just under one-third of the Settlement Fund is reasonable and warranted when considered under the applicable standards and is well within the normal range of awards made in contingent-fee consumer class actions in this Circuit. *See* Section III, *infra*. Plaintiffs' objective in filing the lawsuit was to remedy the harm caused to Plaintiffs and the Class. The Settlement achieves that goal by providing Class Members the opportunity to be made whole.

Also, reimbursement of Class Counsel's litigation expenses should be approved as such expenses, which include costs for discovery, experts, travel, and mediation, were reasonable and necessary in litigating the Action. These expenses are reasonable in light of the work performed in the case and the complexity and duration of this Action. *See* Section II, *infra*.

Lastly, the Service Awards are reasonable given named Plaintiffs' active and ongoing involvement and assistance with prosecution of this Action. Plaintiffs made public the details of

1   the scams they suffered, put their personal and financial lives at issue, spent considerable time

2   assisting with discovery, sat for depositions, provided documents and other information about their

3   specific experiences, reviewed pleadings, and consistently communicated with Class Counsel to

4   remain informed of case developments.  Moreover, such awards have been previously approved

5   by courts in this District and Circuit as appropriate for this type of action.  *See* Section III, *infra*.

6        Accordingly, Plaintiffs and Class Counsel respectfully request that the Court grant the

7   Motion.

8   **II.    FACTUAL & PROCEDURAL BACKGROUND**

9        Co-lead Class Counsel Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Cafferty Clobes

10  Meriwether & Sprengel LLP ("Cafferty Clobes"), and Kirby McInerney LLP ("Kirby McInerney")

11  have devoted more than four years to this case on a fully contingent basis at the sacrifice of other

12  fee-generating work.  As detailed below, Class Counsel expended considerable time and resources

13  on this Action, including an extensive factual and legal investigation into the potential claims,

14  drafting and amending the pleadings, engaging in extensive discovery, including hard-fought

15  discovery disputes before the Magistrate Judge, and engaging in lengthy and contentious

16  settlement negotiations leading to the Settlement.  Class Counsel took significant risks and through

17  their efforts were able to negotiate and present this exceptional Settlement for approval by the

18  Court whereby Settlement Class Members can potentially obtain  100% of the amounts they were

19  defrauded.  A description of Class Counsel's work in this litigation follows.

20       **A.    Investigation and Filing**

21       In late 2019, a victim of an iTunes gift card scam contacted Class Counsel seeking

22  assistance.  Class Counsel spent months investigating the nature and scope of the scam, Apple's

23  role and refusal to issue refunds, and the resulting damages to victims of the scam.  Class Counsel

24  researched potential claims and remedies available to victims, and ultimately drafted a Class

25  Action Complaint and filed this first-of-its kind action on July 17, 2020.  The complaint alleges

26  that unwitting consumers were tricked by third-party scammers into purchasing Apple App Store

27  and iTunes gift cards and providing the cards' redemption codes to scammers, and that Defendants

28  Apple, Inc. and Apple Value Services, LLC ("Defendants" or "Apple"), knowingly kept the money

stolen from the victims of those gift card scams and unconscionably and unlawfully refused to issue refunds to the victims.  *See generally* ECF No. 1.

**B.     Motions to Dismiss and to Stay Discovery**

On October 8, 2020, Apple filed a motion to dismiss Plaintiffs' initial complaint, ECF No. 33, which Plaintiffs opposed.  ECF No. 39.  While that motion was pending, Apple filed a motion to stay discovery.  ECF No. 36.  Plaintiffs successfully opposed the motion to stay discovery, which was denied on October 22, 2020.  ECF Nos. 37-38.  On March 4, 2021, the Court granted Apple's motion to dismiss in full.  ECF No. 51.  Plaintiffs sought and obtained leave to amend to add new claims and parties, ECF Nos. 54 and 58.  On April 14, 2021, Plaintiffs filed the First Amended Class Action Complaint amending the allegations, adding new claims, and adding additional named Plaintiffs.  ECF No. 59.

Following a second round of Rule 12(b)(6) briefing, the Court issued an Order on June 13, 2022, sustaining certain claims.  ECF No. 97.  Specifically, the Court denied Defendants' motion to dismiss the following claims: (1) California Penal Code §496 for concealing and withholding stolen property as to the Contact Subclass; (2) common law conversion for exercising dominion and control over that stolen property as to the Contact Subclass; (3) claims under the California Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") as to the Nationwide Class; and (4) claims for declaratory judgment as to the Nationwide class.  *Id.* Following a ruling from the Supreme Court of California on an issue relevant to this Action, Class Counsel sought leave to file a motion for reconsideration and briefed and presented argument on a novel legal issue relating to California Penal Code §496.  *See* ECF Nos. 134, 167, and 232.  Class Counsel demonstrated creativity, determination, and expertise against a resolute defense at every stage of this Action.

**C.     Discovery Efforts on Behalf of the Class**

Discovery in this Action was contentious and lasted approximately three years.  Plaintiffs served multiple sets of Requests for Production of documents and structured data, totaling 30 requests, 11 interrogatories, and 52 requests for admission.  Defendants propounded separate sets of discovery on each named Plaintiff, and Plaintiffs thus responded in total to approximately 192

4

1    interrogatories and 152 document requests.  The Parties engaged in dozens of meet and confers

2    and exchanged frequent discovery correspondence.  Plaintiffs also served and negotiated a Rule

3    30(b)(6) notice, took depositions of ten Apple witnesses under Rule 30(b)(6), Rule 30(b)(1), or

4    both, and served and negotiated several third-party discovery requests, including FOIA requests

5    to various government agencies and subpoenas to Apple business partners known as integrators.

6          Motion practice relating to the Parties' discovery was hard fought (*see* ECF Nos. 138, 141,

7    144-45, 201) and included briefing and multiple rounds of oral argument before the Honorable

8    Virginia DeMarchi (*see, e.g.*, ECF Nos. 158, 213), one of which lasted appoximately two hours

9    and required the courtroom to be cleared so that Plaintiffs could seek to compel production of

10   several categories of confidential documents and structured electronic data.  Joint Decl., ¶17.

11   Apple ultimately produced, and Plaintiffs reviewed, hundreds of thousands of pages of documents

12   and several sets of structured electronic data.  *Id.*, ¶20.  Apple also served and supplemented useful

13   substantive responses to several of Plaintiffs' interrogatories.  *Id.*  As fact discovery came to a

14   close, at the Court's direction, Plaintiffs successfully negotiated with Apple a stipulation and

15   proposed order deferring certain categories of information until after a ruling on class certification.

16   ECF Nos. 204-05.  In sum, the discovery period in this case was lengthy, complex, and contentious,

17   but ultimately productive.

18         **D.      Motion for Class Certification**

19         Prior to mediation, Plaintiffs filed a Motion for Class Certification with extensive

20   supporting documentation.  ECF No. 237.  Moving for class certification was a significant

21   endeavor, which required consulting with and retaining two expert witnesses and preparation of a

22   coordinated, partially under-seal filing of the motion itself, two expert reports, and a compendium

23   of supporting evidence.  Preparation of the class certification papers required Class Counsel to

24   devote multiple attorneys virtually full time to this action in the weeks leading up to the deadline.

25   Once filed, Plaintiffs scheduled dates for the two experts' depositions and began preparing for

26   mediation.

27

28

1   **E.      Mediation and Settlement Administration Efforts on Behalf of the Class**

2          The Parties achieved Settlement despite opposite views on the merits.  On July 28, 2023,

3   the Parties attended a full-day, in-person mediation in California before Randall W. Wulff, of

4   Wulff Quinby Sochynsky.   Joint Decl., ¶23.   Prior to the mediation, the Parties prepared and

5   exchanged detailed written submissions regarding their positions.  Joint Decl., ¶24.  The session

6   ended with a Mediator's Proposal outlining the general terms of a settlement.  *Id.*  It then took

7   several months of negotiations to draft and reach agreement on a term sheet, followed by additional

8   months spent drafting and finalizing the long-form settlement agreement.  *Id.*, ¶25.  The Parties

9   also negotiated and agreed on a list of candidates for the role of settlement administrator, developed

10  a detailed request for proposals which outlined many details of the notice plan, and reviewed and

11  negotiated the resulting submissions before jointly selecting the administrator.   Ultimately, the

12  Parties completed their negotiations and execution of the long-form Settlement Agreement on

13  April 1, 2024.  *Id.*

14         On April 2, 2024, Plaintiffs filed a motion for preliminary approval of the Settlement

15  supported by declarations of counsel and the Settlement Administrator, KCC Class Action

16  Services LLC ("KCC").  ECF No. 266.  On May 16, 2024, the Court granted preliminary approval

17  of the Settlement, provisionally certified the Settlement Class, and approved the Notice Plan.  ECF

18  No. 269.  The Court established July 15, 2024, as the beginning of the notice period and October

19  15, 2024, as the deadline for objections to the Settlement.  *Id.*

20         Following preliminary approval, KCC began to implement the Settlement notice program.

21  *See, e.g.*, www.giftcardscamsettlement.com.  Class Counsel has been monitoring weekly activity

22  reports and communicating with KCC concerning class member inquiries, technical updates, the

23  functionality of the toll-free support lines, and data on submitted claims.  Class Counsel expects

24  that this process will continue as the administration progresses and until disbursement of

25  Settlement funds is complete.  Joint Decl., ¶31.

26  **III.    THE ATTORNEYS' FEE REQUEST SHOULD BE APPROVED**

27      **A.      Legal Standards Governing the Award of Attorneys' Fees**

28         The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a

                                            6

common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see also, e.g.*, *Harrison v. Bank of Am. Corp.,* No. 19 Civ. 0316, 2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021) ("When counsel recovers a common fund that confers a 'substantial benefit' on a class of beneficiaries, counsel is 'entitled to recover their attorney's fees from the fund.'") (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)); *see also Williamson v. Microsemi Corp.*, No. 14 Civ. 01827-LHK, 2015 WL 13650045, at *1 (N.D. Cal. Feb. 19, 2015) ("When counsel's efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole.").   If the Settlement is approved, Settlement Class Members will receive distributions from the non-reversionary Settlement Fund of $35 million generated by the efforts of Class Counsel.   Paying reasonable attorneys' fees of just under one-third of the Settlement Fund compensates Class Counsel for bringing and prosecuting the action.   Moreover, as discussed below, an attorneys' fee of approximately one-third of the Settlement Fund would result in a negative multiplier on Class Counsel's lodestar, which further demonstrates that the rquest is fair and reasonable.

Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable.   The percentage-of-the-fund method is commonly applied to common fund settlements.   *See  In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) ("[b]ecause the benefit to the class is easily quantified in  common-fund settlements, . . . courts [may] award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *see also Thomas v. MagnaChip Semiconductor Corp.*, No. 14 Civ. 1160, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018).   This method allows courts to focus on the benefits conferred to the class and the results of the efforts of counsel in creating the fund.   *See In re Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 1891, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a

1   class was created through the efforts of plaintiffs' counsel.").  When using the percentage method,

2   courts are also encouraged to conduct a cross-check under the lodestar method to "guard against

3   an unreasonable result." *Bluetooth Headset*, 654 F.3d at 944; *see also Vizcaino v. Microsoft Corp.*,

4   290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers'

5   investment of time in the litigation, provides a check on the reasonableness of the percentage

6   award.").

7        "A district court may depart from the [25%] benchmark" for attorneys' fees calculations

8   in the Ninth Circuit if it is "'made clear by the district court how it arrives at the figure ultimately

9   awarded.'" *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000).[3]  The percentage awarded

10  varies depending on the facts of the case, and "in most common fund cases, the award exceeds [the

11  25%] benchmark." *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520, 2009 WL 248367, at *6

12  (N.D. Cal. Feb. 2, 2009).

13       Courts consider six factors when determining whether a departure from the benchmark is

14  appropriate, including: (1) the extent to which class counsel achieved exceptional results for the

15  class; (2) whether the case was risky for class counsel; (3) whether counsel's performance

16  generated benefits beyond the cash Settlement Fund; (4) the market rate for the particular field of

17  law; (5) the burdens class counsel experienced while litigating the case; and (6) whether the case

18  was handled on a contingency basis.  *Vizcaino*, 290 F.3d at 1048-50; *see also Martin v. Marriott*

19  *Int'l, Inc.*, No. 18 Civ. 0494, 2021 WL 4888973, at *6 (D. Haw. Oct. 19, 2021).  These factors

20  support the requested fee.  As discussed herein and in the Joint Declaration, an award of just under

21  one-third of the Settlement Fund is warranted because, among other things, counsel achieved an

22  extraordinary result – the potential for Settlement Class Members to recover 100% of their losses

23  – all in an action that presented an outsized risk of nonpayment due to the novelty of the legal and

24  factual theories.

25

26

27

28

---

[3]        Unless otherwise indicated, citations are omitted and emphasis is added.

### B.   A Fee Award of Approximately One-Third of the Settlement Fund Is Appropriate

Class Counsel achieved an exceptional result for the Class in a trailblazing action that presented a significant risk of nonpayment due to the novelty of the legal and factual theories. Class Counsel's request for an award of $11.65 million, or approximately one-third of the common fund, "is within the 'usual range'" of fee awards that Ninth Circuit courts award in common fund cases, and it is reasonable under the factors that courts in this Circuit apply to evaluate a fee award. *Munoz v. Big Bus Tours Ltd.*, No. 18 Civ. 05761, 2020 WL 13533045, at *4 (N.D. Cal. Feb. 12, 2020) (citing *Vizcaino*, 290 F.3d at 1047).   In support of the upward adjustment from the benchmark, Class Counsel presents a table of cases in which fee awards of one-third were ordered. *See* Appendix A attached hereto.

### 1.   Class Counsel Achieved an Exceptional Result for the Class

The result achieved is the most important factor to be considered in awarding attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."); *see also* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, §21.71, at 336 (4th ed. 2004) ("[T]he fundamental focus is the result actually achieved for class members.") (citing Fed. R. Civ. P. 23(h) committee note).

Class Counsel achieved a superior result for the Class.   Plaintiffs' objective in filing the lawsuit was to remedy the alleged conduct of refusing to refund victims of false pretense gift card scams – and that is the precise result obtained through this Settlement.   Class Counsel undertook this case despite greater-than-ordinary risks and demonstrated their commitment to the Class through the advancement of substantial out-of-pocket costs and investment of attorney and staff resources that were commensurate to the challenge of litigating against sophisticated Defendants with virtually unlimited resources.   Class Counsel negotiated a Settlement which is likely to provide all Settlement Class Members who submit valid claims with a cash recovery of 100% of their losses.   Joint Decl., ¶32.   Indeed, the Settlement Fund is equal to approximately 21% of the

estimated total actual losses of the Settlement Class, and given anticipated claim rates, victims who file a valid claim will likely recover their full losses.  Joint Decl., ¶26.  Courts in this Circuit and elsewhere have found that settlements achieving a recovery of 20% of damages or less constitute an exceptional result warranting an upward departure from the 25% benchmark.  *See In re Anthem, Inc. Data Breach Litig.*, Master File No. 15-md-02617, 2018 WL 3960068, at *9-10 (N.D. Cal. Aug. 8, 2018) (holding that a 14.5% recovery justified a greater than benchmark percentage fee of 27%); *In re General Instr. Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (one-third fee awarded from $48 million settlement fund that was 11% of the plaintiffs' estimated damages); *In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (one-third fee awarded from settlement fund that comprised about 15% of damages); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 148 (E.D. Pa. 2000) (one-third awarded in fees from settlement of class consisting of defrauded vocational students that was 17% of the tuition the class members paid).

Here, the Settlement provides an exceptional recovery for novel claims for purchasers of Apple App Store and iTunes gift cards that were victims of gift card scams.  The Settlement Fund ensures that all Settlement Class Members who submit valid claims will receive a cash recovery, and is large enough that they are likely to recover 100% of their losses.  In cases where losses often total hundreds, thousands, or even tens of thousands of dollars, such a recovery is an exceptional result that warrants an upward departure from the 25% benchmark.

To the extent any settlement funds remain unclaimed, as described in Plaintiffs' Motion for Preliminary Approval (ECF No. 266), and summarized below, the *cy pres* award of those funds will ensure that the Settlement Fund will not revert back to Defendants.  *Cy pres* distribution in large class actions is not uncommon.  *See, e.g.*, *In re Google Inc. Street View Electronic Communications Litig.*, 21 F.4th 1102, 1109 (9th Cir. 2021) (affirming final approval of $13 million settlement distributed entirely as *cy pres*); *Lane v. Facebook*, 696 F.3d 811, 819-20 (9th Cir. 2012) (affirming $9.5 million settlement distributed as *cy pres* in case with statutory damages available); *In re Netflix Privacy Litig.*, No. 11 Civ. 0379, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement distributed as *cy pres*); *In re Google Buzz Privacy*

10

1   *Litig.*, No. 10 Civ. 672-JW, 2011 WL 7460099, at *4 (N.D. Cal. June 2, 2011) (approving

2   settlement creating $8.5 million *cy pres* fund).  If the Settlement is approved, any unclaimed funds

3   remaining in the $35 million Settlement Fund, after payment of Court-awarded notice and

4   Settlement administration costs, attorneys' fees and expenses, service awards, and Settlement

5   Class Member claims, will be distributed to organizations approved by the Court.

**2.     Class Counsel Undertook Substantial Risk in this Litigation**

7        The risk associated with litigation is an important factor in determining whether a requested

8   fee award is reasonable.  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance"

9   when applying the percentage of the fund method); *see also Google Location History,* 2024 WL

10  1975462, at *14.  Uncertainty that any recovery will ultimately be obtained is highly relevant in

11  determining risk.  *Id.*; *see also Ladore v. Ecolab, Inc.*, No. 11 Civ. 9386, 2013 WL 12246339, at

12  *11 (C.D. Cal. Nov. 12, 2013) ("The risks assumed by [c]lass [c]ounsel, particularly the risk of

13  non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee

14  award.").  This includes the risk of advancing costs, as well as the contingent nature of the work

15  performed.  *Id.*

16       Although Plaintiffs believe their case is strong, from the time of filing there has been a

17  great deal of uncertainty as to whether the Court would grant certification, deny a motion for

18  summary judgment, and accept Plaintiffs' damages models.  The theory of the case here is unique.

19  Class Counsel are not aware of any similar class action litigation asserting comparable claims that

20  has survived a motion to dismiss or settled.  As such, Class Counsel knew at the outset that they

21  would have to present novel factual and legal theories to achieve success.  Liability issues were

22  likely from the start to boil down to hotly contested facts and an inherently unpredictable battle of

23  the experts and expenses would be substantial.  Given the inherent risks that existed from the outset

24  and the likelihood of protracted litigation, engendering enormous time and monetary expenditure,

25  an upward adjustment from the benchmark is warranted here.

26       The risk of little or no recovery weighs in favor of the requested fee award.  Courts in the

27  Ninth Circuit have concluded there are considerable risks related to obtaining class certification,

28  surviving summary judgment, prevailing at trial, and withstanding a potential appeal.  *Bower v.*

1   *Cycle Gear, Inc.*, No. 14 Civ. 02712, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016); *see also*

2   *Destefano v. Zynga, Inc.*, Case No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb.

3   11, 2016) (noting the "substantial" risk associated with "obtaining [and maintaining] class

4   certification"); *Roberti v. OSI Systems, Inc.*, No. 13 Civ. 09174, 2015 WL 8329916, at *6 (C.D.

5   Cal. Dec. 8, 2015) (the defendant's "vigorous opposition" represented a "substantial" risk

6   weighing in favor of the requested attorney's fees).

7           **3.**      **The Settlement Required Expertise and Exemplary Performance**

8          Class Counsel's expertise and the exemplary performance they brought to bear in this case

9   also favor granting the requested fee award.  Class Counsel have decades of relevant expertise in

10  high-profile consumer and financial class actions.  *See, e.g.*, Joint Decl., ¶¶42-49 (describing

11  consumer class action cases).  Class Counsel's expertise in consumer class actions was critical to

12  the prosecution of this Action.   Class Counsel's expertise in class action litigation also resulted

13  in timely identification and retention of the types of experts necessary to support a class

14  certification filing.

15         The quality of Class Counsel's representation is reflected in the work they performed

16  throughout the case and, ultimately, in the favorable Settlement for Plaintiffs and the Class.  *See*

17  *generally* Joint Decl.  "The 'prosecution and management of a complex national class action

18  requires unique legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047; *see also Wallace*

19  *v. Countrywide Home Loans, Inc.*, No. 08 Civ. 1463, 2015 WL 13284517, at *9 (C.D. Cal. Apr.

20  17, 2015) (noting customary factors reflecting counsel's skill such as developing the facts and

21  legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and

22  negotiating and drafting the settlement).

23         As discussed above, the Settlement was difficult to achieve.  Over the course of three years,

24  Class Counsel prosecuted the Class's claims against a resolute defense and aggressively pursued

25  discovery, reviewing and analyzing hundreds of thousands of internal documents from Apple.

26  Joint Decl., ¶¶15-20.  These efforts put Class Counsel in the best possible position to negotiate a

27  favorable resolution for the Class.  *See generally id.*; *see also Barbosa v. Cargill Meat Solutions*

28  *Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel used their "specialized skill" in the

12

particular area of law which represented an asset to class members and weighed in favor of the fee request); *Omnivision*, 559 F. Supp. 2d at 1047 (explaining that the fact that plaintiffs' case withstood a motion to dismiss, "despite other weaknesses, is some testament to Lead Counsel's skill" and that "[t]his factor also supports the requested fee"); *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (finding fact investigation, detailed complaints, extensive motion practice, and review of numerous documents demonstrated class counsel's legal skills); *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (noting favorable result given that the case had "been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel").

The quality of opposing counsel also should be considered when evaluating Class Counsel's performance.  *See In re American Apparel, Inc. S'holder Litig.*, No. 10 Civ. 6352, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)).  Apple, a defendant with virtually unlimited resources, was represented in this case by two renowned national law firms; first by Jenner & Block LLP, and then by Weil, Gotshal & Manges LLP.  Each firm is highly respected and known for exemplary litigation skills, significant resources, and extensive experience defending consumer class actions.  Clearly, this factor weighs in favor of the requested fee award.  *See Heritage Bond*, 2005 WL 1594403, at *20 ("[P]laintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.").

### 4.    The Requested Fee Is Consistent with Those Awarded in Similar Cases

Fee awards in class actions with contingency risks such as this one routinely reflect multipliers of counsel's lodestar to account for the possibility of non-payment.  *See Rihn v. Acadia Pharms. Inc.*, No. 15 Civ. 0575, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'"

1   because, in doing so, it provides a "'financial incentive to accept contingent-fee cases which may

2   produce nothing.'"); *see also Hopkins v. Stryker Sales Corp*., No. 11 Civ. 2786, 2013 WL 496358,

3   at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in

4   complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. 10 Civ. 0463, 2011

5   WL3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee representing 4.3 multiplier).  Here,

6   the negative multiplier supports the reasonableness of the under one-third fee.  *See In re Portal*

7   *Software, Inc. Sec. Litig*., No. 03 Civ. 5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007)

8   ("negative multiplier suggests that the percentage-based amount is reasonable and fair").

9          Courts have held that an upward adjustment from the benchmark to one-third of a common

10  fund is appropriate where the percentage of recovery for class members represented an exceptional

11  result.  *See In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO, 2018 WL 4620695, at *1

12  (N.D. Cal. Sept. 20, 2018) (awarding one-third of $105 million settlement under the percentage

13  method); *Waldbuesser v. Northrop Grumman Corp.*, No. 06 Civ. 6213, 2017 WL 9614818, at *2-

14  3 (C.D. Cal. Oct. 24, 2017) (awarding one-third fee where counsel recovered 40% of damages

15  under the percentage method and noting "the exceptional result achieved in this action justifies an

16  attorney fee award of one-third of the settlement fund").  Indeed, fee awards in common fund

17  settlements of comparable size regularly reach one-third of the settlement fund.  *See, e.g.*,

18  *Omnivision,* 559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%]

19  benchmark"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended*

20  (June 19, 2000) (affirming fee award of one-third of common fund); *Carlin v. DairyAmerica, Inc.,*

21  380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019), *appeal dismissed sub nom. Carlin v. Spooner,* 808 F.

22  App'x 571 (9th Cir. 2020) (awarding one-third of $40 million recovery, and citing cases in

23  support); *Lidoderm,* 2018 WL 4620695, at *1 (awarding one-third of $105 million settlement);

24  *Patel v. Trans Union, LLC,* No. 14 Civ. 0522, 2018 WL 1258194, at *12 (N.D. Cal. Mar. 11, 2018)

25  (awarding one-third of settlement fund); *Lusby v. GameStop Inc.,* No. 12 Civ. 3783, 2015 WL

26  1501095, at *9 (N.D. Cal. Mar. 31, 2015) (awarding one-third of common fund); *Smith v. CRST*

27  *Van Expedited, Inc.*, No. 10 Civ. 1116, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under

28  the percentage method, California has recognized that most fee awards based on either a lodestar

14

1  or percentage calculation are 33 percent") (citing *In re Consumer Privacy Cases,* 175 Cal. App.

2  4th 545, 556 n.13 (2009)).

3  **5.    The Burdens Class Counsel Experienced Favor the Requested Fee**

4  This factor considers burdens such as the cost of litigation, duration, and foregoing other

5  work.  *Vizcaino*, 290 F.3d at 1048-50.  Class Counsel incurred substantial costs in attorney time

6  and litigation expenses, as detailed in the Joint Decl., ¶¶54-55.  These costs include, but are not

7  limited to, the months of research prior to bringing the Action, actively litigating this action for

8  nearly three years – at times, requiring attorneys to work exclusively on the Action – billing

9  thousands of hours researching and drafting the legal claims, propounding and responding to

10  numerous sets of discovery, reviewing documents, briefing arguments, preparing for and taking

11  depositions, working with experts, and arguing before this Court.  *See id*.  The meet-and-confer

12  process during discovery took hundreds of hours of attorney time, as did the deposition process,

13  the class-certification process, and many other aspects of the case, with no guarantee that the time

14  or expenses would ever be recouped.  *See id*., ¶34.  At all times, Class Counsel had to forego

15  significant other work to ensure that proper resources could be dedicated to this Action.  Therefore,

16  this factor supports the reasonableness of Class Counsel's requested fee award.

17  **6.    The Case Was Handled on a Fully-Contingent Basis for Years**

18  The Ninth Circuit has long recognized that the public interest is served by rewarding

19  attorneys who assume representation on a contingent basis to compensate them for the risk that

20  they might be paid nothing at all for their work.  *In re Washington Public Power Supply Sys. Sec.*

21  *Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value

22  of the services if rendered on a non-contingent basis are accepted in the legal profession as a

23  legitimate way of assuring competent representation for plaintiffs who could not afford to pay on

24  an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward

25  successful class counsel in contingency cases "for taking the risk of nonpayment by paying them

26  a premium over their normal hourly rates").  "[W]hen counsel takes cases on a contingency fee

27  basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a

28  significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal.

15

1   2015).  "'This substantial outlay, when there is a risk that none of it will be recovered, further

2   supports the award of the requested fees.'" *In re Nexus 6P Products Liability Litig.*, No. 17 Civ.

3   02185, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (quoting *Omnivision*, 559 F. Supp.

4   2d at 1047).  "Courts have long recognized that the public interest is served by rewarding attorneys

5   who assume representation on a contingent basis with an enhanced fee to compensate them for the

6   risk that they might be paid nothing at all for their work."  *Ching v. Siemens Industry, Inc.*, No. 11

7   Civ. 04838, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014); *see also Washington Public*

8   *Power Supply Sys.*, 19 F.3d at 1299 ("It is an established practice in the private legal market to

9   reward attorneys for taking the risk of non-payment by paying them a premium over their normal

10  hourly rates for winning contingency cases.").  "A contingent fee must be higher than a fee for the

11  same legal services paid as they are performed.  The contingent fee compensates the lawyer not

12  only for the legal services he renders but for the loan of those services."  *Ladore*, 2013 WL

13  12246339, at *11.

14      Class Counsel undertook this action on an entirely contingent basis, assuming an outsized

15  risk that the litigation would yield little to no recovery and leave them uncompensated for their

16  time and substantial out-of-pocket expenses.  Joint Decl., ¶34.  Indeed, to date, Class Counsel have

17  received no compensation for their efforts or expenditures.  *Id.*  Accordingly, the fully contingent

18  nature of the representation here also strongly supports the requested fee.

19  **IV.    A LODESTAR CROSS-CHECK SUPPORTS THE FEE REQUEST**

20      Although not required, courts often perform a "cross-check" of the percentage fee award

21  against the applicable lodestar to confirm the reasonableness of the percentage award.  *See*

22  *Bluetooth Headset*, 654 F.3d at 944-45; *see also Martin*, 2021 WL 4888973, at *7 n.6 (noting that

23  where a cross check is used, the court need not "carefully scrutinize the nature of the tasks

24  completed and make any necessary deductions for non-compensable time" included in the

25  lodestar); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 07 Civ. 2245, 2010 WL

26  4156342, at *2 (S.D. Cal. Oct. 15, 2010) ("Courts have found that a lodestar analysis is not

27  necessary when the requested fee is within the accepted benchmark.").  When the lodestar is used

28  only as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the

1   lodestar, but on the broader question of whether the fee award appropriately reflects the degree of

2   time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp.

3   2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S'holder Litig.*, No. 10 Civ. 6352, 2014

4   WL 10212865, at *23 (C.D. Cal. July 28, 2014).   The lodestar cross check routinely confirms

5   multipliers of the lodestar because of the risk of losing, an ever-present risk of contingency

6   litigation.   *See Vizcaino*, 290 F.3d at 1051 (stating that "'courts have routinely enhanced the

7   lodestar to reflect the risk of non-payment in common fund cases'" and noting that "[t]his mirrors

8   the established practice in the private legal market of rewarding attorneys for taking the risk of

9   nonpayment by paying them a premium over their normal hourly rates for winning contingency

10  cases").

11      Here, even at historical rates, Class Counsel's requested fee already has a negative

12  multiplier of .99, and that multiplier will continue to go down as Class Counsel continues to

13  perform work in connection with obtaining final approval and administering the Settlement.   *See,*

14  *e.g.*, *Portal Software*, 2007 WL 4171201, at *16 ("negative multiplier suggests that the percentage-

15  based amount is reasonable and fair"); *Covillo v. Specialtys Cafe*, No. 11 Civ. 0594, 2014 WL

16  954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of

17  the lodestar, which means that the requested fee award results in a so-called negative multiplier,

18  suggesting that the percentage of the fund is reasonable and fair."); *Zyda v. Four Seasons Hotels*

19  *and Resorts*, No. 16 Civ. 0591, 2020 WL 9762910, at *3 (D. Haw. Apr. 1, 2020) ("***negative*** lode-

20  star [] further supports the reasonableness of attorneys' fees requested in this matter") (emphasis

21  in original).   As noted, significant additional work is anticipated in connection with final approval

22  and claims administration.

23      As of July 31, 2024, Class Counsel spent 16,622.5 hours litigating the Action, resulting in

24  a lodestar of $11,701,465 based on historical, standard hourly rates of counsel.   *See* Joint Decl.,

25  ¶38.   The hours billed in this matter were spent, *inter alia,* drafting pleadings and briefs, engaging

26  in party and third-party discovery, and negotiating the Settlement.   *See generally id.*   Class Counsel

27  billed at their standard hourly rates, which have been accepted by courts in this Circuit and

28  elsewhere.   *See Google Location History*, 2024 WL 1975462, at *15 (approving hourly rates from

$550 to $1,300 for partners, $420 to $710 for associates, and $535 for paralegals).  Class Counsel's rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation and have also been approved by courts in this District.  *See, e.g.*, *In re Vaxart, Inc. Securities Litig.*, No. 20 Civ. 59490, ECF No. 274 (N.D. Cal. Jan. 25, 2023) (approving fee award with Scott+Scott's rates ranging from $795 to $1,395 for partners or senior counsel, $595 to $750 for associates, and roughly $395 for paralegals); *Steamship Trade Ass'n of Balt. – Int'l Longshoremen's Ass'n Pension Fund v. Olo Inc.*, No. 1:22-cv-08228 (S.D.N.Y. June 11, 2024), ECF Nos. 123-2, 125-5 (approving fee award with Scott+Scott's rates ranging from $1,150 to $1,975 for partners or senior counsel, $525 to $675 for associates, and roughly $435 for paralegals); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018) (approving partner rates, including for Class Counsel, of $630 to $1,375, and associate rates of $325 to $625), *aff'd sub nom. Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019); *Nielsen v. Walt Disney Parks and Resorts U.S., Inc.*, No. 8:21-cv-02055, ECF Nos. 93-2 and 102 (C.D. Cal. Mar. 4, 2024) (approving Cafferty Clobes' rates of $700 to $1,100 for partners, $525 to $550 for associates, and $375 for paralegals); *Budicak Inc. v. Lansing Trade Grp.*, LLC, No. 19-CV-02449, ECF Nos. 369 and 380, 2023 WL 7189144, at *2 (D. Kan. June 16, 2023) (approving Cafferty Clobes' rates of $900 to $1,100 for partners, $525 to $600 for associates, and $375 for paralegals).; *Tim Doyle v. Reata Pharmaceuticals, Inc.*, No. 4:21-cv-00987, ECF No. 84 (E.D. Tex. Mar. 29, 2024) (approving Kirby McInerney's rates of $900 to $1,250 for partners, $450 to $800 for associates, and $275 to $300 for paralegals); *Macovski v. Groupon, Inc.*, No. 1:20-cv-02581, ECF No. 129 (N.D. Ill. Oct. 28, 2022) (approving Kirby McInerney rates of $800 to $995 for partners, $350 to $525 for associates, and $275 to $300 for paralegals); *In re Libor-Based Financial Instruments Antitrust Litigation*, Master File No. 11-md-2262, ECF No. 899 (S.D.N.Y. Sept. 5, 2024) (approving Kirby McInerney rates of $900 to $1,250 for partners, $400 to $800 for associates, and $275 to $300 for paralegals).  The lodestar crosscheck weighs strongly in favor of the reasonableness of the requested fee award.

Pursuant to the Court's initial appointment order, Class Counsel maintained contemporaneous time records and provided monthly reporting of their time that was audited and

1   reviewed on a regular basis, and also performed an additional audit and review in advance of

2   bringing this motion.   Joint Decl., ¶39.   As summarized in Section II *infra*, Class Counsel

3   performed a significant amount of work in this Action – all of which is reflected in their monthly

4   time reports.   *See generally* Joint Decl.  .  In total, Class Counsel collectively report approximately

5   16,622.5 hours on this matter through July 31, 2024.   *Id.*, ¶38.   Class Counsel divided tasks to

6   avoid overlap and unnecessary duplication of efforts.   *Id.*, ¶39.   Class Counsel continue to devote

7   substantial time and resources to this action daily by overseeing the Settlement administration

8   process and will continue to do so until the conclusion of the Settlement's disbursement process,

9   which may take many months depending on the *cy pres* process.   Joint Decl., ¶41

10      Time spent by attorneys and paralegals who worked fewer than 10 hours on the case has

11   been omitted from the lodestar calculation.   Joint Decl., ¶40.   Moreover, the time set forth in the

12   Declarations of Scott+Scott, Cafferty Clobes, and Kirby McInerney, does not include the hundreds

13   of hours Class Counsel will spend briefing final approval of the Settlement, communicating with

14   Class members, preparing for and attending the Final Approval hearing on December 12, 2024,

15   and administering the Settlement, assuming it is approved by the Court.   *Id.*

16      All of the totals discussed above are based on Class Counsel's historical billing rates, *i.e.*,

17   the rates in effect at the time the work was performed.   Because Class Counsel will have been

18   litigating this case for more than four years by the time they can recover any compensation for

19   their work and expenses, the Court can cross-check the requested fee utilizing a lodestar based on

20   counsel's **current** hourly rates.   *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919–20

21   (N.D. Cal. 2005) ("For hourly rates, the court will simply use current [] hourly rates; doing so

22   simplifies the calculation and accounts for the time value of money in that lead counsel has not

23   been paid contemporaneously with their work in this case.").   If Class Counsel's current hourly

24   rates were applied to all of the time they have already spent litigating this Action, then their total

25   lodestar would be significantly higher, leading to a larger negative multiplier.   Just as in the case

26   with Class Counsel's historical rates, the negative multiplier applied to any fee award will continue

27   to go down as Class Counsel continues to work on the case to obtain final approval and administer

28   the Settlement.   These facts further support the manifest reasonableness of the fee requested here.

1    **V.      THE REQUESTED LITIGATION EXPENSES ARE REASONABLE**

2            Attorneys who create a common fund or benefit for a class are entitled to be reimbursed

3    for their out-of-pocket expenses incurred in creating the fund or benefit, so long as the submitted

4    expenses are reasonable, necessary, and directly related to the prosecution of the action.

5    *OmnvVision Techs*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses

6    that would typically be billed to paying clients in non-contingency matters.").  Class Counsel have

7    incurred $546,657.27 in unreimbursed litigation expenses, including costs advanced in connection

8    with expert fees, legal research, court reporting services, mediation fees, fees for document review

9    and hosting, and other customary litigation expenses.[4]  Joint Decl., ¶54.  *See also* Indiv. Decls.,

10   Exs 2 and 3.  These expenses were recorded contemporaneously by the respective firms and

11   represent an accurate record of costs and expenses incurred in connection with the prosecution of

12   this Action.  Joint Decl., ¶55.  The unreimbursed expenses were advanced by Class Counsel on a

13   fully-contingent basis, including, but not limited to, their respective contributions to the litigation

14   fund used to finance the prosecution of this Action.  Joint Decl., ¶56.

15           The expenses for which Class Counsel seek reimbursement were reasonably necessary for

16   the prosecution and resolution of this litigation and were incurred by Class Counsel for the benefit

17   of the Class.  Courts frequently find such expenses recoverable.  *See, e.g.*, *In re LendingClub Sec.*

18   *Litig.,* No. 16 Civ. 2627, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as

19   expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying

20   expenses were reasonable and recoverable); *Thomas*, 2018 WL 2234598, at *4 (granting requests

21   for costs consisting of "court fees, online research fees, postage and copying, travel costs,

22   electronic discovery expenses, deposition costs, mediation charges, and travel costs").

23   Accordingly, the Court should approve Class Counsel's request for reimbursement of reasonable

24   litigation expenses.

25

26   _____

[4]          This amount will be updated at or shortly before the final approval hearing to reflect

27   expenses incurred after July 31, 2024.

28

20

1

## VI.  THE SERVICE AWARDS ARE WARRANTED

2      "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

3 are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

4 2003).   To evaluate the reasonableness of a requested payment, courts should consider "'the

5 actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

6 benefitted from those actions, [and] the amount of time and effort the plaintiff expended in

7 pursuing the litigation . . . .'" *Id.*  "[Incentive] awards are discretionary . . . and are intended to

8 compensate class representatives for work done on behalf of the class, to make up for financial or

9 reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

10 to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir.

11 2009).

12      Plaintiffs seek Service Awards of $10,000 each in compensation for their involvement in

13 this Litigation over three years and their service on behalf of other Class Members.  Plaintiffs

14 provided tremendous assistance in the prosecution of the litigation, expending numerous hours

15 reviewing drafts of pleadings and discovery responses, participating in telephone calls with Class

16 Counsel, retrieving documents to produce during discovery, responding to several discovery

17 requests from Defendants, preparing for and appearing for their depositions, and reviewing and

18 approving the Settlement.  Joint Decl., ¶57.  The requested Service Awards will have minimal

19 impact on the amount of settlement funds available to Settlement Class Members.  If the Court

20 approves them, the total Service Awards will be $40,000 which is 0.11% of the Settlement Fund,

21 a ratio that falls well below the range of what has been deemed to be reasonable.  *See, e.g.*, *In re*

22 *Online DVD-Rental Antitrust Litigation,* 779 F.3d 934, 948 (9th Cir. 2015) (finding incentive

23 awards which made up "a mere .17% of the total settlement fund of $27,250,000" reasonable and

24 far less than the Ninth Circuit's award of 6% in *Staton,* 327 F.3d at 948-49, 976-77).

25      Awards of this size are routinely awarded to class representatives in this District and

26 elsewhere.  *See Barrett, et al. v. Apple Inc., et al.*, No. 20 Civ. 4812-EJD, Preliminary Approval

27 Hearing at 11:12-14 (opining that the service awards of $10,000 requested per named plaintiff "is

28 within the ballpark and range of N.D. Cal."); *Nelson v. Avon Products, Inc.*, No. 13 Civ. 2276,

21

1  2017 WL 733145, at *6-7 (N.D. Cal. Feb. 24, 2017) (finding $10,000 service award appropriate

2  where plaintiff, *inter alia,* sat for deposition, searched for relevant documentation, and reviewed

3  documents and settlement papers); *Moore v. PetSmart, Inc.*, No. 12 Civ. 3577-EJD, 2015 WL

4  5439000, at *13 (N.D. Cal. Aug. 4, 2015) (awarding $10,000 service awards to named plaintiffs

5  who actively participated in litigation).  Therefore, the requested Service Awards are reasonable.

6  **VII.     CONCLUSION**

7          For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court:

8  (1) approve the request for an award of attorneys' fees of $11.65 million, or just under one-third

9  of the Settlement Fund; (2) approve reimbursement of litigation expenses in the amount of

10  $546,657.27; and (3) approve Service Awards in the amount of $10,000 to each of the four named

11  Plaintiffs.

12  Dated: September 10, 2024                    Respectfully submitted

13                                               **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

14                                               s/ *Joseph P. Guglielmo*
                                                 _____
15                                               Joseph P. Guglielmo (*pro hac vice*)
                                                 Amanda M. Rolon (*pro hac vice*)
16                                               The Helmsley Building
                                                 230 Park Ave., 24th Floor
17                                               New York, NY 10169
                                                 Telephone: 212-223-6444
18                                               jguglielmo@scott-scott.com
                                                 arolon@scott-scott.com
19

20                                               **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                                 Hal D. Cunningham (CA Bar No. 243048)
21                                               600 W. Broadway, Suite 3300
                                                 San Diego, CA 92101
22                                               Telephone: 619-233-4565
                                                 hcunningham@scott-scott.com
23

24                                               **CAFFERTY CLOBES MERIWETHER
                                                 & SPRENGEL LLP**
25

26                                               s/ *Nyran R. Rasche*
                                                 _____
27

28

Nyran Rose Rasche (*pro hac vice*)
Nickolas J. Hagman (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

**KIRBY McINERNEY LLP**

s/ *Anthony F. Fata*
Anthony F. Fata (*pro hac vice*)
Sarah E. Flohr (*pro hac vice*)
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Telephone: 312-767-5180
afata@kmllp.com
sflohr@kmllp.com

*Attorneys for Plaintiffs and the Class*

23

# APPENDIX A

**<u>Attorneys' Fees Awards of One-Third in Comparable Cases</u>**

| Case Caption | Amount of Settlement | Amount of Fees Awarded |
|---|---|---|
| *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) | $105 million | $34.9 million |
| *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, 2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) | $25 million | $8.3 million |
| *Patel v. Trans Union, LLC*, No. 3:14-cv-00522, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) | $8 million | $2.6 million |
| *Lusby v. GameStop Inc.*, No. 12-cv-3783-HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) | $750,000 | $250,000 |
| *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-0430 380 F. Supp. 3d 998 (E.D. Cal. May 8, 2019), *appeal dismissed sub nom. Carlin v. Spooner*, 808 F. App'x 571 (9th Cir. 2020) | $40 million | $13.3 million |
| *Waldbuesser v. Northrop Grumman Corp.*, No. 2:06-cv-6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) | $16.7 million | $5.5 million |
| *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018) | $1.51 billion | $503.3 million |
| *In re Urethane Antitrust Litig.*, No. 04-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) | $835 million | $278 million |
| *Klein v. Bain Cap. Partners, LLC*, No. 07-cv-12388, ECF No. 1095 (D. Mass. Feb. 2, 2015) | $590.5 million | $200 million |
| *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) | $586 million | $170 million |
| *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839 (D.D.C. July 16, 2001) | $365 million | $123 million |
| *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 545 F. Supp. 3d 922 (D. Kan. 2021) | $345 million | $115 million |

| Case Caption | Amount of Settlement | Amount of Fees Awarded |
|---|---|---|
| *In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705 (E.D. Tenn. 2011) | $303.6 million | $101 million |
| *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-1894, 2014 WL 12862264 (D. Conn. Dec. 9, 2014) | $297 million | $99 million |
| *Osberg v. Foot Locker, Inc.*, No. 07-cv-1358, ECF No. 424 (S.D.N.Y. June 8, 2018) | $290 million | $95 million |
| *In re EpiPen Marketing, Sales Practices and Antitrust Litig.*, No. 17-md-2785, 2022 WL 2663873 (D. Kan. July 11, 2022) | $264 million | $88 million |
| *Hale v. State Farm Mut. Auto Ins. Co.,* No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) | $250 million | $83.3 million |
| *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-340, 2009 WL 10744518 (D. Del. Apr. 23, 2009) | $250 million | $83.3 million |
| *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, No. 13 Civ. 00454, 2020 WL 3163004 (S.D. Ill. Apr. 27, 2020) | $220 million | 73.3 million |
| *DeLoach v. Philip Morris Cos.*, 01-cv-01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) | $211.8 million | $70.8 million |
| *In re Neurontin Antitrust Litig.*, 02-cv-1830, 2014 WL 12962880 (D.N.J. Aug. 6, 2014) | $191 million | $63.5 million |
| *In re Relafen Antitrust Litig.*, No. 01-12239, 2004 WL 1068853 (D. Mass. Apr. 9, 2004) | $175 million | $58.3 million |
| *Pearlstein v. BlackBerry Ltd.*, 13-civ-1760, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) | $165 million | $55 million |
| *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318, 2013 WL 6577029 (D. Md. Dec. 13, 2013) | $163.5 million | $54.5 million |
| *Standard Iron Works v. ArcelorMittal*, No. 1:08-cv-05214, 2014 WL 7781572 (N.D. Ill. Oct. 2, 2014) | $163.9 million | $54 million |
| *In re Se. Milk Antitrust Litig.,* 2:08-md-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) | $158.6 million | $52.9 million |
| *In re Flonase Antitrust Litig.* 951 F. Supp. 2d 739 (E.D. Pa. 2013) | $150 million | $50 million |

| Case Caption | Amount of Settlement | Amount of Fees Awarded |
|---|---|---|
| *Haddock v. Nationwide Life Ins. Co.*, 3:01-cv-1552, 2015 WL 13942222 (D. Conn. Apr. 9, 2015) | $140 million | $49 million |
| *In re Apollo Grp. Inc. Sec. Litig.*, CV-04-2417, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) | $145 million | $48.4 million |
| *Hosp. Auth. of Metro. Gov. of Nashville & Davidson Cnty., Tennessee v. Momenta Pharm. Inc.*, No. 3:15-cv-01100, 2020 WL 3053468 (M.D. Tenn. May 29, 2020) | $120 million | $40 million |
| *Loestrin 24 FE Antitrust Litig.*, MDL No. 2472, 2020 WL 4035125 (D.R.I. July 17, 2020) | $116 million | $38.6 million |
| *In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463, 2021 WL 9494033 (E.D. Va. Aug. 10, 2021) | $102.7 million | $34.2 million |
| *Cabot E. Broward 2 LLC v. Cabot*, 16-cv-61218, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) | $100 million | $33.3 million |
| *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) | $100 million | $33.3 million |
| *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) | $105 million | $32.1 million |
| *Grae v. Corr. Corp. of America*, No. 16 Civ. 2267, 2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) | $56 million | $18.6 million |
| *Jackson County Emps.' Ret. Sys. v. Ghosn*, No. 18 Civ. 1368, ECF No. 267 (M.D. Tenn. Oct. 7, 2022) | $36 million | $12 million |
| *In re SandRidge Energy, Inc. Sec. Litig.*, No. 12 Civ. 1341, ECF No. 592 (W.D. Okla. Dec. 30, 2022) | $21.8 million | $7.2 million |
| *NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*, No. 16 Civ. 1756, 2021 WL 11910935 (D. Or. May 7, 2021) | $21 million | $7 million |
| *Indiana State District Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, No. 06 Civ. 26, ECF No. 332 (E.D. Ky. June 27, 2019) | $20 million | $6.6 million |

3

| Case Caption | Amount of Settlement | Amount of Fees Awarded |
|---|---|---|
| *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714, 2020 WL 3162980 (S.D.N.Y. June 11, 2020) | $18.5 million | $6.1 million |
| *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, No. 18 Civ. 299, 2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022) | $18 million | $6 million |
| *Dahhan v. OvaScience, Inc.*, No. 17 Civ. 10511, ECF No. 210 (D. Mass. Dec. 20, 2022) | $15 million | $5 million |
| *Gordon v. Vanda Pharm., Inc.*, No. 19 Civ. 1108, ECF No. 112 (E.D.N.Y. Jan. 11, 2023) | $11.5 million | $3.8 million |
| *Erlandson v. Triterras, Inc.,* No. 20 Civ. 10795, ECF No. 82 (S.D.N.Y. Sept. 8, 2022) | $9 million | $3 million |
| *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, ECF No. 90 (S.D.N.Y. Nov. 30, 2021) | $7.5 million | $2.5 million |
| *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) | $6 million cash & $1.3 million loan forgiveness | $2.4 million |
| *Oklahoma Police Pension Fund and Ret. Sys. v. Teligent, Inc.*, No. 19 Civ. 3354, 2021 WL 5630806 (S.D.N.Y. Dec. 1, 2021) | $2 million | $666,600 |
| *In re Micro Focus Int'l plc Sec. Litig.,* No. 18 Civ. 01549 (San Mateo Cty. Super Ct. July 27, 2023) | $107.5 million | $35.8 million |
| *In re Eventbrite, Inc. Shareholder Litig.*, No. 19-cv- 2798 (San Mateo Cty. Super. Ct. June 10, 2022) | $19.25 million | $6.4 million |
| *Eaton v. Halifax PLC,* No. MON-L-2365-03 (N.J. Super. Ct. Law Div. May 26, 2011) | $8.6 million | $2.9 million |
| *Plymouth Cnty. Contributory Ret. Sys. v. Adamas Pharm., Inc.*, No. RG19018715, 2021 WL 9626239 (Alameda Cty. Super. Ct. | $7.5 million | $2.4 million |