1  DAVID R. SINGH (Bar No. 300840)
   david.singh@weil.com
2  MORGAN D. MACBRIDE (Bar No. 301248)
   morgan.macbride@weil.com
3  AMY LE (Bar No. 341925)
   amy.le@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway, 4th Floor
5  Redwood Shores, CA 94065-1134
   Telephone: (650) 802-3000
6  Facsimile: (650) 802-3100
7
8  Attorneys for Defendants Apple Inc. and Apple
   Value Services LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL BARRETT, et al.,<br><br>    Plaintiffs,<br>v.<br><br>APPLE INC., et al.,<br><br>    Defendants. | Case No. 5:20-cv-04812-EJD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD (ECF NO. 273)**<br><br>Date:  December 12, 2024<br>Time:  9:00 a.m.<br>Dept.:  Courtroom 4 – 5th Floor<br>Judge:  Honorable Edward J. Davila |

## I. INTRODUCTION

After years of litigation, the Parties were able to reach a hard-fought compromise reflecting a fair outcome for the class. While Apple does not dispute that Class Counsel should be compensated for their work on behalf of the class, it respectfully submits that Class Counsel should be paid at the 25% benchmark the Ninth Circuit has recognized as fair, rather than the exceptional 33.28% Class Counsel seeks.[1] Indeed, none of the factors courts consider in determining whether to deviate from the Ninth Circuit's benchmark are present. This case involved a fair but unexceptional recovery for the class; no benefits for the class beyond the cash settlement fund; no unusual risks or financial burdens beyond those that are typical in class actions undertaken on a contingency basis; and a scope that significantly narrowed at both the motion to dismiss and class certification stages. As such, Class Counsel have not demonstrated that this is such an exceptional case that this Court should deviate from what is generally considered fair. Apple thus requests that Class Counsel be compensated at the standard 25% rate endorsed by the Ninth Circuit, and that the 8% class counsel seeks above that benchmark be used to compensate the class rather than their attorneys.

Further, while Apple agrees that valid plaintiffs should be incentivized to participate in the class action process, two of the named plaintiffs here are outliers whose litigation conduct did not benefit the class. Class Counsel seeks incentive awards of $10,000 each for four named plaintiffs: Plaintiffs Michel Polston, Nancy Martin, Andrew Hagene, and Maria Rodriguez. But Plaintiffs Polston and Martin did not protect the interests of the class. Instead, they actively harmed those interests by misrepresenting the scam incidents they were purportedly subject to and their status as class members.[2] This Court should not reward such behavior.

For the reasons discussed below, the Court should limit the award of attorneys' fees to $8.75 million (*i.e.*, 25% of the Settlement Amount) and reduce the service award to Plaintiffs Polston and

---

[1] Plaintiffs agreed that Apple has a contractual right to object to the amount of attorneys' fees sought. *See* ECF No. 266-2 at 15 ("Defendants reserve the right to object to or oppose Class Counsel's requests for fees, costs, and expenses.").

[2] Class Counsel appear to agree that Plaintiffs Polston find Martin did not benefit the class, as they did not offer either as a class representative. ECF No. 238 at 8-9 (proposing only Plaintiffs Andrew Hagene, Michael Rodriguez, and Maria Rodriguez as class representatives).

1  Martin to at most a nominal amount, such as $250. In the alternative, given Class Counsel's failure to
2  provide sufficient documentation of their attorneys' fees, the Court should require Class Counsel to
3  provide additional information regarding their billing records and allow the Parties—and any
4  objectors—supplemental briefing afterwards.

5  **II.     ARGUMENT**

6      **A.     Class Counsel's Attorneys' Fees Should Not Exceed $8.75 Million (25% of the Settlement Amount)**
7
8          **1.     There Are No Special Circumstances to Justify Exceeding the Ninth Circuit's 25% Benchmark for Attorneys' Fees**

9      While attorneys should be compensated for their work, "courts have an independent obligation
10 to ensure that [any award of attorneys' fees], like the settlement itself, is reasonable." *In re Bluetooth*,
11 654 F.3d 935, 942 (9th Cir. 2011). This is especially important where, as here, attorneys' fees are
12 awarded from a common fund, since in such cases, "the relationship between plaintiffs and their
13 attorneys turns adversarial at the feesetting stage." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052
14 (9th Cir. 2002). Class Counsel acknowledges that "an award of 25% of a common fund is the benchmark
15 for attorneys' fee awards in this District." ECF No. 273 ("Motion") at 2. While courts have discretion
16 to adjust the benchmark either upward or downward, the Ninth Circuit requires "special circumstances"
17 to justify any upward deviation from this benchmark. *In re Bluetooth*, 654 F.3d 935, 942 (9th Cir. 2011);
18 *see Alexander v. FedEx Ground Package Sys.*, 2016 U.S. Dist. LEXIS 78087, *11 (N.D. Cal. June 15,
19 2016) (decreasing attorneys' fees request from 22% of the common fund to 16.4%). In determining
20 whether such special circumstances exist, courts consider: (1) whether counsel "achieved exceptional
21 results for the class;" (2) whether the case was "extremely risky for class counsel;" (3) whether "class
22 counsel's performance generated benefits beyond the cash settlement fund;" (4) the "market rate" for
23 similar cases; and (5) the "financial burden" to class counsel of litigating the case. *Vizcaino*, 290 F.3d
24 at 1048–50. Here, none of these factors justifies an upward deviation from the 25% benchmark.

25     <u>First</u>, while the settlement is a fair result reflecting hard-won compromise between the parties, it
26 is hardly an "exceptional" result for the class. Plaintiffs cite one case from this District and three cases
27 from the Eastern District of Pennsylvania to argue that "settlements achieving a recovery of 20% of
28 damages or less constitute an exceptional result warranting an upward departure from the 25%

benchmark." Mot. at 10. But other courts within this Circuit have found that a recovery of 20% or higher is not an exceptional result. *Stewart v. Apple In*c., 2022 U.S. Dist. LEXIS 139222, *17 (N.D. Cal. Aug. 4, 2022) (finding the result unexceptional where the settlement amount was "about forty percent of the plaintiffs' best-case damages scenario"); *Saechao v. Landrys, Inc.*, 2016 U.S. Dist. LEXIS 111660, *8 (N.D. Cal. Aug. 19, 2016) (finding the result unexceptional where "the settlement agreement recovered approximately one third of the best-case scenario recovery at trial"); *Munoz v. UPS Ground Freight, Inc.*, 2009 U.S. Dist. LEXIS 48755, *11 (N.D. Cal. June 5, 2009) (finding the result unexceptional where the "settlement amount reflect[ed] a recovery of approximately twenty-nine percent of plaintiffs' estimated damages as calculated by plaintiffs"); *Salgado v. T-Mobile USA, Inc.*, 2020 U.S. Dist. LEXIS 103392, *47 (E.D. Cal. June 11, 2020) (subtracting class counsel's requested fees from the fund to find that the class recovery was approximately 37% of the estimated liability and finding that this was a "fair and acceptable result," but "not 'exceptional'"). Indeed, this Court has previously found that even where "the amount offered in settlement was '50% of the recovery plaintiffs' [sic] could have received had the case gone to trial," a settlement may not be an "exceptional result" where "[b]enefits to the Class . . . are limited, albeit fairly and reasonably, to claimants able to provide a serial number (or other identification) for their devices and to provide the required attestation." *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50546, *26 (N.D. Cal. Mar. 17, 2021) (Davila, J.). Here, benefits to the class are similarly limited, fairly and reasonably, to claimants able to provide proof of purchase and proof of third-party fraud. Further, while the fact that Settlement Class Members who submit valid claims might recover their full losses is certainly significant, it is not guaranteed that they will recover this amount. This Court has previously noted that where an "increase in recovery is a result of the response rate" rather than being "guaranteed to the Class," this factor does not necessarily support a deviation from the 25% benchmark. *Id.* at *27.

Second, this case was not unusually risky for Class Counsel. The core of Class Counsel's argument appears to be that the "novelty of the[ir] legal and factual theories" justify a deviation from the benchmark here. Mot. at 9. But most of Plaintiffs' claims were traditional consumer protection claims. Further, to the extent any of their claims were novel, the risk of such novel claims largely dissipated following this Court's rulings that Plaintiffs had stated an actionable claim in response to Apple's

1   motions to dismiss. Thus, the bulk of Class Counsel's investment—discovery and class certification—
2   came *after* much of the risk they undertook was resolved. The remainder of the risk factors Plaintiffs
3   cite, including "hotly contested facts" and an "inherently unpredictable battle of the experts," Mot. at 11,
4   are common to any class action and thus do not warrant a deviation from the Ninth Circuit's benchmark.

5   Further, this Court has already squarely rejected this argument. In *In re LinkedIn User Privacy
6   Litig.*, 309 F.R.D. 573, 590 (N.D. Cal. 2015) (Davila, J.), this Court rejected an argument that an upward
7   deviation from the 25% benchmark was warranted where class counsel argued that "they undertook
8   substantial risk because the case approached a data breach from a novel angle and therefore involved an
9   issue of first impression." There, the Court remained unpersuaded by arguments that class counsel
10  "pursued novel theories of recovery with the assistance of an expert at the pleading stage" and "invest[ed]
11  both substantial time and resources" at the "risk of receiving nothing in return" by "agreeing to litigate
12  th[e] case on a purely contingent basis given the unsettled legal issues." *Id.* Here, too, Class Counsel
13  have "skillfully and professionally prosecuted this action." *Id.* But the mere fact that they presented
14  "novel factual and legal theories" should not justify a deviation from the benchmark here.

15  Third, Class Counsel makes no attempt to argue that their performance generated benefits beyond
16  the cash settlement fund. This factor generally weighs in favor of granting fees in excess of the 25%
17  benchmark only where non-monetary relief is expressly included as part of the settlement agreement.
18  *See, e.g.*, *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, *80 (N.D. Cal. Apr. 1,
19  2011) (finding this factor weighed in favor of an increase from the benchmark where the "settlement
20  agreement provides for . . . injunctive relief" that could not have been "obtained even if [plaintiffs] had
21  prevailed at trial," as the statute at issue did not provide for injunctive relief); *see also In re Google
22  Referrer Header Privacy Litig.*, 2023 U.S. Dist. LEXIS 185442, *26 (N.D. Cal. Oct. 16, 2023) (agreeing
23  that "the combination of monetary distributions and injunctive relief obtained in the settlement is an
24  excellent result for the class because they 'work in concert [to] reshape the landscape of Internet privacy
25  protections'"). Because Class Counsel did not obtain any non-monetary relief for the class, they do not
26  (and cannot) seek an upward deviation on this basis.

27  Fourth, Class Counsel fail to demonstrate that the market rate for similar cases justifies an upward
28  deviation from the Ninth Circuit's benchmark. Class Counsel includes a long string cite purporting to

1  show that "fee awards in common fund settlements of comparable size regularly reach one-third of the
2  settlement fund." Mot. at 14. But Class Counsel makes no effort to demonstrate that the facts and
3  circumstances of those cases are similar to the present case. At most, Class Counsel asserts that these
4  cases are similar because they involve a common fund or involve settlements with similar dollar
5  amounts. *Id.* But Class Counsel fails to explain how these superficial similarities make those cases
6  comparable to this one, and even a cursory look at the citations reveals material factual distinctions.

7  Indeed, none of the cases involve the type of consumer protection and conversion claims at issue
8  here. Instead, the cited cases include securities cases, antitrust cases, employment cases, and one odd
9  Fair Credit Reporting Act case, *Patel v. Trans Union, LLC,* No. 14 Civ. 0522, 2018 WL 1258194, at *12
10 (N.D. Cal. Mar. 11, 2018). This is relevant because the reasoning in many of the cited cases explicitly
11 depended on the type of case at issue. For example, Plaintiffs cite *In re Omnivision Techs.*, 559 F. Supp.
12 2d 1036, 1047 (N.D. Cal. Dec. 6, 2007), for the proposition that "in most common fund cases, the award
13 exceeds that benchmark." However, the Court in *Omnivision*—a securities case—made this statement
14 specifically in the context of *securities* class actions. *Id*. Similarly, the court in *In re Lidoderm Antitrust*
15 *Litig.*, 2018 U.S. Dist. LEXIS 162425, *38 (N.D. Cal. Sept. 20, 2018), specifically noted that "[f]ee
16 awards of one-third are common ***in pay-for-delay litigation*** and were very recently awarded in two such
17 cases." *Id.* (emphasis added); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D.
18 Cal. Jan. 14, 2013) (citing four different ***wage and hour class actions*** in support of its conclusion that
19 the common fund award in that wage and hour class action was reasonable). Yet Plaintiffs here seek to
20 generalize these claim-specific findings to a meaningfully different case without providing any basis for
21 doing so. Without such a basis, Class Counsel's cited cases are not "similar" cases demonstrating the
22 relevant "market rate" for attorneys' fee awards in this case.

23 Fifth, courts within this Circuit routinely find that litigating cases on a contingency basis over
24 several years does not justify an upward deviation. *See, e.g., Hawthorne v. Umpqua Bank*, 2015 WL
25 1927342, at *5 (N.D. Cal. Apr. 28, 2015) ("This Court has previously explained that contingency-fee
26 litigation is 'not a special consideration'—it's the nature of the beast."); *Correa v. Zillow, Inc.*, 2021
27 U.S. Dist. LEXIS 113227, at *6 (C.D. Cal. June 14, 2021) (standing alone, "the attorneys' contingent
28 risk . . . does not justify an upward departure of the benchmark"). "[E]very case involves a risk by

counsel," *Salgado v. T-Mobile USA, Inc.*, 2020 WL 3127931, at *17 (E.D. Cal. June 12, 2020), and taking a case on a contingency basis does not demonstrate that Class Counsel "bore more than an atypical risk." *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 2665075, at *15 (E.D. Cal. June 21, 2017) (awarding 25% benchmark in contingency case lasting over a decade). Indeed, despite the risk that an attorney's recovery may "turn[] out to be lower than expected, or even non-existent," courts "cannot insulate Class Counsel from the risk of pursuing an unprofitable case." *Keirsey v. Ebay, Inc.*, 2014 U.S. Dist. LEXIS 21371, *7-8 (N.D. Cal. Feb. 18, 2014).

Because none of the *Vizcaino* factors support an upward departure from the 25% benchmark prescribed by the Ninth Circuit, Apple respectfully requests that the Court limit any award of attorneys' fees to $8.75 million—25% of the $35 million Settlement Amount. This amount is fair and reasonable.

### 2. Class Counsel Provides Insufficient Documentation to Support Their Lodestar

Courts within this District have declined to deviate from the 25% benchmark based on a lodestar crosscheck where class counsel "failed to sustain their burden of 'submitting detailed time records justifying the hours claimed to have been expended.'" *Ko v. Natura Pet Prods.*, 2012 U.S. Dist. LEXIS 128615, *36-37 (N.D. Cal. Sept. 10, 2012). Indeed, the Northern District of California's Procedural Guidance for Class Action Settlements specifically provides that "[a]ll requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund," and that any declarations of class counsel must be "adequately detailed."[3] In the absence of such records, courts are unable to perform the necessary task of "exclud[ing] hours 'that are excessive, redundant, or otherwise unnecessary'" from a lodestar calculation. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Here, Class Counsel failed to submit itemized records of their time, making it impossible for the Court to evaluate the reasonableness of their fee request. Since Class Counsel's "documentation of hours is inadequate," this Court can and should "reduce hours accordingly." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

---

[3] Northern District of California, *Procedural Guidance for Class Action Settlements*, available at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

Indeed, if such documentation of hours were provided, Apple suspects that a large portion of Class Counsel's time was spent: (a) unsuccessfully pursuing meritless, dismissed claims, then unsuccessfully seeking reconsideration of those claims' dismissal; and (b) unsuccessfully attempting to rehabilitate the meritless claims of certain named plaintiffs through overreaching discovery requests, disputes, and motion practice. *See, e.g.*, ECF No. 51 (order granting motion to dismiss in full, including claims for violations of the California Consumer Legal Remedies Act, Unfair Competition Law, False Advertising Law, breach of contract, money had and received, unjust enrichment, restitution, breach of implied covenant of good faith and fair dealing, aiding and abetting intentional torts, and violations of elder abuse statutes); ECF No. 96 (order dismissing claims in First Amended Complaint relating to third-party liability, fraud by affirmative misrepresentation, and unconscionability of disclaiming third-party liability); ECF No. 236 (order denying Plaintiffs' motion for partial reconsideration); ECF No. 191 (order denying plaintiffs' request for an order compelling Apple to produce "all data from for the period spanning May 10-13, 2019 from the particular Safeway store," which would purportedly allow them to "find transactions that look like the $350 gift card purchase Mr. Polston says he made in 2019, such that a reasonable jury could infer that he was, indeed, the victim of an Apple gift card scam in that amount"). The fact that Class Counsel includes attorneys from three separate firms—making up a far larger team than Apple's—is further cause for scrutiny, as the additional firms and attorneys increases the risk of duplicative work. Time spent on meritless claims and redundant work did not provide value to the class and accordingly should not be considered in determining Class Counsel's fee award. *See Dugan v. Lloyds TSB Bank, PLC*, 2014 WL 1647652, at *4 (N.D. Cal. Apr. 24, 2014).

Without detailed documentation, there is no principled way to determine how many hours Class Counsel reasonably expended on the litigation. Apple respectfully requests that the Court reduce any award of attorneys' fees to $8.75 million—25% of the $35 million Settlement Amount—or, at the very least, require Class Counsel to submit itemized billing records to determine whether Class Counsel's requested fees were reasonable and necessary to achieve the settlement. Should this Court order Class Counsel to submit itemized billing records, Apple further requests that the Parties—and any objectors— be allowed supplemental briefing afterwards.

### B. Named Plaintiffs Not Offered as Class Representatives Should Receive a Nominal Amount in Incentive Awards

The law is clear that valid plaintiffs can and should be compensated for their efforts on behalf of the class. Nevertheless, as this Court has noted, district courts must evaluate incentive awards requested "using relevant factors including 'the actions the plaintiff has taken to protect the interests of the class [and] the degree to which the class has benefitted from those actions.'" *In re MacBook Keyboard Litig.*, 2023 U.S. Dist. LEXIS 92063, *46 (N.D. Cal. May 25, 2023 (Davila, J.). Here, two of the named plaintiffs—Plaintiffs Polston and Martin—not only failed to protect the interests of the class, but intentionally propagated false narratives to the detriment of the class. Indeed, the record suggests that not only was Plaintiff Polston never a class member at all, he also took measures to conceal this fact from Apple. Similarly, the glaring inconsistencies in Plaintiff Martin's story call into question the veracity of her claim. Class Counsel appear to have recognized these Plaintiffs' inadequacies, as Class Counsel notably failed to offer these Plaintiffs as class representatives in their Motion for Class Certification. ECF No. 238 at 8-9 (proposing only Plaintiffs Andrew Hagene, Michael Rodriguez, and Maria Rodriguez as class representatives).[4]

Throughout this case, Plaintiff Polston claimed to have a very limited recollection of his alleged scam incident and no records of it whatsoever, aside from a police report. *See* ECF 145 at 5. Yet despite a request for production specifically seeking this police report, Plaintiff Polston made no effort to produce the report until Apple pointed out his clear failure to comply with this request during his deposition. *Id.* After years of litigating this case, Plaintiffs finally produced the relevant report on the very last day of discovery. *Id.* There was only one problem: this police report revealed that Plaintiff Polston's scam incident involved a Best Buy credit card, *not* an Apple gift card. *Id.* As such, Plaintiff

---

[4] Plaintiffs are not seeking an incentive award on behalf of Michael Rodriguez. Mot. at i. While Apple believes the appropriate amount for an incentive fee to Plaintiffs Andrew Hagene and Maria Rodriguez is no more than $5,000 each, Apple recognizes that the Court has already stated that $10,000 would be reasonable in this case. *Barrett, et al. v. Apple Inc., et al.*, No. 20 Civ. 4812-EJD, Preliminary Approval Hearing at 11:12-14. Accordingly, Apple is not challenging the amount of the incentive awards requested on behalf of Plaintiffs Hagene and Rodriguez. Nevertheless, Apple notes that the Northern District Guidelines for Class Action Settlements requires that requests for service awards "be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards." Plaintiffs have failed to provide such evidence here.

1  Polston has never been a class member, and his participation in this lawsuit actively harmed the class by
2  attempting to mislead this Court and highlighting the highly individualized and fact-intensive nature of
3  the class's claims.  The fact that Class Counsel conspicuously omitted Plaintiff Polston as a class
4  representative underscores this point—they likely recognized that Plaintiff Polston's inclusion as a class
5  representative would damage their arguments that common issues predominate.

6  Class Counsel similarly omitted Plaintiff Martin as a class representative, likely because she too
7  had no documentary evidence of a scam incident, and her deposition testimony revealed conspicuous
8  inconsistencies in her claim.  For instance, Plaintiff Martin first testified that the alleged scam incident
9  occurred in January 2020 and that she contacted Apple shortly thereafter.  Singh Decl., Ex. A ("Feb. 15,
10 2023 Deposition Tr.") at 37:17-38.15.  But when presented with evidence that she never contacted Apple
11 in January 2020, she swiftly changed her story to allege that the scam incident actually occurred in
12 September 2019, when there *is* a record of Plaintiff Martin contacting Apple.  Singh Decl., Ex. B ("Feb.
13 24, 2023 Deposition Tr.") at 244:10-245:16.  However, the record is clear that Plaintiff Martin was
14 contacting Apple regarding an iPhone issue unrelated to any gift card scam, much less the scam at issue
15 in this case.  Feb. 24, 2023 Deposition Tr. at 243:21-249:18.  Similarly, when confronted with evidence
16 that she previously stated that the scammer claimed to be a Microsoft employee, she first confirmed that
17 the scammer indeed claimed to be a Microsoft employee only to then change her story during the next
18 day of her deposition to assert that the scammer identified himself as an *Apple* employee.  *Compare* Feb.
19 15, 2023 Deposition Tr. at 121:15-21 *with* Feb. 24, 2023 Deposition Tr. at 219:23-220:1.  These rapidly
20 changing stories call into question the veracity of Plaintiff Martin's claims, which harmed the class by
21 highlighting the potential for fraudulent claims.

22 Incentive awards are just that: incentives for individuals to advocate on behalf of the class.
23 Propounding false narratives does the opposite, and this Court should decline to incentivize individuals
24 attempting to perpetuate a fraud via the class action process.  Apple thus respectfully requests that the
25 Court reduce any incentive award to Plaintiffs Polston and Martin to at most a nominal amount, such as
26 $250.

27
28

### III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court limit any award of attorneys' fees to $8.75 million, in line with the Ninth Circuit's benchmark of 25% of the $35 million Settlement Amount, or alternatively require Class Counsel to provide additional detail regarding their billing records and time entries. Apple further requests that the Court reduce any incentive fee to Plaintiffs Polston and Martin to a nominal amount, such as $250.

Dated: September 24, 2024

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: /s/ David R. Singh
   DAVID R. SINGH

Attorney for Defendants Apple Inc. and Apple Value Services LLC